# Exhibit 1

Brian L. Stekloff
Rakesh Kilaru
**WILKINSON STEKLOFF**
2001 M Street, NW, 10th Floor
Washington DC  20036
202-847-4030
bstekloff@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com

*Counsel for Monsanto Company*

Christopher A. Seeger
David R. Buchanan
Steven J. Daroci
**SEEGER WEISS LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ  07660
973-639-9100
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
sdaroci@seegerweiss.com

Eric D. Holland
Patrick R. Dowd
**HOLLAND LAW FIRM**
211 North Broadway
Suite 2625
St. Louis, MO  63102
866-931-6776
eholland@hollandtriallawyers.com
pdowd@hollandtriallawyers.com

*Lead Counsel for the Putative Missouri Class*
*(additional counsel listed below)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITIGATION | MDL No. 2741 |
| | Case No. 16-md-02741-VC |
| This document relates to: | |
| ALL ACTIONS | **JOINT BRIEF IN OPPOSITION TO MOTION FOR INJUNCTIVE OR DECLARATORY RELIEF RELATED TO PROPOSED NATIONAL ROUNDUP SETTLEMENT** |
| *Jones* v. *Monsanto Co.*, 3:26-cv-01455 | |
| *Schramm* v. *Monsanto Co.*, 3:26-cv-01461 | Hearing Date: April 30, 2026 Hearing Time:  10:00 a.m. |
| [As to Motion Argument Part III] | |

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether an MDL transferee court has the authority, despite the Anti-Injunction Act, to grant injunctive and declaratory relief directly interfering with the ongoing settlement approval process of a Missouri state court.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................................1

BACKGROUND ....................................................................................................................................2

ARGUMENT .........................................................................................................................................7

I.    The Court does not have jurisdiction over the proposed Settlement. ........................................7

II.   The relief sought is barred by the Anti-Injunction Act. ...........................................................11

III.  Even apart from the Anti-Injunction Act, Movants do not meet the standards for
      injunctive relief. ......................................................................................................................18

      A.   Movants' challenges to the Settlement lack merit. ..........................................................19

           1.   The exclusion is clear. ...............................................................................................19

           2.   The opt out procedures are reasonable. .....................................................................20

      B.   Movants fail to establish any of the other factors necessary for injunctive relief. ............23

IV.   Movants are engaging in a baseless smear campaign. ..............................................................24

CONCLUSION ....................................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins* v. *Nestle Purina PetCare Co.*,
  779 F.3d 481 (7th Cir. 2015) ...................................................................................................14

*Allen* v. *McCurry*,
  449 U.S. 90 (1980)...................................................................................................................24

*Alton Box Bd. Co.* v. *Esprit de Corp.*,
  682 F.2d 1267 (9th Cir. 1982) ................................................................................................10

*Atlantic Coast Line R.R. Co.* v. *Bhd. of Loc. Eng'rs*,
  398 U.S. 281 (1970)............................................................................................................12, 17

*Barnes* v. *Uhlich*,
  592 S.W.3d 67 (Mo. Ct. App. 2019).......................................................................................24

*Bennett* v. *Medtronic, Inc.*,
  285 F.3d 801 (9th Cir. 2002) ..................................................................................................17

*Chick Kam Choo* v. *Exxon Corp.*,
  486 U.S. 140 (1988)..................................................................................................................18

*Clinton* v. *Goldsmith*,
  526 U.S. 529 (1999)..................................................................................................................11

*H.J. Heinz Co.* v. *Owens*,
  189 F.2d 505 (9th Cir. 1951) ..................................................................................................17

*In re Baldwin-United Corp.*,
  770 F.2d 328 (2d Cir. 1985)....................................................................................................15

*In re Chevy Bolt EV Battery Litig.*,
  No. 2:20-CV-13256-TGB-CI, 2025 WL 3709933 (E.D. Mich. Dec. 22, 2025).....................22

*In re Deepwater Horizon*,
  No. 20-30617, 2021 WL 3501651 (5th Cir. Aug. 9, 2021) .....................................................22

*In re Diet Drugs Prods. Liab. Litig.*,
  282 F.3d 220 (3rd Cir. 2002) ..................................................................................................15

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
  No. 3:18-md-02843-VC (N.D. Cal. Mar. 29, 2023) ...............................................................22

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
134 F.3d 133 (3d Cir. 1998).................................................................................10, 13

*In re Hair Relaxer Mktg. Sales Pracs. & Prods.*,
No. 23-CV-0818, 2024 WL 3904650 (N.D. Ill. Aug. 22, 2024),
*reconsideration denied*, No. 23-CV-0818, 2024 WL 5457446 (N.D. Ill. Oct.
11, 2024) ...............................................................................................................7

*In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*,
99 F. Supp. 3d 288 (E.D.N.Y. 2015) .................................................................10, 14

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2017 WL 3478810 (N.D. Cal. Aug. 14, 2017)...........................7, 8

*In re Maxim Integrated Prods., Inc. Deriv. Litig.*,
No. C 06-03344 JW, 2008 WL 11393154 (N.D. Cal. Dec. 3, 2008)......................................14

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
No. 2:12-md-02323-AB (E.D. Pa. Feb. 13, 2015)...................................................22

*In re Navistar MaxxForce Engines Mktg.*,
990 F.3d 1048 (7th Cir. 2021) ..........................................................................20

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
227 F.R.D. 553 (W.D. Wash. 2004) ......................................................................21

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) ..........................................................................9

*In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*,
No. 07-C-7184, 2008 WL 548772 (N.D. Ill. Feb. 20, 2008) ...........................................10, 14

*In re Roundup Prods. Liab. Litig.*,
544 F. Supp. 3d 950 (N.D. Cal. 2021) ....................................................................8

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*,
953 F.2d 162 (4th Cir. 1992) ..........................................................................7

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
2002 WL 31472781 (N.D. Ohio June 19, 2002)......................................................21

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)..........................................................................24

*J.R. Clearwater* v. *Ashland Chem. Co.*,
93 F.3d 176 (5th Cir. 1996) ..........................................................................16

*Kline* v. *Burke Constr. Co.*,
260 U.S. 226 (1922)..................................................................................................13

*Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998).....................................................................................................9

*Mastronardi Int'l Ltd.* v. *SunSelect Produce (California), Inc.*,
437 F. Supp. 3d 772 (E.D. Cal. 2020).....................................................................13

*Monsanto Co.* v. *Durnell*,
607 U.S. __ (2026) (No. 24-1068, 2025 Term) ..................................................2, 3

*Monster Beverage Corp.* v. *Herrera*,
650 F. App'x 344 (9th Cir. 2016) ............................................................................17

*Negrete* v. *Allianz Life Ins. Co. of N. Am.*,
523 F.3d 1091 (9th Cir. 2008) ....................................................................... *passim*

*Nken* v. *Holder*,
556 U.S. 418 (2009)..................................................................................................25

*Paulson* v. *Dynamic Pet Products, LLC*,
560 S.W.3d 583 (Mo. Ct. App. 2018).......................................................................24

*Police & Fire Ret. Sys. of City of Detroit* v. *Crane*,
13-CV-00945-VC, 2015 WL 13388298 (N.D. Cal. Dec. 15, 2015)........................22

*Roofer's Pension Fund* v. *Papa*,
2024 WL 4205638 (D.N.J. Sept. 12, 2024), *aff'd sub nom. Perrigo
Institutional Inv. Grp.* v. *Papa*, 150 F.4th 206 (3d Cir. 2025)...............................20

*Samuels* v. *Mackell*,
401 U.S. 66 (1971)....................................................................................................18

*Sandpiper Vill. Condo. Ass'n., Inc.* v. *Louisiana-Pac. Corp.*,
428 F.3d 831 (9th Cir. 2005) ...................................................................................12

*Smith* v. *Bayer Corp.*,
564 U.S. 299 (2011)...............................................................................11, 15, 16, 17

*State ex rel. Cass Cnty.* v. *Mollenkamp*,
481 S.W.3d 26 (Mo. Ct. App. 2015)........................................................................24

*State ex rel. Woods* v. *Dierker*,
684 S.W.3d 727 (Mo. 2024) ....................................................................................24

*Syngenta Crop Protection, Inc.* v. *Henson*,
537 U.S. 28 (2002)....................................................................................................10

*Texas Emps.' Ins. Ass'n* v. *Jackson*,
862 F.2d 491 (5th Cir. 1988) (en banc) ....................................................................17

*Trump* v. *CASA, Inc.*,
606 U.S. 831 (2025)...................................................................................................10

*Uber Techs., Inc.* v. *United States Jud. Panel on Multidistrict Litig.*,
131 F.4th 661 (9th Cir. 2025) .....................................................................................8

*Uniformed Sanitationmen's Ass'n Comp. Accrual Fund* v. *Equinix, Inc., et al.*,
No. 3:24-cv-02656-VC (N.D. Cal. Sept. 4, 2025) ...................................................21

*United States* v. *Denedo*,
556 U.S. 904 (2009)...................................................................................................10

*Vendo Co.* v. *Lektro-Vend Corp.*,
433 U.S. 623 (1977)...................................................................................................13

*Wilton* v. *Seven Falls Co.*,
515 U.S. 277 (1995)...................................................................................................18

*Winkler* v. *Eli Lilly & Co.*,
101 F.3d 1196 (7th Cir. 1996) ...................................................................................15

*Winter* v. *Nat. Res. Def. Council*,
555 U.S. 7 (2008).......................................................................................................18

**Statutes and Rules**

28 U.S.C. § 1407(a) .............................................................................................................7

All Writs Act, 28 U.S.C. § 1651(a)................................................................................11, 12

Anti-Injunction Act, 28 U.S.C. § 2283 ..........................................................................11, 15

Declaratory Judgment Act, 28 U.S.C. § 2201....................................................................10

Fed. R. Civ. P. 23 ...............................................................................................................16

**Other Authorities**

Wright & Miller,
*Federal Prac. & Proc. Juris.* (3d ed. 2026)..............................................................18

Ann. Manual Complex Lit. (4th ed.)................................................................................9, 15

Erwin Chemerinsky,
*Federal Jurisdiction* (9th ed. 2025) ..........................................................................13

Wright,
*Federal Courts* (4th ed. 1983) ...............................................................................................18

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

## INTRODUCTION[1]

In this Motion, two outlier law firms representing a small number of Roundup plaintiffs ask this Court to exceed the jurisdictional limits on an MDL transferee court and directly interfere with a Missouri state court's ongoing judicial review of a proposed class action settlement (the "Settlement"). The Motion seeks relief that would jeopardize a settlement that, if approved, would deliver billions of dollars of compensation to tens of thousands of plaintiffs, at a critical time when *all* Roundup plaintiffs are at risk from the forthcoming Supreme Court decision on preemption.

The Settlement has broad-based support among the firms handling a large majority of the Roundup litigation, including several firms that were prominent opponents of the prior proposed settlements in this Court. And while Movants repeatedly insinuate that the Missouri judicial system is incapable of evaluating the Settlement, they neglect to mention that nearly all their remaining Roundup cases are pending in Missouri state court, and that, for years, they have deliberately sought out the Missouri courts for strategic reasons. Indeed, Movants have already sought to challenge the Settlement in the Missouri courts several times over. The Missouri Court has specifically instructed that Movants' challenges will be heard in the ordinary course as part of its review of the Settlement. And if Movants do not like the result, they have an avenue of appeal through the Missouri courts and review by the United States Supreme Court.

Under these circumstances, there is no basis for this Court to take the unprecedented and extraordinary step of intervening in the established state court process or ordering changes to the Settlement being reviewed in Missouri. As detailed below, the Court lacks jurisdiction to do so and, in any event, the Anti-Injunction Act bars the requested relief. Federal district courts, MDLs

---

[1] For the sake of efficiency, this brief is submitted jointly on behalf of Monsanto and Class Counsel, rather than having Class Counsel file a duplicative amicus brief. Although most Class Counsel are not parties to the MDL, they have filed notices to appear (in some cases specially) in connection with this Motion because it specifically seeks to enjoin them. Mot. at 22–23.

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

or not, do not and cannot sit in review over their sister state courts. To the extent Movants have genuine concerns regarding the Settlement and are not simply seeking to leverage an outsize recovery for their own cases, they will have a full opportunity to raise these issues in the Missouri courts through the objection and final approval hearing process and on appeal thereafter.

## BACKGROUND

On February 17, 2026, the undersigned class counsel and Monsanto entered into the Settlement under which Monsanto would pay up to $7.25 billion to resolve most current and future Roundup claims on the terms therein, subject to court review and approval. The Settlement was filed in the Circuit Court of the City of St. Louis in the state of Missouri (the "Missouri Court"). Over the past several years, Missouri has become the epicenter of the overwhelming majority of Roundup litigation. Currently, many tens of thousands of Roundup plaintiffs have cases pending in the Missouri state courts, compared to 301 plaintiffs in the MDL[2] and approximately 75 plaintiffs across other federal courts. Declaration of Christopher Seeger ("Seeger Decl.") ¶ 5. This is by the *plaintiffs'* choice, not Monsanto's. Plaintiffs have brought claims in Missouri courts precisely so that Monsanto cannot remove them to federal court and hence to the MDL. Seeger Decl. Ex. 2 (Affidavit of Peter Kraus) ("Kraus Aff.") ¶ 4; *id.* at Ex. 3 (Affidavit of Joseph F. Rice) ("Rice Aff.") ¶ 4.

In addition to providing many billions of dollars of compensation, the Settlement comes at a time of significant uncertainty for *all* Roundup plaintiffs, given the Supreme Court's decision to hear the preemption issue in *Monsanto Co.* v. *Durnell*, 607 U.S. __ (2026) (No. 24-1068, 2025

---

[2] Contrary to the suggestion of amici, there are not thousands of active cases in the MDL. *See* Brief of Consumer and Class Action Law Scholars, Dkt. No. 21977, at 5. The number cited includes thousands of cases previously settled. Unless otherwise noted, docket references are to *In re Roundup Products Liab. Litig.*, No. 16-md-02741-VC (N.D. Cal.) and all plaintiff counts are as of April 21, 2026.

Term).  Significantly, Monsanto will be bound by the terms of the Settlement regardless of what the Supreme Court may decide in *Durnell*, so long as the Missouri courts approve it and no court tries to change the Settlement's terms.  Declaration of Robin L. Greenwald, Dkt. No. 21962-1, ("Greenwald Decl.") Ex. C ("Settlement Agreement") §§ 21.1, 27.12.  The Settlement thus provides significant benefits to tens of thousands of individuals exposed to Roundup products at a time when plaintiffs risk preemption of their principal legal theory.

The Settlement class includes individuals who have been exposed to Roundup products, have reason to know they were exposed, and otherwise fall within the class definition, with one subclass for individuals who have been diagnosed with Non-Hodgkin Lymphoma (NHL) (subclass 1), and another for those who have not been diagnosed with NHL (subclass 2).  *Id.* §§ 2.1, 2.2.  As relevant to this Motion, the Settlement class excludes "any Person who, as of the Settlement Date, has a claim pending in *In re Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal.)," although they can opt into the Settlement if they so choose.  *Id*. § 2.1(b)(iv).  The "Settlement Date" is February 17, 2026.  *Id*. at 1.  Thus, plaintiffs who did *not* have a "claim pending" in the MDL as of February 17, 2026, including plaintiffs who filed in or were transferred to the MDL after that date, or who had already been transferred out of the MDL prior to that date, are a part of the class.  Those plaintiffs may choose to opt out if they wish to continue litigating in federal court.

The Settlement review process is underway in the Missouri courts.  The Settlement was filed with the Missouri Court on February 17, 2026.  The Missouri Court entered a preliminary approval order (the "Preliminary Approval Order") on March 4, 2026, specifically stating that (i) it had made no final decision regarding the approval of the Settlement; (ii) Movants (who had raised many of the same arguments they advance here) could raise those arguments through the

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

objection process; and (iii) the court would consider those arguments further at the final approval stage. Greenwald Decl. Ex. B ("Missouri Court Mem.") at 3.

In the Preliminary Approval Order, the Missouri Court directed a comprehensive nationwide notice program and established an opt out process with a June 4, 2026 deadline. Greenwald Decl. Ex. A ("Preliminary Approval Order") ¶¶ 57, 61. That notice program is ongoing. Numerous plaintiffs have already submitted opt outs, including dozens represented by Movant Weitz & Luxenberg ("Weitz"), without any apparent difficulty in doing so. Seeger Decl. ¶ 7. (Indeed, the only reason Weitz has not yet opted out the two specific Movants here is to manufacture a vehicle for asking this Court to improperly interfere with the Settlement.) The deadline to file objections is June 4, and a hearing on objections and final approval is scheduled for July 9, 2026. Preliminary Approval Order ¶ 65.

The Settlement has broad-based support among the firms handling a large majority of the Roundup litigation, including firms that were prominent opponents of the prior proposed settlements in this Court. Numerous firms with active Roundup cases have declared support for the Settlement publicly and/or have agreed to serve on the plaintiffs' steering committee to implement it. Seeger Decl. ¶ 6. Other firms are considering doing likewise. *Id.* Collectively, proposed class counsel and other supporting firms represent approximately 60% of the pending Roundup claims that remain unresolved—tens of thousands of plaintiffs.[3] *Id.*

---

[3] These firms include Seeger Weiss LLP (~13,200 plaintiffs), Motley Rice LLC (~3,300 plaintiffs), Waters Kraus Paul & Siegel, LLP (~1,800 plaintiffs), Wagstaff Law Firm (~6,800 plaintiffs), Nachawati Law Group (~4,000 plaintiffs), Napoli Shkolnik PLLC (~1,600 plaintiffs), Ferraro Law Firm PA (~1,500 plaintiffs), Sbaiti & Company PLLC, Schlesinger Law Offices PA, Simmons Hanly Conroy LLP, Duncan Stubbs, and Levin Papantonio. The plaintiff counts include plaintiffs with tolled or filed claims. Seeger Decl. ¶ 6.

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

Movants' assertion that class counsel have "not played significant roles in the Roundup litigation," Mot. at 3, is wrong. Class counsel have a wealth of experience in the Roundup litigation. Seeger Weiss, lead counsel for subclass 1, represents the largest number of remaining Roundup claims (well over 13,000 plaintiffs) and has been commended by courts for its leading role in major mass torts such as Talc and 3M Combat Earplugs. *See* Seeger Decl. Ex. 1 ¶¶ 5, 8, 10. Likewise, the Holland Law Firm, lead counsel for subclass 2, previously brought thousands of Roundup claims in the Missouri courts, litigated them aggressively, and successfully resolved them, leaving it conflict-free to represent subclass 2.[4] *See id*. Ex. 4 ¶¶ 12–15. Waters Kraus and Williams Hart likewise aggressively litigated Roundup claims in the state courts for years, including in several state court trials, and represent almost 2,000 Roundup plaintiffs. Kraus Aff. ¶¶ 7, 10–11. Motley Rice also represents thousands of Roundup plaintiffs, and has led mass tort litigation for years, including the opioids litigation. *See* Rice Aff. ¶¶ 16–18; Seeger Decl. Ex. 1, Ex. A at 1–3.

The same is true for other supporting firms. For example, one lawyer with years of experience litigating Roundup claims has announced that she does "not . . . object to the class resolution as proposed by class counsel" and instead "recommend[s] to [her nearly 7,000] clients that they remain in the class." *Id.* at Ex. 5. Similarly, the Nachawati Law Group, which objected to the prior proposed class settlements, has stated that it supports this Settlement, as "no one is more familiar with the hardships the drawn-out nature of this litigation has imposed on our clients."

---

[4] In light of the Holland Law Firm's extensive experience in the Roundup litigation and its lack of conflicts, the insinuation that future claimants are not adequately represented by Missouri Court-appointed Subclass 2 Counsel and the request that this Court should appoint MDL futures counsel or otherwise involve itself with this issue are baseless. *See* Mot. at 2, 25. In any event, issues concerning the adequacy of representation for future claimants or anything else related to futures can and should be litigated before the Missouri Court through the process established by that Court.

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

*Id.* at Ex. 6. Other vocal opponents of the prior proposed class settlements, such as Levin Papantonio and Napoli Shkolnik, support this Settlement. Seeger Decl. ¶ 6.

By contrast, two firms—Weitz and The Miller Firm ("Miller")—have asked this Court to improperly interfere with the Settlement while casting aspersions on the Missouri judicial system. Weitz is counsel of record in a relatively small number of Roundup cases (approximately 130 plaintiffs), and nearly all of its cases (approximately 110 plaintiffs) are pending in Missouri state courts. *Id.* at ¶ 7. Indeed, despite its criticisms of the Missouri courts in this Motion, Weitz has deliberately sought out the Missouri courts for years. In fact, until its federal filings here to lay a foundation for this Motion, the firm filed all of its recent Roundup cases in Missouri state court. *Id.* As for Miller, it has no active MDL cases and apparently a single Missouri state case. *Id.*

The concerns raised here by Movants and amici can be—and have been[5]—raised in the Missouri Court as part of the objection and hearing process established pursuant to Missouri law and through the appellate process. And not a single case pending before this Court will be affected by the Settlement except by choice: Plaintiffs with claims pending in the MDL as of the Settlement Date are excluded unless they choose to join, and any plaintiff that has been transferred to the MDL subsequent to the Settlement Date may opt out of the Settlement if they so choose. The Court should thus decline Movants' invitation to improperly interfere with an independent state court that is well-equipped to address the merits of the Settlement.

---

[5] Weitz has filed the following in *King* v. *Monsanto Co.*, No. 2622-CC00325: Motion to Intervene (Feb. 24, 2026); Notice re Website (Mar. 10, 2026); Notice re Bankruptcy and Medical Liens (Mar. 18, 2026); Notice re Opt Out Requirements (Mar. 25, 2026); Notice re Deficiencies (Mar. 26, 2026); Second Notice Seeking Information (Apr. 7, 2026).

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

## ARGUMENT

**I.      The Court does not have jurisdiction over the proposed Settlement.**

The proposed Settlement is not before this Court.  Nonetheless, Movants ask this Court to assume plenary authority over the Settlement, to issue orders changing its terms, and to dictate to the Missouri Court how to implement and review it.  The requested injunctive and declaratory relief—*e.g.*, to exclude certain members from the class, and to change the opt out process—would effect a rewrite of the Settlement and would interfere with the authority of the Missouri Court.  The requested injunctive relief contravenes the procedures the Missouri Court has set out in its Preliminary Approval Order.  All of the requested relief would apply to plaintiffs not before this Court.  And all of the requested relief would interfere with the Missouri Court's ongoing process for consideration and review of the Settlement.  The Motion does not even try to explain why the Court has jurisdiction to take such extraordinary action.  Instead, it proceeds as if this Court's role as an MDL court allows it to act on anything involving Roundup.  That is wrong.

1.      This Court's role as an MDL court does not give it plenary authority over all Roundup matters.  Instead, an MDL court has jurisdiction only over pre-trial proceedings in the specific actions transferred to and remaining in the MDL.  *See* 28 U.S.C. § 1407(a).  The law is settled that "a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties *to the cases transferred*."  *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165–66 (4th Cir. 1992) (emphasis added); *see In re Hair Relaxer Mktg. Sales Pracs. & Prods.* No. 23-CV-0818, 2024 WL 3904650, at *4 (N.D. Ill. Aug. 22, 2024) ("the authority to conduct multidistrict litigation does not alter the inherent limits on a district court to manage only its docket at the exclusion of cases beyond the MDL" and therefore "[a]n MDL court cannot enter orders affecting plaintiffs outside of the MDL to better manage its litigation"); *In re Lidoderm Antitrust Litig.,* No. 14-MD-02521-WHO, 2017

7

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

WL 3478810, at *3 (N.D. Cal. Aug. 14, 2017).  The Ninth Circuit has thus specifically contrasted an MDL court's limited jurisdiction with that of a court overseeing a class action that "must, by design, adjudicate the claims, or at least a portion of the claims, of all class members 'in one stroke.'" *Uber Techs., Inc.* v. *United States Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 670 (9th Cir. 2025) (internal citation omitted).

This Court has previously recognized just that.  In rejecting an effort to impose contributions to the common benefit fund on those not before the MDL, this Court stated that it "lacks the authority to [rule on] a dispute outside the MDL," and thus "simply has no power" over "[c]laimants who have not sued and plaintiffs in state and untransferred federal cases [who] have not voluntarily entered the litigation before the district court nor . . . been brought in by process." *In re Roundup Prods. Liab. Litig.,* 544 F. Supp. 3d 950, 963, 968 (N.D. Cal. 2021) (quoting *In re Showa*, 953 F.2d at 166).  This is particularly true as to matters pending in state court, because "state-court cases, related or not, are not before the district court" and ordering relief affecting "state court plaintiffs . . . raises serious comity concerns."  *Id.* at 964, 973 (citation omitted).  As this Court observed then, that Movants are "even willing to make such a request is perhaps reflective of a more widespread problem in the MDL world—a pervasive assumption that MDL courts have the power (or should have the power) to solve every problem or imperfection imaginable relating to mass tort litigation." *Id.* at 968.

Movants make that same incorrect assumption here.  The ongoing Missouri state court Settlement approval proceeding, "related or not, [is] not before the district court."  The Motion would have this Court defy these settled limits on its jurisdiction.

2.      The Motion's heavy emphasis on plaintiffs whose cases this Court previously remanded, Mot. at 14–16, only highlights the Court's lack of jurisdiction.  Once a case is

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

remanded, an MDL court's jurisdiction over it ends. *See In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006); *Lexecon Inc.* v. *Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34–35 (1998); Ann. Manual Complex Lit. § 20.133 (4th ed.) ("After remand, the transferor court has exclusive jurisdiction, and further proceedings in the transferee court with respect to a remanded case are not authorized absent a new transfer order by the Panel."). As a result, Movants' request that the Court "enter an appropriate order confirming that people with remanded federal cases are not part of the proposed class" is beyond the scope of the Court's authority. *See* Mot. at 25.[6]

3.      To be sure, although this Court does have jurisdiction over *pre-trial* proceedings in the relatively small number of cases that remain in the MDL, that does not give it jurisdiction to grant the relief sought here. The great majority of these cases – 267 of the 301, those that were pending in the MDL as of the Settlement Date—are excluded from the class to begin with. *See* Seeger Decl. ¶¶ 5, 9. And though the 38 plaintiffs whose cases were transferred to or filed in the MDL after the Settlement Date are potentially within the proposed class, *see id.* ¶ 9, that does not give the Court supervisory authority over the Settlement or the power to change its terms or interfere with the Missouri proceedings. For one thing, neither the Preliminary Approval Order nor any other Missouri court order currently stops these cases from moving forward consistent with this Court's standing wave process. More broadly, if these few plaintiffs wish to exempt themselves from any order the Missouri Court *might* issue later on, they can simply opt out. All 38 plaintiffs are represented by competent counsel, each of whom has been sent direct notice of their client's inclusion in the class and right to opt out. *See* Point III.A.1, *infra.* And, despite

---

[6] Moreover, the law-firm Movants do not have a sweeping mandate to request relief on behalf of all federal plaintiffs. Their role as MDL co-lead counsel is limited in scope to the pre-trial activity and proceedings for cases pending in the MDL. *See* Pretrial Order No. 4, Dkt. No. 62.

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

Movants' claims to the contrary, there is no obstacle to opting out. Indeed, Weitz has had no difficulty opting out *dozens* of plaintiffs already. Seeger Decl. ¶ 7.

Accordingly, courts have repeatedly held that MDL courts may not interfere with state court class action settlements on the ground that they include MDL plaintiffs. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 134 F.3d 133, 141 (3d Cir. 1998) ("*General Motors*") (involving a state court class action binding 277 class members with MDL claims pending); *In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d 288, 313 (E.D.N.Y. 2015) (similar); *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, No. 07-C-7184, 2008 WL 548772, at *4 (N.D. Ill. Feb. 20, 2008) (similar). These precedents have all the more force here given how few MDL plaintiffs potentially in the class remain, compared to the tens of *thousands* of Missouri plaintiffs and the Missouri Court's interests in overseeing the litigation before it. *See generally Trump* v. *CASA, Inc.*, 606 U.S. 831, 847 (2025) (holding that federal courts generally do not have equitable jurisdiction to enter relief for persons not before them).

4.      Moreover, contrary to Movant's assertion, Mot. at 11, neither the All Writs Act nor the Declaratory Judgment Act, 28 U.S.C. § 2201, supplies an independent basis for jurisdiction over the Settlement. *See United States* v. *Denedo*, 556 U.S. 904, 914 (2009) ("The authority to issue a writ under the All Writs Act is not a font of jurisdiction"); *Syngenta Crop Prot., Inc.* v. *Henson*, 537 U.S. 28, 33 (2002) ("[T]he All Writs Act does not confer jurisdiction on the federal courts."). The Declaratory Judgment Act likewise cannot "confer an independent basis of jurisdiction on the federal court." *Alton Box Bd. Co.* v. *Esprit de Corp.*, 682 F.2d 1267, 1274 (9th Cir. 1982). Further, under the All Writs Act, the requested relief is not "necessary or appropriate" to aid this Court's jurisdiction over the 38 plaintiffs who were transferred into the MDL after the

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

Settlement Date, because they can easily opt out of the Missouri settlement and because Movants can raise their concerns in Missouri state court. 28 U.S.C. § 1651(a); *see Clinton* v. *Goldsmith*, 526 U.S. 529, 537 (1999) ("A writ may not be used … when another method of review will suffice." (citation omitted)).

In sum, this Court lacks jurisdiction to grant any of the specific relief the Motion seeks or to take any of the other actions Movants urge with respect to the Settlement.

## II. The relief sought is barred by the Anti-Injunction Act.

Movants' requested relief is also barred by the Anti-Injunction Act (the "Act"), 28 U.S.C. § 2283—a statute Movants barely acknowledge and none of the amici even mention. The Act provides that: "[a] court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

As the Supreme Court unanimously explained, the Act "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." *Smith* v. *Bayer Corp.*, 564 U.S. 299, 306 (2011) (internal citation omitted). Its "core message is one of respect for state courts. The Act broadly commands that those tribunals shall remain free from interference by federal courts." *Id.* (internal quotation marks and citations omitted). The Supreme Court thus emphasized that this bar "is subject to only three specifically defined exceptions. And those exceptions . . . are narrow and are not [to] be enlarged by loose statutory construction. Indeed, [a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Id.* (internal quotation marks and citations omitted).

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

As set forth at p. 17, *infra*, all of Movants' requested relief would in effect be an injunction of the proceedings in Missouri. None of the three exceptions in the Anti-Injunction Act applies here, and the Act is thus a complete bar to the Motion.

1.      Movants' requested relief is not "expressly authorized by Act of Congress." The only statute Movants invoke for the requested injunctions is the All Writs Act, 28 U.S.C. § 1651(a). Mot. at 11. But the Ninth Circuit has stressed that the All Writs Act does not qualify for the "expressly authorized" exception to the Anti-Injunction Act. Instead, the reverse is true: "[t]he authority conferred upon federal courts by the All Writs Act is restricted by the Anti–Injunction Act." *Negrete* v. *Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100 (9th Cir. 2008); *accord Sandpiper Vill. Condo. Ass'n., Inc.* v. *Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005) ("The All Writs Act is limited by the Anti–Injunction Act."). After all, the All Writs Act is a general remedial provision; if it qualified as an exception to the Anti-Injunction Act, the Anti-Injunction Act would be a dead letter. But as the Supreme Court made clear in *Smith* v. *Bayer*, the Act is not a dead letter.

2.      The "necessary in aid of its jurisdiction" exception is likewise inapplicable. That exception is generally for *in rem* proceedings "where the federal court has jurisdiction over the res and the state court proceedings might interfere with that." *Negrete*, 523 F.3d at 1101; *see also Sandpiper*, 428 F.3d at 843. An injunction there is "necessary" in aid of the federal court's jurisdiction because the federal court and a state court cannot exercise jurisdiction over the same piece of property at the same time. Needless to say, the proceedings here are not *in rem*.

By contrast, parallel *in personam* proceedings in federal and state courts generally do not provide grounds for the federal court to invoke this exception. *Atlantic Coast Line R.R. Co.* v. *Bhd. of Loco. Eng'rs*, 398 U.S. 281, 295 (1970). Instead, the Act generally requires federal courts

12

OPPOSITION TO MOTION FOR INJUNCTIVE<br>OR DECLARATORY RELIEF<br>NO. 16-MD-02741-VC

to allow parallel *in personam* proceedings in state court to proceed until one court reaches a judgment that precludes the other. *See Kline* v. *Burke Constr. Co.*, 260 U.S. 226, 230 (1922); *see also Vendo Co.* v. *Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) (plurality opinion) ("We have never viewed parallel in personam actions as interfering with the jurisdiction of either court."); *Mastronardi Int'l Ltd.* v. *SunSelect Produce (California), Inc.*, 437 F. Supp. 3d 772, 783 (E.D. Cal. 2020) ("[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.") (quotation omitted).

Accordingly, the Ninth Circuit has stressed that the in-aid-of-jurisdiction exception "does not authorize interference with parallel in personam state actions merely because the state courts might reach a conclusion before the district court does." *Negrete*, 523 F.3d at 1101. As one of Movants' amici has explained, "the Supreme Court has been firm that the 'in aid of jurisdiction' exception applies only in real property situations and not in in personam cases. . . . In cases involving the disposition of real property . . . whichever court acquires jurisdiction first can enjoin all other courts. But in all other matters, the federal court may not stay the state proceedings . . . ." Erwin Chemerinsky, *Federal Jurisdiction*, 734–35 (9th ed. 2025).

These precepts apply fully with respect to state court class action certification and settlement approval proceedings where the class includes federal plaintiffs who do not opt out. That those proceedings could end up binding federal plaintiffs does not implicate the in-aid-of-jurisdiction exception.

The Third Circuit's decision in *General Motors* is directly on point. There, plaintiffs who were putative members of a proposed class settlement pending in state court requested that the MDL court enjoin the parallel state proceedings. 134 F.3d at 137. These plaintiffs argued the state

13

OPPOSITION TO MOTION FOR INJUNCTIVE<br>OR DECLARATORY RELIEF<br>NO. 16-MD-02741-VC

proceedings were an "end run" around the MDL court's authority, as the MDL court had recently rejected a substantially similar class settlement. *Id.* The state class included 277 MDL plaintiffs. *Id.* at 145. The court held that the requested injunction was impermissible and could not be justified as "necessary in aid of [the MDL court's] jurisdiction." *Id.* Instead, the court stressed that any plaintiffs who wished to proceed in the MDL could opt out. *Id.*

Numerous other cases similarly hold that the Act bars MDL courts from interfering with state court class certification and approval proceedings for classes that include federal plaintiffs who do not opt out. *See, e.g., In re Maxim Integrated Prods., Inc. Deriv. Litig.*, No. C 06-03344 JW, 2008 WL 11393154, at *3 (N.D. Cal. Dec. 3, 2008) (state court class settlement that would release federal claims does not justify intervention of federal court overseeing parallel action); *In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*, 99 F. Supp. 3d at 313; *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.*, 2008 WL 548772 at *4.

If anything, these precedents apply with added force here. Unlike in *General Motors*, where the MDL court had recently rejected a virtually identical proposed class settlement, the Settlement here is fundamentally different from the proposed settlement this Court rejected five years ago. And unlike in any of these cases, the Missouri state court system here is the epicenter of the litigation at issue, with tens of thousands of plaintiffs pending before it compared to only 38 MDL plaintiffs potentially in the class (who, to repeat, can simply opt out if they wish to litigate in federal court). Seeger Decl. ¶¶ 5, 9. In short, there is nothing that makes it "necessary" to reach out and disrupt the settlement approval process unfolding in Missouri. *See Adkins* v. *Nestle Purina PetCare Co.*, 779 F.3d 481, 485 (7th Cir. 2015) (reversing district court's injunction against a Missouri class action because "[t]he parties argue that closing down the Missouri case would be

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

prudent, beneficial, helpful, and so on; the unstated premise is that § 2283 allows whatever a federal court thinks is good litigation management. But that's not what 'necessary' means.").

None of the cases Movants cite support the relief they request. The lone Ninth Circuit case they cite actually held that the injunction entered by the district court there was improper. *See Negrete*, 523 F.3d at 1103 ("[I]t was improper for the district court to react by issuing an injunction against other federal and state court proceedings.").

Almost all of Movants' other cited authorities, including the cases *Negrete* discussed in dicta, involved the polar opposite situation where it is the *federal* court that had the proposed class settlement pending before *it*, and state court proceedings involving individual plaintiffs threatened the federal court's ability to review and implement the proposed federal class. *See id.* at 1102; *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 239 (3rd Cir. 2002); *In re Baldwin-United Corp.*, 770 F.2d 328, 337–38 (2d Cir. 1985). In *that* situation, "a federal court may enjoin parallel state court actions to protect a class action settlement preliminarily or finally approved in the federal court." Ann. Manual Complex Lit. § 21.15 (4th ed.) at 265. But nothing in these cases supports a federal injunction in the situation here, where a few individual federal plaintiffs whose cases have not materially advanced seek to interfere with the state court's ability to review a class settlement before it.

The remaining case Movants cite, *Winkler* v. *Eli Lilly & Co.*, 101 F.3d 1196, 1206 (7th Cir. 1996), also held that the Act barred the injunction. Movants rely on dicta in the opinion suggesting that it would not violate the Anti-Injunction Act for a federal court to enjoin a state court from entering an order that would "make a nullity" of an order of its own. *See id.* at 1202. But as discussed below, even if this dicta were an accurate statement of the law—and the Supreme Court's subsequent decision in *Smith* suggests otherwise—no prior order of this Court would be nullified

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

by the settlement approval process ongoing in Missouri.  Movants do not and cannot show otherwise.

3.      The Act's last exception—to "protect or effectuate [the federal court's] judgments," the so-called relitigation exception—also does not apply here.  Movants' accusations of forum shopping appear to insinuate that this Court's rejection of a prior Roundup class settlement could justify intervention here.  Mot. at 24.  To the extent this is an effort to invoke the relitigation exception (Movants do not say), it flies in the face of *Smith*—a case neither Movants nor any of their amici even mention.

In *Smith,* an MDL court denied class certification under Federal Rule of Civil Procedure 23.  564 U.S. at 304.  A state court litigant in West Virginia later sought to certify a similar class under state law.  *Id.*  The MDL court enjoined the state proceedings, contending that the class certification issues presented in West Virginia were similar to the matters that led to the denial of class certification in the MDL.  *Id.*

The Supreme Court reversed.  Even though the West Virginia class action "mirrored" the defeated federal class, the issues resolved were not identical and could not be enjoined under the Act's relitigation exception.  *Id.* at 309.  The Court stressed that even uncertainty about whether the issues involved in state and federal class certification were the same "would preclude an injunction."  *Id.* at 311; *see also J.R. Clearwater* v. *Ashland Chem. Co.*, 93 F.3d 176, 179, 180 (5th Cir. 1996) ("It is our considered view that the wide discretion inherent in the decision as to whether or not to certify a class dictates that each court—or at least each jurisdiction—be free to make its own determination in this regard.  This reasoning is particularly applicable when matters of state-federal relations are involved.") (internal citations omitted).  In so holding, the

16

Supreme Court specifically rejected the type of "policy" arguments about forum-shopping Movants make here. *Smith*, 564 U.S. at 316–17.

*Smith* thus forecloses any argument here based on the relitigation exception. The Settlement before the Missouri Court is fundamentally different from the prior settlement this Court rejected: far more money, longer compensation period, no "science panel," different class definition, among many other differences. The state proceedings here do not even "mirror" the previous ones before this Court, much less present the absolute, clear identity *Smith* requires.

4.      Finally, Movants cannot evade the Anti-Injunction Act by styling their requested relief as an injunction against Respondents and the court-appointed Settlement Administrator (rather than against the Missouri courts) or as declaratory relief.

*First*, the Supreme Court has squarely held that the Act cannot be evaded by directing relief at parties, rather than a court. *See Atlantic Coast Line R.R. Co.*, 398 U.S. at 286–87 (the Act "cannot be evaded by addressing the order to the parties"); *see also Negrete*, 523 F.3d at 1098 (Act bars relief that "in substance . . . interferes with proceedings in other courts" and thus prohibited enjoining a party to several class actions instead of enjoining the state court proceedings themselves); *see also Bennett* v. *Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002).

*Second*, it is also settled that the Act prohibits declaratory relief where it would bar the equivalent injunction. *See Monster Beverage Corp.* v. *Herrera*, 650 F. App'x 344, 346 (9th Cir. 2016) ("The [Anti–Injunction] Act prohibits courts from issuing declaratory judgments that interfere with state court proceedings."); *H.J. Heinz Co.* v. *Owens*, 189 F.2d 505, 508 (9th Cir. 1951) (declining to grant declaratory relief that was "an effort to embarrass the state proceedings"); *Texas Emps.' Ins. Ass'n* v. *Jackson*, 862 F.2d 491 (5th Cir. 1988) (en banc) ("If an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

have the same effect as an injunction.") (quoting Wright, *Federal Courts* § 47 at 285 (4th ed. 1983)); *cf. Wilton* v. *Seven Falls Co.*, 515 U.S. 277, 279–80, 286 (1995) (unanimously holding that a district court did not abuse its discretion by abstaining in deference to a state court action).

**III.     Even apart from the Anti-Injunction Act, Movants do not meet the standards for injunctive relief.**

This Court need go no further than the Anti-Injunction Act to deny Movants' requested relief.  But even if Movants could satisfy the Act (they cannot), they still would not be entitled to the relief they seek because they fail the settled test for injunctive relief.  A "party seeking an injunction must always satisfy the usual equitable tests for an injunction."  17A Wright & Miller, *Federal Prac. & Proc. Juris.* § 4226 (3d ed. 2026); *see Chick Kam Choo* v. *Exxon Corp.*, 486 U.S. 140, 151 (1988) ("[T]he fact that an injunction *may* issue under the Anti-Injunction Act does not mean that it *must* issue.").[7]

Plaintiffs seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of injunctive relief, (3) that the balance of equities tip in their favor, and (4) that an injunction is in the public interest. *Winter* v. *Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).[8]  Movants fail to make any of those showings, much less all of them.

---

[7] Movants cannot circumvent the standards for injunctive relief through a request for declaratory relief.  Here, "the propriety of declaratory and injunctive relief should be judged by essentially the same standards" because "deeply rooted and long-settled principles of equity have narrowly restricted the scope for federal intervention, and ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Samuels* v. *Mackell*, 401 U.S. 66, 72 (1971).
[8] To the extent that Movants are seeking a permanent injunction rather than a preliminary injunction, *see* Mot. at 13 n.22, the standard is even higher—they must show "actual success" on the merits rather than "a likelihood of success." *Winter*, 555 U.S. at 32 (citation omitted).

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

### A. Movants' challenges to the Settlement lack merit.

The claimed problems that Movants seek to address are not problems at all. It is clear which federal plaintiffs are—and are not—excluded from the Settlement class. In an excess of caution, Defendant and Class Counsel have taken steps to further communicate this information to affected individuals. And the opt out procedures, approved by the Missouri Court, that Movants seek to have this Court rewrite were intentionally designed to obtain necessary information while avoiding fraud, and are well within the parameters of procedures approved by other courts.

### 1. The exclusion is clear.

The Settlement itself and the Preliminary Approval Order issued by the Missouri Court establish a bright line: plaintiffs with claims pending in the MDL as of February 17, 2026 are excluded from the class. Both specify that the settlement class excludes "any Person who, as of the Settlement Date, has a claim pending in *In re Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal.)," unless such person affirmatively requests to be included. Settlement Agreement § 2.1(b)(iv); Preliminary Approval Order ¶ 6(d). The settlement agreement defines the Settlement Date as February 17, 2026 and the Preliminary Approval Order adopts the defined terms used in the agreement. Settlement Agreement at 1; Preliminary Approval Order at 1.

In addition, the disseminated notice, also available on the settlement website, reiterates these provisions: "You are NOT included in the settlement if . . . [y]ou have a claim pending in the federal MDL in California (In re Roundup Products Liability Litigation, MDL No. 2741) as of February 17, 2026." Settlement Agreement at Ex. E (Settlement Class Notice) at 7.

The language is not, as Movants claim, ambiguous. The class plainly includes: (i) those plaintiffs whose cases were transferred out of the MDL prior to February 17, 2026, and (ii) those plaintiffs whose cases were transferred into or directly filed in the MDL after February 17, 2026. In both instances, such claims were not "pending" in the MDL as of February 17, 2026. The letter

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

to Weitz—which was sent *before* the letter's signatories received the firm's request for a shortened schedule on this Motion—merely confirmed the plain language of the class definition in response to a question raised in a Missouri filing. *See* Greenwald Decl. Ex. D (filing before the Missouri Court requesting, *inter alia*, the parties' view on the MDL exclusion); Seeger Decl. ¶ 9.

Nevertheless, to alleviate any purported concerns, a FAQ has been added to the settlement website with the same information that was in the letter to Weitz. *Id.* Moreover, counsel for each of the approximately 70 plaintiffs in the two categories that purportedly concern Movants have been sent an individualized notice via letter that explains exactly which federal plaintiffs are and are not in the class. *Id.* Similar letters will be sent to any plaintiffs who transfer into or directly file in the MDL through the close of the opt out period. *Id.* These notice letters are being disseminated in addition to the broader Missouri Court-ordered notice program, which includes mailed notice to counsel for all those with either filed or tolled claims. *See* Preliminary Approval Order ¶ 20.

### 2.    The opt out procedures are reasonable.

The opt out procedures approved by the Missouri Court are reasonable and in keeping with the standards set in other cases. First, as Movants admit, "[c]ourts may adopt opt-out procedures for the purpose of identifying who is and is not in the class and to ascertain the intent of potential class members to participate in a class action." Mot. at 16. Consistent with that principle, courts need not accept any indication of a desire to opt out; they may issue "a more precise direction [to opt out] and insist that it be followed." *In re Navistar MaxxForce Engines Mktg.*, 990 F.3d 1048, 1052–54 (7th Cir. 2021) ("Following mechanical rules is the only sure way to handle suits with thousands of class members. . . . The district judge, having approved a detailed process . . . was entitled to require the class members to do what they had been told or bear the consequences of inaction."); *see also Roofer's Pension Fund* v. *Papa*, 2024 WL 4205638, at *6 (D.N.J. Sept. 12,

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

2024) ("Mechanical rules on opt outs help courts to decide whether a proposed settlement is fair and adequate by telling the court who's in and who's out."), *aff'd sub nom. Perrigo Institutional Inv. Grp.* v. *Papa*, 150 F.4th 206 (3d Cir. 2025).  The Missouri Court has appropriately set out such instructions here via its Preliminary Approval Order.

The actual opt out process is straightforward.  A plaintiff seeking to opt out must include information about themselves to confirm their identity and class membership.  Contrary to Movants' suggestion, *see* Mot. at 18 n.29, these need not be made under penalty of perjury.  In fact, the instructions posted by the Settlement Administrator on the settlement website specify that the disclosures "do not require a formal notarization or other sworn statement."  Seeger Decl. Ex. 9 (Opt Out Instructions) at 4.  Indeed, the statements are only required to be made to the "best of the [individual's] knowledge."  Settlement Agreement § 12.2(b).

Courts frequently require plaintiffs who wish to opt out  to provide information confirming identity and class status.  *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, Exhibit A § 3.4 (W.D. Wash. 2004) ("Each Class Member wishing to exercise an Opt– Out Right must submit a written letter, signed by the Class Member, that includes the following information: (i) his or her name, address and telephone number; (ii) with respect to each Dexatrim® Product, the date of ingestion; (iii) with respect to each Dexatrim® Product, the lot number and product number, if available; (iv) whether such Class Member is represented by counsel and if so, the name, address and telephone number of his or her lawyer; and (v) the type of injury alleged (hemorrhagic stroke, ischemic stroke, cardiac injury, or other injury)."); *see also In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 2002 WL 31472781 (N.D. Ohio June 19, 2002) (similar).  Indeed, this Court has previously recognized that requiring individuals to supply information sufficient to establish class membership is appropriate.  *See, e.g.*, Order

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

Preliminarily Approving Settlement and Provided For Notice As Modified, ¶ 19, *Uniformed Sanitationmen's Ass'n Comp. Accrual Fund v. Equinix, Inc.*, No. 3:24-cv-02656-VC (N.D. Cal. Sept. 4, 2025) (requesting, *inter alia*, "the number of shares of Equinix common stock that the Person requesting exclusion (i) owned as of the opening of trading on May 3, 2019, and (ii) purchased, otherwise acquired, and/or sold during the Class Period, as well as the number of shares, dates, and prices for each such purchase, other acquisition, and sale").[9]

Moreover, courts have recognized that "the requirement of a physical [wet-ink] signature is the best way to guarantee that any opt-out requests reflect individualized and considered decisions." *In re Chevy Bolt EV Battery Litig.*, No. 2:20-CV-13256-TGB-CI, 2025 WL 3709933, at *5 (E.D. Mich. Dec. 22, 2025); *see also* Class Action Settlement Agreement §§ 2.1(sss), 14.2(a), *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-md-02323-AB (E.D. Pa. Feb. 13, 2015) (requiring an opt out with a wet-ink personal signature)*; In re Deepwater Horizon*, No. 20-30617, 2021 WL 3501651 (5th Cir. Aug. 9, 2021) (same). This requirement does not risk the exclusion of requests by authorized representatives. *See* Mot. at 18 n.28. Rather, the Settlement—and the instructions on the Settlement website—make clear that "a Personal Signature can be signed by a Representative Claimant on behalf of their associated Settlement Class Member." Settlement Agreement § 1.1(87).

---

[9] *See also Police & Fire Ret. Sys. of City of Detroit* v. *Crane*, 13-CV-00945-VC, 2015 WL 13388298, at *3 (N.D. Cal. Dec. 15, 2015) (requesting, *inter alia*, "each of the Person's purchases and sales of Epocrates common stock made during the Settlement Class Period, including the dates of purchase or sale, the number of shares purchased and/or sold, and the price paid or received per share for each such purchase or sale"); Order Certifying Settlement Class ¶ 16, *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-md-02843-VC (N.D. Cal. Mar. 29, 2023) (requesting, *inter alia*, the opt out "be personally signed by the individual seeking exclusion;" "request exclusion only for that one individual whose personal signature appears on the request;" "include the Facebook account URL (if reasonably available) and the email address and telephone number associated with the Facebook account of the individual seeking exclusion;" and "state that the individual seeking exclusion was a Facebook user during the Class Period").

To additionally support and guide individuals through the opt out process, the Settlement website features clear instructions regarding the steps one must take to effectively opt out. *See* Seeger Decl. Ex. 9. Anyone seeking further clarification on the instructions can also ask follow-up questions to the Settlement Administrator via email or toll-free telephone, staffed in multiple languages. *Id.* ¶ 8. Finally, individuals who submit incomplete or deficient opt out requests are sent courtesy deficiency notices and given an opportunity to cure their incomplete requests. *Id.* at Ex. 9 at 5–6.

Thus far, multiple plaintiffs have submitted materials to cure deficiencies, including a Weitz client. *See* Seeger Decl. ¶¶ 7–8. In fact, it is difficult to understand how Movants could have already submitted dozens of requests, if the opt out requirements were, as they contend, beyond comprehension.

### B. Movants fail to establish any of the other factors necessary for injunctive relief.

Movants also fail to establish any other factor for injunctive relief. They will not suffer irreparable harm absent an injunction. The Movant plaintiffs can easily opt out of the Settlement, removing the "harm" purportedly imposed on them. Moreover, to the extent they believe that the procedures for opting out are unconstitutionally onerous, they can raise those issues in the Missouri Court.

The equities also strongly favor Respondents. This Settlement has been carefully negotiated between experienced Class Counsel representing a large number of plaintiffs and Monsanto. Because any non-agreed to changes to the Settlement Agreement render it non-binding, the relief requested would needlessly disrupt a multi-billion-dollar settlement and create uncertainty for all class members, all the more so given the impending preemption decision.

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

Finally, the requested relief would be contrary to the public interest, undermining the "comity between state and federal courts" that "has been recognized as a bulwark of the federal system," *Allen* v. *McCurry*, 449 U.S. 90, 96 (1980), and upsetting "the overriding public interest in settling class action litigation," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

## IV.     Movants are engaging in a baseless smear campaign.

Much of the Motion is devoted to attacking the Missouri judiciary and misrepresenting the Settlement.  Because the Settlement is not before this Court, we will not respond to the Motion's misstatements and instead will confine ourselves to a few salient points.

*First*, Movants' insinuations about the Missouri courts are baseless.  Indeed, the Weitz firm has routinely chosen to file most of its Roundup cases in Missouri state court.  And the Missouri Court has specifically told Weitz it will consider all of its arguments concerning the Settlement during the objection and final approval stage.  Missouri Court Mem. at 3.  That the Missouri appellate courts denied Weitz's applications for extraordinary relief, and instead reserved the matter for direct review on appeal after any final judgment by the trial court, is hardly evidence of bias or incompetence.[10]

---

[10] Denial of writs of prohibition or mandamus by the Missouri appellate courts is a common and expected outcome because the bar for such extraordinary relief is very high.  "Mandamus is a discretionary writ" and will lie only when there is "a clear, unequivocal, specific right to a thing claimed." *State ex rel. Woods* v. *Dierker*, 684 S.W.3d 727, 730 (Mo. 2024) (en banc) (citation omitted); *see also Barnes* v. *Uhlich*, 592 S.W.3d 67, 70–71 (Mo. Ct. App. 2019) (writ of mandamus "to be used only as a last resort, in those cases in which no adequate alternative remedy exists," and where "necessary to prevent great injury or injustice") (citation omitted).  "The writ of prohibition is an extraordinary remedy to be used with great caution and forbearance and only in cases of extreme necessity," and only "when the facts and circumstances of the case demonstrate unequivocally that an extreme necessity for preventative action exists." *State ex rel. Cass Cnty.* v. *Mollenkamp*, 481 S.W.3d 26, 29 (Mo. Ct. App. 2015).  These principles were particularly applicable here because Missouri precedent confirms that denial of intervention at the preliminary approval stage is appropriate. *See, e.g., Paulson* v. *Dynamic Pet Prods., LLC*, 560 S.W.3d 583,

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

*Second*, the Motion brazenly misstates and mischaracterizes the Settlement. The best evidence of this is the Settlement's reception by other plaintiff firms in the Roundup litigation. As noted above, the Settlement is supported by firms holding roughly 60% of pending Roundup claims. Movants and their one amicus firm hold, among them, less than 1%. If any of Movants' attacks had merit, one would expect the tallies to be reversed.

\* \* \* \*

In short, in an attempt to obtain an outsize recovery for their few cases, Movants would jeopardize a settlement that tens of thousands of plaintiffs want and leave all plaintiffs exposed to a potential Supreme Court preemption decision barring their principal legal theory. That is as wrong as it sounds, and there is no legal basis for this Court to grant the relief sought. The Motion should be denied.[11]

**CONCLUSION**

For the foregoing reasons, the parties respectfully request that the Court deny the Motion.

---

588 (Mo. Ct. App. 2018) (affirming denial of intervention and explaining that objectors have standing to appeal even absent intervention).

[11] To the extent the Court issues any relief, Respondents respectfully request that such relief be stayed pending the disposition of any appeal, or at minimum, administratively stayed for a period of seven days to allow the respondents to seek an expedited stay from the Ninth Circuit or Supreme Court. For the reasons explained above, Respondents have, at a minimum, satisfied the requirements for a stay of any injunction pending appeal. *See Nken* v. *Holder*, 556 U.S. 418, 434 (2009) (describing the standard for obtaining such a stay and noting the "substantial overlap" between that standard and "the factors governing preliminary injunctions"). In addition, if the Court issues any relief, Respondents respectfully request that the Weitz and Miller firms be required to post a bond.

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

Dated:     April 21, 2026                    Respectfully submitted,


                                             /s/ Brian L. Stekloff
                                             Brian L. Stekloff
                                             Rakesh Kilaru
                                             **WILKINSON STEKLOFF**
                                             2001 M Street, NW
                                             10th Floor
                                             Washington DC  20036
                                             202-847-4030
                                             bstekloff@wilkinsonstekloff.com
                                             rkilaru@wilkinsonstekloff.com

                                             *Counsel for Monsanto Company*

                                             /s/ Christopher A. Seeger
                                             Christopher A. Seeger
                                             David R. Buchanan
                                             Steven J. Daroci
                                             **SEEGER WEISS LLP**
                                             55 Challenger Rd., 6th Floor
                                             Ridgefield Park, NJ  07660
                                             973-639-9100
                                             cseeger@seegerweiss.com
                                             dbuchanan@seegerweiss.com
                                             sdaroci@seegerweiss.com


                                             Eric D. Holland
                                             Patrick R. Dowd
                                             **HOLLAND LAW FIRM**
                                             211 North Broadway
                                             Suite 2625
                                             St. Louis, MO  63102
                                             866-931-6776
                                             eholland@hollandtriallawyers.com
                                             pdowd@hollandtriallawyers.com

                                             *Lead Counsel for the Putative Missouri Class*

                                             Joseph F. Rice
                                             Frederick C. Baker
                                             **MOTLEY RICE LLC**
                                             28 Bridgeside Blvd.

26

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC

Mount Pleasant, SC  29464
843-216-9000
jrice@motleyrice.com
fbaker@motleyrice.com

Fidelma Fitzpatrick
**MOTLEY RICE LLC**
40 Westminster St., 5th Floor
Providence, RI 02903
401-457-7700
ffitzpatrick@motleyrice.com

Peter A. Kraus
Charles Siegel
**WATERS KRAUS PAUL & SIEGEL**
3141 Hood Street
Suite 700
Dallas, TX  75219
214-357-6244
kraus@waterskraus.com
siegel@waterskraus.com

John Eddie Williams, Jr.
John Boundas
**WILLIAMS HART BOUNDAS, LLP**
8441 Gulf Freeway #600
Houston, TX  77017
713-497-1729
jwilliams@whlaw.com
jboundas@whlaw.com

Michael Ketchmark
**KETCHMARK & McCREIGHT, P.C.**
11161 Overbrook Rd. #210
Leawood, KS  66211
mike@ketchmclaw.com

*Counsel for the Putative Missouri Class*

Brian T. Fitzpatrick
131 21st Avenue South
Nashville, TN 37203
(615) 322-4032

*On the Brief*

OPPOSITION TO MOTION FOR INJUNCTIVE
OR DECLARATORY RELIEF
NO. 16-MD-02741-VC