# Exhibit 3

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

RANDALL KING, SCOTT
BUTTERFIELD, ROBERT KOEHLER,
MICHAEL MERX AND BRUCE
WALDMAN, individually, and on behalf
of all others similarly situated,

        Plaintiffs,

v.

MONSANTO COMPANY,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2622-CC00325

Div. 8

### CLASS COUNSEL'S PETITION FOR APPROVAL OF ATTORNEYS' FEES AND CLASS REPRESENTATIVE SERVICE AWARDS

Pursuant to Missouri Supreme Court Rules 74.16 and 52.08, Paragraph 50 of the Court's March 4, 2026 Preliminary Approval Order ("PAO"), and Section 14.3 of the Settlement Agreement ("Agreement"),[1] the Holland Law Firm, Ketchmark & McCreight, P.C., Seeger Weiss LLP, Motley Rice LLC, Williams Hart Boundas, LLP, and Waters Kraus Paul & Siegel ("Class Counsel") petition this Court for an order approving payment of attorneys' fees and making service awards to the class representatives.[2]

---

[1] Capitalized terms used but not defined in this Motion have the meaning ascribed to such terms in the Settlement Agreement, attached as Ex. 1 to the Unopposed Motion for Entry of the PAO and Suggestions in Support filed on February 17, 2026.

[2] This filing is made for the purpose of providing notice to the Court and the Class of the aggregate amount of attorneys' fees being sought pursuant to section 15 of the Settlement Agreement. The allocation of the aggregate attorneys' fees awarded by the Court pursuant to section 15 of the Settlement Agreement between (1) Class Counsel, on the one hand, and (2) any other counsel who apply to the Court, on the other hand, will be addressed in subsequent filings made at a later date.

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

**INTRODUCTION**

When awarding fees in a common fund case such as this one, Missouri courts start with a simple rule: results matter most. *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 507 (Mo. App. E.D. 2013). On that score, this case stands alone. The Settlement creates a non-reversionary cash fund of up to $7.25 billion.[3] It is one of the largest class recoveries ever achieved and the largest in Missouri history. Every dollar of the Settlement Fund, after Court-approved fees, will go to the class. The relief is substantial and enduring. It provides compensation not only for current claimants diagnosed with Non-Hodgkin Lymphoma (NHL), but also for individuals who have been exposed to Roundup and may be diagnosed with NHL over the next 17 years. It also shifts risk away from the Class. Monsanto has committed to paying billions of dollars *now* to resolve claims that would otherwise unfold over *decades*, with nearly $3 billion due in the first five payment years—including $500 million already paid and an additional $500 million due in August 2026. Without that commitment, Settlement Class Members would face delay, serious litigation risk—including a potential adverse preemption ruling by the Supreme Court on failure-to-warn claims—and the real possibility that future recoveries would be limited by dwindling

---

[3] The Settlement Fund will be paid in stages to ensure funding remains available across the lifetime of the program: $500 million was deposited into a QSF shortly after Preliminary Court Approval; $500 million will be paid by August 31, 2026; and $5.25 billion will be paid in 16 annual installments following the Effective Date of the Settlement, *i.e.*, when it becomes final and non-appealable. Agreement § 4.1. In addition, following the Sixteenth Annual Settlement Payment, up to $1 billion will be paid over the course of four additional years if there are Settlement Class Members who were Exposed to Roundup Products occupationally and who have submitted valid claims but remain unpaid. *Id.* § 4.2.

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

resources or bankruptcy. In short, Class Counsel converted uncertainty into a guaranteed, decades-long recovery. This is exactly the kind of result Rule 52.08(h) is meant to reward.

Missouri and federal courts favor awarding fees in common fund cases as a percentage of the recovery, and the usual benchmark is approximately one-third. *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 267 (Mo. App. E.D. 2011). Courts often approve similar or higher percentages, even in billion-dollar cases. *E.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1116 (D. Kan. 2018). And they do not reduce fees simply because the recovery is large. *In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 860 (8th Cir. 2024) ("[W]e decline to hold that a court must award a reduced percentage in megafund cases."). If anything, an exceptional result confirms the award is reasonable.

But Class Counsel do not seek the benchmark here. They ask for $675,000,000, a figure that represents between 9.3% and 10.8% of the common fund.[4] This is a conservative figure that fairly compensates the result achieved, the risks undertaken, and the years of work required to secure and implement the settlement.

The request also satisfies every factor Missouri courts consider. Class Counsel litigated this case on a contingent basis. They advanced substantial resources. They faced significant legal and factual risks, including the risk that years of litigation would yield no

---

[4] The requested fees of $675,000,000 are 9.3% of the maximum fund amount of $7.25 billion. If Monsanto's total payment is $6.25 billion, then the percentage would be 10.8%. Even if the total payment were further reduced due to payment credits for opt-outs pursuant to Article V of the Agreement, the percentage would still fall well below that approved in other cases.

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

recovery at all. They achieved a historic result that eliminates those risks for the class. And they will continue to work for at least the next 17 years, devoting tens of thousands of hours to implement the Settlement, administer the fund, and ensure that both present and future claimants receive the compensation secured on their behalf.

For these reasons, the Court should approve the requested fee and service awards for the class representatives. The request is fair, reasonable, and fully consistent with Missouri law and the purposes of the common fund doctrine.

## LAW AND ARGUMENT

The Court has authority to award attorneys' fees under Rule 52.08(h) and settled common-fund principles. Any award is reviewed only for abuse of discretion. *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 430 (Mo. banc 2013). That standard reflects the Court's unique vantage point: it is "an expert on the issue of attorneys' fees" because it is most "acquainted with all the issues of the case." *Hill v. City of St. Louis,* 371 S.W.3d 66, 81 (Mo. App. E.D. 2012). Accordingly, the Court may determine a reasonable fee "without the aid of evidence." *Id*. Its award is presumed correct, *id.*, and will be disturbed only if "so arbitrary and unreasonable as to shock one's sense of justice." *Berry*, 397 S.W.3d at 431 (internal quotation omitted). The requested award falls comfortably within that broad discretion.

I.    **Because This Is a Common Fund Case, the Court Should Award Fees Using the Percentage-of-the-Benefit Method.**

Missouri law recognizes two methods for awarding attorneys' fees to class counsel: the lodestar method and the percentage-of-the-benefit method. *4021 Iowa, LLC v. K&A*

*Delmar Prop., LLC*, 705 S.W.3d 103, 111 (Mo. App. E.D. 2025) (lodestar method); *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 267 (Mo. App. E.D. 2011) (percentage method). The distinction reflects the type of case. The lodestar method—based on hours worked and rates charged—is typically used in statutory fee-shifting cases. By contrast, when counsel's efforts create a common fund for the benefit of a class, courts award fees as a percentage of that fund. *Lett v. City of St. Louis*, 24 S.W.3d 157, 163 (Mo. App. E.D. 2000); *State ex rel. Byrd v. Chadwick*, 956 S.W.2d 369, 388 (Mo. App. W.D. 1997).

This case fits squarely within the common-fund model. Class Counsel created a non-reversionary fund of up to $7.25 billion for the benefit of the class. In that event, Missouri courts routinely apply the percentage-of-the-benefit approach. *See Bachman*, 344 S.W.3d at 267; *City of O'Fallon v. CenturyLink, Inc.*, 491 S.W.3d 276, 285–86 (Mo. App. E.D. 2016); *see also Byrd*, 956 S.W.2d at 388 (directing courts to consider the percentage of recovery and the size of the fund). That approach reflects the Court's role as "an expert on the issue of attorneys' fees," with broad discretion to select the methodology that best measures a reasonable award. *Bachman*, 344 S.W.3d at 267.[5]

The percentage method is "preferable" in common-fund cases. *West* v. *PSS World Med., Inc.*, 4:13-CV-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014). Indeed, the Eighth Circuit "recommends the percentage method for common-fund situations such as

---

[5] Circuit Court cases employing the percentage-of-the-fund approach to award fees to class counsel include *Gould v. Farmers Ins. Exch.*, 1922-CC11065 (City of St. Louis Cir. Ct. Nov. 21, 2019); *Elsea v. U.S. Eng'g Co.*, 1016-CV15976 (Jackson Cnty. Cir. Ct. Dec. 27, 2016); *Sheldon v. Kansas City Life Ins. Co.*, 1916-CV26689 (Jackson Cnty. Cir. Ct. Dec. 11, 2025); and *Culp v. Fitzgibbon Hosp.*, 23SA-CV00020 (Saline Cnty. Cir. Ct. Sept. 20, 2024).

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

the one presented here." *Hashw v. Department Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949 (D. Minn. 2016) (citing *Johnston* v. *Comerica Mortg. Co.*, 83 F.3d 241, 245 (8th Cir. 1996)). That is for sound practical and economic reasons. First, it "aligns the interests of counsel and the class members by providing an incentive to maximize the class's recovery." *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, 4:18-CV-00368, 2023 WL 8522980, at *6 (S.D. Iowa Nov. 30, 2023). It also mirrors the marketplace, where contingent-fee arrangements compensate lawyers based on a share of the recovery, not hours billed. And it rewards efficiency by encouraging counsel to maximize recovery and minimize unnecessary work.

The lodestar method does the opposite. As courts have recognized, it "increases the workload of an already overtaxed judicial system," invites satellite litigation over billing records, and "encourag[es] lawyers to expend excessive hours" while discouraging early, efficient resolution. *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1266–67 (D.C. Cir. 1993); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (noting that the lodestar method requires courts "to engage in a gimlet-eyed review of line-item fee audits."). Those concerns are especially acute in a case of this scale, where a lodestar inquiry would require the Court to audit years of time entries across multiple firms—an exercise that is both burdensome and largely beside the point when the result is already known.

For these reasons, courts across the country overwhelmingly favor the percentage-of-the-benefit method in common-fund cases. *See, e.g.*, *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("we believe that the percentage of the fund approach

6

is the better reasoned in a common fund case"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[t]he percentage-of-recovery method is generally favored in common fund cases"); *Chieftain Royalty Co. v. EnerVest Energy Inst. Fund XIII-A, L.P.*, 888 F.3d 455, 459 (10th Cir. 2017) ("[t]his court . . . express[es] a preference for the percentage-of-the-fund approach"); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) ("[w]e have approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement."). Empirical studies confirm that practice: the lodestar method is used in only a small and declining minority of cases. Theodore Eisenberg et al., *Attorneys' Fees in Class Action Settlements: 2009–2013*, 92 N.Y.U. L. Rev. 937, 945 (2017) (discussing that lodestar approach "was used in only 6.29% of cases during the 2009-2013 period . . . down from 13.6% during the 1992-2002 period and 9.6% during the 2003-2008 period."). This case offers no reason to depart from the percentage-of-the-benefit norm. Class Counsel created a massive common fund for the benefit of the class, and the percentage-of-the-benefit method is not just permissible but the appropriate and preferred approach.

## II.    Class Counsel's Requested Fee Falls Well Within the Range of Reasonable Awards.

Having selected the percentage-of-the-fund method, Missouri precedent supplies a clear and consistent benchmark. The Eastern District recognizes that "in cases involving complex litigation or in the class action context, a one-third contingent fee is not unreasonable." *Bachman v. A.G. Edwards, Inc.*, 344 S.W.3d 260, 267 (Mo. App. E.D. 2011). Consistent with that guidance, Missouri trial courts routinely approve fees at or

7

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

above one-third. *See, e.g., Sheldon v. Kansas City Life Ins. Co.*, No. 1916-CV26689 (Jackson Cnty. Cir. Ct. Dec. 11, 2025) (33%); *Gould v. Farmers Ins. Exch.*, No. 1922-CC11065 (St. Louis City Cir. Ct. Nov. 21, 2019) (35%); *Culp v. Fitzgibbon Hosp.*, No. 23SA-CV00020 (Saline Cnty. Cir. Ct. Sept. 20, 2024) (35%).

Federal courts are in accord. A one-third fee is widely recognized as reasonable in common-fund cases, and awards up to 36% are routinely affirmed. *See, e.g., Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *Guippone v. BH S & B Holdings, LLC*, No. 09-cv-01029, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011); *In re Southeastern Milk Antitrust Litig.*, No. 2:08-MD-1000, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012); *In re Anadarko Basin Oil & Gas Lease Antitrust Litig.*, No. CIV-16-209, 2019 WL 1867446, at *2 (W.D. Okla. Apr. 25, 2019); *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831, 2019 WL 9171207, at *14 (N.D. Ala. Aug. 1, 2019). Nor does that benchmark diminish simply because the fund is large. Courts have rejected any rule requiring lower percentages in so-called "megafund" cases. *See In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 860 (8th Cir. 2024) ("[W]e decline to hold that a court must award a reduced percentage in megafund cases."); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018) (recognizing that use of a "diminishing scale" in megafund cases "fails to provide the proper incentive for counsel and is fundamentally at odds with the percentage-of-the-fund approach[.]"). Large recoveries do not arise by accident; they reflect the same (and often greater) risk, effort, and skill.

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

Against that backdrop, Class Counsel's request is well within the mainstream range of fee awards. The figure's percentage is a small fraction of what Missouri and federal courts routinely approve in common-fund cases generally, and remains modest even when compared to other billion-dollar settlements. *See, e.g.*, *In re Syngenta*, 357 F. Supp. 3d at 1116 (33%); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204–05 (S.D. Fla. 2006) (31.33%); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, 2013 WL 1365900, at *7–8 (N.D. Cal. Apr. 3, 2013) (28.5%). The request is not simply within the range of accepted awards: it sits at the low end of that range and reflects a deliberately restrained exercise of billing judgment.

## III. Each of the Supreme Court's *Berry* Factors Supports the Requested Percentage.

As another check on reasonableness, courts consider factors bearing on the settlement and the quality of class counsel's work. Federal courts, including the Eighth Circuit, often apply the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and routinely uphold percentage awards within or above the range requested here. *See, e.g.*, *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (38% award); *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1264 (8th Cir. 2023) (33% award).

Missouri follows the same approach. The Missouri Supreme Court has endorsed a set of factors that substantially mirror *Johnson*. *Compare Berry v. Volkswagen Group of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. banc 2013), with *Johnson*, 488 F.2d at 717–19. Those factors include: (1) customary rates; (2) hours reasonably expended; (3) the nature and

9

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

character of the services; (4) the skill required; (5) the importance of the subject matter; (6) the result obtained; and (7) the vigor of the opposition. *Berry*, 397 S.W.3d at 431. Each of these factors independently—and all of them collectively—confirm the reasonableness of Class Counsel's requested fee.

### A.     The Amount Involved and Result Obtained.

"The most critical factor" in assessing a fee award is the result obtained. *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 507 (Mo. App. E.D. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). By any measure, the result here is extraordinary. Class Counsel secured a settlement providing up to $7.25 billion in cash, which is one of the largest class recoveries ever and the largest in Missouri history. The fund is non-reversionary, ensuring that, after Court-approved fees, every dollar goes to the class. And the Settlement guarantees that the per-claim average Program Award will not fall below $50,000, *see* Agreement § 6.8(b)(i), a floor more favorable to Settlement Class Members than the per-claim values delivered by other recent Monsanto group settlements.

The scale of relief is just as significant. The Settlement benefits a class numbering in the tens of thousands, each of whom will receive meaningful compensation while avoiding the delay, risk, and uncertainty of individual litigation. Courts recognize that such widespread, tangible benefits strongly support a substantial fee. *See In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 472–73 (E.D. Pa. 2008); *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 101 (D.D.C. 2013).

The result is all the more significant given the risks confronting the class, including a potential adverse preemption ruling by the United States Supreme Court on failure-to-

10

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

warn claims. In addition, Monsanto's financial condition created a real possibility that prolonged litigation could impair or even eliminate meaningful recovery. Class Counsel navigated those constraints by securing a structure that delivers historic relief while reducing insolvency risk. The Settlement provides for staged funding through annual payments, preserving Monsanto's ability to perform, and is further protected by a $1 billion escrow backstop payable to the class if certain bankruptcy-related conditions occur. Indeed, Fouad Kurdi, the experienced third-party mediator who oversaw the parties' negotiations, confirmed that the Settlement represents an outstanding result, testifying that

> based on the facts and circumstances presented by the parties and my experience in the mediation of complex disputes, it is my opinion that the proposed Settlement is an excellent result for Class Plaintiffs. Counsel for Class Plaintiffs invested substantial time and resources and achieved an outstanding result for Class Plaintiffs and the putative classes. I can represent unequivocally, at least from my position as Mediator, that Class Counsel fought for—and obtained—the best deal possible.

Declaration of Fouad Kurdi in Support of Preliminary Approval of Class Action Settlement at ¶ 21.

In short, Class Counsel achieved a rare outcome: a massive, certain recovery for a large class under unusually challenging conditions. That result alone strongly supports the requested fee.

**B.    The Rates Customarily Charged by the Attorneys Involved.**

Class Counsel prosecute cases like this on a contingency basis. In that setting, courts assess the "customary rate" by comparing the requested percentage to counsel's typical contingent fee and the prevailing market rate. *See, e.g., Bailes v. Lineage Logistics, LLC*, No. 15-2457, 2017 WL 4758927, at *5 (D. Kan. Oct. 20, 2017) ("In class action cases such

11

as this one, the customary fee is a contingency arrangement based on a percentage of the common fund"); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016) (the customary fee is the contingency fee class counsel would ordinarily charge); *Waters v. Cook's Pest Control, Inc.*, No. 2:07-cv-00394, 2012 WL 2923542, at *17 (N.D. Ala. July 12, 2012) (same). When the requested fee is consistent with (or below) those benchmarks, this factor supports approval.

That is plainly the case here. Class Counsel's customary contingent fees typically range from 33% to 45%, a range Missouri courts recognize as "reasonable and customary." *See Meyer v. Purcell*, 405 S.W.3d 572, 581 (Mo. App. E.D. 2013). The nationwide market is no different. *See In re Remeron Direct Purchaser Antitrust Litig.*, No. Civ.03-0085, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005). Against that backdrop, the requested fee is a small fraction of the rates Class Counsel regularly charge and that the market routinely bears. This factor therefore strongly favors approval.

## C.    The Number of Hours Expended.

Although results remain paramount, courts may also consider the time counsel devoted to the case. *See In re Syngenta AG MIR Corn Litig.*, 61 F.4th 1126, 1193 (10th Cir. 2023). Here, that consideration likewise supports the requested fee.

This Settlement is the product of more than 18 months of intensive, hard-fought negotiations, including numerous mediations. Class Counsel devoted thousands of hours to investigating claims, developing the factual and expert record, and negotiating a resolution that maximizes recovery while managing significant risks. The negotiation process alone included 18 months of "almost daily communications between and among

12

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

proposed Class Counsel and Defendant . . . includ[ing] not only exchanges between Plaintiffs as a group and the Defendant, but also separate negotiations between each of the two Subclasses and the Defendant, as well as negotiations between the two Subclasses themselves." Declaration of Eric D. Holland in Support of Motion for Preliminary Approval of Class Action Settlement at ¶27. This "involved numerous exchanges of proposals and drafts, information requests, several presentations, repeated rounds of Zoom sessions, and many days of in-person meetings." Declaration of Christopher A. Seeger in Support of Motion for Preliminary Approval of Class Action Settlement at ¶13.

And the work is far from complete: securing final approval, addressing any appeals, and administering the Settlement will require tens of thousands of additional hours over many years. Taken together, the time and effort invested—and still to be invested—confirm the reasonableness of the requested fee.

### D.    The Nature and Character of Class Counsel's Services.

This factor focuses on the risks inherent in the representation, including the fact that the case was prosecuted on a contingency basis. *Petifurd v. Missouri Dep't of Corr.*, 717 S.W.3d 324, 333 (Mo. App. W.D. 2025). Courts consistently recognize that contingency risk weighs strongly in favor of approving the requested fee. *Id.*; *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) (noting that contingent risk is an "important factor" that often justifies a higher award).

That principle reflects a practical reality. Without compensation for risk, "no firm, no matter how large or well-financed, will have the incentive to consider pursuing cases such as this." *Tussey v. ABB, Inc.*, No. 06-CV-04305, 2019 WL 3859763, at *3 (W.D. Mo.

13

Aug. 16, 2019). The predictable result would be that "very few lawyers" would undertake the representation of a class given the "substantial time, effort, and money" required. *In re Checking Account Overdraft Litig.*, No. 09-MD-02036, 2012 WL 13013257, at *11 (S.D. Fla. Apr. 26, 2012). That risk was real here. Class Counsel devoted thousands of hours with no guarantee of any recovery. Throughout, they bore the very real possibility that an adverse outcome would yield nothing. Those risks were substantial, and they weigh strongly in favor of the requested fee.

**E.    The Degree of Professional Ability Required.**

Courts likewise recognize that greater complexity and difficulty justify higher fee awards. *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 432 (Mo. banc 2013); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785, 2021 WL 5369798, at *4 (D. Kan. Nov. 17, 2021). This case presented extraordinary complexity, and its successful resolution required exceptional professional skill. Mass tort actions are inherently difficult to prosecute. *See In re DES Cases*, 789 F. Supp. 552, 562 (E.D.N.Y. 1992) ("The litigation complexities raised by mass torts are legion."). Those difficulties only intensify in the settlement context, where resolution is both "difficult to reach" and "quite complex." *In re Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000).

Here, Class Counsel navigated not only the usual challenges of mass tort litigation, but also obstacles unique to this case. The Settlement required the creation of separately represented present and future subclasses under *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). At the same time, counsel negotiated against the backdrop of tens of thousands of state-court actions, a

14

federal MDL, and parallel appellate proceedings. *See In re DES Cases*, 789 F. Supp. at 562 (noting the complications created by parallel litigation).

Counsel also designed the settlement structure to ensure meaningful recovery in light of Monsanto's ongoing solvency concerns. And even after securing a fund of up to $7.25 billion, they have established a process (Agreement §§ 16.4, 18.2) for resolving the "extraordinarily complex and difficult" issues posed by Medicare, Medicaid, and other third-party liens. *In re Zyprexa Prods. Liab. Litig.*, 451 F. Supp. 2d 458, 461 (E.D.N.Y. 2006). In short, this litigation demanded and received exceptional legal skill. Despite that, Class Counsel seek a fee well below the customary range approved in Missouri and nationwide. This factor, too, strongly supports approval of the requested fee.

## F.     The Vigor of the Opposition.

Courts recognize that a higher fee is warranted where class counsel achieve a strong result despite vigorous opposition. *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. banc 2013); *Hoog v. PetroQuest Energy, L.L.C.*, No. 16-CV-463, 2023 WL 2989947, at *4 (E.D. Okla. Apr. 4, 2023). That is precisely what occurred here. This Settlement followed more than 18 months of hard-fought negotiations overseen by a nationally respected mediator. Monsanto was represented by Wachtell, Lipton, Rosen & Katz and Gibson Dunn & Crutcher, two of the most formidable defense firms in the country, and its senior leadership was directly involved throughout. Drawing on years of experience defending Roundup claims, Monsanto vigorously contested virtually every material term—including the overall settlement value, the claims period, the structure and payment timeline of the security fund, and the duration of funding. It was only through

15

Class Counsel's persistence, coordination, and expertise that Monsanto agreed to a settlement of this scale and structure. Overcoming that level of opposition strongly supports approval of the requested fee.

**G.    The Nature and Importance of the Subject Matter.**

The importance of this Settlement cannot be overstated. The Roundup litigation is among the most consequential mass torts of the modern era. More than 125,000 plaintiffs have brought claims alleging that exposure to Roundup caused NHL, with tens of thousands of cases pending in Missouri alone and many more nationwide. Absent a global resolution, those cases would remain mired in delay due to the magnitude of the present and anticipated future litigation. The staggering volume and complexity of the litigation mean that most plaintiffs face years before trial, if they reach trial at all. To date, only a small fraction of claimants have obtained trial settings. Meanwhile, illnesses progress, litigation risks compound, and additional claims continue to accumulate.

This Settlement changes that trajectory. It provides meaningful, certain relief for the class through a cash-only, non-reversionary fund of up to $7.25 billion. Individuals who have developed (or will develop) NHL over the next 17 years are eligible to recover. Tens of thousands will receive substantial compensation without enduring years of uncertainty or the risk of no recovery at all. In both scale and impact, few settlements compare. This factor weighs decisively in favor of the requested fee.

16

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

**IV.    The Court Should Also Approve Service Awards to the Five Class Representatives.**

Class Counsel also request service awards for Plaintiffs Randall King, Scott Butterfield, Robert Koehler, Michael Merx, and Bruce Waldman in the amount of $10,000 each. "Courts often grant service awards to named plaintiffs in class action suits" in amounts of $10,000 or greater to "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017). Missouri courts do the same. *E.g.*, *Jackson County v. Trinity Industries*, 1516-CV23684 (Jackson Cnty. Cir. Ct. Aug. 30, 2022); *Gould v. Farmers Ins. Exch.*, 1922-CC11065 (St. Louis City Cir. Ct. Nov. 21, 2019); *Elsea v. U.S. Eng'g Co.*, 1016-CV15976 (Jackson Cnty. Cir. Ct. Dec. 27, 2016).

Plaintiffs were instrumental to the negotiation of the Settlement. Without their participation, "there would have been no case and no settlement." *In re Aquila ERISA Litig.*, No. 04-00865-CV-DW, 2007 WL 4244994, at *3 (W.D. Mo. Nov. 29, 2007). Given the historic relief that Plaintiffs' contributions secured, the requested service awards of $10,000 are fair and reasonable.

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

## CONCLUSION

For all of these reasons, Class Counsel's request for an award of $675,000,000 is fair, reasonable, and well within this Court's broad discretion.[6] The requested fee reflects a historic result, achieved through exceptional effort, in the face of substantial risk and vigorous opposition. And it falls comfortably below the range commonly approved in comparable cases. The Court therefore should grant Class Counsel's motion in full.

Respectfully submitted,

By:    */s/ Scott A. McCreight*

Michael S. Ketchmark - #41018
Scott A. McCreight - #44002
Griffin Albaugh - #74546
**KETCHMARK & McCREIGHT, P.C.**
11161 Overbrook Road, Suite 210
Leawood, Kansas 66211
Telephone:    913/266-4500
Facsimile:    913/317-5030
Email:    mike@ketchmclaw.com
Email:    smccreight@ketchmclaw.com
Email:    galbaugh@ketchmclaw.com

*Subclass 2 Counsel*

Eric D. Holland (MO Bar No. 39935)
Patrick R. Dowd (MO Bar No. 64820)
**HOLLAND LAW FIRM**
211 North Broadway, Suite 2625

---

[6] Under the terms of the Settlement and the PAO, following any award of attorneys' fees, "the Court shall establish a process for counsel other than Class Counsel to submit applications, within 90 days, for a portion of the award of attorneys' fees, as set forth in Section 15.2 of the Settlement Agreement." PAO at ¶ 50. Any fees or costs awarded by the Court "shall be allocated by the Court" between Class Counsel, on the one hand, and any other counsel who apply to the Court for a fee, on the other. Settlement Agreement § 15.4. Fees and costs will then be paid in seven distributions in accordance with the payment schedule set forth in Section 15.5 of the Settlement Agreement.

St. Louis, MO 63102
eholland@hollandtriallawyers.com
pdowd@hollandtriallawyers.com
sstolze@hollandtriallawyers.com

*Subclass 2 Counsel*

Christopher A. Seeger
(pro hac vice forthcoming)
David R. Buchanan
(pro hac vice forthcoming)
Steven J. Daroci
(pro hac vice forthcoming)
**SEEGER WEISS LLP**
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
973-639-9100
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
sdaroci@seegerweiss.com

*Subclass 1 Counsel*

Joseph F. Rice* (pro hac vice forthcoming)
Frederick C. Baker* (pro hac vice forthcoming)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
843.216.9000
jrice@motleyrice.com
fbaker@motleyrice.com

Fidelma Fitzpatrick* (pro hac vice forthcoming)
**MOTLEY RICE LLC**
40 Westminster St., 5th Floor
Providence, RI 02903
401.457.7700
ffitzpatrick@motleyrice.com

*Subclass 1 Counsel*

John Eddie Williams, Jr.*
(pro hac vice forthcoming)

19

Electronically Filed - CITY OF ST. LOUIS - May 07, 2026 - 02:22 PM

John Boundas*
(pro hac vice forthcoming)
**WILLIAMS HART BOUNDAS, LLP**
8441 Gulf Freeway #600,
Houston, TX 77017
713-497-1729
jwilliams@whlaw.com
jboundas@whlaw.com

*Subclass 1 Counsel*

Peter A. Kraus (MO Bar No. 65668)
Charles Siegel* (pro hac vice forthcoming)
**WATERS KRAUS PAUL & SIEGEL**
3141 Hood Street, Suite 700
Dallas, TX 75219
(214) 357-6244
kraus@waterskraus.com
siegel@waterskraus.com

*Subclass 1 Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May 2026, the above and foregoing was filed electronically with the Clerk of the Court, to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Scott A. McCreight*
**Subclass 2 Counsel**

20