# Exhibit 6

2622-CC00325

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | |
|---|---|
| RANDALL KING, SCOTT BUTTERFIELD, ROBERT KOEHLER, MICHAEL MERX AND BRUCE WALDMAN, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) No. [X] ) |
| v. | ) Div. [X] ) |
| MONSANTO COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

**<u>CLASS ACTION SETTLEMENT AGREEMENT</u>**

Dated:          February 17, 2026

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**TABLE OF CONTENTS**

**Page**

ARTICLE I Definitions ..............................................................................................................2

ARTICLE II Definition of Settlement Class and Subclasses ......................................................16

ARTICLE III Releases, Covenants Not to Sue and Dismissals..................................................17

ARTICLE IV Settlement Payments............................................................................................22

ARTICLE V Payment Credits ....................................................................................................27

ARTICLE VI Claims Program ...................................................................................................29

ARTICLE VII Reconsideration, Appeal and Dispute Resolution...............................................49

ARTICLE VIII Exiting Class Members ......................................................................................50

ARTICLE IX Audit Rights .........................................................................................................52

ARTICLE X Preliminary Approval............................................................................................55

ARTICLE XI Notice ..................................................................................................................56

ARTICLE XII Opt Out ...............................................................................................................57

ARTICLE XIII Objections ..........................................................................................................60

ARTICLE XIV Final Order and Judgment and Dismissal ..........................................................62

ARTICLE XV Attorneys' Fees ..................................................................................................62

ARTICLE XVI Administration ...................................................................................................65

ARTICLE XVII Settlement Fund Account .................................................................................73

ARTICLE XVIII Governmental Payors ......................................................................................76

ARTICLE XIX Enforceability of Settlement Agreement and Dismissal of Claims ....................80

ARTICLE XX Communications to the Public ............................................................................82

ARTICLE XXI Termination........................................................................................................82

ARTICLE XXII Treatment of Confidential Information .............................................................84

ARTICLE XXIII Denial of Wrongdoing; No Admission of Liability .........................................85

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

ARTICLE XXIV Representations and Warranties ........................................................................85

ARTICLE XXV Cooperation ....................................................................................................87

ARTICLE XXVI Continuing Jurisdiction ................................................................................88

ARTICLE XXVII Additional Provisions ..................................................................................88

EXHIBIT A Roundup Products .................................................................................................

EXHIBIT B NHL Subtypes ......................................................................................................

EXHIBIT C Manufacturers.......................................................................................................

EXHIBIT D Form of Release ....................................................................................................

EXHIBIT E Settlement Class Notice.........................................................................................

EXHIBIT F Settlement Class Short-Form Annual Notice ........................................................

EXHIBIT G Preliminary Approval Order .................................................................................

EXHIBIT H Final Order and Judgment.....................................................................................

***

CONFIDENTIAL EXHIBIT I – Termination Right

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## CLASS ACTION SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT, dated as of February 17, 2026 (the "Settlement Date"), is made and entered into by and among Monsanto Company (the "Defendant"), by and through its attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel and Subclass Counsel. The Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the differences among them with respect to the Lawsuit, as set forth below, subject to Court approval.

## RECITALS

WHEREAS, on February 17, 2026, a petition was filed in the Lawsuit on behalf of Class Representatives and Subclass Representatives seeking to represent a class of persons allegedly Exposed to Roundup Products, including two subclasses of such persons as defined specifically below (the "Petition");

WHEREAS, the Petition alleges that Exposure to Roundup Products can cause Non-Hodgkin Lymphoma in humans and seeks damages on behalf of the Class Representatives, the Subclass Representatives, and the Settlement Class;

WHEREAS, the Defendant denies the allegations in the Petition and other Roundup Lawsuits, including the allegations that Exposure to Roundup Products can cause Non-Hodgkin Lymphoma in humans, and denies any liability to the Class Representatives and Subclass Representatives, the Settlement Class, or any Settlement Class Member for any Roundup Claims, and would assert a number of legal and factual defenses if the Lawsuit continued (including against certification of any purported class for litigation purposes);

WHEREAS, after careful consideration, the Class Representatives and Subclass Representatives, and their respective counsel, have concluded that it is in the best interests of the Class Representatives and Subclass Representatives, and the Settlement Class and Subclasses to enter into the Settlement Agreement;

WHEREAS, Class Counsel, the Class Representatives, and the Subclass Representatives, on the one hand, and the Defendant, on the other hand, have engaged in extensive arm's-length negotiations, including negotiations facilitated by an experienced mediator, and have, subject to the Court's entry of the Preliminary Approval Order and the Final Order and Judgment, and other conditions to effectiveness as provided for herein, reached an agreement to settle and release Roundup Claims, on the terms and conditions set forth below;

WHEREAS, since 2015, over 52,000 Roundup Lawsuits have been filed against Defendant involving over 125,000 plaintiffs; 24 cases have been tried to verdict across 10 jurisdictions, resulting in 11 verdicts for plaintiffs and 13 verdicts for Defendant, but only a tiny fraction of the remaining plaintiffs will receive trial dates or compensation in the foreseeable future absent a nationwide settlement;

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

WHEREAS, during the period of negotiations between Class Counsel and the Defendant, the Defendant (with the knowledge of Class Counsel) has entered into two additional settlement agreements (to be reviewed by the Court *in camera*) which Defendant represents will resolve approximately 77,000 Roundup Claims at per-claim average values lower than that provided to the Settlement Class under this Agreement, redounding to the benefit of the Settlement Class;

WHEREAS, the Class Representatives and Subclass Representatives, and their respective counsel have considered, among other things: (1) the complexity, expense, and likely duration of litigation; (2) the potential for the Defendant to prevail on threshold issues and on the merits; and (3) the range of possible recovery, including the number of Roundup Lawsuits and the Defendant's ability to pay, and have determined that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class Representatives, Subclass Representatives, and the Settlement Class and Subclasses;

WHEREAS, the Defendant has determined to enter into the Settlement Agreement solely to avoid the costs, risks, and burden of litigation;

WHEREAS, the Settlement Agreement is subject to and conditioned upon approval of the Court as provided by Rule 52.08 of the Missouri Rules, and the Parties intend promptly to seek such approval and entry by the Court of the Preliminary Approval Order and, thereafter, the Final Order and Judgment as provided below, and intend to seek affirmance on appeal of any such orders, until the opportunity to appeal is exhausted; and

WHEREAS, the Settlement Agreement will not be construed (1) as evidence of, or as an admission by, the Defendant of any liability or wrongdoing whatsoever or as an admission regarding the general causation dispute, or (2) as an admission by the Class Representatives, Subclass Representatives, or Settlement Class Members, of any lack of merit in their claims.

NOW, THEREFORE, it is agreed that for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, this action shall be settled and compromised under the following terms and conditions:

## ARTICLE I
### Definitions

Section 1.1    <u>Definitions</u>.

For the purposes of the Settlement Agreement, the following terms (designated by initial capitalization throughout the Settlement Agreement) will have the meanings set forth in this Section 1.1. Additional terms are defined in specific sections of the Settlement Agreement (including the Exhibits) and, along with the terms in this Section 1.1, are listed in the index of defined terms that follows the signature pages of the Settlement Agreement.

Unless the context requires otherwise: (a) words expressed in the masculine will include the feminine and neutral gender and vice versa; (b) the word "they" may mean "he" or "she," as appropriate; (c) the word "will" shall be construed to have the same meaning and effect as the word "shall"; (d) the word "or" will not be exclusive; (e) the word "extent" in the phrase "to the extent" will mean the degree to which a subject or other thing extends, and such phrase will not

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

simply mean "if"; (f) references to "day" or "days" in the lowercase are to calendar days, but if the last day of a period is a Saturday, Sunday, or legal holiday in the State of Missouri, then the period will continue to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; (g) references to the "Settlement Agreement" will include all exhibits hereto (the "Exhibits"); (h) references to any "law" will include all rules, regulations, and sub-regulatory guidance promulgated thereunder; (i) the terms "include," "includes," and "including" will be deemed to be followed by "without limitation," whether or not they are in fact followed by such words or words of similar import; and (j) references to "dollars" or "$" are to U.S. dollars.

(1)     "Active Discovery" means that both of the following have occurred in a Roundup Lawsuit:  (i) the taking of two case-specific depositions by any party to that Roundup Lawsuit, and (ii) the filing, disclosure, or service of one plaintiff-specific expert causation report by a plaintiff in that Roundup Lawsuit.  For the avoidance of doubt, a cross-noticed deposition shall only be counted once for the purposes of this definition and litigation events in a Roundup Lawsuit other than the Roundup Lawsuit at issue shall not be considered "Active Discovery," even if made applicable to that Roundup Lawsuit by stipulation, court order or otherwise.

(2)     "Additional Permitted Fund Uses" has the meaning set forth in Section 4.4(b).

(3)     "Additional Roundup Settlements" means any settlement of Roundup Claims entered into by the Monsanto Parties on or prior to the Settlement Date other than this Settlement Agreement.

(4)     "Administration Costs" means Administrator, Allocation Special Master, Healthcare Compliance Administrator, and Settlement Special Master costs and compensation as provided for in Article XVI, as well as Settlement Class Notice Costs, Tax Expenses, and the fees and expenses of the Settlement Fund Escrow Agent (to the extent set forth in the Settlement Fund Escrow Agreement) and the Security Fund Escrow Agent (if necessary, consistent with Section 4.6(a)).

(5)     "Administrator" means BrownGreer PLC, agreed to and jointly recommended by Class Counsel and the Defendant, subject to approval of the Court, to perform the responsibilities assigned to the Administrator under the Settlement Agreement, including, without limitation, as set forth in Section 16.2.  The Administrator shall be supervised by the Settlement Special Master.

(6)     "Adverse Eligibility Determination" has the meaning set forth in Section 6.5(b).

(7)     "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly, through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of management and policies, whether through the ownership of voting shares, by contract, or otherwise.

(8)     "Aggressive NHL" means a subtype of NHL categorized as "Aggressive" in Exhibit B.

(9)     "Allocation Special Master" means Matthew Garretson of Garretson, LLC, agreed to and jointly recommended by Class Counsel and the Defendant, subject to approval of the Court,

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

to perform the responsibilities assigned to the Allocation Special Master under the Settlement Agreement, including, without limitation, as set forth in Section 16.3.  The Allocation Special Master shall be supervised by the Settlement Special Master.

(10)    "Annual Payment Date" means an anniversary of the Effective Date upon which the Defendant's Annual Settlement Payment is due, as set forth in Section 4.1(c).

(11)    "Annual Settlement Payment" means each of the annual payments described in Section 4.1(c).

(12)    "Application" and "Applied" mean application, preparation, mixing, Handling or use, or any other steps associated with application, whether or not the Settlement Class Member performed the application, preparation, Handling, mixing, use, or other steps associated with application himself or herself.

(13)    "Application Requirements" has the meaning set forth in Section 6.1(b).

(14)    "Award" means an award of money to a Claimant under the Claims Program, including a Program Award, Quick-Pay Award, ECF Award, EREF Award, or Exigency Award, and to the extent applicable, an award of a portion of such money to the Claimant's associated Derivative Claimant, as provided for in Section 6.1(h).

(15)    "Award Fund" means the portion of the Settlement Fund allocated to Award Payments, and beginning on the Fifth Annual Payment Date, to Exiting Class Member Payments, if necessary, in a given Claim Year after accounting for Additional Permitted Fund Uses to be paid in that Claim Year.

(16)    "Award Payment" means the payment of any Award to a Claimant pursuant to Section 6.16, including a Program Award, Quick-Pay Award, ECF Award, EREF Award, Exigency Award, or the portion of any such Award paid to a Derivative Claimant.

(17)    "Award Rejection" means the rejection of a Program Award (and, if applicable, an ECF Award or EREF Award) pursuant to Section 6.17.

(18)    "Award Rejector" means a Subclass 2 Claimant who rejects a Program Award (and, if applicable, an ECF Award or EREF Award) pursuant to Section 6.17.

(19)    "Bankruptcy Event" has the meaning set forth in Section 4.6(c).

(20)    "Claim Eligibility Date" has the meaning set forth in Section 6.5(a).

(21)    "Claim Form" means the document that a Settlement Class Member requesting an Award must submit to the Administrator, as part of his or her Claim Package or Quick-Pay Claim Package, as set forth in Section 6.2.

(22)    "Claim-Over" has the meaning set forth in Section 3.3(a).

4

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(23)    "Claim Package" means the Claim Form and supporting documentation and information that a Settlement Class Member requesting an Award (other than a Quick-Pay Award) must submit to the Administrator, as set forth in Sections 6.3(a), (b), and (f).

(24)    "Claim Score" has the meaning set forth in Section 6.10(a).

(25)    "Claim Submission Date" has the meaning set forth in Section 6.5(a).

(26)    "Claim Year" means a year running from one Annual Payment Date to the next Annual Payment Date (or in the case of the first Claim Year, from the Effective Date to the First Annual Payment Date).

(27)    "Claimant" means a Settlement Class Member who has submitted a Claim Package or Quick-Pay Claim Package to the Administrator, as set forth in Section 6.4.

(28)    "Claims" means past, present and future claims, crossclaims, counterclaims, actions, rights, remedies, causes of action, liabilities, suits, demands, damages, losses, payments, judgments, verdicts, debts, dues, sums of money, Liens, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, warranties, grievances, or promises, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether fixed, contingent, or non-contingent, whether matured or unmatured, whether ripened or unripened, whether perfected or unperfected, whether choate or inchoate, whether developed or undeveloped, whether liquidated or unliquidated, whether suspected or unsuspected and whether existing or hereafter arising, in all such cases, including any of the foregoing for direct damages, indirect damages, consequential damages, incidental damages, punitive or exemplary damages, statutory and other multiple damages or penalties of any kind, or any other form of damages whatsoever, and whether based upon breach of contract, warranty, or covenant, tort, negligence, strict liability, gross negligence, recklessness, willful or wanton conduct, malice, oppression, conscious disregard, joint and several liability, guarantee, contribution, reimbursement, subrogation, indemnity, defect, failure to warn, fault, misrepresentation, common law fraud, statutory consumer fraud, *quantum meruit*, breach of fiduciary duty, violation of statutes or administrative regulations or any other legal (including common law), foreign, statutory, equitable or other theory or right of action, whether in law or in equity, now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, and whether direct, representative, derivative, class, or individual in nature, in any forum that any Person had, has, or may have in the future.

(29)    "Claims Program" means the program set forth in Article VI for the purpose of making Awards to Settlement Class Members.  The Claims Program will be implemented by the Allocation Special Master and the Administrator, and overseen by the Settlement Special Master, as provided in Article XVI.

(30)    "Class Counsel" means, pending Court appointment:  Christopher A. Seeger of Seeger Weiss LLP, Joseph F. Rice of Motley Rice LLC, Peter A. Kraus of Waters Kraus Paul & Siegel, John Eddie Williams Jr. of Williams Hart & Boundas, LLP, Eric D. Holland of the Holland

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Law Firm, and Michael S. Ketchmark of Ketchmark & McCreight, P.C.  Any reference in the Settlement Agreement to the duties or actions of Class Counsel refers also to "Subclass Counsel" which means, pending Court appointment:  Christopher A. Seeger of Seeger Weiss LLP, Joseph F. Rice of Motley Rice LLC, Peter A. Kraus of Waters Kraus Paul & Siegel, and John Eddie Williams Jr. of Williams Hart & Boundas, LLP for Subclass 1; and Eric D. Holland of the Holland Law Firm, and Michael S. Ketchmark of Ketchmark & McCreight, P.C. for Subclass 2; or such other counsel as the Court may appoint to represent Subclasses 1 and 2.

(31)    "Class Representatives" means Randall King, Scott Butterfield, Robert Koehler, Michael Merx and Bruce Waldman or such other or different persons as may be appointed by the Court as the representatives of the Settlement Class.

(32)    "CMS" means the Centers for Medicare & Medicaid Services within the U.S. Department of Health and Human Services.

(33)    "Confidential Information" has the meaning set forth in Section 22.1.

(34)    "Counsel for the Defendant" means Wachtell, Lipton, Rosen & Katz, Gibson Dunn & Crutcher LLP, and Dowd Bennett LLP, or any law firm or attorney so designated in writing by the Defendant.

(35)    "Court" means the 22nd Judicial Circuit Court, City of St. Louis, Missouri.

(36)    "Covenant Not to Sue" means the covenants set forth in Article III.

(37)    "Defendant" means Monsanto Company.

(38)    "Derivative Claimants" means spouses, parents, children, or any other individuals who properly under applicable state law have or assert a right to maintain a Roundup Claim against the Monsanto Parties or Related Parties independently or derivatively by reason of their relationship with a Settlement Class Member, including a deceased Settlement Class Member.

(39)    "Derivative Claims" means Roundup Claims that arise from, result from, in any way relate to, or are in connection with a Derivative Claimant's relationship with a Settlement Class Member, including a deceased Settlement Class Member, including any Roundup Claims arising from, resulting from, in any way relating to or in connection with loss of support, services, consortium, companionship, society, or affection, or damage to familial relations (including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life).

(40)    "Effective Date" means the date upon which the Final Order and Judgment becomes final and non-appealable, and not subject to further discretionary review (if any), by any court including the Missouri Supreme Court or the U.S. Supreme Court.

(41)    "Eligibility Criteria" has the meaning set forth in Section 6.1(b).

(42)    "Eligible," in reference to a Claimant, means having submitted a Claim Package or Quick-Pay Claim Package that (i) meets all applicable Application Requirements, and

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(ii) demonstrates to the satisfaction of the Administrator a Qualifying Diagnosis, Exposure, and compliance with all other applicable Eligibility Criteria.

(43)    "Eligible Claim Package" means a Claim Package that (i) meets all applicable Application Requirements, and (ii) demonstrates to the satisfaction of the Administrator a Qualifying Diagnosis, Exposure, and compliance with all other applicable Eligibility Criteria.

(44)    "Eligible Quick-Pay Claim Package" means a Quick-Pay Claim Package that (i) meets all applicable Application Requirements, and (ii) demonstrates to the satisfaction of the Administrator a Qualifying Diagnosis, Exposure, and compliance with all other applicable Eligibility Criteria.

(45)    "Eligible Subclass 1 Claim Package" means an Eligible Claim Package submitted by an Eligible Subclass 1 Claimant.

(46)    "Eligible Subclass 2 Claim Package" means an Eligible Claim Package submitted by an Eligible Subclass 2 Claimant.

(47)    "Exigency Award" means an Award made pursuant to Section 6.14.

(48)    "Exiting Class Member" means a Settlement Class Member who exits the Claims Program pursuant to Section 8.1(a).

(49)    "Exiting Class Member Payment" means a payment of $500.00 to a Settlement Class Member who becomes an Exiting Class Member pursuant to Section 8.1(a)(i), (ii) or (iii).

(50)    "Exposed" and "Exposure" mean contact with, inhalation of, ingestion of, or absorption of any Roundup Products in connection with the Application of any Roundup Product. For the avoidance of doubt, Exposure to Roundup Products requires exposure to the product itself and not only to the outside of its packaging.

(51)    "Extraordinary Circumstances Fund" or "ECF" means the specific portion of the Award Fund allocated for payment of Extraordinary Circumstances Fund Awards as set forth in Section 6.12, which in a given Claim Year is not to exceed 5% of the Annual Settlement Payment for that Claim Year, or in the case of the first Claim Year, 5% of the Initial Settlement Payments.

(52)    "Extraordinary Circumstances Fund Award" or "ECF Award" means an Award made from the ECF pursuant to Section 6.12.

(53)    "Extraordinary Residential Exposure Fund" or "EREF" means the specific portion of the Award Fund allocated for payment of Extraordinary Residential Exposure Fund Awards as set forth in Section 6.13.  The EREF shall be funded with 1.5% of each Annual Settlement Payment and 1.5% of the Initial Settlement Payments.

(54)    "Extraordinary Residential Exposure Fund Award" or "EREF Award" means an Award made from the EREF pursuant to Section 6.13.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(55)    "Fairness Hearing" means the hearing scheduled by the Court to consider the fairness, reasonableness, and adequacy of the Settlement Agreement under Rule 52.08(e) of the Missouri Rules and to determine whether the Final Order and Judgment should be entered.

(56)    "Fee Entitlement" means any right, entitlement, or expectation, including, but not limited to, a fee contract, contingent fee contract, agreement, referral arrangement, co-counsel arrangement, or any other arrangement by which counsel could receive compensation or other consideration.

(57)    "Final Approval Date" means the date of Final Court Approval.

(58)    "Final Court Approval" means the entry of the Final Order and Judgment by the Court.

(59)    "Final Order and Judgment" means the final order and judgment entered by the Court, in the form of Exhibit H together with any modifications acceptable to the Parties in their individual discretion exercised in good faith.

(60)    "Form of Release" means the release attached as Exhibit D.

(61)    "Governmental Authority" means any government or political subdivision, department, commission, board, bureau, agency, or other governmental authority, whether U.S. federal, state, District of Columbia, city, county, municipal, or territorial, or otherwise domestic, or any instrumentality thereof.

(62)    "Governmental Payor" means (a) any federal, state, or other governmental body, agency, department, plan, program, or entity that administers, funds, pays, contracts for, or provides medical items, services, or prescription drugs, including, but not limited to, the Medicare Program, the Medicaid Program, Tricare, the U.S. Department of Veterans Affairs, and the Indian Health Service, and (b) any entity paid by such a plan, program, or entity to provide benefits under contract on a prepaid or capitated basis.

(63)    "Handling" means physical contact with or other handling of a Roundup Product, including in the chain of commerce, and includes transporting a Roundup Product for application, use, delivery, or sale.

(64)    "Healthcare Compliance Administrator" or "HCA" means Wolf Global Compliance, LLC, agreed to and jointly recommended by Class Counsel and the Defendant, subject to approval of the Court, to perform the responsibilities assigned to the HCA under the Settlement Agreement, including, without limitation, as set forth in Section 16.4.  The HCA shall be supervised by the Settlement Special Master.

(65)    "HIPAA" means the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.) and its implementing regulations, as well as any other applicable federal, state, or local statutes or regulations governing Protected Health Information.

8

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(66)    "Indolent NHL" means a subtype of NHL categorized as "Indolent" in Exhibit B. A Qualifying Diagnosis that lists "NHL" without specifying a subtype shall be deemed to be Indolent NHL, unless the Settlement Class Member or their Representative Claimant provides the Administrator with sufficient medical records to support a determination by the Allocation Special Master, in consultation with a consulting oncologist, that a categorization as Aggressive NHL is warranted.

(67)    "Initial Claimant" means a Subclass 1 Claimant who has, as of February 13, 2026, filed a Roundup Lawsuit or entered into an agreement related to Roundup Claims with any of the Monsanto Parties tolling the applicable statute of limitations.

(68)    "Initial Settlement Payments" means the payments described in Section 4.1(b).

(69)    "IRC" means the Internal Revenue Code of 1986, as amended.

(70)    "Later Claimant" means:  (a) a Subclass 1 Claimant who has not, as of February 13, 2026, filed a Roundup Lawsuit or entered into an agreement related to Roundup Claims with any of the Monsanto Parties tolling the applicable statute of limitations, or (b) a Subclass 2 Claimant.

(71)    "Later Retained Counsel" means counsel to any Claimant that does not have a signed retention agreement with that Claimant dated February 13, 2026 or earlier.

(72)    "Lawsuit" means *Randall King, et al.* v. *Monsanto Company* (22nd Judicial Circuit Court, City of St. Louis, Missouri).

(73)    "Lien" means any statutory lien of a Governmental Payor or any lien, charge, security interest, assignment, encumbrance, subrogation right, reimbursement claim, right to payment, third-party interest or adverse claim, of any nature whatsoever, in each case whether statutory or otherwise, held or asserted by any Person.

(74)    "Medicaid Program" means the federal program administered by the states under which certain medical items, services, or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1, *et seq.*

(75)    "Medicare Program" means the federal program administered by CMS under which certain medical items, services, or prescription drugs furnished to Medicare beneficiaries are reimbursed under Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*  This program includes Medicare Part A and Medicare Part B, directly administered by CMS, and two parts administered by private entities that contract with CMS to serve Medicare beneficiaries on a capitated basis:  Medicare Part C, which includes Medicare Advantage, Medicare cost, and Medicare health prepayment plans, and Medicare Part D, under which CMS contracts for coverage of certain outpatient prescription drugs.

(76)    "Monsanto Parties" means the Defendant and Bayer AG, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions; and any past, present or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above (each of the foregoing solely in their capacity as officer, director,

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of Defendant or Bayer AG or any of Defendant or Bayer AG's past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, and divisions).

(77)   "MSP Laws" means the Medicare Secondary Payer Act set forth at 42 U.S.C. § 1395y(b), as amended from time to time, and implementing regulations, and other applicable written CMS guidance.

(78)   "Non-Hodgkin Lymphoma" or "NHL" means a group of cancers that start in white blood cells (lymphocytes), typically within lymph nodes.  It is distinguished from a specific type of lymphoma called Hodgkin lymphoma.  It is also distinguished from leukemias.  For the avoidance of doubt, "Non-Hodgkin Lymphoma" and "NHL" do not include multiple myeloma or any leukemia that does not also contain "lymphoma," "lymphocytic," or "prolymphocytic" in its name under *The World Health Organization Classification of Tumours – Haematolymphoid*, Volume 11 (revised 5th Edition (2024)), with the exception that "Non-Hodgkin Lymphoma" and "NHL" do include hairy cell leukemia and aggressive NK-cell leukemia.  The terms "Non-Hodgkin Lymphoma" and "NHL" include the NHL subtypes listed in Exhibit B.

(79)   "Occupational Claimant" means a Claimant who is determined to be an Occupational Claimant by the Allocation Special Master, pursuant to Section 6.6(b).

(80)   "Opt Out," when used as a verb, means the process by which any individual who would otherwise have been a Settlement Class Member exercises the right to exclude themselves from the Settlement Class pursuant to Article XII.  "Opt Out(s)," when used as a noun, means an individual who would otherwise have been included in the Settlement Class and who has timely and properly exercised their rights to Opt Out pursuant to Article XII and therefore is not a Settlement Class Member.

(81)   "Opt Out Lawsuit" means a past, present, or future action or proceeding between one or more Opt Outs and any of the Monsanto Parties in the Court, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum in the United States, that asserts or alleges Roundup Claims.

(82)   "Opt Out Period" means the period of time between Preliminary Court Approval and the deadline set by the Court for submission of Opts Outs as described in Section 12.1(a).

(83)   "Other Insurer" means any Person other than a Governmental Payor, a provider, a patient, or a relative or guardian of a patient that is obligated, under contract, agreement or otherwise, to pay health care costs of a Settlement Class Member, including, without limitation, a self-insured plan operated by an employer or a corporate or association health insurer or liability insurer.

(84)   "Parties" means the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, and the Defendant.

(85)   "Payment Credit" means a reduction in the amount of an Annual Settlement Payment, pursuant to Article V.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(86)    "Person" means a natural person, partnership (whether general or limited), limited liability company, trust, estate, association (including any group, organization, co-tenancy, plan, board, council or committee), corporation, Governmental Authority, custodian, nominee, or any other individual or entity (or series thereof) in its own or any representative capacity, in each case, whether domestic or foreign.

(87)    "Personal Signature" means the actual physical signature of the individual whose signature is required on the document.  Unless otherwise specified in the Settlement Agreement, a document requiring a Personal Signature may be only submitted by an actual original "wet ink" signature on hard copy, or a PDF or other electronic scan of a "wet ink" signature made on the document requiring the Personal Signature.  For the avoidance of doubt, a Personal Signature can be signed by a Representative Claimant on behalf of their associated Settlement Class Member, but cannot be signed by an attorney, law firm, or other entity involved in representing a Settlement Class Member, even if pursuant to a power of attorney, engagement letter, fee arrangement, or other contract.

(88)    "Petition" means the petition filed in the 22nd Judicial Circuit Court, City of St. Louis, Missouri.

(89)    "Preliminary Approval Date" means the date of the Preliminary Approval Order.

(90)    "Preliminary Approval Motion" means the motion for preliminary approval of the Settlement Agreement, approval of the Settlement Class Notice Plan, entry of the Preliminary Approval Order, and the other relief set forth in Section 10.2(b).

(91)    "Preliminary Approval Order" means the order approving dissemination of notice to the Settlement Class, preliminarily approving the Settlement Agreement, and preliminarily certifying the proposed Settlement Class and Subclasses, in the form of Exhibit G, together with any modifications acceptable to the Parties in their individual discretion exercised in good faith.

(92)    "Preliminary Court Approval" means entry of the Preliminary Approval Order by the Court.

(93)    "Program Award" means an Award made to a Claimant pursuant to Section 6.5(d) or Section 6.10(c).

(94)    "Protected Health Information" means individually identifiable health information, as defined in 45 C.F.R. § 160.103.

(95)    "Punitive Damages" means punitive, exemplary, punitory, treble (or other multiplier), presumptive, added, or aggravated damages, or any other damages or penalties of a similar nature.

(96)    "Qualified Physician" means a licensed physician qualified to diagnose NHL, including, but not limited to, a pathologist, oncologist, or hematologist.

(97)    "Qualifying Diagnosis" means:  (i) for a member of Subclass 1, a diagnosis of NHL documented through a pathology report or the results of a blood test, or if the member of Subclass 1

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

is unable to produce either record, then another reliable medical record created prior to the Settlement Date that demonstrates a diagnosis of NHL; or (ii) for a member of Subclass 2, a diagnosis of NHL documented through a pathology report or the results of a blood test.  The medical records referenced in this definition must have been produced while the Settlement Class Member was living, or produced upon autopsy, and must be electronically or manually signed by a Qualified Physician, or, in the absence of a signature by a Qualified Physician, the Allocation Special Master may exercise his or her expertise and judgment to determine whether the provided set of medical records is reliable.

(98)    "Quick-Pay Award" means an Award made to an Initial Claimant pursuant to Section 6.7 and Section 6.11(a).

(99)    "Quick-Pay Claim Package" means the Claim Form, and supporting documentation and information that an Initial Claimant requesting a Quick-Pay Award must submit to the Administrator, as set forth in Sections 6.3(c) and (f).

(100)  "Related Parties" means the past and present manufacturers, formulators, distributors, marketing agents, commissionaires, resellers, retailers (including, without limitation, wholesale distributors, private label distributors, and all retailers and retail distributors), clinical researchers, agents, licensees, contractors, joint ventures, joint venturers, and consultants of or with respect to Roundup Products, and any and all past or present suppliers of materials, components, and services used in the development, registration, formulation, manufacture, distribution, handling, sale, or marketing of Roundup Products, including the labeling and packaging thereof, in all cases who are not Monsanto Parties, and each and all of their respective past, present, or future, direct or indirect, predecessors, successors, parents, subsidiaries, Affiliates, divisions, joint ventures, and joint venturers; and any past, present, or future officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of any of the above (each of the foregoing solely in their capacity as officer, director, shareholder, owner, employee, partner, trustee, representative, agent, servant, insurer, attorney, predecessor, successor, or assignee of a Related Party); provided, however, that a manufacturer of herbicides that otherwise meets the definition of Related Party shall not be considered a Related Party to the extent of any independent liability for Roundup Claims, where independent liability means liability that both arises from the manufacturer's own conduct (as opposed to any conduct of a Monsanto Party) and is not covered by a contractual indemnity for those Roundup Claims from a Monsanto Party.  Exhibit C represents a good-faith effort by the Defendant to list all manufacturers of any Roundup Product to which a Monsanto Party has provided a contractual indemnity, but the provisions of this section shall apply to any manufacturer with such a contractual indemnity, whether or not it is listed on Exhibit C.  For the avoidance of doubt, the re-labeling or re-packing for sale of a Monsanto-manufactured herbicide shall not be considered the manufacture of an herbicide.

(101)  "Related-Party Lawsuits" means all past, present, and future actions or proceedings between one or more Settlement Class Member Parties and any of the Related Parties, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum in the United States that assert or allege Roundup Claims.

12

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(102)  "Released Claims" means the Claims released by all Settlement Class Member Parties pursuant to the Releases and any other Claims challenging the validity of the Releases or Covenant Not to Sue.

(103)  "Releases" means the releases set forth in Section 3.1.

(104)  "Remaining Occupational Claimant" means a Claimant who timely submitted an Eligible Claim Package prior to the Sixteenth Annual Payment Date and was determined by the Allocation Special Master to be in Tiers 1–4, but for whom there are insufficient funds in the Settlement Fund to provide such Claimant with a Program Award following the exhaustion of the Sixteenth Annual Settlement Payment.

(105)  "Representative Claimant" means an authorized representative of a deceased Settlement Class Member (or their estate), or of a minor or legally incapacitated or incompetent Settlement Class Member.  A Representative Claimant may act on behalf of the Settlement Class Member and take all actions, including with respect to the Claims Program, that a Settlement Class Member is permitted or required to take under the Settlement Agreement, and in so doing shall be bound by all the same terms and conditions of the Settlement Agreement that the Settlement Class Member would be if he or she were acting on his or her own behalf.  As a condition of acting on behalf of a Settlement Class Member, a Representative Claimant must agree, in writing, to all matters to which Settlement Class Members agree under the Settlement Agreement.

(106)  "Residential Claimant" means a Claimant who is determined by the Allocation Special Master to have been Exposed to a Roundup Product but who does not qualify as an Occupational Claimant.

(107)  "Roundup Claims" means Claims arising from, resulting from, in any way relating to or in connection with any actual or alleged act, failure to act, negligence, statement, error, breach of any duty, conduct, transaction, fact, matter, occurrence, representation, or omission or activity of any kind involved, set forth, alleged, or referred to in the Petition or that otherwise arise from, result from, in any way relate to or are in connection with both Roundup Products and NHL, including Derivative Claims, personal injury claims, medical monitoring claims, other tort claims (including claims for fraud, misrepresentation, fraudulent concealment, negligent misrepresentation, and failure to warn), warranty claims, false advertising claims, and claims for violations of any consumer protection or unfair and deceptive acts or practices statute.

(108)  "Roundup Lawsuit" means a past, present, or future action or proceeding between one or more Settlement Class Member Parties and any of the Monsanto Parties in the Court, other than the Lawsuit, or in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum in the United States, that asserts or alleges Roundup Claims.

(109)  "Roundup Product" means (i) any product listed on Exhibit A, and (ii) any glyphosate-containing product with "Roundup" in its name, whether or not listed on Exhibit A.

(110)  "Security Fund" has the meaning set forth in Section 4.6(a).

(111)  "Security Fund Escrow Agent" has the meaning set forth in Section 4.6(a).

13

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(112)   "Settlement Agreement" or "Settlement" or "Agreement" means this Settlement Agreement including all accompanying Exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

(113)   "Settlement Class" has the meaning set forth in Section 2.1(a).

(114)   "Settlement Class Member" means a Person who is a member of the Settlement Class.

(115)   "Settlement Class Member Parties" means the Settlement Class, the Class Representatives and Subclass Representatives, and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any Released Claim on behalf of any Settlement Class Member.  For the avoidance of doubt, Settlement Class Member Parties include Representative Claimants.

(116)   "Settlement Class Notice" means the notice described in Section 11.1, in the form of Exhibit E, together with any modifications acceptable to the Parties in their individual discretion.

(117)   "Settlement Class Notice Agent" means the Person that will implement the Settlement Class Notice Plan and that will be responsible for the dissemination of the Settlement Class Notice, the short-form annual notice as described in Section 11.3, and any supplemental notice to the Settlement Class at any stage of the Settlement Agreement approval and administration periods as approved and directed by the Court.

(118)   "Settlement Class Notice Costs" means the reasonable costs and expenses of the Settlement Class Notice, the short-form annual notice as described in Section 11.3, any supplemental notice required, and compensation of the Settlement Class Notice Agent and the Administrator to the extent the Administrator performs notice-related duties that have been agreed to by the Defendant.

(119)   "Settlement Class Notice Plan" means that document which sets forth the methods, timetable, and responsibilities for providing the Settlement Class Notice to Settlement Class Members, as described in Section 11.1.

(120)   "Settlement Date" means the date of execution of the Settlement Agreement.

(121)   "Settlement Fund" means the escrow account into which the Defendant will make payments pursuant to Section 4.1 and Section 4.2, and from which permitted payments as set forth in Section 4.4 will be distributed.

(122)   "Settlement Fund Amount" has the meaning set forth in Section 4.1(a).

(123)   "Settlement Fund Escrow Agent" means the agreed-upon entity to receive and hold for distribution the funds in the Settlement Fund pursuant to the Settlement Fund Escrow Agreement.  That agreed-upon entity is JPMorgan Chase Bank, N.A.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(124)   "Settlement Fund Escrow Agreement" means the agreement by and among Class Counsel, the Defendant, and the Settlement Fund Escrow Agent with respect to the escrow of the funds to be deposited into the Settlement Fund escrow account.

(125)   "Settlement Special Master" means Judge Glenn A. Norton, agreed to and jointly recommended by Class Counsel and the Defendant, subject to approval by the Court, to perform the responsibilities assigned to the Settlement Special Master under the Settlement Agreement, including, without limitation, as set forth in Section 16.1.

(126)   "Settlement Website" has the meaning set forth in Section 11.2.

(127)   "Subclass 1" has the meaning set forth in Section 2.2(a).

(128)   "Subclass 1 Claim Deadline" means the date 180 days after the Effective Date.

(129)   "Subclass 1 Claimant" means a member of Subclass 1 who has submitted a Claim Package or Quick-Pay Claim Package (if eligible) to the Administrator, as set forth in Section 6.4.

(130)   "Subclass 2" has the meaning set forth in Section 2.2(b).

(131)   "Subclass 2 Claimant" means a member of Subclass 2 who has submitted a Claim Package to the Administrator, as set forth in Section 6.4.

(132)   "Subclass Representatives" means Randall King, Scott Butterfield, and Bruce Waldman for Subclass 1; and Michael Merx and Robert Koehler, for Subclass 2; or such other and different persons as may be designated by the Court as the representatives of the Subclasses.

(133)   "Subclasses" means Subclass 1 and Subclass 2.

(134)   "Tax Expenses" has the meaning set forth in Section 17.1(f).

(135)   "Termination Right" has the meaning set forth in Section 12.5.

(136)   "Tier" means one of the nine compensation ranges to which a Claimant may be assigned by the Allocation Special Master pursuant to Section 6.6(a).

(137)   "Tier Average" means the average of all Program Awards in each respective Tier, as set forth in Section 6.6(a).  For the avoidance of doubt, Quick-Pay Awards and Awards made pursuant to Section 6.5(d) shall not be included in the calculation of Tier Averages.

(138)   "Treasury Regulations" means the regulations promulgated by the United States Department of the Treasury under the Internal Revenue Code.

(139)   "Treating Physician" means the physician overseeing a Settlement Class Member's course of treatment for NHL.

(140)   "Trigger Event" has the meaning set forth in Section 4.6(c).

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(141)   "United States" means the 50 States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Virgin Islands of the United States, the Commonwealth of the Northern Mariana Islands, any other territory or possession of the United States, and any U.S. military or diplomatic establishment wherever located.

(142)   "Unknown Claims" means any Roundup Claim that a Settlement Class Member Party does not know or suspect to exist in their favor at the time of the release of the Monsanto Parties or Related Parties that, if known by them, might have affected their settlement with and release of the Monsanto Parties or Related Parties, or might have affected their decision not to object to this Settlement Agreement.

(143)   "U.S. Persons" means individuals who were both (i) in the United States at the time of their Exposure and (ii) United States citizens or residing in the United States on the Preliminary Approval Date.

(144)   "Valid" in reference to a request to Opt Out has the meaning set forth in Section 12.2(g).

## ARTICLE II
### Definition of Settlement Class and Subclasses

Section 2.1    Definition of Settlement Class.

(a)    "Settlement Class" means those U.S. Persons who, prior to the Settlement Date, have been Exposed to one or more Roundup Products and who:  (i) Applied any Roundup Products; (ii) purchased or paid for any Roundup Products or for the Application of any Roundup Products; (iii) participated in, directed, or saw the Application of any Roundup Products; or (iv) otherwise had reason to know of their Exposure.  The Settlement Class also includes Derivative Claimants of the foregoing individuals.

(b)    The following Persons are excluded from the Settlement Class:

(i)    judicial officers and associated court staff assigned to this Lawsuit, and their immediate family members;

(ii)    past and present (as of the Settlement Date) officers, directors, and employees of the Defendant or any of its direct or indirect subsidiaries;

(iii)    any Person who, prior to the Settlement Date, received consideration in exchange for a release of any Roundup Claims, or received a judgment on a Claim relating to a Roundup Product or a Roundup Claim, even if the judgment is on appeal;

(iv)    any Person who, as of the Settlement Date, has a claim pending in *In re Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal.), provided, however, that any Person within this Section 2.1(b)(iv) who would otherwise be a Settlement Class Member will be included in the Settlement Class upon (1) request and (2) dismissal of their pending claim in such MDL;

16

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(v)    any Person whose Roundup Claims have been dismissed with prejudice as of the Settlement Date, unless such dismissal is subject to appeal, in which case such Person shall be included in the Settlement Class;

(vi)    any Person who would be a Settlement Class Member solely because they saw the Application of a Roundup Product but, by the Settlement Date, neither they nor any of their Representative Claimants had reason to suspect that the Roundup Product in question was an herbicide; and

(vii)    all those Persons otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class in the manner approved by the Court and set forth in the Settlement Class Notice.

Section 2.2    Definition of Subclasses.

(a)    "Subclass 1" means Settlement Class Members who have been diagnosed with NHL as of the Preliminary Approval Date, and their Derivative Claimants.

(b)    "Subclass 2" means Settlement Class Members who have not been diagnosed with NHL as of the Preliminary Approval Date, and their Derivative Claimants.

## ARTICLE III
### Releases, Covenants Not to Sue and Dismissals

Section 3.1    Releases.

(a)    General Release.  Except as provided in Sections 8.2 and 8.3, as of the Effective Date, each Settlement Class Member Party hereby fully, finally, and forever releases and discharges the Monsanto Parties and the Related Parties from all of that Settlement Class Member Party's Roundup Claims, including Roundup Lawsuits, Related-Party Lawsuits, and Unknown Claims, and including, but not limited to, any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, including exemplary, treble (or other multiplier), punitory, presumptive, added, or aggravated damages, absolute liability, strict liability, restitution, abatement, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

(b)    Covenant Not to Sue.  Except as provided in Sections 8.2 and 8.3, as of the Effective Date, each Settlement Class Member Party hereby absolutely, unconditionally, and irrevocably covenants, promises, and agrees that they will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their behalf, or on behalf of any other Person, any Released Claims, Roundup Claims, Roundup Lawsuits, Related-Party Lawsuits, Unknown Claims, or other Claims challenging the validity of the Releases in this Settlement Agreement, including the releases in Sections 3.1(a), (d), (e), and (f), whether individually, or as part of any putative, purported, or certified class or collective action, against the Monsanto Parties or the Related Parties.

17

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(c)    <u>Stay and Dismissal of Pending Lawsuits</u>.    For each Roundup Claim, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, pending in any court, tribunal, or other forum as of the Final Approval Date, the following shall apply:

(i)    Each Settlement Class Member Party covenants, promises, and agrees:  (1) to stay such proceeding within 30 days of the Final Approval Date to the extent not already stayed and to continue any pre-existing stay, and (2) to discontinue, withdraw and dismiss with prejudice any such Roundup Claim, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, prior to payment of his or her Award Payment, as provided in Section 6.1(d).  Any stay under this Section 3.1(c)(i) may only be lifted in accordance with Section 8.2.

(ii)    If a Roundup Claim, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, subject to a stay under this Section 3.1(c), is subject to dismissal for lack of prosecution or non-activity, the Settlement Class Member may dismiss such Claim without prejudice, except that, following the Effective Date, any Claim for Punitive Damages must be dismissed with prejudice.  Any Roundup Claim dismissed without prejudice pursuant to the foregoing sentence may only be reinstated in accordance with Section 8.2.

(iii)    For the avoidance of doubt:  (1) this Agreement operates as a complete bar on Roundup Claims for Punitive Damages by Settlement Class Member Parties, even if the stay on a Roundup Claim, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, is lifted or if a Roundup Claim dismissed without prejudice is reinstated; (2) no Settlement Class Member may receive any Award Payment until any and all Roundup Claims, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, brought by them or on their behalf, have been dismissed with prejudice; (3) no Settlement Class Member may initiate a new Roundup Claim, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, on or following the Final Approval Date; and (4) nothing in this Section 3.1(c) shall be construed so as to conflict with any order entered by the Court, including any order to stay any proceedings as of the Preliminary Approval Date.

(d)    <u>Release of Claims Related to Liens</u>.  Except as provided in Sections 8.2 and 8.3, as of the Effective Date, each Settlement Class Member Party hereby fully, finally, and forever releases and discharges the Monsanto Parties and the Related Parties, from any and all Claims, arising from, resulting from, in any way relating to, or in connection with:  (i) any claim for benefits under the Settlement Agreement, including any consequences in the event that the Settlement Agreement impacts, limits, or precludes any Settlement Class Member's right to benefits under Social Security, Medicare, or Medicaid, or from any Governmental Payor or Other Insurer; or (ii) the reporting, transmittal of information, or communications between or among the Monsanto Parties, the Administrator, the Allocation Special Master, the Healthcare Compliance Administrator, the Settlement Special Master, and their respective Affiliates, officers, directors, and employees, or any Governmental Payor.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(e)    <u>Release of Claims Related to Government Reimbursements</u>.  Except as provided in Sections 8.2 and 8.3, as of the Effective Date, each Settlement Class Member Party hereby fully, finally, and forever releases and discharges the Monsanto Parties and the Related Parties from any and all Claims, pursuant to the MSP Laws or other similar causes of action, including Claims relating to the availability of future Medicare-covered expenses, and any private cause of action that Settlement Class Member Parties may have under 42 U.S.C. § 1395y(b)(3)(A), arising from, resulting from, in any way relating to, or in connection with:  (i) the Settlement Agreement or (ii) the failure or alleged failure of any of the Monsanto Parties to provide for a primary payment or appropriate reimbursement to a Governmental Payor with a Lien in connection with claims for medical items, services, or prescription drugs provided in connection with compensation or benefits claimed or received by a Settlement Class Member Party pursuant to the Settlement Agreement.

(f)    <u>Release of Claims Arising from the Settlement Agreement</u>.  Except as provided in Sections 8.2 and 8.3, as of the Effective Date, the Settlement Class Member Parties hereby fully, finally, and forever release and discharge the Monsanto Parties and the Related Parties from any and all Claims, arising from, resulting from, in any way relating to or in connection with the administration of the Settlement Agreement, the Settlement Fund, and any act or failure to act of the Administrator, the Allocation Special Master, the Settlement Special Master, the Healthcare Compliance Administrator, the Settlement Class Notice Agent, the Settlement Fund Escrow Agent, the Security Fund Escrow Agent, the Defendant, Counsel for the Defendant, and their respective Affiliates, officers, directors, employees, and counsel.

(g)    <u>Construction of Releases</u>.  The Releases provided for in Section 3.1 and Section 3.2, and the protection against Claims-Over provided for in Section 3.3 are intended by the Parties to be broad and shall be interpreted so as to give the Monsanto Parties and the Related Parties the broadest possible bar against any liability relating in any way to Settlement Class Member Parties' Released Claims.  This Settlement Agreement shall be a complete bar to any Released Claim asserted by any Settlement Class Member Party, except as set forth in Article VIII.

(h)    Nothing in the Releases in this Settlement Agreement will preclude any action to enforce the terms of the Settlement Agreement.

(i)    The Parties represent and warrant that no promise or inducement has been offered or made for the releases contained in this Article III except as set forth in the Settlement Agreement, and that the releases are executed without reliance on any statements or any representations not contained in the Settlement Agreement.

Section 3.2    <u>Unknown Claims</u>.

(a)    The Class Representatives and Subclass Representatives (on behalf of themselves and the associated Settlement Class Member Parties) acknowledge that they have been informed of Section 1542 of the Civil Code of the State of California (and similar statutes) by counsel and that they do hereby expressly waive and relinquish all rights and benefits, if any, which they have or may have under said section (and similar statutes) which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(b)    The Parties acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other state, territory, or other jurisdiction was separately bargained for and that the Parties would not have entered into the Settlement Agreement unless it included a broad release of Unknown Claims arising from, resulting from, in any way relating to, or in connection with the matters released herein.

Section 3.3    Protection Against Claims-Over.

(a)    The Final Order and Judgment will specify that the Settlement is a good-faith settlement that bars any Claim by any Related Parties against any Monsanto Party for contribution, indemnification, or otherwise seeking to recover all or a portion of any amounts paid by or awarded against those Related Parties to any Settlement Class Members by way of settlement, judgment, or otherwise (a "Claim-Over") on any Roundup Claim, to the extent that a good-faith settlement (or release thereunder) has such an effect under, without limitation, Mo. Rev. Stat. § 537.060 and similar laws in other states or jurisdictions. Entities that would be a Related Party but for their status as a manufacturer with independent liability for Roundup Claims shall be a Related Party for purposes of this Section 3.3.

(b)    If a Roundup Claim asserted by a Settlement Class Member gives rise to a Claim-Over against any Monsanto Party and a court determines that the Claim-Over can be maintained notwithstanding the order referenced in Section 3.3(a), the Settlement Class Member shall reduce the amount of any judgment it obtains against the Related Party or Parties who is asserting the Claim-Over by whatever amount is necessary, or take other action as is sufficient, to fully extinguish the Claim-Over under applicable law.

(c)    To the extent that, on or after the Settlement Date, any Settlement Class Member enters into a settlement with any Related Party on any Roundup Claim, the Settlement Class Member will obtain from such Related Party a prohibition on contribution or indemnity of any kind, substantially equivalent to that required from Defendant in Section 3.3(d), or a release from such Related Party in favor of the Monsanto Parties (in a form equivalent to the Releases contained in this Settlement Agreement) of any Claim-Over.

(d)    No Monsanto Parties shall seek to recover for amounts paid under this Settlement Agreement based on contribution, indemnification, or any other theory from any Related Party; provided, however, that Monsanto Parties shall be relieved of this prohibition with respect to any Related Parties that assert a Claim-Over against it. For the avoidance of doubt, nothing herein shall prohibit the Monsanto Parties from recovering amounts owed pursuant to insurance contracts.

20

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 3.4    Insurance Coverage.

(a)    Notwithstanding anything herein to the contrary, the Settlement Agreement is not intended to and does not release any Governmental Payor or Other Insurer from its obligation to provide any health insurance coverage, major medical insurance coverage, or disability insurance coverage to a Settlement Class Member, or from any Claims, demands, rights, or causes of action of any kind that a Settlement Class Member has or hereafter may have with respect to such individuals or entities.

(b)    Notwithstanding anything herein to the contrary, the Settlement Agreement is not intended to and does not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured person thereunder, including the Monsanto Parties.

Section 3.5    Release and Covenant Not to Sue by Defendant.

(a)    Upon the Effective Date, the Defendant shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged Class Representatives, each and all of the Settlement Class Members, and their counsel, of all Claims based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of Roundup Lawsuits, except for any and all Claims arising out of enforcement of the Settlement Agreement or the Final Order and Judgment.  Any other Claims or defenses the Defendant may have against such Persons including, without limitation, any Claims based upon or arising out of any contractual, employment, or other business relationship with such persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of Roundup Lawsuits are specifically preserved and shall not be affected by the preceding sentence.  For the avoidance of doubt, this Release by the Defendant shall not extend to Opt Outs or Exiting Class Members.

(b)    Upon the Effective Date, the Defendant hereby absolutely, unconditionally, and irrevocably covenants, promises, and agrees that it will not, at any time, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum continue to prosecute, commence, file, initiate, institute, cause to be instituted, or assist in instituting on its behalf or on behalf of any Monsanto Parties or Related Parties, or permit to be instituted on its behalf or on behalf of any Monsanto Parties, any Claims against Settlement Class Members based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of Roundup Lawsuits, except for any and all Claims arising out of enforcement of the Settlement Agreement.  Any other Claims or defenses the Defendant may have against Settlement Class Members including, without limitation, any Claims based upon or arising out of any contractual, employment, or other business relationship with such persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of Roundup Lawsuits shall not be affected by the preceding sentence.  For the avoidance of doubt, this Covenant Not to Sue by the Defendant shall not extend to Opt Outs or Exiting Class Members.

Section 3.6    Post-Effective Date Termination.  For the avoidance of doubt, if the Settlement Agreement is terminated under Section 27.4, or if the conditions set forth in Section 4.6(d) are met, then any Settlement Class Members who have not received an Award or Exiting

21

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Class Member Payment as of that time shall be deemed to have no further rights or obligations under the Settlement Agreement, and both the Releases and Covenant Not to Sue set forth in Section 3.1 and Section 3.2, the Protection Against Claims-Over set forth in Section 3.3, and the Release and Covenant Not to Sue by Defendant set forth in Section 3.5 shall be null and void as to such Settlement Class Members; for the avoidance of doubt, all Forms of Release executed by individual Settlement Class Members, or their Derivative or Representative Claimants, shall remain in full force and effect.

## ARTICLE IV
### Settlement Payments

Section 4.1    Funding Amount.

(a)    This Article IV sets out in full the Defendant's payment obligations in connection with the Settlement Agreement.  The Defendant shall pay the amounts set forth below in accordance with the funding terms set forth herein.  The "Settlement Fund Amount" shall be the total of the amounts that become payable as set forth in Sections 4.1(b)–(c) and Section 4.2 (equaling up to $7.25 billion), subject to the Payment Credits set forth in Article V, the Termination Right set forth in Section 12.5, and the provisions of Section 27.4.  In no event shall the Monsanto Parties be required to fund any payments in excess of the Settlement Fund Amount.

(b)    Initial Settlement Payments.  The Defendant shall make an initial payment of $500 million into the Settlement Fund no later than 10 business days after the Court's entry of the Preliminary Approval Order.  The Defendant shall make an additional payment of $500 million into the Settlement Fund no later than August 31, 2026.  These payments (together, the "Initial Settlement Payments") are subject to the Termination Right set forth in Section 12.5 and the provisions of Section 27.4.

(c)    Annual Settlement Payments.  The Defendant shall pay the following amounts minus any applicable Payment Credits as set forth in Article V (each such payment being the "First" through "Sixteenth" "Annual Settlement Payment"), subject to the Termination Right set forth in Section 12.5 and the provisions of Section 27.4, into the Settlement Fund, on the following schedule (with each yearly payment date being an "Annual Payment Date"):

(i)    $550 million no later than the first anniversary of the Effective Date (the "First Annual Payment Date").

(ii)    $550 million no later than the second anniversary of the Effective Date (the "Second Annual Payment Date").

(iii)    $450 million no later than the third anniversary of the Effective Date (the "Third Annual Payment Date").

(iv)    $350 million no later than the fourth anniversary of the Effective Date (the "Fourth Annual Payment Date").

(v)    $350 million no later than the fifth anniversary of the Effective Date (the "Fifth Annual Payment Date").

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(vi)    $300 million no later than the sixth anniversary of the Effective Date (the "Sixth Annual Payment Date").

(vii)    $300 million no later than the seventh anniversary of the Effective Date (the "Seventh Annual Payment Date").

(viii)    $300 million no later than the eighth anniversary of the Effective Date (the "Eighth Annual Payment Date").

(ix)    $300 million no later than the ninth anniversary of the Effective Date (the "Ninth Annual Payment Date").

(x)    $300 million no later than the tenth anniversary of the Effective Date (the "Tenth Annual Payment Date").

(xi)    $250 million no later than the eleventh anniversary of the Effective Date (the "Eleventh Annual Payment Date").

(xii)    $250 million no later than the twelfth anniversary of the Effective Date (the "Twelfth Annual Payment Date").

(xiii)    $250 million no later than the thirteenth anniversary of the Effective Date (the "Thirteenth Annual Payment Date").

(xiv)    $250 million no later than the fourteenth anniversary of the Effective Date (the "Fourteenth Annual Payment Date").

(xv)    $250 million no later than the fifteenth anniversary of the Effective Date (the "Fifteenth Annual Payment Date").

(xvi)    $250 million no later than the sixteenth anniversary of the Effective Date (the "Sixteenth Annual Payment Date").

Section 4.2    Payments After the Sixteenth Annual Payment Dates.  In the event there are Remaining Occupational Claimants, or if following the exhaustion of the Sixteenth Annual Settlement Payment, there are insufficient funds to make Exiting Class Member Payments to Exiting Class Members who exit the Claims Program pursuant to Section 8.1(a)(ii)–(iii), the Defendant shall make annual payments to the Settlement Fund beginning on the one-year anniversary of the Sixteenth Annual Payment Date of the lesser of: (i) $250 million for a maximum of 4 years or (ii) the amount necessary to make Program Awards to all Remaining Occupational Claimants and Exiting Class Member Payments to Exiting Class Members who exit the Claims Program pursuant to Section 8.1(a)(ii)–(iii), together with necessary Administration Costs to administer the foregoing.  Any payments made by the Defendant under this Section 4.2 shall only be used to fund Program Awards to Remaining Occupational Claimants as well as Exiting Class Member Payments to Exiting Class Members who exit the Claims Program pursuant to Section 8.1(a)(ii)–(iii), and necessary Administration Costs to administer the foregoing.  Claim Packages of Remaining Occupational Claimants shall be scored, and associated Program Awards made and prioritized for payment, as set forth in Section 6.6 and Sections 6.9 through 6.11.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 4.3    No Interest or Inflation Adjustment.    The payments set forth in this Article IV and the attorneys' fees set forth in Article XV shall not be subject to any interest obligation or inflation adjustment.

Section 4.4    Permitted Fund Uses.

(a)    The Administrator shall be responsible for ensuring that the Settlement Fund is allocated among the permitted Settlement Fund uses in a manner consistent with the timing and administration of the Claims Program under the Settlement Agreement.

(b)    Monies in the Settlement Fund shall be used to pay the Awards described in Article VI as well as "Additional Permitted Fund Uses," which include:  (i) Administration Costs, (ii) attorneys' fees pursuant to Article XV, (iii) Exiting Class Member Payments, and (iv) between the Final Approval Date and the Effective Date, fees and costs of appellate counsel retained by Class Counsel in any appeal of Final Court Approval.

(c)    The Settlement Fund Amount and any interest earned thereon will be allocated to and among the Additional Permitted Fund Uses by the Administrator in his or her individual discretion so long as the allocation is consistent with the Settlement Agreement.

(d)    The Initial Settlement Payments shall be allocated by the Administrator among the permitted Settlement Fund uses in accordance with the Settlement Agreement as follows:

(i)    upon Preliminary Court Approval, to pay Administration Costs, including Settlement Class Notice Costs, as incurred (provided, however, that a maximum of $22 million may be used for Administration Costs prior to Final Court Approval);

(ii)    upon Final Court Approval, to pay Additional Permitted Fund Uses as incurred (provided, however, that, prior to the Effective Date, a maximum of $50 million, including the $22 million set forth in Section 4.4(d)(i) above, may be used for Administration Costs and appellate counsel costs and fees as provided in Section 4.4(b));

(iii)    upon Final Court Approval, up to $80 million to pay Quick-Pay Awards in accordance with Section 6.11(a) and up to $20 million to pay Exigency Awards in accordance with Section 6.14, in each case as incurred; provided, however, if less than $20 million is required to pay Exigency Awards between Final Court Approval and the first anniversary of Final Court Approval, the remainder may be used to pay Quick-Pay Awards;

(iv)    upon the first anniversary of Final Court Approval, if the Effective Date has not yet occurred, up to an additional $80 million to pay Quick-Pay Awards in accordance with Section 6.11(a) and up to an additional $20 million to pay Exigency Awards in accordance with Section 6.14, in each case as incurred; provided, however, if less than $20 million is required to pay Exigency Awards between the first anniversary of Final Court Approval and the second anniversary of Final Court Approval, the remainder may be used to pay Quick-Pay Awards;

24

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(v)    upon the second anniversary of Final Court Approval, if the Effective Date has not yet occurred, up to an additional $80 million to pay Quick-Pay Awards in accordance with Section 6.11(a) and up to an additional $20 million to pay Exigency Awards in accordance with Section 6.14, in each case as incurred; provided, however, if less than $20 million is required to pay Exigency Awards between the second anniversary of Final Court Approval and the Effective Date, the remainder may be used to pay Quick-Pay Awards;

(vi)    after the Effective Date, to pay Quick-Pay Awards, as incurred;

(vii)    upon the First Annual Payment Date, the remainder of the Initial Settlement Payments not allocated pursuant to Section 4.4(d)(i)–(vi) shall be the amount of the Award Fund available to be used for Awards for the first Claim Year as set forth in Article VI.

(e)    Each of the First through Sixteenth Annual Settlement Payments shall be allocated by the Administrator among the permitted Settlement Fund uses as follows:  (i) to pay Additional Permitted Fund Uses as incurred, and (ii) upon the next Annual Payment Date (or in the case of the Sixteenth Annual Settlement Payment, the anniversary of such payment), the remainder of the Annual Settlement Payment shall be the amount of the Award Fund available to be used for Awards for the preceding Claim Year as set forth in Article VI.  Beginning on the Fifth Annual Payment Date, the Administrator may also pay Exiting Class Member Payments, as incurred, from the Award Fund.

(f)    Each of any annual payments made pursuant to Section 4.2 shall be allocated by the Administrator among the permitted Settlement Fund uses as follows:  (i) to pay Additional Permitted Fund Uses as incurred; (ii) to pay Exiting Class Member Payments to Exiting Class Members who exit the Claims Program pursuant to Section 8.1(a)(ii)–(iii); and (iii) to pay Program Awards to Remaining Occupational Claimants.

(g)    Any amounts not expended for the purpose for which they were initially allocated and any additional amounts in the Settlement Fund will be allocated to the Award Fund to be distributed pursuant to Article VI.

(h)    If, following the Sixteenth Annual Payment Date, there are any funds remaining in the Settlement Fund after the processing of all Claim Packages and the making of all associated Award Payments, or, if there are additional payments made pursuant to Section 4.2, after the processing of all Claim Packages and the making of all Award Payments to all Remaining Occupational Claimants, such funds shall be donated to a non-profit entity that studies NHL prevention and/or treatment.  The non-profit entity shall be chosen by the Court after receiving the views of the Defendant and Class Counsel.

Section 4.5    No Further Financial Obligations.  If the Preliminary Approval Order or the Final Order and Judgment is not entered by the Court or is reversed by an appellate court, the Defendant will cease to have any payment obligations under this Article IV or otherwise under the Settlement Agreement, and any unexpended funds in the Settlement Fund will be promptly returned to the Defendant.

25

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 4.6     Payment Protection.

(a)     Within 30 days following the Effective Date, the Defendant shall establish an escrow account separate from the Settlement Fund to be maintained by an independent escrow agent satisfactory to all Parties ("Security Fund Escrow Agent") solely for the benefit of the Settlement Class Members (the "Security Fund").  Expenses of the Security Fund Escrow Agent and any taxes that are payable in respect of the Security Fund are to be paid out of any interest that accrues on or investment income in respect of the Security Fund, unless such interest or income is insufficient, in which case such expenses shall be considered an Additional Permitted Fund Use under Section 4.4(b).  Class Counsel and the Defendant shall agree on the form of the escrow agreement for the Security Fund within 90 days following the Preliminary Approval Date, and shall submit the escrow agreement for the Security Fund to the Court no less than 10 days prior to the Fairness Hearing.

(b)     Within 30 days following the Effective Date, the Defendant shall fund the Security Fund with $1 billion in liquid assets.  Liquid assets to be funded into the Security Fund shall consist of, at the Defendant's sole election, notes, cash, letter(s) of credit, securities, bonds, or other instruments readily convertible to $1 billion in cash.  If, at any time while there are outstanding payment obligations under Section 4.1(b)–(c), the value of the Security Fund declines below $1 billion, the Defendant shall deposit into the Security Fund such additional liquid assets as may be necessary to maintain a balance in the Security Fund in an amount that is readily convertible to the lesser of (i) the initial $1 billion amount or (ii) the aggregate amount of the remaining payment obligations under Section 4.1(b)–(c).  Following performance of all payment obligations under Section 4.1(b)–(c), all assets in the Security Fund shall revert to the Defendant.

(c)     Notwithstanding any provision in this Settlement Agreement to the contrary, in the event (i) the Defendant commences any bankruptcy case under title 11 of the United States Code or if an involuntary petition is filed against the Defendant under any applicable bankruptcy or insolvency law and such petition is not dismissed, stayed, or withdrawn within 60 days after its filing (each, a "Bankruptcy Event"), in each case, while any of its payment obligations under Section 4.1(b)–(c) remain outstanding, and (ii) by no later than the date that is 90 days after the date on which the next Annual Settlement Payment under Section 4.1(c) following the occurrence of such Bankruptcy Event would have been due and payable hereunder, the Defendant has failed to (x) either assume or otherwise perform its regularly scheduled payment obligations under this Settlement Agreement in or during the bankruptcy case that arises from the Bankruptcy Event or (y) timely make all required regularly scheduled payments to the Settlement Fund pursuant to Section 4.1(b)–(c) following Defendant's assumption or continued performance of its regularly scheduled payment obligations under the Settlement Agreement during such bankruptcy case (the occurrence of the events set forth in the preceding clauses (i) and (ii), a "Trigger Event"), then the Court shall direct the liquidation of the assets in the Security Fund and the distribution of the resulting funds in a manner and to recipients consistent with the purposes of this Agreement.

(d)     Notwithstanding any provision in this Settlement Agreement to the contrary, in the event a Trigger Event has occurred, then:  (i) any Settlement Class Member who receives an Award Payment from the Settlement Fund in the full amount of their Award shall retain such Award Payment, and the Releases and Covenant Not to Sue set forth in Section 3.1 shall

26

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

remain fully binding as to such Settlement Class Member; (ii) the Releases and Covenant Not to Sue set forth in Section 3.1 in favor of the Defendant and each of the other Monsanto Parties and Related Parties shall be null and void as to any Settlement Class Member who did not receive an Award Payment in the full amount of their Award; and (iii) as to any Settlement Class Member Parties whose Releases and Covenant Not to Sue become void and null under subclause (ii) of this Section 4.6(d), any statute of limitations applicable to such Settlement Class Member Parties' claims against the Defendant and each of the other Monsanto Parties and Related Parties shall be deemed, and shall be, tolled from the Preliminary Approval Date or date of Qualifying Diagnosis, whichever is later, through and including, the date that is 14 days after the date of the Trigger Event.  For avoidance of doubt, as to each Settlement Class Member Party whose Releases and Covenant Not to Sue become void and null under subclause (ii) of this Section 4.6(d), subject to the preceding sentence, such Settlement Class Member shall have the right to assert any and all Released Claims against each of the Defendant and every other of the Monsanto Parties and Related Parties without regard to any limitations provided in this Settlement Agreement and subject to any and all defenses of the Defendant and Monsanto Parties and Related Parties, as the case may be; provided, however, that nothing in this Section 4.6 or this Agreement shall limit the rights of any of the Parties to apply for relief in any bankruptcy case or insolvency proceeding with respect to the assertion of any Released Claims pursuant to subclause (ii) of this Section 4.6(d); and provided, further, that, in the event a Settlement Class Member Party asserts any Released Claim against the Defendant or any other Monsanto Party or Related Party pursuant to subclause (ii) of this Section 4.6(d), and thereafter receives a judgment, enters into a settlement, or obtains an allowed claim in any bankruptcy case or insolvency proceeding, in respect of such Released Claim, then the amount of any payments received by such Settlement Class Member Party pursuant to this Section 4.6 shall offset, and be applied to reduce, the amount of any payment or distribution to such Settlement Class Member Party in respect of such judgment, settlement, or allowed claim.

(e)    Notwithstanding any provision in this Settlement Agreement to the contrary, in the event (i) a Bankruptcy Event has occurred while any of the Defendant's payment obligations under Section 4.1(b)–(c) remain outstanding and (ii) the Defendant has assumed or continued to perform this Settlement Agreement in or during the bankruptcy case that arises from such Bankruptcy Event, then Class Counsel shall, on their own behalf and on behalf of the Settlement Class Members, (x) support any request by the Defendant to perform its obligations under the Settlement Agreement; (y) support to the fullest extent available the Defendant's plan in such bankruptcy case, which provides for the assumption of the Settlement Agreement; and (z) not file, or in any way support, any request for relief from the automatic stay; request for dismissal, conversion, or transfer of such bankruptcy case; request for estimation; objection to the Defendant's plan or to post-petition financing; or any request to approve a competing plan, in each case, without the written consent of the Defendant.

## ARTICLE V
## Payment Credits

Section 5.1    Opt-Out Credits.

(a)    This Section 5.1 will apply only in the event that there are more than 650 Opt Outs.  If there are more than 650 Opt Outs, then the Defendant will receive Payment Credits for each Opt Out as set forth in Sections 5.1(b)–(g), including, for the avoidance of doubt,

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

the first 650 Opt Outs.  If there are 650 or fewer Opt Outs, Sections 5.1(b)–(g) shall have no applicability, force, or effect.  For the purposes of this Section 5.1, an Opt Out by a Person eligible for an Additional Roundup Settlement shall not be counted towards the 650 Opt Out threshold described in this subsection and shall not give rise to any Payment Credits under this Section 5.1.

(b)　For each Opt Out who has filed or files an Opt Out Lawsuit at any time (including prior to Opting Out), the Defendant shall receive a Payment Credit equal to the Tier Average for the Tier for which that Opt Out would have qualified, as determined by the Allocation Special Master.  This Payment Credit will accrue at the time of the filing of the Opt Out Lawsuit, or on the Effective Date, whichever is later.  If the Tier for which the Opt Out would qualify is not determinable as of the time the Payment Credit accrues under this subsection, then the Defendant shall instead receive a Payment Credit equal to the average Program Award (excluding from the calculation of the average Quick-Pay Awards and Program Awards made pursuant to Section 6.5(d)) across all Tiers of the Claim Year in which the Payment Credit accrues.

(c)　The Allocation Special Master shall perform an annual review of any Payment Credits for which the applicable Tier of an Opt Out was undetermined.  If sufficient information has become available, the Allocation Special Master shall determine the Tier and corresponding Tier Average for that Opt Out, and increase or decrease the Payment Credit, as appropriate.

(d)　For each Opt Out Lawsuit that enters Active Discovery, the Defendant shall receive an additional Payment Credit of two times the Payment Credit for the associated Opt Out awarded pursuant to Section 5.1(b) and Section 5.1(c), if applicable.  If the initial Payment Credit for that Opt Out is later adjusted pursuant to Section 5.1(c), the additional Payment Credit under this subsection shall be adjusted accordingly.  For the avoidance of doubt, the Payment Credits provided for in this subsection are in addition to the Payment Credits provided for in Section 5.1(b) and Section 5.1(c), if applicable.

(e)　For each Opt Out Lawsuit that progresses to within 90 days of a trial date, the Defendant shall receive an additional Payment Credit of six times the Payment Credit for the associated Opt Out awarded pursuant to Section 5.1(b) and Section 5.1(c), if applicable.  If the initial Payment Credit for that Opt Out is later adjusted pursuant to Section 5.1(c), the additional Payment Credit under this subsection shall be adjusted accordingly.  For the avoidance of doubt, the Payment Credits provided for in this subsection are in addition to the Payment Credits provided for in Section 5.1(b), Section 5.1(c), if applicable, and Section 5.1(d).

(f)　The additional Payment Credits provided for in Section 5.1(d) and Section 5.1(e) shall be limited to an aggregate total of $400 million.

(g)　For Opt Out Lawsuits that were in Active Discovery as of January 2025 or have trial dates set in 2026, Defendant will receive the initial Payment Credit under Section 5.1(b) and Section 5.1(c), if applicable, but will not receive any additional Payment Credits pursuant to Section 5.1(d) and Section 5.1(e).

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 5.2    Award Rejection Credits.

(a)    This Section 5.2 shall not apply until there have been 500 Award Rejections.

(b)    For each subsequent Award Rejection (*i.e.*, the 501st Award Rejection and thereafter), the Defendant shall receive a Payment Credit equal to 1.25 times the total amount of the rejected Program Award, rejected ECF Award (if any), and rejected EREF Award (if any) for each Roundup Lawsuit filed by an Award Rejector.  The Payment Credit shall accrue at the time of the filing of such Roundup Lawsuit.

(c)    The Defendant shall receive an additional Payment Credit of 3.75 times the total amount of the rejected Program Award, rejected ECF Award (if any), and rejected EREF Award (if any) for each Roundup Lawsuit filed by an Award Rejector that progresses to within 90 days of a trial date.  The additional Payment Credit shall accrue on the date 90 days prior to such trial date.

Section 5.3    Notice of Payment Credits.  Within 10 days following the calculation of Payment Credits under Sections 5.1 and 5.2 to be applied against each Annual Settlement Payment, the Administrator shall provide notice of such calculations, and the underlying data necessary to perform such calculations, to Class Counsel and the Defendant.

Section 5.4    Application of Payment Credits.  Payment Credits accrued prior to the First Annual Payment Date shall be applied against the First Annual Settlement Payment and thereafter all Payment Credits and any adjustments thereto shall be applied to the next Annual Settlement Payment after the Payment Credit accrues; provided, however, that no more than $60 million per year in Payment Credits shall be applied to each of the First Annual Settlement Payment, the Second Annual Settlement Payment, and the Third Annual Settlement Payment.  To the extent that the total Payment Credits to be applied with respect to the First Annual Settlement Payment or the Second Annual Settlement Payment exceed $60 million, the amount in excess of $60 million shall roll over and be applied as a Payment Credit against the following Annual Settlement Payment.  If the total Payment Credits to be applied against the Third Annual Settlement Payment (including, for the avoidance of doubt, any Payment Credits rolled over pursuant to the prior sentence) exceed $60 million, 25% of the amount in excess of $60 million shall be applied as a credit against each of the Fourth through Seventh Annual Settlement Payments.

## ARTICLE VI
## Claims Program

Section 6.1    Award Eligibility.

(a)    Initial Registration.  Within 180 days following the Final Approval Date, each member of Subclass 1 (other than Derivative Claimants) must submit a registration form to the Administrator by U.S. mail, email, or through the Settlement Website.  The registration form shall require the following information:  (i) name, (ii) date of birth, (iii) address, (iv) email address, if any, (v) phone number, (vi) Social Security Number, if any, (vii) date of Qualifying Diagnosis, (viii) whether the Settlement Class Member's Exposure was residential or occupational, and (ix) name and address of counsel, if any.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(b)      Application Requirements and Eligibility Criteria.  A Settlement Class Member (other than a Derivative Claimant) is eligible for consideration for an Award from the Settlement Fund if the Settlement Class Member complies with the requirements of this Section 6.1 (including, for a member of Subclass 1, the initial registration requirement as set forth in Section 6.1(a)), and timely submits a complete Claim Package or Quick-Pay Claim Package as set forth in Section 6.3, either by U.S. mail, email, or through the Settlement Website (together, the "Application Requirements").  A Settlement Class Member shall be eligible for an Award (an "Eligible" Claimant) if their Claim Package or Quick-Pay Claim Package (i) meets the Application Requirements, and (ii) demonstrates to the satisfaction of the Administrator a Qualifying Diagnosis, Exposure, and compliance with the other requirements set forth in Section 3.1(c) and this Section 6.1 (together, the "Eligibility Criteria").

(c)      Timely Submitted.  A Claim Package shall be considered timely only if: (i) for Subclass 1 Claimants, it is submitted by the Subclass 1 Claim Deadline, and (ii) for Subclass 2 Claimants, it is submitted (A) within six years of the date of a Qualifying Diagnosis (unless the Claimant can show to the satisfaction of the Settlement Special Master that the applicable state statute of limitations would not have run within six years, in which case the Claimant may submit within the applicable state statute of limitations), and (B) prior to the Sixteenth Annual Payment Date; provided, however, that no Claim Package for a Subclass 1 Claimant who is a Later Claimant shall be deemed timely submitted if it relates to a Qualifying Diagnosis made earlier than 2020 (unless the Claimant can show to the satisfaction of the Settlement Special Master that the applicable state statute of limitations would not have run by the date of submission, in which case the Claimant may submit within the applicable state statute of limitations).  A Quick-Pay Claim Package shall be considered timely only if submitted by the Subclass 1 Claim Deadline.

(d)      No Pending Claims.  A Claimant shall only be eligible for an Award if the Claimant has (i) stayed any pending Roundup Claims, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, as required by Section 3.1(c), and (ii) provided the Administrator with a stipulation of a dismissal with prejudice as to any such Roundup Claims.  Any such stipulations will be held in escrow by the Administrator and must be effectuated prior to disbursement of any Award Payment to the Settlement Class Member.

(e)      Not Eligible for Other Settlements.  A Settlement Class Member is not eligible for an Award if that Settlement Class Member is eligible for an Additional Roundup Settlement.

(f)      One Award per Settlement Class Member.  A Settlement Class Member is not eligible for an Award if that Settlement Class Member previously received an Award, including, for the avoidance of doubt, a Quick-Pay Award or Exigency Award.  Any Settlement Class Member applying for an ECF Award or EREF Award must do so simultaneously with applying for a Program Award, subject to the limited exception set forth in Section 6.17.

(g)      Quick-Pay.  Only Initial Claimants in Tiers 5 through 9 (as set forth in Section 6.6(a) and Section 6.7(a)) who submit a Quick-Pay Claim Package meeting all other Eligibility Criteria shall be eligible for Quick-Pay Awards.  Initial Claimants who submit a Quick-Pay Claim Package assigned by the Allocation Special Master to Tiers 1 through 4 shall not be

30

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Eligible for a Quick-Pay Award and shall instead be provided an opportunity to submit a Claim Package as set forth in Section 6.7(a).  For the avoidance of doubt, receipt of a Quick-Pay Award shall preclude an Initial Claimant from seeking any other Award under the Claims Program.

(h)  Derivative Claimants.  A Derivative Claimant is eligible for an Award if, and only if:  (i) the subject Claimant (or Representative Claimant) through whom the relationship is the basis of the Derivative Claim has received an Award; (ii) the subject Claimant indicated on their Claim Form that the submission was also on behalf of a Derivative Claimant, and provided the additional documentation required for Derivative Claimants; and (iii) the Administrator determines, based on a review of the records provided in the Claim Package or Quick-Pay Claim Package, that the Derivative Claimant has a first-degree familial relationship (*i.e.*, child, spouse, or parent) with the subject Claimant or otherwise has a right under applicable state law to assert a Derivative Claim.  In the event of any dispute, the Administrator shall determine whether applicable state law provides the Derivative Claimant the right to sue independently or derivatively for a Derivative Claim.  For the avoidance of doubt, a Derivative Claimant is not eligible for an Award if the subject Claimant (or Representative Claimant) receives an Adverse Eligibility Determination.  The Award for a Derivative Claimant shall equal 1% of the Award received by their subject Claimant (or Representative Claimant); an Award for a Derivative Claimant shall be funded directly from the Award of their subject Claimant.  If there are multiple Derivative Claimants asserting valid claims based on the same subject Claimant, the Administrator will divide and distribute 1% of the Award received by their subject Claimant (or Representative Claimant) among those Derivative Claimants pursuant to the laws of the domicile of the subject Claimant (or Representative Claimant).  The amount of an Award made to a Derivative Claimant shall not be eligible for reconsideration.

Section 6.2  Claim Form.

(a)  Each Settlement Class Member applying for an Award must complete a Claim Form, to be submitted along with the rest of his or her Claim Package or Quick-Pay Claim Package, to the Administrator.  The content of the Claim Form will be agreed to by Class Counsel and the Defendant, and will include, without limitation:

(i)  the Settlement Class Member's name, address, date of birth, and Social Security Number (if any);

(ii)  an affirmation that no previous application for an Award has been made by the Settlement Class Member;

(iii)  authorization for the Administrator to conduct any verifications necessary to process or verify the information in the Claim Form, Claim Package, or Quick-Pay Claim Package, including authorization for the Administrator to check employment history or perform background checks as reasonably necessary to confirm eligibility as an Occupational Claimant;

(iv)  information regarding timing, frequency, duration and extent of the Settlement Class Member's Exposure to one or more Roundup Products, including whether

31

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

such Exposure was in an occupational or residential context, and (if known) the name(s) of the Roundup Products to which the Settlement Class Member was Exposed;

(v)    an indication as to whether the Settlement Class Member is seeking consideration for a Quick-Pay Award, in which case they shall acknowledge they are not seeking any other Award;

(vi)    an indication as to whether the Settlement Class Member is seeking consideration for eligibility as an Occupational Claimant, and as to whether the Settlement Class Member is seeking an ECF Award, EREF Award and/or an Exigency Award;

(vii)    the date the Settlement Class Member was first diagnosed with NHL and the NHL subtype with which they were diagnosed;

(viii)    an indication as to whether the Claim Package or Quick-Pay Claim Package is also being submitted on behalf of a Derivative Claimant;

(ix)    information as to whether or not the Settlement Class Member has filed a Roundup Claim, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, or has entered into an agreement tolling the applicable statute of limitations to bring such Roundup Claims, including the jurisdiction of any such filings, the date of any such filings or agreements and such other information as the Administrator or the Allocation Special Master may require;

(x)    the name and address of counsel, if any; and

(xi)    the Personal Signature (or electronic signature applied via DocuSign or similar verifiable mechanism) of the Settlement Class Member, certifying that the Settlement Class Member is verifying the contents of the Claim Form under penalty of perjury, and the Personal Signature of the Derivative Claimant (if any).

Section 6.3    Claim Packages and Quick-Pay Claim Packages.

(a)    Claim Package Requirements.  A Claim Package must include, without limitation:

(i)    the Claim Form described in Section 6.2;

(ii)    the information and documentation specified in Section 18.1 and Section 18.2;

(iii)    if the Settlement Class Member is deceased, a copy of the death certificate of such Settlement Class Member, identification of the next of kin of such Settlement Class Member, and identification of the executor of the estate of such Settlement Class Member (if applicable);

32

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(iv)    an affirmation stating under penalty of perjury that the information in the Claim Package is true and correct to the best of the Settlement Class Member's (or Representative Claimant's) knowledge;

(v)    a copy of the Settlement Class Member's government-issued identification or other documentation sufficient to establish their date of birth;

(vi)    proof of a Qualifying Diagnosis and of the date such diagnosis was made;

(vii)    proof of Exposure to Roundup Products as follows:

(1)    if the Settlement Class Member received a Qualifying Diagnosis at an age younger than 78 and is seeking consideration for eligibility as an Occupational Claimant, proof demonstrating more than 80 hours of Exposure in an occupational capacity (agricultural, industrial, turf, or ornamental).  Such proof may include, but is not limited to, a sworn affidavit with the Personal Signature of the Settlement Class Member, photographs, or receipts, and corresponding proof reflecting the length and extent of Exposure; an unsworn attestation as to the circumstances, length, and extent of the Settlement Class Member's Exposure is not sufficient to establish eligibility as an Occupational Claimant;

(2)    for all other Settlement Class Members (including all Claimants who received a Qualifying Diagnosis at age 78 or greater), proof demonstrating Exposure for at least 16 hours or 10 lifetime days (any Exposure on any day constituting a lifetime day).  Such proof may include, but is not limited to, declarations, attestations, affidavits, photographs, or receipts, and corresponding proof reflecting the length and extent of Exposure; an attestation as to the circumstances, length, and extent of the Settlement Class Member's Exposure is sufficient for those seeking consideration for eligibility solely as a Residential Claimant or for those who received a Qualifying Diagnosis at age 78 or greater.

(viii)    documentary evidence that the Settlement Class Member is a U.S. Person; such proof may include, but is not limited to, a copy of his or her:  U.S. birth certificate, U.S. Social Security card, U.S. permanent resident card, U.S. driver's license, U.S. passport, lease for a home located in the United States, mortgage statement or deed demonstrating an ownership interest in property located in the United States, utility or other bills for an address in the United States, other identification issued by any Governmental Authority, or other similar documentation deemed sufficient by the Administrator;

(ix)    a set of medical records sufficient to evaluate the claim from the Settlement Class Member's Treating Physician reflecting the course of treatment for the Qualifying Diagnosis, status and duration of remission, and describing the Settlement Class Member's present state of health.  The completeness of such medical records shall be considered by the Allocation Special Master when calculating Claim Scores pursuant to Section 6.10.  A Claimant may proceed through the Claims Program with only the minimum records necessary to establish a Qualifying Diagnosis, but unless a Claimant

33

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

qualifies for one or more upward adjustment factors under Section 6.10(a)(v), such a Claimant will receive the maximum downward adjustment and no upward adjustment to their Claim Score;

(x)    an authorization for the Administrator and HCA, consistent with HIPAA and other applicable privacy laws, to verify facts and details of any aspect of the Claim Package or the existence and amounts, if any, of any Liens;

(xi)    stipulated dismissals with prejudice, as to any Roundup Claims, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, to be held in escrow as required under Section 6.1(d);

(xii)    if applicable, for Subclass 1 Claimants other than Initial Claimants, a retention agreement with counsel (if any) dated prior to February 13, 2026 (if not provided, counsel for such Claimants will be deemed Later Retained Counsel);

(xiii)    if applicable, an attestation as to the Representative Claimant's authority to act on behalf of the Settlement Class Member, and an agreement signed by the Representative Claimant indemnifying the Award Fund for the amount of any Award issued to the Representative Claimant in the event it is shown that such Representative Claimant did not have authority to act on behalf of the Settlement Class Member;

(xiv)    if the Settlement Class Member is seeking an ECF Award, EREF Award or Exigency Award, an explanation of the basis for such a request and the documentation set forth in Sections 6.3(a)(xvii)–(xix) as applicable;

(xv)    if the Settlement Class Member is also submitting the Claim Package on behalf of a Derivative Claimant:

(1)    identifying information about the Derivative Claimant, including name, address, date of birth, and nature of the relationship with the subject Claimant; and

(2)    records sufficient to verify the nature of the Derivative Claimant's relationship with the subject Claimant that properly and legally provides the Derivative Claimant the right under applicable state law to sue independently or derivatively.

(xvi)    if the Settlement Class Member is seeking consideration for eligibility as an Occupational Claimant (and received a Qualifying Diagnosis at an age younger than 78):

(1)    documentary evidence of employment or work in an occupational capacity where Roundup Products would typically be used (agricultural, industrial, turf, or ornamental); such evidence may include, but is not limited to, employment records, payroll records, business licenses, tax records, records of occupational training involving Application of a Roundup Product, or

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

other documentation establishing Settlement Class Member's occupational role or work context;

(2)    documentary evidence of either (a) earned income in such capacity of more than 50% of the Settlement Class Member's total income for at least one year, or (b) earned income in such capacity of more than $15,000 in at least one year; such evidence may include, but is not limited to, employment records, payroll records, tax records, bank statements, or other documentation establishing earned income; and

(3)    any additional documentation the Allocation Special Master or the Administrator deems appropriate; or

(4)    if the documentation required by Sections 6.3(a)(xvi)(1) and (2) does not exist or is otherwise unavailable, and the related employment ended more than 10 years prior to the submission of the Claim Package, other reasonable proof that the Settlement Special Master deems sufficient to demonstrate Exposure to Roundup Products in an occupational capacity; provided, however, that an attestation alone is insufficient to satisfy the requirements of this subsection.

(xvii)   if the Settlement Class Member is seeking an EREF Award:

(1)    proof demonstrating more than 80 hours of Exposure in connection with Application of Roundup Products to a property or properties that in the aggregate and at the same point in time totaled more than 6 acres.  Such proof may include, but is not limited to, a sworn affidavit with the Personal Signature of the Settlement Class Member, photographs, or receipts, and corresponding proof reflecting the length and extent of Exposure; an unsworn attestation as to the circumstances, length, and extent of the Settlement Class Member's Exposure is not sufficient to establish eligibility for an EREF Award;

(2)    documentary evidence describing the property or properties that in the aggregate and at the same point in time totaled more than 6 acres at which the alleged Exposure took place, specifying the acreage and address of each such property; such evidence should include copies of property records or other similar documentation specifying the acreage and ownership of each property; for properties not owned by the Settlement Class Member, such evidence should include a statement detailing his or her relation to the property (*e.g.*, a tenant);

(3)    certification of Roundup Product Application mode (*e.g.*, whether the Application involved mechanized or large-scale Application methods such as tractor-mounted sprayers or backpack sprayers);

(4)    documentary evidence reflecting significant and atypical Exposure; and

(5)    any additional documentation the Allocation Special Master or the Administrator deems appropriate.

35

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(xviii) if the Settlement Class Member is seeking an ECF Award, documentary evidence demonstrating exceptional circumstances, such as: (1) an exceptional injury, including death from NHL (for Claimants who were diagnosed with NHL and died before age 78), stem cell or bone marrow transplant, or irreversible bodily injury (such as loss of eye, loss of organ, or other significant disfigurement); (2) an exceptional course of treatment related to the Claimant's NHL diagnosis which requires Car-T Cell Therapy or Intrathecal Chemotherapy Treatment; or (3) support for any of the upward adjustment factors outlined in Section 6.10(a)(iv)–(v), and any additional documentation the Allocation Special Master or the Administrator deems appropriate.

(xix)    if the Settlement Class Member seeking an Exigency Award:

(1)    either:

(a)    documentary evidence that the Settlement Class Member faces an imminent loss of housing; such evidence may include, but is not limited to, copies of eviction notices or past-due rent or mortgage payments; or

(b)    documentary evidence that the Settlement Class Member is suffering from a terminal condition making it more likely than not that the Settlement Class Member will not survive until the time he or she would otherwise receive an Award Payment; such evidence may include a medical report signed by a Qualified Physician; and

(2)    any additional documentation the Allocation Special Master or the Administrator deems appropriate.

(b)    Supplemental Documentation.  In addition to the documentation set forth above, a Claim Package may also include, and the Administrator and the Allocation Special Master may consider, in connection with their evaluation of such Claim Package:

(i)    evidence of a written agreement with any of the Monsanto Parties for consideration that gave the Settlement Class Member specific rights other than the tolling of the applicable statute of limitations;

(ii)    for an Initial Claimant, evidence that the Initial Claimant had, prior to February 13, 2026, their deposition taken in a Roundup Lawsuit;

(iii)    other medical records that the Settlement Class Member wishes to provide; and

(iv)    other information that the Allocation Special Master or the Administrator deems appropriate.

(c)    Quick-Pay Claim Package Requirements.  A Settlement Class Member who is an Initial Claimant and indicates on their Claim Form that they are seeking a Quick-Pay Award shall only be required to submit:

36

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(i)        the Claim Form described in Section 6.2;

(ii)       a copy of the Settlement Class Member's government-issued identification or other documentation sufficient to establish date of birth;

(iii)      documentary evidence that the Settlement Class Member is a U.S. Person; such proof may include, but is not limited to, a copy of his or her:  U.S. birth certificate, U.S. Social Security card, U.S. permanent resident card, U.S. driver's license, U.S. passport, lease for a home located in the United States, mortgage statement or deed demonstrating an ownership interest in property located in the United States, utility or other bills for an address in the United States, other identification issued by any Governmental Authority, or other similar documentation deemed sufficient by the Administrator;

(iv)      proof of a Qualifying Diagnosis and the date such diagnosis was made;

(v)       stipulated dismissals with prejudice, as to any Roundup Claims, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, to be held in escrow as required under Section 6.1(d);

(vi)      an attestation attesting to Exposure for at least 16 hours or 10 lifetime days (any Exposure on any day constituting a lifetime day);

(vii)     documentation required of a Representative Claimant under Section 6.3(a)(xiii), if applicable; and

(viii)    information required by the Administrator, the Allocation Special Master, or the HCA regarding Liens.

(d)     Release of Claims.  In order to receive an Award Payment, a Claimant (and Derivative Claimant, if any) must execute and submit to the Administrator the Form of Release attached hereto in Exhibit D, as described in Section 6.16(a).

(e)     Next of Kin.  For purposes of Article VI and Article VII, the next of kin of a deceased Settlement Class Member shall be determined by the law of the domicile of the deceased Settlement Class Member at the time of his or her death.

(f)     Medical Cost Information.  The contents of Claim Packages or Quick-Pay Claim Packages will not include documents or information whose primary purpose is to show the medical costs for any medical services that a Settlement Class Member has incurred or may incur. For the avoidance of doubt, to the extent a Settlement Class Member's medical records are provided in a Claim Package, Quick-Pay Claim Package or otherwise to the Administrator, such medical records are not being provided to show and shall not be used to evaluate the medical costs for any medical services that a Settlement Class Member has incurred or may incur.

37

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 6.4    <u>Submission of Claim Packages and Quick-Pay Claim Packages</u>.

(a)    Settlement Class Members may begin to submit Claim Packages and Quick-Pay Claim Packages to the Administrator following the Final Approval Date.

(b)    Each Claimant will promptly notify the Administrator of any changes or updates to the information the Claimant has provided in the Claim Package or Quick-Pay Claim Package, including any change in mailing address.

(c)    All information submitted by Claimants to the Administrator will be recorded in a computerized database that will be maintained and secured in accordance with all applicable federal, state, and local laws, regulations and guidelines, including, without limitation, privacy and data security laws.  The Administrator must ensure that information is recorded and used properly, that an orderly system of data management and maintenance is adopted, and that the information is retained under responsible custody.  The Administrator will keep the database in a form that grants access for claims administration use to the Settlement Special Master, the Allocation Special Master, the HCA, and the Administrator, and for limited access to the Settlement Class Member, but otherwise restricts access rights, including to employees of the Administrator who are not working on claims administration for the Settlement Agreement.

(d)    All information submitted by Claimants to the Administrator will be treated as confidential, as set forth in Section 22.2.

Section 6.5    <u>Preliminary Review</u>.

(a)    Within 30 days of receipt of a Claim Package or within 150 days of the Effective Date, whichever is later, or within 30 days of receipt of Quick-Pay Claim Package, the Administrator will determine if the documentation within the Claim Package or Quick-Pay Claim Package meets the Application Requirements and is otherwise sufficient and complete.  The date of such determination of completeness shall be the "Claim Submission Date."  The Administrator shall develop reasonable procedures to provide Claimants with the opportunity to identify and cure deficiencies in Claim Packages or Quick-Pay Claim Packages.  Following a determination that a Claim Package or Quick-Pay Claim Package meets the Application Requirements and is otherwise sufficient and complete, the Administrator shall determine, within 30 days of the Claim Submission Date, whether the Claimant is Eligible for an Award, including by determining whether such Claim Package or Quick-Pay Claim Package provides sufficient proof of a Qualifying Diagnosis and Exposure to the satisfaction of the Administrator, and otherwise meets the Eligibility Criteria.  For Initial Claimants, the date that the Administrator determines that the Eligibility Criteria have been met shall be the "Claim Eligibility Date"; for Later Claimants, the "Claim Eligibility Date" shall be the second anniversary of such an eligibility determination.  The Administrator shall provide notice to Claimants of their Claim Eligibility Date.

(b)    If the Administrator or Allocation Special Master determines that a Claimant does not meet the Application Requirements or Eligibility Criteria, or otherwise determines (including later in the review process) that the Claimant is not entitled to an Award (an "Adverse Eligibility Determination"), the Administrator will provide notice of such determination within 14 days, and will include information regarding the reasoning of such Adverse Eligibility

38

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Determination, as well as information on how the Claimant can request reconsideration of the Adverse Eligibility Determination, as set forth in Section 7.1(a).  An Adverse Eligibility Determination does not preclude a Settlement Class Member from submitting a Claim Package in the future for an Award should the Settlement Class Member's circumstances materially change.  The Administrator shall develop reasonable procedures to ensure the right of Settlement Class Members who receive an Adverse Eligibility Determination to submit a Claim Package in the future, while preventing repetitive claims that do not evidence materially changed circumstances.

(c)     The Administrator or the Allocation Special Master, in their individual discretion, or as directed by the Settlement Special Master, may undertake or cause to be undertaken reasonable investigation to verify the nature and sufficiency of any Claim Package or Quick-Pay Claim Package, including a request for additional documentation or authorizations, which each Claimant agrees to provide, if available, in order to be eligible for an Award.  No Claim Package or Quick-Pay Claim Package will be considered complete and eligible for an Award, and no Claim Eligibility Date shall be assigned, until such time that any additional documentation requested by the Administrator is provided or deficiencies are cured.

(d)     Any Claimant who provides proof of Exposure to Roundup Products but does not provide proof of Exposure to Roundup Products sufficient to satisfy one of Section 6.3(a)(vii)(1)–(2), and who otherwise satisfies the Eligibility Criteria, shall not have their Claim evaluated under Sections 6.6 through 6.10, but shall instead be awarded a Program Award of $150.00.  A Claimant who receives a Program Award under this Section 6.5(d) shall not be eligible for an ECF Award, EREF Award or any other payments under this Settlement Agreement, including, for the avoidance of doubt, any Exiting Class Member Payment.  All other terms and conditions required to receive a Program Award, including the execution of the Form of Release attached as Exhibit D, the filing of stipulated dismissals, if any, and the delivery of all documentation described in Section 6.16(a), shall apply.

Section 6.6    Tier Structure.

(a)     Each Eligible Claim Package or Eligible Quick-Pay Claim Package shall be assigned by the Allocation Special Master, with the assistance of the Administrator, to a Tier, based on:  (i) the Claimant's type of Roundup Product Exposure (*i.e.*, Occupational Claimant or Residential Claimant); (ii) the Claimant's age at the time of the Qualifying Diagnosis; and (iii) the Claimant's NHL subtype (*i.e.*, Aggressive NHL or Indolent NHL), as follows (each individual tier, a "Tier"):

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| Tier | Criteria | Tier Average[1] |
|------|----------|-----------------|
| 1 | Occupational Claimant; Qualifying Diagnosis at age less than 60; Aggressive NHL | $165,000 |
| 2 | Occupational Claimant; Qualifying Diagnosis at age 60-77; Aggressive NHL | $105,000 |
| 3 | Occupational Claimant; Qualifying Diagnosis at age less than 60; Indolent NHL | $85,000 |
| 4 | Occupational Claimant; Qualifying Diagnosis at age 60-77; Indolent NHL | $60,000 |
| 5 | Residential Claimant; Qualifying Diagnosis at age less than 60; Aggressive NHL | $40,000 |
| 6 | Residential Claimant; Qualifying Diagnosis at age 60-77; Aggressive NHL | $30,000 |
| 7 | Residential Claimant; Qualifying Diagnosis at age less than 60; Indolent NHL | $25,000 |
| 8 | Residential Claimant; Qualifying Diagnosis at age 60-77; Indolent NHL | $20,000 |
| 9 | All Claimants with a Qualifying Diagnosis at age 78+ | $10,000 |

(b)    A Claimant qualifies as an Occupational Claimant if the Claimant was Exposed to any Roundup Products for more than 80 hours in an occupational capacity (agricultural, industrial, turf, or ornamental), and in such capacity the Claimant had earned income in at least one year that was more than 50% of their total income or more than $15,000.  If a Claimant meets the foregoing criteria, they shall be deemed an Occupational Claimant even if the Claimant had other residential Exposure.

(c)    Any Claimant meeting the Eligibility Criteria who does not qualify as an Occupational Claimant shall be deemed to be a Residential Claimant.

Section 6.7    Quick-Pay Tiering and Awards.

(a)    The Allocation Special Master shall assign each Eligible Quick-Pay Claim Package to a Tier pursuant to Section 6.6 within 30 days of such Claimant's Claim Eligibility Date. Such assignment shall be completed on a first-in, first-out basis as processed.  As set forth in Section 6.1(g), only Initial Claimants assigned to Tiers 5 through 9 shall be eligible for Quick-Pay Awards.  Initial Claimants assigned to Tiers 1 through 4 who submit a Quick-Pay Claim Package shall be notified by the Allocation Special Master within 14 days that they must provide, within 90 days of such notice, any additional documents needed for their Claim Package to be evaluated for a Program Award.  The Claim Package shall then be reviewed in accordance with Section 6.5.

---

[1] Beginning as of the Fifth Annual Payment Date, Tier Averages shall be annually adjusted for inflation, not to exceed two-and-a-half percent (2.5%) per year, with the inflation adjustment each year within that range subject to the judgment of the Settlement Special Master.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(b)  The amount of a Quick-Pay Award shall be as follows, based on the Tier for which the Claimant qualifies:

| Tier | Criteria | Amount |
|---|---|---|
| 5 | Residential Claimant; Qualifying Diagnosis at age less than 60; Aggressive NHL | $14,500 |
| 6 | Residential Claimant; Qualifying Diagnosis at age 60-77; Aggressive NHL | $11,000 |
| 7 | Residential Claimant; Qualifying Diagnosis at age less than 60; Indolent NHL | $10,500 |
| 8 | Residential Claimant; Qualifying Diagnosis at age 60-77; Indolent NHL | $7,700 |
| 9 | All Claimants with a Qualifying Diagnosis at age 78+ | $6,000 |

Section 6.8    Subclass 1 Tiering and Tier Adjustments.

(a)  Within 180 days of the Subclass 1 Claim Deadline, the Allocation Special Master shall assign each Eligible Subclass 1 Claim Package to a Tier pursuant to Section 6.6.

(b)  Within 180 days of the Subclass 1 Claim Deadline, after assigning Tiers pursuant to Section 6.8(a), the Allocation Special Master shall, taking into account amounts allocated to Quick-Pay Awards, Exigency Awards, Opt Outs, EREF Awards, ECF Awards, interest and other associated costs or savings, determine whether either of the following applies:

(i)  If the average Program Award across all Tiers is estimated to be less than $50,000, then the Allocation Special Master shall proportionally increase the Tier Average for each Tier until the average Program Award across all Tiers equals $50,000.

(ii)  If the Allocation Special Master estimates that the Award Fund will, over the life of the Claims Program, have funds sufficient to provide Program Awards to more than 90,000 Eligible Subclass 2 Claimants assuming that the distribution of all Eligible Subclass 2 Claim Packages will be in the same proportion across all Tiers as the observed distribution of all Eligible Subclass 1 Claim Packages and Eligible Quick-Pay Claim Packages, and considering future adjustments for inflation under Section 6.6(a) and supplemental payments (if any) required by Section 6.8(b)(iii), then the Allocation Special Master shall proportionally increase the Tier Average for each Tier until the Award Fund is estimated to be sufficient to provide Program Awards to approximately 90,000 such Subclass 2 Claimants.

(iii)  If any adjustments are made under Sections 6.8(b)(i)–(ii), supplemental payments shall be made to prior recipients of Quick-Pay Awards and Exigency Awards, with such supplemental payments equaling the previously provided Award multiplied by the percentage increase in Tier Average for the Claimant's respective Tier.

41

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(c)    Following the Second Annual Payment Date (if there have been fewer than 15,000 Eligible Subclass 2 Claim Packages submitted), and following the Fourth Annual Payment Date (if there have been fewer than 30,000 Eligible Subclass 2 Claim Packages submitted), the Allocation Special Master shall:

(i)    estimate the number of Eligible Subclass 2 Claim Packages to be submitted over the course of the Claims Program (considering both the number of Eligible Subclass 2 Claim Packages submitted prior to that point and an estimate of Eligible Subclass 2 Claim Packages to be submitted in the future), and compare the distribution across Tiers of all Eligible Subclass 2 Claim Packages submitted to that point with the observed distribution of all Eligible Subclass 1 Claim Packages and Eligible Quick-Pay Claim Packages.

(ii)    If the Allocation Special Master both (1) estimates there will be substantially fewer than 90,000 Eligible Subclass 2 Claim Packages submitted over the course of the Claims Program, and (2) determines that the distribution of all Eligible Subclass 2 Claim Packages submitted to that point has not been materially more weighted towards higher Tiers, then the Allocation Special Master shall, considering future adjustments for inflation under Section 6.6(a), proportionally increase the Tier Average for each Tier until the projected amount in the Award Fund (over the remainder of the Claims Program) equals the estimated amount required to provide both:  (i) Program Awards to Eligible Subclass 2 Claimants over the remainder of the Claims Program, and (ii) supplemental payments to prior recipients of Program Awards, Exigency Awards, and Quick-Pay Awards (with such supplemental payments equaling the previously provided Award multiplied by the percentage increase in Tier Average for the Claimant's respective Tier).

(iii)    Supplemental payments to prior recipients of Program Awards and Quick-Pay Awards, if any, shall be distributed following the opportunity for objection set forth in Section 6.8(e).

(d)    If Tier Averages were increased under Section 6.8(c) following the Second Annual Payment Date, and if following the Fourth Annual Payment Date the Allocation Special Master determines that the projected amount in the Award Fund is insufficient to provide Program Awards for all estimated Eligible Subclass 2 Claimants, then the Allocation Special Master shall proportionally decrease the Tier Average for each Tier until the projected amount in the Award Fund equals the estimated amount required to provide Program Awards to Eligible Subclass 2 Claimants over the remainder of the Claims Program; provided, however, that the Tier Average for each Tier shall never be decreased below the Tier Averages provided for in Section 6.6.

(e)    Prior to making any increase to Tier Averages under Section 6.8(c), the Allocation Special Master shall share his preliminary determination with Class Counsel and the Defendant who shall have an opportunity to raise any objections to such determination to the Settlement Special Master.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 6.9    Subclass 2 Tiering.

(a)    The Allocation Special Master shall assign each Eligible Subclass 2 Claim Package to a Tier pursuant to Section 6.6 within 60 days of such Claimant's Claim Eligibility Date. Such Tier assignments shall be made on a rolling basis.

Section 6.10    Claim Scoring.

(a)    At the start of each Claim Year, the Allocation Special Master shall review the Eligible Claim Packages which have not yet been paid an Award that have Claim Eligibility Dates that occurred prior to that Claim Year or that will occur during that Claim Year. The Allocation Special Master shall (i) first, giving effect to Section 6.11(b), determine the Tiers for which he or she is reasonably confident that the Award Fund available for that Claim Year will be sufficient to provide Award Payments at the end of that year; and (ii) second, within such Tiers only, and in the order of Claim Eligibility Date, the Allocation Special Master shall evaluate and apply a score to each Eligible Claim Package (a "Claim Score") using the criteria set forth below. For Claim Packages with Claim Eligibility Dates in the first Claim Year (*i.e.*, Claim Packages of Eligible Initial Claimants), the determination and evaluation under this Section 6.10(a) shall occur immediately following the Allocation Special Master's Tier analysis pursuant to Sections 6.8(a)–(b) and prior to the First Annual Payment Date. The Claim Score shall be based on the following factors:

(i)    the age at which the Claimant received his or her Qualifying Diagnosis:    prior to receiving any upward or downward adjustment pursuant to Section 6.10(a)(ii)–(vi) below, Claim Scores shall be subject to an age-based multiplier along a graduated scale within each Tier (*e.g.*, within an age 60-77 Tier, a Claimant who is 60 years old would receive a higher Claim Score than a Claimant who is 61 years old or older);

(ii)    type of proof of Exposure to Roundup Products, *i.e.*, sworn affidavit or documentary evidence (with stronger evidence being an upward adjustment, and weaker evidence being a downward adjustment in calculating a Claim Score);

(iii)    length and extent of Exposure to Roundup Products (with greater Exposure being an upward adjustment, and lesser Exposure being a downward adjustment in calculating a Claim Score);

(iv)    intensity, duration and/or invasiveness of treatment, including, whether the Claimant had radiation or chemotherapy (with more intense, prolonged or invasive treatments being an upward adjustment in calculating a Claim Score);

(v)    any other applicable factors that are an upward adjustment in calculating a Claim Score, defined as any one or more of the following:

(1)    Lugano or Ann Arbor Staging IV;

43

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(2)    whether the Qualifying Diagnosis was made more than 5 years after the date of the Claimant's first Exposure, and less than 15 years after the date of Claimant's last Exposure;

(3)    for Initial Claimants, if the Claimant was subject to a written agreement with the Defendant for consideration that gave the Claimant specific rights other than tolling;

(4)    for Initial Claimants, if the Claimant has, prior to February 13, 2026, had their deposition taken in a Roundup Lawsuit;

(vi)    any other applicable factors that are a downward adjustment in calculating a Claim Score, defined as any one or more of the following:

(1)    the presence of any of the following specific medical conditions:

(a)    a diagnosis of AIDS prior to the Qualifying Diagnosis;

(b)    for a Claimant presenting a diagnosis of Primary CNS Lymphoma, use of immunosuppressants predating such diagnosis;

(c)    solid organ, stem cell, or bone marrow transplant prior to the Qualifying Diagnosis;

(d)    prior diagnosis of any malignant hematologic disorder or blood cancer;

(e)    for a Claimant presenting a diagnosis of diffuse large b-cell lymphoma or marginal zone lymphoma, a prior diagnosis of Hepatitis C;

(f)    for a Claimant presenting a diagnosis of Epstein-Barr Virus (EBV)-Positive Diffuse Large B-Cell Lymphoma, a prior diagnosis of Epstein-Barr Virus;

(2)    whether the Claimant's diagnosis of NHL can be reasonably attributed to a cause other than Exposure to a Roundup Product.

(vii)    The Allocation Special Master shall have the discretion to modify the factors listed in Sections 6.10(a)(iv) and 6.10(a)(vi)(1) in light of technological or scientific developments and advancements relating to the diagnosis or treatment of NHL.

(b)    Within 45 days following each Annual Payment Date, the Allocation Special Master, in coordination with the Administrator, shall review the Claim Scores assigned in the just-completed Claim Year and shall convert each Claimant's Claim Score to a monetary value, which shall be the monetary value of such Claimant's Program Award.  The Allocation Special

44

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Master should take reasonable steps to ensure that substantially similar Claimants receive substantially similar Program Awards.  The Allocation Special Master shall make Program Awards beginning with Tier 1, if any, and proceeding in descending order through the Tiers (*i.e.*, from Tier 1 to Tier 2 to Tier 3, and so on) until the cumulative amount of Program Awards made equals the funds available in the Award Fund for that Claim Year, taking into account funds that may be necessary for ECF Awards, EREF Awards, requests for reconsideration, and Exiting Class Member Payments.

(c)    Program Awards shall be made based on Claim Scores; provided, however, that each Program Award must not be greater than 120% of the Tier Average for the applicable Tier or less than 80% of the Tier Average for the applicable Tier, and the yearly average of all Program Awards for each Tier made during a Claim Year must equal the Tier Average for that Tier.  The Allocation Special Master shall consider the effect of requests for reconsideration pursuant to Section 7.1(a) and of Award Rejections pursuant to Section 6.17 when calculating Program Awards in relation to the Tier Average pursuant to this Section 6.10(c) and Section 6.10(b), including by considering the retroactive effect of requests for reconsideration and Award Rejections on prior annual average Program Awards for each Tier.

Section 6.11    Payment Priority for Awards.

(a)    Award Payments for Quick-Pay Awards will be paid prior to any Program Awards and made on a first-in, first-out basis as processed.  Award Payments for Quick-Pay Awards made prior to the Effective Date shall be subject to the limits described in Section 4.4(d). If, prior to the Effective Date, funds allocated to Quick-Pay Awards are exhausted in a given year, then Initial Claimants who have received a Quick-Pay Award but not an Award Payment shall be eligible for such Award Payment during the next period in which funds are available.

(b)    Following the payment of any Quick-Pay Awards, Award Payments for Program Awards determined pursuant to Section 6.10 shall be distributed in descending order by Tier (*i.e.*, from Tier 1 to Tier 2 to Tier 3, and so on).  Award Payments for Program Awards pursuant to Section 6.5(d) shall be distributed after Tier 9.

(c)    Within each Tier, Award Payments for Program Awards shall be distributed:  first to (i) Initial Claimants; and then to (ii) Later Claimants.

(d)    Within each subgroup described in Section 6.11(c), Award Payments for Program Awards will be made on a first-in, first-out basis based upon the Claim Eligibility Date.

(e)    Award Payments for Program Awards shall be made in accordance with these payment priority rules until the Award Fund for each Claim Year (taking account of ECF Awards, EREF Awards, requests for reconsideration, Quick-Pay Awards, if applicable, and Exiting Class Member Payments) is exhausted, with each individual Award Payment subject to the disbursement requirements of Section 6.16.

(f)    Claimants who receive a Program Award but not an Award Payment due to the exhaustion of the Award Fund for that Claim Year will be eligible for an Award Payment in the next Claim Year (or pursuant to Section 4.2 for Remaining Occupational Claimants), subject to the payment priority rules described in Sections 6.11(b)–(d).

45

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 6.12    Extraordinary Circumstances Fund Awards.

(a)    If the Claimant has requested an ECF Award, the Allocation Special Master may make an ECF Award from the ECF if the Claim Package demonstrates extraordinary circumstances.  Such extraordinary circumstances may include, but are not limited to:  (i) death, for Claimants who were diagnosed with NHL and died before age 78; (ii) exceptional injury, such as stem cell or bone marrow transplant or irreversible bodily injury (including, for example, loss of eye, loss of organ, or other significant disfigurement); (iii) a course of treatment related to the Claimant's NHL diagnosis that requires Car-T Cell Therapy or Intrathecal Chemotherapy Treatment; or (iv) any of the factors that are an upward adjustment to a Claim Score listed in Section 6.10(a)(ii)–(v).  The Allocation Special Master shall have the discretion to modify the considerations listed in this Section 6.12(a) in light of technological or scientific developments and advancements relating to the diagnosis or treatment of NHL.  Notwithstanding whether a Claimant has requested an ECF Award, the Allocation Special Master may make an ECF Award to any Claimant whose Claim Score is at the top end of, or exceeds, the range for the applicable Tier, if the Allocation Special Master determines that the Claimant would have qualified for an ECF Award under this Section 6.12 had the Claimant applied for such an Award.

(b)    The ECF (and total ECF Awards) for each Claim Year shall not exceed 5% of the Annual Settlement Payment for that Claim Year (including, for the avoidance of doubt, the amount of the Initial Settlement Payments that constitute the Award Fund pursuant to Section 4.4(d)).  The Allocation Special Master may only make ECF Awards up to that amount.  ECF Awards shall not be considered by the Allocation Special Master when calculating Tier Averages pursuant to Section 6.10(c).

(c)    ECF Awards shall be paid to Claimants simultaneously with payment of their associated Program Award.

Section 6.13    Extraordinary Residential Exposure Fund Awards.

(a)    If the Claimant has requested an EREF Award, the Allocation Special Master may make an EREF Award from the EREF if the Claim Package demonstrates significant and atypical residential exposure.  Such extraordinary residential exposure must include Exposure to any Roundup Product for more than 80 hours in connection with the Application of Roundup Products to a property or properties that in the aggregate and at the same point in time totaled more than 6 acres.  For the avoidance of doubt, only Residential Claimants are eligible to qualify for an EREF Award.

(b)    The EREF shall be funded with 1.5% of the Annual Settlement Payment for each Claim Year (or in the case of the first Claim Year, 1.5% of the amount of the Initial Settlement Payments that constitute the Award Fund pursuant to Section 4.4(d)).  The Allocation Special Master may only make EREF Awards up to the amount available in the EREF.  Any amount allocated to the EREF but not awarded in a Claim Year shall remain in the EREF and shall be rolled over to provide for EREF Awards in the following Claim Year.  Following the Sixteenth Annual Payment Date, any amount remaining in the EREF but not required to pay EREF Awards shall be used to fund Program Awards.  EREF Awards shall not be considered by the Allocation Special Master when calculating Tier Averages pursuant to Section 6.10(c).

46

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(c)    The Allocation Special Master shall develop procedures designed to ensure substantially similar Claimants are treated similarly under Sections 6.13(a)–(b).

(d)    EREF Awards shall be paid to Claimants simultaneously with payment of their associated Program Award.

Section 6.14    Exigency Awards.

(a)    Between the Final Approval Date and the Effective Date, the Allocation Special Master may provide Awards to Eligible Claimants demonstrating either (i) imminent loss of housing, or (ii) a terminal condition making it more likely than not that the Claimant will not survive until the time the Claimant otherwise would receive an Award Payment (such awards being "Exigency Awards").  Following the Administrator's determination under Section 6.5(a) that a Claimant seeking an Exigency Award is Eligible, the Allocation Special Master may assign the associated Claim Package to a Tier pursuant to Section 6.6 and determine an associated Award pursuant to Section 6.10.  For the avoidance of doubt, receipt of an Exigency Award precludes a Claimant from seeking another Award of any type, including a Quick-Pay Award, an ECF Award, an EREF Award, or a Program Award.

(b)    The amount of Exigency Awards that the Allocation Special Master may make is subject to the payment limitations in Section 4.4(d)(iii)–(v).  Notice and payment of Exigency Awards shall be pursuant to Section 6.15(c)–(d) and Section 6.16, respectively.

Section 6.15    Notice of Awards.

(a)    The Administrator will send written notice of each Program Award, ECF Award, and EREF Award to each associated Claimant no later than 10 days after determining the Awards for a Claim Year pursuant to Section 6.10(b)–(c).

(b)    The Administrator will send written notice of each Quick-Pay Award to each associated Claimant no later than 10 days following their Tier assignment under Section 6.7(a), provided, however, if such Tier assignment is made prior to the Effective Date and the funds available for Quick-Pay Awards in a given year have been exhausted, the Administrator will send written notice of each Quick-Pay Award to each associated Claimant no later than 10 days following the availability of funds to pay the Quick-Pay Award.

(c)    The Administrator will send written notice of each Exigency Award to each associated Claimant no later than 10 days following the determination of the Award under Section 6.14(a), provided, however, if the funds available for Exigency Awards in a given year have been exhausted, the Administrator will send written notice of each Exigency Award to each associated Claimant no later than 10 days following the availability of funds to pay the Exigency Award.

(d)    The notice of the Award will include:

(i)    the amount of the Award;

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(ii)      the HCA's determination of any amount to be deducted from the Award in connection with identified Liens, as set forth in Article XVIII;

(iii)      information regarding how the Claimant can accept the Award, which shall include requiring the Claimant to provide a fully executed Form of Release as set forth in Exhibit D, a waiver of any request for reconsideration of the Award, evidence that the Claimant has filed in the appropriate jurisdiction any stipulated dismissals with prejudice held in escrow by the Administrator under Section 6.1(d) and, if applicable, payment information pursuant to Section 6.16(a)(iv);

(iv)      information regarding how the Claimant can request reconsideration of the Award, as set forth in Article VII, if applicable; and

(v)      for Subclass 2 Claimants, information regarding their right to reject the Award under Section 6.17.

Section 6.16    Timing and Payment of Awards.

(a)      An Award Payment shall be made in satisfaction of an Award 14 days following the latest of the:

(i)      date of notice to the Claimant pursuant to Section 6.15;

(ii)      date of receipt from the Claimant of a fully executed Form of Release;

(iii)      date of receipt from the Claimant of evidence that any stipulated dismissals with prejudice which were held in escrow as required under Section 6.1(d) have been filed;

(iv)      date of receipt of payment information as required by the Administrator; or

(v)      if applicable, resolution of a request for reconsideration of the Award (or expiration of the time to submit such a request) pursuant to Section 7.1(a), or receipt of a waiver of a request for reconsideration.

(b)      Claimants who are unrepresented by counsel may elect to receive their Award Payment by physical check, electronic funds transfer, or any other such commonly accepted method of payment.  Claimants who are represented by counsel shall receive Award Payments by electronic fund transfer directly to the trust account of the attorney.

(c)      Any Later Retained Counsel to a Claimant who receives an Award Payment may collect no more than 22% of the Award Payment in contingent or other fees.

Section 6.17    Award Rejections.  A Subclass 2 Claimant who receives a Program Award (and ECF Award or EREF Award, if applicable), may elect to reject such Award(s) only if the Subclass 2 Claimant:  (a) timely requests reconsideration of such Award(s), and (b) either has

48

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

submitted a Claim Package that included a request for an ECF Award pursuant to Section 6.2(a)(vi) and Section 6.3(a)(xviii), or submits together with the request for reconsideration a request for an ECF Award together with any supporting documentation. The Settlement Special Master shall review the request for reconsideration as provided for in Section 7.1(a), provided, however, that the Settlement Special Master shall also, if necessary, review any additional documents submitted under this Section 6.17 and consider whether the Subclass 2 Claimant is eligible for an ECF Award. Following the resolution of the request for reconsideration, the Subclass 2 Claimant may elect to reject the Program Award (and ECF Award or EREF Award, if applicable) by submitting an Award Rejection form to the Administrator (such Subclass 2 Claimant being an "Award Rejector," and the act of rejecting an Award an "Award Rejection"). The Administrator shall determine the requirements for the Award Rejection form, provided that it must contain the Personal Signature of the Award Rejector and an acknowledgement of the provisions of Section 8.2(a). For the avoidance of doubt, a Subclass 2 Claimant who fails to comply with this Section 6.17 shall not be eligible to be an Award Rejector.

Section 6.18    Representative Claimants.

(a)    In connection with an Award issued to a Representative Claimant, the Administrator will not issue payment unless the Administrator has received from the Settlement Class Member or Representative Claimant the attestation and indemnification set forth in Section 6.3(a)(xiii). The Administrator is authorized to adopt procedures approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated, or incompetent Settlement Class Members or their guardians.

(b)    Only one Representative Claimant may be authorized to act on behalf of a given Settlement Class Member. If multiple Persons purport to act on behalf of a given Settlement Class Member, the Administrator, after conducting an appropriate investigation including the review of any necessary documentation, shall determine which Person is authorized to act on behalf of a given Settlement Class Member. Any Person the Administrator determines is not authorized to act on behalf of a given Settlement Class Member may request reconsideration of that decision to the Settlement Special Master by submitting a written challenge to the Settlement Special Master within 30 days of receiving the Administrator's determination. A copy of such submission shall be provided to the Administrator, and the Administrator shall have 30 days to provide the Settlement Special Master with written support for its determination. The Settlement Special Master will be provided access to all documents and information available to the Administrator to aid in determining the reconsideration request. Requests for reconsideration may only be taken to the Settlement Special Master, not the Court. The decision of the Settlement Special Master shall be final and binding, and not subject to further appeal.

## ARTICLE VII
### Reconsideration, Appeal and Dispute Resolution

Section 7.1    Reconsideration and Appeal Rights.

(a)    Within 45 days of receiving notice of an Award made pursuant to Section 6.10 or of an Adverse Eligibility Determination, a Claimant may request reconsideration by the Settlement Special Master of that Award or Adverse Eligibility Determination. A Claimant

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

may request reconsideration only on the basis that the Claimant believes that the Administrator or the Allocation Special Master has clearly erred with respect to an Adverse Eligibility Determination pursuant to Section 6.5(b), or with respect to a factual determination in applying the Tier and scoring procedures pursuant to Sections 6.6–6.10. The Settlement Special Master shall develop processes to receive information and adjudicate any such request for reconsideration. Absent extraordinary circumstances, the record on reconsideration shall be limited to the record before the Allocation Special Master. The result of a request for reconsideration under this Section 7.1(a) may result in a greater or lesser Award. Upon the submission of a request for reconsideration by a Claimant, the Administrator shall withhold the Award Payment of any Award under reconsideration (as well as any ECF Award or EREF Award to that Claimant, if applicable) pending resolution of the reconsideration request by the Settlement Special Master.

(b)    A Quick-Pay Award pursuant to Section 6.11(a), the amount of or eligibility for an ECF Award pursuant to Section 6.12 (except as provided for in Section 6.17), the amount of or eligibility for an EREF Award pursuant to Section 6.13, and the amount of or eligibility for an Exigency Award pursuant to Section 6.14 are not subject to requests for reconsideration.

(c)    The Defendant and Class Counsel shall have the right to appeal Administrator calculations and determinations regarding Payment Credits made pursuant to Section 5.1 and Section 5.2. Such appeals must be made to the Settlement Special Master within 45 days of notice of the subject determination. The Settlement Special Master, in consultation with the Defendant and Class Counsel, shall develop processes to receive information and adjudicate any such appeal.

Section 7.2    Dispute Resolution. In addition to disputes relating to attorneys' fees and costs arising under Section 15.10, the Defendant and Class Counsel shall have the right to raise disputes to the Settlement Special Master to resolve instances of negligence, wrongdoing, or other instances of failure to abide by or implement the terms of this Settlement Agreement by the Administrator or the Allocation Special Master. The Settlement Special Master, in consultation with the Defendant and Class Counsel, shall develop dispute resolution processes to receive information and adjudicate any such dispute.

Section 7.3    Waiver. Settlement Class Members, by their decision not to Opt Out of the Settlement Class, knowingly and intentionally waive any right of appeal to any court from any decision of the Settlement Special Master regarding requests for reconsideration of Awards, any decisions of the Settlement Special Master, the Allocation Special Master, or the Administrator including, but not limited to, applications of the Tier and Claim Score procedures, and any Adverse Eligibility Determinations by the Allocation Special Master or the Administrator.

## ARTICLE VIII
## Exiting Class Members

Section 8.1    Exiting Class Member Eligibility.

(a)    A Settlement Class Member may elect to exit the Claims Program and become an Exiting Class Member if:

50

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(i)    the Settlement Class Member has received a Claim Eligibility Date but has not received an Award within five years of their Claim Eligibility Date, and provides notice to the Administrator of their intent to exit the Claims Program and become an Exiting Class Member, according to such procedures as shall be established by the Administrator, with such notice of intent containing the Settlement Class Member's Personal Signature, and an acknowledgement of the provisions of Section 8.2(a); or

(ii)    the Settlement Class Member is a Residential Claimant or a Claimant in Tier 9 who has received a Claim Eligibility Date, but has not received an Award Payment following the exhaustion of the Sixteenth Annual Settlement Payment; or

(iii)    the Settlement Class Member is a Remaining Occupational Claimant who has not received an Award Payment following the exhaustion of all funds made available to fund Program Awards for Remaining Occupational Claimants under Section 4.2; or

(iv)    the Settlement Class Member is an Award Rejector pursuant to Section 6.17.

(b)    A Settlement Class Member who exits the Claims Program and becomes an Exiting Class Member pursuant to Section 8.1(a)(i), (ii) or (iii) shall receive an Exiting Class Member Payment.  A Settlement Class Member who receives an Exiting Class Member Payment shall not be eligible to subsequently apply for or receive any Award.[2]

(c)    For the avoidance of doubt, no Settlement Class Member who has received an Award Payment of any type may become an Exiting Class Member.

Section 8.2    Exiting Class Member Release.

(a)    The Releases, Covenant Not to Sue, and stay and dismissal set forth in Section 3.1 shall become null, void, and without effect as to an Exiting Class Member, and to the extent such Exiting Class Member previously dismissed or stayed a Roundup Claim, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, such Roundup Claim may be reinstated as if it had never been dismissed or stayed, provided, however, that such Exiting Class Member will continue to be subject to the provisions of Section 3.1 with respect to any and all Roundup Claims for Punitive Damages, and for any proceeding stayed under Section 3.1(c), the stay may only be lifted with respect to Claims that are not Roundup Claims for Punitive Damages. For the avoidance of doubt, this Settlement Agreement shall remain a complete bar to any Claim for Punitive Damages related to any Roundup Claim asserted at any time by an Exiting Class Member.

---

[2] Beginning as of the Fifth Annual Payment Date, Exiting Class Member Payments shall be annually adjusted for inflation, not to exceed two-and-a-half percent (2.5%) per year, with the inflation adjustment each year within that range subject to the judgment of the Settlement Special Master.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(b)      Notwithstanding anything herein to the contrary:

(i)      the applicable statute of limitations for an Exiting Class Member with respect to Roundup Claims shall be tolled from the Preliminary Approval Date or date of Qualifying Diagnosis, whichever is later, until the earlier of (1) 60 days after the date on which the Settlement Class Member becomes an Exiting Class Member pursuant to Section 8.1, or (2) the date on which tolled Roundup Claims are filed after the Exiting Class Member exits the Claims Program; and

(ii)      for Initial Claimants, the Defendant agrees:  (1) that Initial Claimants who become Exiting Class Members pursuant to Section 8.1 and who have dismissed their Roundup Lawsuit shall have the right, but not the obligation, to refile their Roundup Claims in the same venue in which their original Roundup Lawsuit was filed, subject to any previously unresolved challenges to venue; (2) that the Defendant shall have no additional removal rights that the Defendant did not have at the time the Initial Claimant's prior Roundup Lawsuit was dismissed; and (3) that any applicable statutes of limitations are tolled, with the effective date for tolling beginning as of the date such Initial Claimant's Roundup Lawsuit was originally filed and ending 60 days after the Initial Claimant becomes an Exiting Class Member or the date on which the tolled Roundup Claims are filed, whichever is earlier; and

(iii)      the Monsanto Parties shall retain and preserve all defenses to any Roundup Claim brought by an Exiting Class Member, including, but not limited to, defenses concerning the applicable statutes of limitations, other than as set forth in Section 8.2(b)(ii) above.

Section 8.3      Settlement Class Members Without NHL.

(a)      Settlement Class Members who have not been diagnosed with NHL as of the Sixteenth Annual Payment Date are relieved from all obligations under this Settlement Agreement, and following the Sixteenth Annual Payment Date, the Releases and Covenant Not to Sue set forth in Section 3.1 shall become null, void, and without effect as to all such Settlement Class Members.  For the avoidance of doubt, such Settlement Class Members are not eligible to receive an Exiting Class Member Payment.

## ARTICLE IX
## Audit Rights

Section 9.1      Audit Rights and Prevention of Fraud.

(a)      Class Counsel and the Defendant each will have the absolute right and discretion, at any time, but at their sole expense, in good faith, to conduct, or have conducted by an independent auditor, audits of Claim Packages, Quick-Pay Claim Packages, and Awards, as well as to audit the conduct of the Administrator, the Allocation Special Master, the Healthcare Compliance Administrator, or the Settlement Special Master for instances of fraud, negligence, wrongdoing, misconduct, or other instances of failure to abide by or implement the terms of this Settlement Agreement, and further, to institute reasonable measures to protect against fraud, waste, and abuse.  Such audits may include a review of the records of the Administrator, to be performed

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

by a certified public accountant, to ensure that Claim Packages, Quick-Pay Claim Packages, and Awards are being processed and paid in compliance with the terms and conditions of the Settlement Agreement.  The Administrator, the Allocation Special Master, the Healthcare Compliance Administrator, and the Settlement Special Master shall cooperate in good faith with the audit.  The audit findings report will be provided to the Court, Class Counsel, and the Defendant.

(b)    The Administrator may select for audit a Claim Package or Quick-Pay Claim Package where the Administrator, based upon its experience with the claims administration process, determines that the Claim Package, Quick-Pay Claim Package, or documents submitted in support of the Claim Package or Quick-Pay Claim Package may contain intentional misrepresentation, omission, or concealment of material facts.  Class Counsel, the Defendant, and the Administrator will establish and implement procedures to detect and prevent fraudulent submissions, and payments of fraudulent claims for Awards.  Among other fraud detection and prevention procedures, the following procedures relating to claim audits will be instituted:

(i)    On an annual basis, the Administrator will audit a random selection of 2% of all Claim Packages submitted that year by Claimants whose only submitted proof as to Exposure under Section 6.3(a)(vii)(2) is an attestation.  Such audit shall include, but is not limited to, a review of information as to identity of the Claimant's counsel (if any) and any entity that referred Claimant to counsel, and a phone interview with the Claimant to discuss the circumstances of their Exposure;

(ii)    On a quarterly basis, the Administrator will audit at least 30 Claim Packages (excluding all Claim Packages subject to audit under Section 9.1(b)(i)) or Quick-Pay Claim Packages that have received a Claim Eligibility Date during the preceding quarter.  The Administrator will select such Claim Packages or Quick-Pay Claim Packages for auditing to address a specific concern raised by a Claim Package or Quick-Pay Claim Package, or on a random basis.  The Administrator shall audit Claim Packages representative of each Tier to the extent possible for the purpose of ensuring audits of varying types of claims; and

(iii)    Upon selection of a Claim Package or Quick-Pay Claim Package for any audit, the Administrator will notify Class Counsel, the Settlement Class Member (and his or her individual counsel, if applicable), and the Defendant, and will require that, within 90 days, or such other time as is necessary and reasonable under the circumstances, the audited Settlement Class Member submit to the Administrator, to the extent not already provided, such information as may be necessary and appropriate to audit the Claim Package or Quick-Pay Claim Package, including, but not limited to, the records listed in Section 9.1(c).

(c)    A Settlement Class Member whose Claim Package, Quick-Pay Claim Package, or Award has been selected for audit by the Administrator, Class Counsel, or the Defendant may be required to submit additional records, including medical records, employment records, proof of Exposure to Roundup Products, additional information regarding the list of Governmental Payors and Other Insurers provided under Article XVIII, and any other information or documents as requested by the auditing party.  Unless the Administrator or other auditing party

53

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

finds indicia of misrepresentation, omission or concealment of a material fact, or other indicia of wrongdoing, the Administrator shall seek to minimize the burden on Settlement Class Members of any requests for additional records.  The Party requesting the audit, or the Administrator, if applicable, shall pay reasonable copying costs to the Settlement Class Member related to providing the documents and information specified in this subsection.

(d)    A Settlement Class Member who refuses to cooperate with any audit, including by unreasonably failing or refusing to provide the auditing party with all records and information sought within the time frame specified, will have their claim denied without right to a request for reconsideration, and no Award will be provided to that Settlement Class Member.

(e)    When auditing any Settlement Class Member's Claim Package or Quick-Pay Claim Package, the Administrator will review the records and information relating to that claim and determine whether the Claim Package or Quick-Pay Claim Package misrepresents, omits, or conceals material facts that affect the claim and whether it sufficiently demonstrates the Settlement Class Member's Exposure to Roundup Products.

(f)    If, upon completion of any audit, the Administrator determines that there has not been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the review process will proceed under Section 6.5(a).

(g)    If, upon completion of any audit, the Administrator concludes that a Settlement Class Member has submitted a Claim Package or Quick-Pay Claim Package with a misrepresentation, omission, or concealment of a material fact, the Administrator shall notify the Settlement Class Member, Class Counsel and the Defendant of such determination.  Additionally, the Administrator may, at its discretion, deny the claim, disqualify the Settlement Class Member from submitting any further Claim Packages or Quick-Pay Claim Packages, seek reimbursement of any Award Payments already made, or refer the Settlement Class Member to state or federal authorities.  If the Administrator determines that an attorney, law firm, referring entity, or physician has contributed to the submission of a Claim Package or Quick-Pay Claim Package with a misrepresentation, omission, or concealment of a material fact (including, for example, by backdating or otherwise falsifying a retention agreement), the Administrator may:  (i) conduct additional audits on other Claim Packages or Quick-Pay Claim Packages involving the same attorney, law firm, or physician, including those already paid; (ii) refer such attorney, law firm, referring entity, or physician to the appropriate disciplinary boards or to state or federal authorities; or (iii) disqualify the attorney, law firm, referring entity, or physician from further participation in the Claims Program and Settlement Agreement.  For the avoidance of doubt, an attorney, law firm, referring entity, or physician that has been found to have a pattern of contributing to the submission of unsubstantiated Claim Packages, including pursuant to the reviews provided for in Section 9.1(b), shall be disqualified from further participation in the Claims Program or Settlement Agreement.  If a law firm is found by the Administrator to have knowingly or recklessly submitted more than one fraudulent Claim Package or Quick-Pay Claim Package on behalf of Settlement Class Members, Claim Package and Quick-Pay Claim Package submissions by that law firm will no longer be accepted, and any attorneys' fees due to be paid to the firm will be forfeited and revert to the Settlement Fund.  The Administrator shall have flexibility to adopt additional measures to prevent fraud in order to protect the Settlement Fund and the integrity of Awards.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(h)    A law firm or other entity that is disqualified from participation in the Claims Program and Settlement Agreement pursuant to Section 9.1(g) may seek reconsideration of that determination by the Settlement Special Master.  The disqualification of a law firm or attorney shall not serve to disqualify that law firm or attorney's clients from participation in the Claims Program, unless a client is also disqualified pursuant to Section 9.1(g).

(i)    Subject to the discretion of the Administrator and the Settlement Special Master, as applicable, the deadlines relating to the Administrator's review, investigation, timing of payment, and requests for reconsideration may be temporarily suspended for any Claim Package or Quick-Pay Claim Package subject to an audit under this Section 9.1.

(j)    The Administrator, in consultation with Class Counsel and the Defendant, will establish processes to detect and prevent fraud, including, for example and without limitation, claims processing quality training, and review and data analytics to spot "red flags" of fraud, including, without limitation, alteration of documents, questionable signatures, duplicative documents, the number of Claim Packages or Quick-Pay Claim Packages from similar addresses or supported by the same physician or office of physicians, data metrics indicating patterns of fraudulent submissions, and such other attributes of claim submissions that create a reasonable suspicion of fraud.  The Administrator shall also develop a process by which Claimants can provide evidence challenging the finding of fraud before having their Claim Package or Quick-Pay Claim Package disqualified.

(k)    For good cause shown, including, without limitation, the results of audits conducted under this Section 9.1, the Settlement Special Master at any time may order the Administrator to perform such additional audits or adopt such additional claims administration procedures as the Settlement Special Master deems appropriate.

## ARTICLE X
## Preliminary Approval

Section 10.1    <u>Preliminary Approval Process</u>.  As soon as possible on or following the Settlement Date, and in no case more than 3 days following the Settlement Date, Class Counsel shall file with the Court:

(a)    the Preliminary Approval Motion, attaching the Settlement Agreement as an exhibit thereto;

(b)    the proposed Preliminary Approval Order, which is attached as Exhibit G;

(c)    a supporting brief requesting, and providing authority for, the Court to make the required findings under Rule 52.08 of the Missouri Rules with respect to preliminary approval of the Settlement Agreement and preliminary certification of the proposed Settlement Class and Subclasses as Rule 52.08(b)(3) class and subclasses for purposes of settlement, and for the Court to approve the Settlement Class Notice and the Settlement Class Notice Plan; and

(d)    a request that the Court set a hearing to consider the Preliminary Approval Order within 15 days after the Preliminary Approval Motion is filed.

55

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 10.2    <u>Preliminary Approval Timing</u>.    The Parties agree to take all actions necessary to obtain the Preliminary Approval Order from the Court.  The Parties agree that:

(a)    It is a condition to the Settlement Agreement that the Preliminary Approval Order be entered, with any modifications acceptable to the Parties in their individual discretion exercised in good faith, within a reasonable period of time following the Settlement Date, and remain in full force and effect until entry of the Final Order and Judgment.

(b)    The Preliminary Approval Order shall contain, in addition to the provisions necessary and appropriate to direct, authorize and commence the Settlement Class Notice Plan, provisions setting forth the process for the Court to consider final approval of the Settlement Agreement, provisions authorizing all actions under the Settlement Agreement that are permitted or required to be taken following entry of the Preliminary Approval Order and prior to entry of the Final Order and Judgment, provisions scheduling a formal Fairness Hearing and all related deadlines, and provisions staying the prosecution and preventing the further filing of any and all Roundup Claims, Roundup Lawsuits, and Related-Party Lawsuits by any Settlement Class Member Party in any court of the State of Missouri against any of the Monsanto Parties or the Related Parties.  The stay and prohibition shall remain in effect until entry of the Final Order and Judgment.  The foregoing stay and prohibition provisions of the Preliminary Approval Order will be superseded by the stay and prohibition provisions of the Final Order and Judgment.  For the avoidance of doubt, the stay and prohibition order shall not apply to any Opt Outs, effective as of the date their Opt Out becomes effective under Section 12.2(h).  The Fairness Hearing shall be scheduled for no sooner than 30 days following the deadline to file an objection and the close of the Opt Out Period.

(c)    For the avoidance of doubt, any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations prior to entry of the Preliminary Approval Order will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or the Preliminary Approval Order.

(d)    Settlement Class Members do not admit that, by entering into the Settlement Agreement, they have waived any applicable tolling protections available as a matter of law or equity.  Nothing in the Settlement Agreement will constitute an admission in any manner that the statute of limitations has been tolled for anyone outside the Settlement Class, nor does it constitute a waiver of legal positions regarding tolling.

**ARTICLE XI**
**Notice**

Section 11.1    <u>Notice</u>.  As part of the Preliminary Approval Motion, Class Representatives and Subclass Representatives will submit to the Court a "Settlement Class Notice Plan" agreed upon by Class Counsel and the Defendant and designed to be consistent with and meet the requirements of due process and Rule 52 of the Missouri Rules.  The Settlement Class Notice Plan will be designed to include the best notice practicable for the Settlement Class and each of the Subclasses.  The Settlement Class Notice Agent will implement the Settlement Class Notice Plan following the Court's entry of the Preliminary Approval Order, approval of the Settlement Class Notice (in the form of Exhibit E, together with any modifications acceptable to the Parties in their

56

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

individual discretion), and approval of the Settlement Class Notice Plan as consistent with Rule 52.08(c) of the Missouri Rules and due process.  The Settlement Class Notice Costs will be paid out of the Settlement Fund.  The Parties shall inform the Administrator of the dollar amount of notice costs once such final dollar amount is known.

Section 11.2    <u>Settlement Website</u>.  Within 10 days after entry of the Preliminary Approval Order, Class Counsel and the Administrator, in consultation with the Settlement Class Notice Agent, will establish a public website containing information about the Settlement Agreement (the "Settlement Website"), including the Settlement Class Notice, frequently asked questions, and other relevant documents.  The Settlement Website will also provide access to a secure web-based portal that shall be used for online registration of Settlement Class Members for settlement administration purposes, including submitting claims and Opt Out requests.  The Settlement Website and relevant related documents shall be maintained in English, Spanish, and any other language deemed necessary by Class Counsel and the Administrator.  The Settlement Website will be maintained for the duration of the Settlement Fund.

Section 11.3    <u>Annual Notice</u>.  On an annual basis following the entry of the Preliminary Approval Order, until the Sixteenth Annual Payment Date, the Settlement Class Notice Agent shall disseminate through media and other communication channels deemed appropriate and effective by the Settlement Class Notice Agent to reach Settlement Class Members, a short-form notice pertaining to the Settlement Agreement.  Such notice shall include, at minimum, the information contained in Exhibit F, pursuant to the Settlement Class Notice Plan.

## ARTICLE XII
## Opt Out

Section 12.1    <u>Opt Out Rights</u>.

(a)    All Settlement Class Members will have a right to Opt Out, commencing on the entry of the Preliminary Approval Order.  In seeking a Preliminary Approval Order, the Parties will request that the deadline for submission of Opt Outs shall be set on a date no less than 90 calendar days after the commencement of the dissemination of the Settlement Class Notice.

(b)    Any Person that submits a timely and Valid Opt Out shall not:  (i) be bound by any orders or judgments effecting the Settlement Agreement; (ii) be entitled to any of the relief or other benefits provided under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to submit an objection.

Section 12.2    <u>Procedure</u>.

(a)    To Opt Out validly from the Settlement Class, a Settlement Class Member must submit an individual written request to Opt Out stating, "I wish to exclude myself from the Settlement Class in the 22nd Judicial Circuit Court, City of St. Louis, Missouri" (or substantially similar clear and unambiguous language), and containing the information and materials set forth in Section 12.2(b) to the Administrator on or before the date 90 days following the commencement of the Settlement Class Notice Plan (postmarked, emailed, or submitted through the Settlement Website no later than such date).

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(b)    The written request to Opt Out must also contain:

(i)    the Settlement Class Member's printed name;

(ii)    the Settlement Class Member's address;

(iii)    the Settlement Class Member's telephone number;

(iv)    the Settlement Class Member's email address, if any;

(v)    the Settlement Class Member's date of birth;

(vi)    a copy of his or her identification issued by any Governmental Authority or other bona fide identification;

(vii)    the dated Personal Signature of the Settlement Class Member seeking to exclude himself or herself from the Settlement Class;

(viii)    a disclosure certifying to the best of their knowledge whether the Settlement Class Member has or has not entered into an agreement tolling the applicable statute of limitations to bring Roundup Lawsuits or Roundup Claims;

(ix)    a disclosure certifying to the best of their knowledge whether the Settlement Class Member has or has not filed a Roundup Lawsuit or Related-Party Lawsuit against any Monsanto Parties or Related Parties as of the date of the written Opt Out request;

(x)    a disclosure certifying to the best of their knowledge whether the Settlement Class Member has or has not retained counsel in connection with a present or future Roundup Lawsuit or Roundup Claim and, if so, disclosing the name of the retained attorney and law firm; and

(xi)    a declaration with the Personal Signature of the Settlement Class Member attesting to Exposure to Roundup Products, and if the Settlement Class Member is a member of Subclass 1, attesting to a Qualifying Diagnosis and the date such diagnosis was made.

(c)    The Settlement Class Member must:  (i) mail the signed written request to Opt Out to a physical address to be identified in the Settlement Class Notice; (ii) email a complete and legible scanned copy or photograph of the signed written request to an email address to be identified in the Settlement Class Notice; or (iii) submit a complete and legible scanned copy or photograph of the signed written request through the Settlement Website.  Opt Outs submitted by any Settlement Class Member to incorrect locations shall not be Valid.  Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of an individual Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(d)      No "mass," "class," "group," or otherwise combined Opt Out shall be valid, and no Settlement Class Member may submit an Opt Out on behalf of any other Settlement Class Member.  Any Opt Out request simultaneously submitted on behalf of two or more Settlement Class Members shall be deemed invalid as to all such individuals.  However, where there is both a Settlement Class Member or a Representative Claimant, and one or more Derivative Claimants, the Settlement Class Member's or the Representative Claimant's exercise or failure to exercise his or her Opt Out right shall be binding on the associated Derivative Claimant(s).

(e)      The Administrator will provide instructions regarding the procedures that must be followed to Opt Out of the Settlement Class pursuant to Rule 52.08(c) of the Missouri Rules.

(f)      The Administrator will provide copies of all requests to Opt Out to Class Counsel and the Defendant within seven days of receipt of each such request.  Class Counsel or the Defendant may challenge the validity of an Opt Out to the Court, which shall establish procedures in consultation with Class Counsel and the Defendant to receive information and evaluate such challenges.  Any such challenge must be made no later than seven days following the close of the Opt Out Period, and must be resolved by the Administrator within seven days of the receipt of the challenge.

(g)      Within seven days of the close of the Opt Out Period, the Administrator shall provide Class Counsel and the Defendant with a complete list of all Opt Outs that the Administrator believes to be timely and Valid, a "Valid" Opt Out being one that complies with the requirements of this Section 12.2.

(h)      A Valid Opt Out from the Settlement Class will become effective as of the later of 21 days of receipt by the Administrator or the resolution of any challenge to the validity of the request brought by Class Counsel or the Defendant, pursuant to Section 12.2(f).

Section 12.3    Revocation of Opt Out.  Prior to entry of the Final Order and Judgment, any Settlement Class Member may seek to revoke his or her Opt Out from the Settlement Class and thereby receive the benefits of the Settlement Agreement by submitting a request to the Administrator by email, or mail, or through the Settlement Website (who will forward such request to Class Counsel and the Defendant), stating, "I wish to revoke my request to be excluded from the Settlement Class in the 22nd Judicial Circuit Court, City of St. Louis, Missouri" (or substantially similar clear and unambiguous language), and also containing the Settlement Class Member's Personal Signature, printed name, address, phone number, and date of birth.  Such revocation shall only be effective with the express written consent of the Defendant (in its individual discretion) or order of the Court.

Section 12.4    Any Settlement Class Member who does not submit a timely and Valid Opt Out submits to the jurisdiction of the Court and, unless the Settlement Class Member submits an objection that complies with the provisions of Article XIII, shall waive and forfeit any and all objections the Settlement Class Member may have asserted.

Section 12.5    Termination Right.  The Defendant shall have the right, in its individual discretion, to terminate and render null and void the Settlement Agreement pursuant to the

59

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

conditions described in Confidential Exhibit I (the "Termination Right").  The Defendant must provide notice of its written election to terminate the Settlement Agreement under this provision to Class Counsel and the Court prior to the Fairness Hearing and following receipt from the Administrator of the complete list of all Opt Outs that the Administrator believes to be timely and Valid.  If the Defendant provides notice of termination under this provision, the Settlement Agreement shall be considered null and void and shall have no further effect, and any payments made by the Defendant into the Settlement Fund pursuant to Section 4.1(b) shall be immediately returned to the Defendant after payment of any Settlement Class Notice Costs.  In such event, the Defendant will not be deemed to have consented to certification of any class, and will retain all rights to oppose, appeal, or otherwise challenge, legally or procedurally, class certification or any other issue in this case.  Likewise, the participation in the Settlement Agreement by any Class Representative or Settlement Class Member cannot be raised as a defense to their claims.

## ARTICLE XIII
### Objections

Section 13.1    Objections.

(a)    Provided that a Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 12.2, the Settlement Class Member may present written objections, if any, explaining why he or she believes the Settlement Agreement should not be approved by the Court as fair, reasonable, and adequate.

(b)    No later than such date as is ordered by the Court, a Settlement Class Member who wishes to object to any aspect of the Settlement Agreement must file with the Court, or as the Court otherwise may direct, a written statement of the objections.  The written statement of objections must include:

(i)    a detailed statement of the Settlement Class Member's objections, as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention;

(ii)    the Settlement Class Member's printed name, address, telephone number, written evidence establishing that the objector is a Settlement Class Member, including proof setting forth the circumstances of the Settlement Class Member's Exposure to Roundup Products as set forth in Section 6.3(a)(vii) (including whether such Exposure was in an occupational or residential context) and, if the objector is a member of Subclass 1, proof of a Qualifying Diagnosis and the date such diagnosis was made, as set forth in Section 6.3(a)(vi);

(iii)    any other supporting papers, materials, or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection;

(iv)    a certification that the objector has read the objection and agrees with it;

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(v)    the Settlement Class Member and their counsel's full history of prior objections to class action certification and approval, including the case name, case number, identity of the court, and date of each such filing; and

(vi)    the dated Personal Signature of the Settlement Class Member making the objection, in addition to any filing requirements of the Court regarding signatures.

(c)    The Court shall determine whether any Settlement Class Members who do not follow the procedures will have waived any objections they may have.

(d)    All objections must be filed and served on such schedule as the Court may direct.  In filing a Preliminary Approval Motion, Class Counsel will request that the deadline for submission of objections shall be set on a date no less than 90 calendar days after the commencement of the dissemination of the Settlement Class Notice.  Objections submitted by any Settlement Class Member to incorrect locations shall not be valid.

(e)    A Settlement Class Member may object on his or her own behalf or through an attorney hired at that Settlement Class Member's own expense; provided that the Settlement Class Member has not submitted a written request to Opt Out, as set forth in Section 12.2. Attorneys asserting objections on behalf of Settlement Class Members must:  (i) file a notice of appearance with the Court by the date set forth in the Preliminary Approval Order, or as the Court otherwise may direct; (ii) file a sworn declaration attesting to his or her representation of each Settlement Class Member on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such Settlement Class Member; and (iii) comply with the procedures described in this Section 13.1.

(f)    A Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in the Preliminary Approval Order, or as the Court otherwise may direct, a written notice of his or her intention to appear at the Fairness Hearing, in accordance with the requirements set forth in the Preliminary Approval Order.

(g)    Class Counsel may seek reasonable discovery from any objectors.

(h)    Any Settlement Class Member who fails to comply with the provisions of this Section 13.1 will waive and forfeit any and all rights he or she may have to object to the Settlement Agreement.

(i)    The assertion of an objection under this Section 13.1 does not operate to Opt Out the Person asserting it, or otherwise exclude that Person from the Settlement Class.  A Person within the Settlement Class can Opt Out of the Settlement Class and Settlement only by complying with the provisions of Article XII.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## ARTICLE XIV
## Final Order and Judgment and Dismissal

Section 14.1    Fairness Hearing and Final Order and Judgment.    At the Fairness Hearing, the Parties will request that the Court:  (a) enter the Final Order and Judgment in the form attached hereto as Exhibit H, with any modifications acceptable to the Parties in their individual discretion exercised in good faith; (b) conclusively certify the Settlement Class; (c) approve the Settlement Agreement as final, fair, reasonable, adequate, and binding on all Settlement Class Members; (d) stay Roundup Claims, any Roundup Lawsuits and Related-Party Lawsuits as set forth in this Settlement Agreement; and (e) permanently bar and enjoin any Settlement Class Member Party from asserting, pursuing, continuing to prosecute, commencing, filing, initiating, instituting, causing to be instituted, assisting in instituting, or permitting to be instituted on their, his, her, or its behalf, or on behalf of any other Person, any Roundup Claim against any of the Monsanto Parties or Related Parties in any court of the State of Missouri, as well as in any other forum or jurisdiction to the fullest extent permissible under applicable law, subject to the provisions of Section 8.2.  The Parties agree to take all actions reasonably necessary to obtain final approval of the Settlement Agreement; provided, however, that no Party shall be required to agree to any modification of the proposed Final Order and Judgment attached hereto as Exhibit H.

Section 14.2    The stay under Section 10.2(b) shall expire:  (a) if entry of the Final Order and Judgment is denied (or its entry is reversed), effective on the date upon which such denial or reversal has become final and non-appealable and not subject to further discretionary review (if any), including by the Missouri Supreme Court or the U.S. Supreme Court; or (b) if the Settlement Agreement is otherwise terminated, effective as of the date 30 days after the termination.

Section 14.3    Attorneys' Fees, Costs and Service Awards.    Pursuant to Missouri Rule 74.16, Class Counsel may apply for a fee, reimbursement of costs, and Class Representative and Subclass Representative service awards, all to be paid out of the Settlement Fund, consisting of a portion of the Settlement Fund as set forth in Section 15.1.  That application shall be filed not less than 20 business days before objections are due pursuant to Section 13.1.

## ARTICLE XV
## Attorneys' Fees

Section 15.1    Fee, Expense and Service Award Application by Class Counsel.    Pursuant to Section 14.3, Class Counsel will submit an application to the Court prior to the Fairness Hearing for:  (a) an award of reasonable attorneys' fees; (b) reimbursement of costs incurred in connection with the Lawsuit; and (c) Class Representative and Subclass Representative service awards.  The amount awarded pursuant to this Section 15.1 shall be in the discretion of the Court, subject to applicable law.

Section 15.2    Fee Application by Other Plaintiffs' Counsel.    The Court shall establish a process for counsel other than Class Counsel to submit applications within 90 days following Final Court Approval for a portion of the award of attorneys' fees.  Any such application must include the representations and certifications set forth in Sections 15.6 and 15.7.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 15.3    Payment.  Any amounts awarded by the Court pursuant to Section 15.1 shall be paid by the Administrator out of the Settlement Fund as Additional Permitted Fund Uses.  In no event shall the Defendant have any obligation to pay any fees, costs, or expenses other than its obligation to make settlement payments as set forth in Article IV.

Section 15.4    Allocation and Reporting.  Any fees or costs awarded by the Court pursuant to Section 15.1 shall be allocated by the Court between (i) Class Counsel, on the one hand, and (ii) any other counsel who apply to the Court for a fee, on the other.  The Court shall further allocate the portion allocated to counsel other than Class Counsel who have applied for a fee among such of those counsel as the Court deems appropriate.  These allocations shall be made using the Court's judgment and discretion to compensate fairly based on contribution to the litigation of Roundup Claims and to the Settlement Agreement and on actual costs incurred.  Because Opt Outs may trigger Payment Credits that reduce the Settlement Fund, the Court (or any other person selected to allocate any portion of the fees awarded) shall, in assessing the contribution of an attorney (including each of Class Counsel) give significant weight to the extent to which the attorney (or his or her law firm) and his or her clients have contributed to the success of the Settlement Agreement, as well as the extent to which the attorney (or his or her law firm) has caused a detriment to the Settlement Class by continuing to represent or participate in the representation of Opt Outs (or receiving or having a Fee Entitlement with respect to any Opt Out); provided, however, that no attorney, including any of Class Counsel, shall be eligible to receive any allocation under this Section 15.4 if that attorney or their law firm continues to represent or participate in the representation of (or receives or has a Fee Entitlement with respect to) more than 25 Opt Outs.  The Court shall notify the Settlement Special Master and the Administrator of the allocation, and the Administrator shall distribute payments pursuant to the schedule set forth in Section 15.5.

Section 15.5    Payment Schedule.

(a)    Any fees and costs awarded by the Court pursuant to Section 15.1 shall be paid in 7 distributions beginning 30 days after the Effective Date, with the percentage of the total amount of attorneys' fees and costs to be paid for each installment shown in the table below:

| Payment Date | Percentage of Attorneys' Fees and Costs Distributed |
|---|---|
| 30 days after the Effective Date | 27.60% |
| First Annual Payment Date | 15.30% |
| Second Annual Payment Date | 15.30% |
| Third Annual Payment Date | 12.55% |
| Fourth Annual Payment Date | 9.75% |
| Fifth Annual Payment Date | 9.75% |
| Sixth Annual Payment Date | 9.75% |

(b)    Counsel receiving a fee allocation, including Class Counsel, shall be entitled to a distribution equaling 1.6% of the total amount awarded by the Court pursuant to Section 15.1 upon the completion of the allocation described in Section 15.4, and an additional 1.6% distribution upon each of the first anniversary of Final Court Approval and the second

63

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

anniversary of Final Court Approval, unless either the Effective Date occurs or the Settlement is terminated. All distributions made pursuant to the preceding sentence shall be deducted from the first payment described in the payment schedule in Section 15.5(a).

(c)    Any service awards to Class Representatives and Subclass Representatives shall be paid within 90 days after the Effective Date.

Section 15.6    Eligibility. No attorney, including any of Class Counsel, may receive any allocation of fees or costs pursuant to this Settlement Agreement unless he or she represents in writing that, having exercised his or her independent judgment, he or she believes the Settlement Agreement to be fair and will make or has made best efforts to recommend the Settlement Agreement to his or her clients. For the avoidance of doubt, each attorney is expected to exercise his or her independent judgment in the best interest of each client individually before determining whether to recommend joining the Settlement Agreement. The Settlement Special Master shall ensure that no fees or costs are distributed to any attorney who has not submitted a writing that complies with this Section 15.6.

Section 15.7    Certification. In addition to the requirements of Section 15.6, an attorney may not receive any portion of any distribution of attorneys' fees and costs under this Settlement Agreement unless, no later than 30 days prior to the payment date of those fees and costs, he or she has provided the Administrator with a certification, including the following representations and other required information on behalf of the attorney and his or her law firm:

(a)    The attorney must represent that he or she has no present intent to represent or participate in any representation outside of the framework of this Settlement with respect to any Claims related to Roundup Products against the Monsanto Parties or the Related Parties, including that he or she has no present intent to represent or participate in the representation of any Opt Outs, Exiting Class Members, or plaintiffs who have been excluded from the Settlement Class pursuant to Section 2.1(b) or by court order, other than: (i) up to 25 pre-existing clients who elect to Opt Out despite the attorney's recommendation and who have been disclosed to Class Counsel, the Defendant, and the Court prior to the submission of an application for fees under Section 15.1 or 15.2, and (ii) pre-existing clients who later elect to become Exiting Class Members pursuant to Section 8.1. For purposes of this subsection, a "pre-existing client" is a client who signed a retention letter with that attorney prior to the Settlement Date.

(b)    The attorney must represent that, since the Settlement Date, he or she has not charged or accepted, and will not charge or accept, any Fee Entitlement outside the framework of this Settlement (i.e., other than through this Section 15 or as retained counsel to Claimants in the Claims Program) for any Claims related to Roundup Products against the Monsanto Parties or the Related Parties, including for claims brought by Opt Outs, Exiting Class Members, or plaintiffs who have been excluded from the Settlement Class pursuant to Section 2.1(b) or by court order, other than: (i) up to 25 pre-existing clients who elect to Opt Out despite the attorney's recommendation and who have been disclosed to Class Counsel, the Defendant, and the Court prior to the submission of an application for fees under Section 15.1 or 15.2, and (ii) pre-existing clients who later elect to become Exiting Class Members pursuant to Section 8.1. For purposes of this subsection, a "pre-existing client" is a client for whom that attorney had a Fee Entitlement prior to the Settlement Date.

64

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(c)    The attorney must certify that, since the Settlement Date, he or she has not and will not share expert reports or other litigation work product relating to any Claims related to Roundup Products with counsel for any plaintiffs pursuing any Claims related to Roundup Products against the Monsanto Parties or the Related Parties, including counsel for Opt Outs, Exiting Class Members, or plaintiffs who have been excluded from the Settlement Class pursuant to Section 2.1(b) or by court order.

Section 15.8    Orders Regarding Award of Fees and Costs.  Any order or proceeding solely relating to attorneys' fees and costs, including any appeal from any fee or cost award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Final Order and Judgment as set forth herein; provided, however, that any such order or proceeding has no impact on any other aspect of the Settlement or this Settlement Agreement.

Section 15.9    No Liability for Fees and Costs of Class Counsel.  The Monsanto Parties, the Related Parties, and their counsel shall not have any responsibility for or liability whatsoever with respect to any payment(s) to Class Counsel pursuant to this Settlement Agreement, including for any fees or costs under this Article XV, or to any other entity that may assert some claim thereto or any fee or cost award that the Court may make in the Lawsuit, other than as set forth in this Settlement Agreement.  The Monsanto Parties, the Related Parties, and their counsel shall have no responsibility or liability with respect to the allocation or distribution of any payment awarded under Section 15.1 among Class Counsel or any other Person who may assert some claim thereto.

Section 15.10    Disputes and Payment Credits.

(a)    If the Defendant becomes aware of any evidence suggesting that any certification made pursuant to Section 15.6 or Section 15.7 is false, the Defendant shall submit such dispute to the Settlement Special Master for resolution.  The Settlement Special Master shall develop procedures to receive information regarding such dispute, as well as procedures to adjudicate any such dispute.  During the pendency of any dispute under this Section 15.10, the Administrator shall hold in escrow any distributions of fees or costs allocated to the attorney that is the subject of the dispute.  Upon resolution of the dispute, the Settlement Special Master shall release the escrowed funds to the Settlement Fund if the Defendant prevails and to the attorney if the attorney prevails.

(b)    Any attorney who is found by the Settlement Special Master to have made any false statements in their certifications made pursuant to Section 15.6 or Section 15.7 shall forfeit any undistributed fees and costs that he or she has been allocated pursuant to Section 15.4, and the Settlement Fund shall receive the amount of fees and costs that would have been distributed to that attorney.

**ARTICLE XVI**
**Administration**

Section 16.1    Settlement Special Master.

(a)    Appointment.  Class Counsel will request that the Court approve the appointment of Judge Glenn A. Norton as Settlement Special Master.  Within 10 days after entry

65

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

of the Preliminary Approval Order, Class Counsel and the Defendant will retain the Settlement Special Master appointed by the Court.

(b)    Oversight Responsibilities, Dispute Resolution, and Requests for Reconsideration.  The Settlement Special Master will be responsible for supervising and overseeing the Administrator, the Allocation Special Master, and the Healthcare Compliance Administrator, including, but not limited to:  (i) approving expenses of the Administrator, the Allocation Special Master, and the Healthcare Compliance Administrator under Section 16.2(c), Section 16.3(c), and Section 16.4(c); (ii) implementing procedures for, hearing, and resolving disputes regarding Payment Credits and requests for reconsideration made under Sections 7.1(a)–(b); (iii) reporting and providing information to the Defendant and Class Counsel as required under this Agreement; (iv) reporting and providing information to the Court at such frequency and in such a manner as the Court directs; and (v) performing all other duties set forth in this Agreement or as ordered by the Court.

(c)    Assistance.  The Settlement Special Master may hire administrative vendors, professionals, and consultants, such as legal counsel, whom the Settlement Special Master deems necessary to fulfill his or her obligations under this Agreement.  The cost for this assistance will be considered Administration Costs.

(d)    Compensation and Expenses.  Reasonable compensation of the Settlement Special Master, as agreed to by Class Counsel and the Defendant and approved by the Court, and reimbursement of reasonable out-of-pocket costs and expenses incurred as a result of the Settlement Special Master's responsibilities set forth in the Settlement Agreement, will be Administration Costs.  Either Class Counsel or the Defendant may challenge the reasonableness of the Settlement Special Master's out-of-pocket costs and expenses to the Court.

(e)    Liability.  The Settlement Class Members, Class Counsel, the Monsanto Parties, and the Administrator, and their respective Affiliates, will not be liable for any act, or failure to act, of the Settlement Special Master and its Affiliates, officers, directors, and employees.

(f)    Replacement.  Class Counsel and the Defendant may bring a motion for cause to replace the Settlement Special Master, and the Court may also, *sua sponte* and at its discretion, replace the Settlement Special Master for good cause.  If the Settlement Special Master resigns or is otherwise unable to continue employment in this position, Class Counsel and the Defendant shall agree on a successor and shall then file a joint motion with the Court for the approval and appointment of the agreed-upon successor as the new Settlement Special Master. Costs related to the search, retention, and training for the new Settlement Special Master shall be Administration Costs.  If the Parties cannot agree on a new proposed Settlement Special Master for recommendation to the Court, the Parties shall each make their own proposal to the Court, which shall determine the replacement Settlement Special Master.

(g)    Independence.  The Parties acknowledge and agree that the Administrator, the Allocation Special Master, the Healthcare Compliance Administrator, the Settlement Special Master, and any qualified entities retained by any of the foregoing entities in connection with the Settlement Agreement, and their respective Affiliates, officers, directors, and employees, are intended to be independent and are not agents of any of the Parties, Class Counsel, or any

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Monsanto Party.  As a result, any data or information obtained, generated, collected or otherwise possessed by the Administrator, the Allocation Special Master, the Healthcare Compliance Administrator, the Settlement Special Master, and any qualified entities retained by any of the foregoing entities, and their respective Affiliates, officers, directors, and employees, should not be deemed to be known by any Party (prior to dissemination to the specific Party) or attributed to any Party, for any purpose whatsoever, including, but not limited to, any reporting or other compliance obligation imposed by law.

Section 16.2    Administrator.

(a)    Appointment and Oversight.

(i)    Class Counsel will request that the Court approve the appointment of BrownGreer PLC as Administrator.  Within 10 days after entry of the Preliminary Approval Order, Class Counsel will retain the Administrator appointed by the Court.

(ii)    The Administrator shall be appointed for the duration of the Administrator's duties in connection with the Settlement Agreement.

(iii)    The Administrator will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs.  The Settlement Special Master may assist with such reports if requested by the Administrator.

(iv)    90 days after the Effective Date, and 90 days after every Annual Payment Date thereafter, the Administrator will provide annual reports to Class Counsel and the Defendant, based on information from the preceding year, regarding:  (1) expenses and administrative costs; (2) projected expenses and administrative costs; (3) adherence to the Tier Averages for each Tier; (4) the total number and amount of Program Awards, including any Program Awards made pursuant to Section 6.5(d), if applicable; (5) the total number and amount of Quick-Pay Awards, Exigency Awards, ECF Awards, EREF Awards, and Exiting Class Member Payments; (6) total monies distributed from the Settlement Fund for the prior year, including the purpose of such distributions; (7) the number of Claimants who received Awards, and the amount of such Awards; (8) the number of Claimants who have Claim Eligibility Dates but have not yet received Program Awards, by Tier; (9) the number of Claimants who submitted a Claim Package or Quick-Pay Claim Package that did not meet the Application Requirements or Eligibility Criteria (or otherwise received an Adverse Eligibility Determination); (10) the number of Opt Outs (A) in total, (B) who have filed a Roundup Lawsuit, (C) whose Opt Out Lawsuit has entered Active Discovery, and (D) whose Opt Out Lawsuit is within 90 days of trial; (11) the number of Exiting Class Members (A) in total, (B) who have filed a Roundup Lawsuit, and (C) whose Roundup Lawsuit is within 90 days of trial; (12) the number of Award Rejections (A) in total, (B) who have filed a Roundup Lawsuit, and (C) whose Roundup Lawsuit is within 90 days of trial; (13) the number of Claimants for whom requests for reconsideration are pending; (14) the identification and a breakdown of physicians diagnosing Qualifying Diagnoses and law firms representing Settlement Class Members or Representative Claimants who submitted Claim Packages or Quick-Pay Claim Packages; and (15) any other information as reasonably requested by Class Counsel or the Defendant.

67

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

The cost of any such additional information requested in clause (15) above will be borne by the requesting party.

(b)   <u>Roles and Responsibilities</u>.  The Administrator will have the following obligations (with each action or determination made in furtherance of fulfilling its duties and obligations under the Settlement Agreement) subject to the supervision of the Settlement Special Master:

(i)   Administer, oversee and execute the operation of the Claims Program as set forth under this Agreement, including, but not limited to, receiving and processing Claim Packages and Quick-Pay Claim Packages pursuant to Section 6.3; determining Claim Package eligibility pursuant to Section 6.5; and maintaining and managing disbursements from the Settlement Fund, including by: (1) processing payments into the Settlement Fund by the Defendant, pursuant to Section 4.1 and Section 4.2, (2) processing Award Payments, pursuant to Section 6.16, (3) processing attorneys' fee payments to, and certifications from, Class Counsel, pursuant to Section 15.3, Section 15.5, and Section 15.7; (4) processing payments to administrative staff, pursuant to Section 16.2(d); and (5) reviewing and processing Payment Credits, pursuant to Article V.

(ii)   Assist the Allocation Special Master in his or her duties under the Claims Program as appropriate, which include, but are not limited to, assigning Tiers to Claim Packages or Quick-Pay Claim Packages as appropriate, and evaluating and scoring Claim Packages or Quick-Pay Claim Packages pursuant to Sections 6.5 through 6.10, and processing and paying Awards, including Program Awards, Quick-Pay Awards, ECF Awards, EREF Awards and Exigency Awards, pursuant to Section 6.11 through Section 6.14.

(iii)   Provide reports or information that the Court may, in its discretion, request from the Administrator.

(iv)   Retain copies of all notices sent under Section 6.15 and all Award Payments made under Section 6.16, and provide such copies to the Defendant or Class Counsel upon request.

(v)   Receive and assess Opt Out submissions and provide to Class Counsel and the Defendant a complete list of all Opt Outs the Administrator believes to be timely and Valid.

(vi)   Receive and assess Exiting Class Member submissions, coordinate with the Allocation Special Master to process Exiting Class Members, and provide to Class Counsel and the Defendant a complete list of all Exiting Class Members received on an annual basis.

(vii)   Oversee audit and fraud detection and prevention procedures, and review and decide the appropriate disposition of potentially fraudulent claims as further specified in Section 9.1.

(viii)   Maintain the Settlement Website as set forth in Section 11.2.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(ix)    Maintain an automated telephone system and communications center to provide information about the Settlement.

(x)    Develop and oversee procedures allowing for the detection and cure of deficiencies in Claim Packages and Quick-Pay Claim Packages, as well as for fraud detection.

(xi)    In coordination with the Allocation Special Master, oversee allocation of the Settlement Fund Amount and payments from the Settlement Fund in accordance with the Settlement Agreement, including Article IV.

(xii)    Perform such other tasks reasonably necessary to accomplish the goals contemplated by the Settlement Agreement.

(c)    Compensation and Expenses.    Reasonable compensation of the Administrator, as approved by the Settlement Special Master, and reimbursement of reasonable out-of-pocket costs and expenses of the Administrator directly incurred as a result of the performance of its responsibilities, will be paid out of the Settlement Fund.  Such compensation and costs shall be considered Administration Costs.  The Defendant shall have no obligation to pay any Administration Costs other than their obligation to pay the Settlement Fund Amount as described in Article IV.  The Administrator shall submit an annual budget to the Settlement Special Master for review and approval.  Either Class Counsel or the Defendant may challenge the reasonableness of the Administrator's compensation or out-of-pocket costs and expenses, in which case the Settlement Special Master will determine the reasonableness of such compensation or costs and expenses.

(d)    Assistance.    The Administrator may hire administrative vendors, professionals, and consultants, as necessary to faithfully discharge his or her obligations and to render Awards and as approved by the Settlement Special Master.  Approved payment to such vendors, professionals, and consultants shall be considered Administration Costs.  The Administrator shall promptly notify the Settlement Special Master of all payments incurred under this Section 16.2(d).

(e)    Liability.    The Settlement Class Members, Class Counsel, the Monsanto Parties and their respective Affiliates will not be liable for any act, or failure to act, of the Administrator or its Affiliates, officers, directors, and employees.

(f)    Replacement.    The Administrator may be replaced by a joint request made by Class Counsel and the Defendant to the Settlement Special Master, or for cause by motion of either Class Counsel or the Defendant, upon order of the Court.  If the Administrator resigns or is otherwise unable to continue employment in this position, Class Counsel and the Defendant will jointly recommend a new proposed Administrator for approval of appointment by the Court.  If the Parties cannot agree on a new proposed Administrator for recommendation to the Court, the Settlement Special Master shall make such a recommendation to the Court.  The Settlement Special Master may, but is not required to, take into account the respective positions of the Parties in making its recommendation where the Parties could not agree on a new proposed Administrator.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Costs related to the search, retention, and training for the new Administrator shall be Administration Costs.

(g)    Conflicts of Interest.   Within 90 days after entry of the Preliminary Approval Order, Class Counsel, the Defendant, the Settlement Special Master, and the Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Administrator, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), Class Counsel, the Defendant, and Counsel for the Defendant, on the other hand.  Class Counsel and the Defendant, subject to approval of the Court, may modify such procedures in the future, if appropriate.  Notwithstanding anything herein to the contrary, Class Counsel, the Defendant, and the Settlement Special Master understand that the Administrator regularly provides settlement claims administration and other related services to settling parties and their attorneys, and the Settlement Special Master, Class Counsel, and the Defendant acknowledge and agree that it shall not be a conflict of interest for the Administrator to provide such services to such parties and individuals or to receive compensation for such work.

Section 16.3    Allocation Special Master.

(a)    Appointment and Oversight.

(i)    Class Counsel will request that the Court approve the appointment of Matthew Garretson of Garretson, LLC as Allocation Special Master.  Within 10 days after entry of the Preliminary Approval Order, Class Counsel will retain the Allocation Special Master appointed by the Court.

(ii)    The Allocation Special Master shall be appointed for the duration of the Allocation Special Master's duties in connection with the Settlement Agreement.

(b)    Roles and Responsibilities.  The Allocation Special Master will have the following obligations (with each action or determination made in furtherance of fulfilling its duties and obligations under the Settlement Agreement) subject to the supervision of the Settlement Special Master:

(i)    In coordination with the Administrator, administer, oversee and execute the operation of the Claims Program as set forth under this Agreement, including, but not limited to, drafting and modeling the claims evaluation methodology, forecasting Initial and Later Claimant Tiers and Quick-Pay Award participation, evaluating and if necessary adjusting Tier Averages pursuant to Section 6.8(b)–(d), assigning Tiers to Claim Packages or Quick-Pay Claim Packages, and evaluating and scoring Claim Packages or Quick-Pay Claim Packages pursuant to Sections 6.5 through 6.10; making Awards, including Program Awards, Quick-Pay Awards, ECF Awards, EREF Awards, and Exigency Awards, pursuant to Section 6.11 through Section 6.14.

(ii)    Assist the Administrator in determining the applicability and amount of Payment Credits, pursuant to Article V, including assigning Opt Outs to Tiers and determining the applicable Tier Average for such Opt Outs.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(iii)    In coordination with the Administrator, oversee allocation of the Settlement Fund Amount and payments from the Settlement Fund in accordance with the Settlement Agreement, including Article IV.

(iv)    Perform such other tasks reasonably necessary to accomplish the goals contemplated by the Settlement Agreement.

(c)    Compensation and Expenses.  Reasonable compensation of the Allocation Special Master, as approved by the Settlement Special Master, and reimbursement of reasonable out-of-pocket costs and expenses of the Allocation Special Master directly incurred as a result of the performance of its responsibilities will be paid out of the Settlement Fund.  Such compensation and costs shall be considered Administration Costs.  The Defendant shall have no obligation to pay any Administration Costs other than its obligation to pay the Settlement Fund Amount as described in Article IV.  The Allocation Special Master shall submit an annual budget to the Settlement Special Master for review and approval.  Either Class Counsel or the Defendant may challenge the reasonableness of the Allocation Special Master's compensation or out-of-pocket costs and expenses, in which case the Settlement Special Master will determine the reasonableness of such compensation or costs and expenses.

(d)    Assistance.  The Allocation Special Master may hire administrative vendors, professionals, and consultants, as necessary to faithfully discharge his or her obligations and to render Awards and as approved by the Settlement Special Master.  Approved payment to such vendors, professionals, and consultants shall be considered Administration Costs.  The Allocation Special Master shall promptly notify the Administrator and Settlement Special Master of all payments incurred under this Section 16.3(d).

(e)    Liability.  The Settlement Class Members, Class Counsel, the Monsanto Parties and their respective Affiliates will not be liable for any act, or failure to act, of the Allocation Special Master or its Affiliates, officers, directors, and employees.

(f)    Replacement.  The Allocation Special Master may be replaced by a joint request made by Class Counsel and the Defendant to the Settlement Special Master, or for cause by motion of either Class Counsel or the Defendant, upon order of the Court.  If the Allocation Special Master resigns or is otherwise unable to continue employment in this position, Class Counsel and the Defendant will jointly recommend a new proposed Allocation Special Master for approval of appointment by the Court.  If the Parties cannot agree on a new proposed Allocation Special Master for recommendation to the Court, the Settlement Special Master shall make such a recommendation to the Court.  The Settlement Special Master may, but is not required to, take into account the respective positions of the Parties in making its recommendation where the Parties could not agree on a new proposed Allocation Special Master.

(g)    Conflicts of Interest.  Within 90 days after entry of the Preliminary Approval Order, Class Counsel, the Defendant, the Settlement Special Master, and the Allocation Special Master will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Allocation Special Master, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), Class Counsel, the Defendant, and Counsel for the Defendant, on the other hand.  Class Counsel and the Defendant, subject to

71

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

approval of the Court, may modify such procedures in the future, if appropriate.  Notwithstanding anything herein to the contrary, Class Counsel, the Defendant, and the Settlement Special Master understand that the Allocation Special Master regularly provides settlement claims administration and other related services to settling parties and their attorneys, and the Settlement Special Master, Class Counsel, and the Defendant acknowledge and agree that it shall not be a conflict of interest for the Allocation Special Master to provide such services to such parties and individuals or to receive compensation for such work.

Section 16.4   Healthcare Compliance Administrator (HCA).

(a)   Appointment and Oversight.

(i)   Class Counsel will request that the Court approve the appointment of Wolf Global Compliance, LLC as Healthcare Compliance Administrator.  Within 10 days after entry of the Preliminary Approval Order, Class Counsel will retain the Healthcare Compliance Administrator appointed by the Court.

(ii)   The HCA shall be appointed for the duration of the HCA's duties in connection with the Settlement Agreement.

(b)   Roles and Responsibilities.  The HCA will have the following obligations (with each action or determination made in furtherance of fulfilling its duties and obligations under the Settlement Agreement), subject to the supervision of the Settlement Special Master:

(i)   Implement a mechanism for the identification and resolution of Liens, claims, or rights of subrogation, indemnity, reimbursement, conditional or other payments, or interests of any type;

(ii)   Engage with and reach agreements with Governmental Payors pursuant to Section 18.2(a);

(iii)   Review and verify information provided by Settlement Class Members identifying Governmental Payors or Other Insurers that may have made payments on behalf of the Settlement Class Member pursuant to Section 18.1;

(iv)   Provide copies of any agreements with Governmental Payors pursuant to Section 18.2(c); and

(v)   Otherwise execute and enforce the obligations and mechanisms of the Settlement Agreement described in Article XVIII.

(c)   Compensation and Expenses.  Reasonable compensation of the Healthcare Compliance Administrator, as approved by the Settlement Special Master, and reimbursement of reasonable out-of-pocket costs and expenses of the Healthcare Compliance Administrator directly incurred as a result of the performance of its responsibilities will be paid out of the Settlement Fund.  Such compensation and costs shall be considered Administration Costs.  The Defendant shall have no obligation to pay any Administration Costs other than the Defendant's obligation to pay the Settlement Fund Amount as described in Article IV.  The HCA shall submit an annual

72

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

budget to the Settlement Special Master for review and approval. Either Class Counsel or the Defendant may challenge the reasonableness of the HCA's compensation or out-of-pocket costs and expenses, in which case the Settlement Special Master will determine the reasonableness of such compensation or costs and expenses.

(d)    Replacement. The HCA may be replaced by a joint request made by Class Counsel and the Defendant to the Settlement Special Master, or for cause by motion of either Class Counsel or the Defendant, upon order of the Court. If the HCA resigns or is otherwise unable to continue employment in this position, Class Counsel and the Defendant will jointly recommend a new proposed HCA for approval of appointment by the Court. If the Parties cannot agree on a new proposed HCA for recommendation to the Court, the Settlement Special Master shall make such a recommendation to the Court. The Settlement Special Master may, but is not required to, take into account the respective positions of the Parties in making its recommendation where the Parties could not agree on a new proposed HCA.

(e)    Liability. The Settlement Class Members, Class Counsel, the Monsanto Parties and their respective Affiliates will not be liable for any act, or failure to act, of the Healthcare Compliance Administrator or its Affiliates, officers, directors, and employees.

(f)    Conflicts of Interest. Within 90 days after entry of the Preliminary Approval Order, Class Counsel, the Defendant, the Settlement Special Master, and the Healthcare Compliance Administrator will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Healthcare Compliance Administrator, on the one hand, and Settlement Class Members (and counsel individually representing them, if any), Class Counsel, the Defendant, and Counsel for the Defendant, on the other hand. Class Counsel and the Defendant, subject to approval of the Court, may modify such procedures in the future, if appropriate. Notwithstanding anything herein to the contrary, Class Counsel, the Defendant, and the Settlement Special Master understand that the Healthcare Compliance Administrator regularly provides settlement claims administration and other related services to settling parties and their attorneys, and the Settlement Special Master, Class Counsel, and the Defendant acknowledge and agree that it shall not be a conflict of interest for the Healthcare Compliance Administrator to provide such services to such parties and individuals or to receive compensation for such work.

## ARTICLE XVII
## Settlement Fund Account

Section 17.1    Settlement Fund Administration.

(a)    Within 10 days of the date the Preliminary Approval Motion is filed, Class Counsel and the Defendant will file a motion with the Court seeking (i) the approval of the proposed Settlement Fund Escrow Agreement, (ii) the authorization that the Settlement Fund escrow account established pursuant to the Settlement Fund Escrow Agreement be established as a qualified settlement fund within the meaning of § 1.468B-1 of the Treasury Regulations, and (iii) the appointment of the Administrator as the administrator of the Settlement Fund within the meaning of § 1.468B-2(k)(3) of the Treasury Regulations.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(b)    Class Counsel and the Defendant will jointly recommend JPMorgan Chase Bank N.A. as the Settlement Fund Escrow Agent, subject to the approval of the Court.  The Settlement Fund Escrow Agent may be replaced by joint motion made by Class Counsel and the Defendant, and granted by the Court.  If the Settlement Fund Escrow Agent resigns or is otherwise unable to continue employment in that position, Class Counsel and the Defendant will agree to and jointly recommend a new proposed Settlement Fund Escrow Agent for appointment by the Court.  If the Parties cannot agree on a new proposed Settlement Fund Escrow Agent for recommendation to the Court, the Settlement Special Master shall make such a recommendation to the Court.  The Settlement Special Master may, but is not required to, take into account the respective positions of the Parties in making its recommendation where the Parties could not agree on a new proposed Settlement Fund Escrow Agent.

(c)    Upon Court approval of the proposed Settlement Fund Escrow Agreement, Class Counsel, the Defendant, the Settlement Fund Escrow Agent, and the Administrator will execute the Settlement Fund Escrow Agreement approved by the Court, thereby creating the Settlement Fund.  The Settlement Fund will be structured and operated in a manner such that it qualifies as a "qualified settlement fund" under § 1.468B-1 of the Treasury Regulations from the earliest date possible, and the Administrator, the Defendant, and all other relevant parties shall file any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible.  The "taxable year" of the Settlement Fund shall be the "calendar year" as such terms are defined in IRC Section 441.  The Settlement Fund shall use the accrual method of accounting as defined in IRC Section 446(c).

(d)    The Defendant will make payments as required by the Settlement Agreement into the Settlement Fund pursuant to Section 4.1 and Section 4.2.  Subject to Section 4.4(h) and Section 21.2(d), the Settlement Fund shall be used solely to fund the payments to Settlement Class Members under the Claims Program and Additional Permitted Fund Uses (as set forth in Article IV).

(e)    The Settlement Fund will be managed by the Settlement Fund Escrow Agent as provided in the Settlement Fund Escrow Agreement, and both the Settlement Fund and the Settlement Fund Escrow Agent will be subject to the continuing jurisdiction and supervision of the Court.  The Settlement Fund will be maintained in a bank account at a federally insured depository institution approved by Class Counsel and the Defendant.  The Settlement Fund Escrow Agent will have the authority to make disbursements from the Settlement Fund at the direction of authorized representatives of the Administrator or Settlement Special Master consistent with the terms of the Settlement Agreement and the Settlement Fund Escrow Agreement.

(f)    The Administrator shall be authorized to take any action that it determines necessary to maintain the status of the Settlement Fund as a "qualified settlement fund" within the meaning of § 1.468B-1 of the Treasury Regulations.  The Administrator shall (i) obtain a taxpayer identification number for the Settlement Fund, which shall be titled "Monsanto Class Action Settlement Fund," (ii) prepare and file, or cause to be prepared and filed, U.S. federal, state, local, and foreign tax returns (as applicable) for the Settlement Fund, consistent with § 1.468B-2(k) of the Treasury Regulations and corresponding or similar provisions of state and local law, and in accordance with the Settlement Agreement and the Settlement Fund Escrow Agreement, (iii) prepare and file, or cause to be prepared and filed, any other statement, return, or disclosure

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

relating to the Settlement Fund that is required by any governmental unit, including, but not limited to, information reporting as described in § 1.468B-2(l) of the Treasury Regulations (or corresponding or similar provision of state, local, or foreign law), (iv) obtain from the Defendant a statement required pursuant to § 1.468B-3(e) of the Treasury Regulations no later than February 15th of the year following each calendar year in which the Defendant makes a transfer to the Settlement Fund, and (v) be responsible for responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority. The Administrator also will be responsible for ensuring the Settlement Fund complies with all withholding and information reporting requirements (including by instructing the Settlement Fund Escrow Agent to withhold any required amounts) with respect to payments made by the Settlement Fund, as well as paying any associated interest and penalties. Any amounts required to be withheld by the Settlement Fund Escrow Agent (or any other withholding agent) shall be treated for all purposes as though such amounts had been distributed to such person in respect of which such withholding was required. The Administrator shall direct the Settlement Fund Escrow Agent to timely pay from the Settlement Fund any taxes (including, but not limited to, withholding taxes with respect to distributions from the Settlement Fund), interest, and penalty payments to the appropriate Governmental Authority and any reasonable out-of-pocket expenses from (i) causing any tax returns and information reports to be prepared and filed, (ii) responding to any questions from, or representing the Settlement Fund in any audit or similar proceeding regarding taxes by, the Internal Revenue Service (or any state or local Governmental Authority), or (iii) otherwise satisfying any tax compliance obligation of the Settlement Fund (all taxes, interest, penalties, and other expenses described in this sentence collectively referred to as the "Tax Expenses"). The Defendant shall provide the Administrator with the statement required pursuant to Treasury Regulations § 1.468B-3(e) no later than February 15th of the year following each calendar year in which the Defendant makes a transfer to the Settlement Fund.

(g) The Settlement Fund Escrow Agent, the Administrator, and the Settlement Special Master shall be authorized to collect any tax information as necessary to effectuate the Settlement Agreement or the Settlement Fund Escrow Agreement. In order to receive distributions under the Settlement Fund Escrow Agreement, the Settlement Fund Escrow Agent, the Administrator, and the Allocation Special Master shall require any recipient to identify himself, herself, or itself and provide tax information, to the extent that the Administrator deems appropriate, including a taxpayer identification number as assigned by the Internal Revenue Service or, in the case of any recipient that is not a U.S. Person for U.S. federal income tax purposes, a properly completed applicable Internal Revenue Service Form W-8 (with required attachments, if any).

Section 17.2    <u>Funds Investment</u>.

(a) To the extent that funds are made available for investment, amounts deposited in the Settlement Fund will be invested conservatively in a manner designed to assure timely availability of funds, protection of principal, and avoidance of concentration risk, and shall be invested only in short-term direct obligations of the United States of America or short-term obligations for which the full faith and credit of the United States of America is pledged to provide for the payment of principal and interest, unless otherwise agreed to in writing by the Defendant, Class Counsel, and the Settlement Special Master; <u>provided</u>, <u>however</u>, that the scope of any such permissible investments shall be further limited to include only those investments that a "qualified

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

settlement fund," within the meaning of Treasury Regulations §§ 1.468B-1 *et seq.*, may be permitted to invest in, pursuant to the Treasury Regulations, or any modification in Internal Revenue Service guidelines, whether set forth in Internal Revenue Service rulings, other Internal Revenue Service pronouncements, or otherwise.

(b)    Any earnings attributable to the Settlement Fund pursuant to Section 17.2(a) will be retained in the Settlement Fund and shall become part of the Settlement Fund, and shall be disbursed as part of the Settlement Fund in accordance with the terms and conditions of the Settlement Agreement.

(c)    For the avoidance of doubt, the Defendant shall have no obligation with respect to any investment losses incurred by the Settlement Fund.

Section 17.3    Settlement Fund Escrow Agent Satisfaction of Monetary Obligations. Wherever in the Settlement Agreement the Administrator or the Settlement Special Master is authorized or directed, as the context may reflect, to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of the Settlement Agreement, the Administrator or the Settlement Special Master may comply with such authorization or direction by directing the Settlement Fund Escrow Agent to, as appropriate, pay, disburse, reimburse, hold, waive, or satisfy any such monetary obligation; provided that, if such direction is made by the Administrator, it shall also be accompanied by written authorization to the Settlement Fund Escrow Agent from an authorized representative of the Settlement Special Master as provided for in the Settlement Fund Escrow Agreement.

**ARTICLE XVIII**
**Governmental Payors**

Section 18.1    Conditions for Applications for Awards.

(a)    As a condition of applying for and receiving an Award, a Settlement Class Member must agree in writing that:

(i)    The Monsanto Parties shall have no obligations to any Governmental Payor, nor for any other past and present Claims arising from, resulting from, in any way relating to or in connection with the Settlement Class Member's application for or receipt of an Award, including any costs and expenses incurred in resolving any such Claims;

(ii)    It is a Settlement Class Member Party's sole responsibility to pay, have paid, or otherwise discharge and satisfy all past and present Claims asserted by any Governmental Payor or any other Person, including any provider, that are not discharged or satisfied pursuant to Section 18.1(d) and that arise from, result from, in any way relate to or are in connection with his or her application for or receipt of an Award, including any right against any Monsanto Party or Related Party due to the fact that the Settlement Class Member is a party to bankruptcy proceedings; and

(iii)    The Settlement Class Member understands and acknowledges that this Settlement Agreement encompasses all damages of any kind that are in any way related

76

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

to their Roundup Claims, known or unknown, past, present, or future (including any future injury), and that all damages, costs, expenses, or fees related thereto are now the sole responsibility of Settlement Class Members who receive an Award, including all current and future medical expenses, outstanding or future Liens, subrogation claims, accounts, demands, or any Claims of any kind whatsoever.

(b)      As a condition of applying for and receiving an Award, a Settlement Class Member must:  (i) identify in writing every Governmental Payor or Other Insurer that may have made any payments on behalf of the Settlement Class Member (or the Person whose NHL is the basis for the Settlement Class Member's application for an Award) arising from, resulting from, in any way relating to or in connection with such Settlement Class Member's NHL or such Person's NHL; and (ii) represent and warrant in writing he or she has used best efforts to identify such Governmental Payors or Other Insurers.  The Healthcare Compliance Administrator must take reasonable steps to affirmatively verify such information, or lack thereof, with any Governmental Payor or Other Insurer from which Settlement Class Members are or were entitled to benefits pursuant to those programs, including, where applicable, transmitting an eligibility query and data to CMS to obtain from CMS a Medicare eligibility determination for each Settlement Class Member.

(c)      The documentation and information required by Section 18.1(a) and Section 18.1(a)(iii) shall be included in a Claim Package and Quick-Pay Claim Package, and the Monsanto Parties shall be beneficiaries of the agreements and representations set forth in Section 18.1(a) and Section 18.1(a)(iii).  Upon reasonable request from the Defendant, the Healthcare Compliance Administrator shall provide the Defendant with the documentation and information submitted by a Settlement Class Member under Section 18.1(a) and Section 18.1(a)(iii), including the identified Governmental Payors and Other Insurers.

(d)      As a further condition of applying for and receiving an Award, a Settlement Class Member must (i) identify in writing any Lien other than a medical-based Lien imposed by a Governmental Payor or Other Insurer disclosed pursuant to Section 18.1(a)(iii), and (ii) represent and warrant in writing he or she has used best efforts to identify such other Liens.  It shall be the responsibility of the Administrator to evaluate and account for any such encumbrance, Lien, or claim against a Claimant's Award.

Section 18.2    Procedures for Addressing Governmental Payors.

(a)      Following the entry of the Preliminary Approval Order, the Healthcare Compliance Administrator shall seek written agreements meeting the following conditions from each Governmental Payor (with the exception for the purpose of this Section 18.2(a) of a Governmental Payor that is a Medicare Part C or Medicare Part D plan sponsor):

(i)      that the Governmental Payor:

(1)      holds no interest, and will not assert any interest in the future, including any Liens, in any Award;

(2)      agrees to a maximum amount for which it will seek to resolve any interest, including any Liens, in any Award, where such maximum

77

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

amount is either a specific percentage of the Award or a dollar amount that is less than the full amount of the Award; or

(3)    agrees to procedures for resolving any interest on an individual case basis; or expressly releases any and all persons from any Claims whatsoever for any interest, including any Liens, in any and all Awards;

(ii)    that the Governmental Payor agrees either that the Monsanto Parties have no obligations to the Governmental Payor arising from, resulting from, in any way relating to or in connection with any Settlement Class Member's application for or receipt of an Award, or that any such obligation that the Governmental Payor might otherwise claim is fully resolved and discharged by the terms agreed to with the Healthcare Compliance Administrator under Section 18.2(a)(i); and

(iii)    in the case of an agreement with CMS, that CMS acknowledges that: (1) the Defendant has no reporting obligations to CMS under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, or its applicable regulations, that are arising from, resulting from, or in any way relating to or in connection with any Award; (2) the Defendant has satisfied any such reporting obligations; or (3) the Defendant can satisfy any such reporting obligations by complying with a reporting process recognized by CMS.  To the extent necessary to secure such agreement, the Healthcare Compliance Administrator shall establish reporting processes recognized by CMS as satisfying any such reporting obligations.

(b)    Settlement Class Member Parties who receive an Award acknowledge that the Defendant may have a legal obligation under the MSP Laws to report the amount of payments made under the Settlement Agreement and other information to the Secretary of Health and Human Services, unless it is released from so doing, and agree to cooperate fully with the Defendant by executing any documents and providing such additional information as may be required by or on behalf of the Defendant to comply with the Defendant's reporting obligations, including, but not limited to, a listing of the Award allocated to each Settlement Class Member who is a Medicare beneficiary and the following information as to each:  (i) first name, last name and middle initial, (ii) Health Insurance Claim Number, (iii) Social Security Number, (iv) date of birth, (v) gender, (vi) first date of use of a Roundup Product, (vii) last date of use of a Roundup Product, and (viii) International Classification of Disease 10 coding.  The Settlement Class Member acknowledges that the Defendant shall use such information to comply with or be released from any reporting requirements the Defendant may have under the MSP Laws.  The Defendant shall keep such information confidential except as necessary to comply with or be released from its reporting requirements, and any information provided by the Defendant pursuant to reporting requirements shall not be considered a breach of confidentiality.

(c)    The Healthcare Compliance Administrator shall provide copies of any written agreement reached with a Governmental Payor pursuant to Section 18.2(a) to the Settlement Special Master, Class Counsel, and the Defendant.  Within 30 days of receipt of any such agreement, Class Counsel or the Defendant may challenge before the Settlement Special Master whether the agreement is consistent with this Section 18.2.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(d)    The Allocation Special Master or Administrator may process, but shall not pay, any Award for a Settlement Class Member who identifies a Governmental Payor pursuant to Section 18.1(a)(iii) until the Healthcare Compliance Administrator has entered a written agreement with that Governmental Payor that is consistent with Section 18.2(a) or put in place a mechanism as to that Governmental Payor, including Medicare Part C and Medicare Part D plan sponsors, consistent with Section 18.2(f).

(e)    If the Healthcare Compliance Administrator enters into an agreement with a Governmental Payor that is consistent with Section 18.2(a) and calls for payment to the Governmental Payor of some portion of an Award, then, at the direction of the Healthcare Compliance Administrator, the Allocation Special Master or the Administrator shall retain and pay to the Governmental Payor that portion of the Award required to fulfill the terms of the agreement with the Governmental Payor.

(f)    This Section 18.2(f) shall apply (i) to Governmental Payors that are Medicare Part C or Medicare Part D plan sponsors (to which Section 18.2(a) does not apply), and (ii) to Governmental Payors to which Section 18.2(a) applies, other than CMS with respect to Medicare Part A and Medicare Part B, with which the Healthcare Compliance Administrator is unable to obtain a written agreement consistent with Section 18.2(a) after reasonable efforts. This Section 18.2(f) shall not apply to CMS with respect to Medicare Part A and Medicare Part B. As to any Governmental Payor to which this Section 18.2(f) applies, the Healthcare Compliance Administrator will seek to put in place a mechanism consistent with the substance of Section 18.2(a) for addressing any interest, including any Liens, such Governmental Payor may have on an individual basis, subject to the approval of the Defendant (which shall not be unreasonably withheld). Said mechanism may facilitate the resolution of interests, including any Liens, from an Award made to an individual Settlement Class Member, but Settlement Class Members agree and acknowledge that they are solely responsible for resolution of any interests, including Liens, and that the Monsanto Parties and the Related Parties shall have no responsibility for or obligation to provide for resolution of such interests or Liens.

(g)    The Healthcare Compliance Administrator shall be bound by any judicial or Settlement Special Master allocation of damages between medical and non-medical categories, and shall not permit reimbursement claims to exceed the portion allocated to medical expenses.

(h)    Upon request to the HCA, the Defendant shall be entitled to reasonable proof of satisfaction and discharge of any and all Governmental Payor Liens identified pursuant to Section 18.1.

Section 18.3    Indemnification.

(a)    Indemnification by Settlement Class Member Parties. If, notwithstanding the provisions of this Article XVIII, any Claim is made against any Monsanto Party or Related Party by any Governmental Payor or other Person arising from, resulting from, or in any way relating to or in connection with, a Settlement Class Member's failure to satisfy, resolve or extinguish a Lien of any type, or application for or receipt of an Award (including because the Settlement Class Member provided false or misleading information to a Governmental Payor or did not identify that Governmental Payor pursuant to Section 18.1(a)(iii)), then the Settlement

79

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Class Member shall indemnify such Monsanto Party or Related Party, up to the amount of the Award the Settlement Class Member receives, and hold it harmless with respect to such Claim.

(b)      Each Settlement Class Member who receives an Award agrees to indemnify and forever hold harmless the Defendant and Related Parties from any Claim asserted by CMS, Medicare, the U.S. federal government or their respective agents or assignees under 42 U.S.C. § 1395y(b)(3)(A) for reimbursement of conditional or future payments made by Medicare for medical treatment or alleged injuries related to Claimants' Claims against the Defendant, including any attorneys' fees and fines sought or assessed under 42 U.S.C. § 1395y.

(c)      It is understood and agreed by Settlement Class Members who receive an Award and the Defendant that the settlement of a Settlement Class Member's Claims against the Defendant and Related Parties could impact the Settlement Class Member's right to future Medicare benefits, including the denial by Medicare of claims for future benefits related to the injury Claims being released in the Releases.  It is understood and agreed that Settlement Class Members hereby waive any right to assert in the future any Claims they may have had relating to the matters referenced in this Section 18.3(c), both known and unknown, including any private cause of action they may have under 42 U.S.C. § 1395y(b)(3)(A) against any of the parties released under the terms of this Agreement or a related release, even though if such Claims were known, such knowledge would materially affect the terms of this Agreement.

(d)      Notice of Indemnification.  SETTLEMENT CLASS MEMBERS ACKNOWLEDGE THAT THIS SECTION 18.3 COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION 18.3 IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.

Section 18.4    In acknowledgement of the MSP Laws, the Parties acknowledge and agree that in reaching this Agreement, the Parties have considered the statutory interest of CMS in recovering conditional payments made for medical treatment that resulted directly from injuries allegedly caused by the use of Roundup Products.

## ARTICLE XIX
### Enforceability of Settlement Agreement and Dismissal of Claims

Section 19.1    It is a condition of the Settlement Agreement that, (a) within a reasonable time period after the Settlement Date, the Court approve and enter the Preliminary Approval Order, in the form of Exhibit G, with any modifications acceptable to the Parties in their individual discretion, and (b) the Preliminary Approval Order remain in full force and effect until entry of the Final Order and Judgment.

Section 19.2    It is a condition to the Settlement Agreement that, within a reasonable time period after the Preliminary Approval Order, the Court approve and enter the Final Order and Judgment, in the form of Exhibit H, with any modifications acceptable to the Parties in their individual discretion.

Section 19.3    The Parties agree that the Settlement Agreement is not final and enforceable until the Effective Date, except as to any provisions that the Settlement Agreement provides shall occur prior to the Effective Date.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 19.4    It is a condition to the Settlement Agreement that the Final Order and Judgment not be reversed, vacated, or modified on appeal, a motion for reconsideration, or other review, and that the Effective Date be reached.

Section 19.5    From and after the Preliminary Approval Date, for the consideration provided for herein and by operation of the Final Order and Judgment, the Court will stay all Roundup Claims, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, filed by Settlement Class Member Parties pending in the Court, and any and all Settlement Class Member Parties with any such Claims pending in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, other than the Court, will stay or dismiss such Claims, including any related appeals.

Section 19.6    From and after the Effective Date, for the consideration provided for herein and by operation of the Final Order and Judgment, except as expressly provided for in Article VIII, the Parties agree that:

(a)    each and every Settlement Class Member Party will be permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, or maintaining any judicial, arbitral, or regulatory action with respect to any and all Roundup Claims, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits;

(b)    each and every Settlement Class Member Party will be barred and enjoined from commencing, filing, initiating, instituting, prosecuting, or maintaining any judicial, arbitral, or regulatory action against any Monsanto Party or Related Party with respect to any and all Roundup Claims, including, but not limited to Roundup Lawsuits and Related-Party Lawsuits, and relating to any and all Released Claims.

Section 19.7    From and after the Effective Date, if any Settlement Class Member Party (except an Exiting Class Member to the extent set forth in and pursuant to Article VIII) commences, files, initiates, or institutes any new Claim, action or other proceeding for any Released Claims, or continues to prosecute any pending Released Claims, or challenges the validity of the Releases or Covenant Not to Sue, in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum, such Claim, action, or other proceeding will be dismissed with prejudice and at such Settlement Class Member Party's cost; provided, however, that before any costs may be assessed, counsel for such Settlement Class Member Party or, if not represented, such Settlement Class Member Party, will be given reasonable notice and an opportunity to voluntarily dismiss such action or proceeding with prejudice.  Furthermore, if the Defendant, any other Monsanto Party, or any Related Party brings any legal action before the Court to enforce its rights under the Settlement Agreement against a Settlement Class Member Party and prevails in such action, that Monsanto Party or Related Party will be entitled to recover any and all related costs and expenses (including attorneys' fees) from any Settlement Class Member Party found to be in violation or breach of his or her obligations under this Article XIX.

81

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## ARTICLE XX
## Communications to the Public

Section 20.1    The Parties and their counsel agree not to make any public statements, including statements to the media, that are inconsistent with the Settlement Agreement.  Any communications to the public or the media made by or on behalf of the Parties and their respective counsel regarding the Settlement Agreement will be made in good faith and will be consistent with the Parties' agreement to take all actions reasonably necessary for preliminary and final approval of the Settlement Agreement.  Any information contained in such communications will be balanced, fair, accurate, and consistent with the content of the Settlement Class Notice.  The form, content, and timing of any public statement by counsel for any of the Parties regarding the Settlement will be subject to mutual agreement by Class Counsel and the Defendant.  Any communications made by the Administrator, the Allocation Special Master, the Settlement Special Master, the HCA, the Settlement Class Notice Agent, and their respective Affiliates, officers, directors, and employees, will be made in good faith and limited to those necessary to perform their responsibilities under the Settlement Agreement, and any information contained in such communications will be balanced, fair, accurate, and consistent with the content of the Settlement Class Notice.  Nothing herein is intended or will be interpreted to inhibit or interfere with the ability of the Monsanto Parties to comply with their obligations under the securities laws of any jurisdiction or the rules of any stock exchange on which their securities are listed or traded.

(a)    Nothing herein is intended or will be interpreted to inhibit or interfere with the ability of Class Counsel or Counsel for the Defendant to communicate with the Court, their clients, or Settlement Class Members or their counsel.

(b)    Class Counsel acknowledge and agree, and the Preliminary Approval Order will provide, that the Defendant has the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Member Parties on matters unrelated to the Settlement Agreement in connection with the Defendant's normal business.

## ARTICLE XXI
## Termination

Section 21.1    Party Termination Rights.

(a)    Class Counsel and the Defendant each have the absolute and unconditional right, in their individual discretion exercised in good faith, to terminate and render null and void the Settlement Agreement if:  (i) the Court, or any appellate court, rejects, modifies, or denies approval of any portion of the Settlement Agreement that Class Counsel or Counsel for the Defendant reasonably and in good faith determines is material to the Party such counsel represents, or (ii) the Court, or any appellate court, does not enter or completely affirm, or alters or expands, any portion of the proposed Preliminary Approval Order (Exhibit G), or the proposed Final Order and Judgment (Exhibit H), unless such modifications are acceptable to the Parties in their individual discretion.  Such written election to terminate the Settlement Agreement must be made to the Court within 30 days of such court order.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(b)      The Defendant shall have the right, in its discretion, to terminate and render null and void the Settlement Agreement as set forth in Section 12.5, in accordance with the terms of Section 12.5 and Confidential Exhibit I.

(c)      Class Counsel may not terminate and render null and void the Settlement Agreement on the basis of the attorneys' fees award ordered, or modified, by the Court or any appellate courts, as set forth in Article XV.

Section 21.2    Post-Termination Actions.

(a)      If the Settlement Agreement is terminated or becomes null and void, the Settlement Agreement will not be offered into evidence or used in this or in any other action in the Court, or in any other state court, federal court, arbitration, regulatory agency, or other tribunal or forum for any purpose, including, but not limited to, the existence, certification, or maintenance of any purported class.  In addition, in such event, the Settlement Agreement and all negotiations, proceedings, documents prepared, and statements made in connection with the Settlement Agreement will be without prejudice to all Parties and will not be admissible into evidence and will not be deemed or construed to be an admission or concession by any of the Parties of any fact, matter, or proposition of law and will not be used in any manner for any purpose, and all Parties will stand in the same position as if the Settlement Agreement had not been negotiated, made, or filed with the Court.

(b)      In the event that the Settlement Agreement is terminated or becomes null and void, the Parties will jointly move the Court to vacate the Preliminary Approval Order and any orders approving the Settlement Agreement or certifying the Settlement Class or, if the Settlement Agreement is terminated before notice has been given, any other orders directing that notice be given to the Settlement Class.

(c)      If the Settlement Agreement is terminated or becomes null and void after notice has been given, the Parties will provide Court-approved notice of termination to the Settlement Class.  Such notice shall be considered an Administration Cost.

(d)      Except as provided in Section 27.4, in the event that the Settlement Agreement is terminated or becomes null and void, any unexpended funds in the Settlement Fund will revert to the Defendant within 10 days, the Defendant will cease to have any financial obligations under the Settlement Agreement, and all data provided by the Defendant, Class Counsel, or Settlement Class Members shall be returned or destroyed.

Section 21.3    Effect of Termination.  In the event that the Settlement Agreement is terminated or becomes null and void, there shall be no liability or obligation on the part of any of the Parties, except the provisions of Section 3.6, Section 4.5, Sections 6.4(c)–(d), Section 15.9, Section 16.1(e), Section 16.1(g), Section 16.2(e), Section 16.3(e), Section 16.4(e), Section 18.1, Section 18.3, Section 21.1, Article XXII, Article XXIII, Sections 27.1–27.2, and Sections 27.9–27.14 shall survive any such termination of the Settlement Agreement or survive the Settlement Agreement becoming null and void, and no such termination of the Settlement Agreement or the Settlement Agreement becoming null and void shall relieve any person from any obligation under such provisions.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**ARTICLE XXII**
**Treatment of Confidential Information**

Section 22.1    <u>Confidentiality of Information Related to the Settlement Agreement</u>.  The Parties will treat all confidential or proprietary information shared hereunder, or in connection herewith, either prior to, on, or after the Settlement Date, and any and all prior or subsequent drafts, representations, negotiations, conversations, correspondence, understandings, analyses, proposals, term sheets, and letters, whether oral or written, of any kind or nature, with respect to the subject matter hereof (the "Confidential Information"), in conformity with strict confidence and will not disclose Confidential Information to any non-Party without the prior written consent of the Party that shared the Confidential Information, except:  (a) as required by applicable law, regulation, or by order or request of a court of competent jurisdiction, regulator, or self-regulatory organization (including subpoena or document request), <u>provided</u> that the Party that shared the Confidential Information is given prompt written notice thereof and, to the extent practicable, an opportunity to seek a protective order or other confidential treatment thereof, <u>provided</u>, <u>further</u>, that the Party subject to such requirement or request cooperates fully with the Party that shared the Confidential Information in connection therewith, and only such Confidential Information is disclosed as is legally required to be disclosed in the opinion of legal counsel for the disclosing Party; (b) under legal (including contractual) or ethical obligations of confidentiality, on an as-needed and confidential basis to such Party's present and future accountants, counsel, insurers, or reinsurers; or (c) with regard to any information that is already publicly known through no fault of such Party or its Affiliates.  The Settlement Agreement (including all Exhibits other than Confidential Exhibit I), any other documents filed in connection with the Settlement Agreement, and any information disclosed through a public court proceeding shall not be deemed Confidential Information.

Section 22.2    <u>Confidentiality of Settlement Class Member Information</u>.  All information relating to a Settlement Class Member that is disclosed to or obtained by the Administrator, the Allocation Special Master, the Settlement Special Master, the HCA, the Defendant, or the Court may be used only by the Administrator, the Allocation Special Master, the Settlement Special Master, the HCA, the Defendant, or the Court for the administration of the Settlement Agreement according to the Settlement Agreement's terms and conditions.  All such information relating to a Settlement Class Member will be treated as Confidential Information hereunder, will be subject to the terms of Section 22.1 hereof, and, where applicable, will be treated as Protected Health Information subject to HIPAA and other applicable privacy laws.

Section 22.3    If the Settlement Special Master, the Administrator, the Allocation Special Master or the HCA is replaced (pursuant to Section 16.1(f), Section 16.2(f), Section 16.3(f) or Section 16.4(d), respectively), all information disclosed to or obtained by such party in the course of their duties under the Settlement Agreement must be transferred to their replacement.  No such information shall be considered the property of the replaced vendor and the replaced vendor may not retain any such information.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## ARTICLE XXIII
## Denial of Wrongdoing; No Admission of Liability

Section 23.1    The Settlement Agreement, whether or not it becomes effective, is for settlement purposes only and is to be construed solely as a reflection of the Parties' desire to facilitate a resolution of the Petition and Roundup Claims.  The Defendant expressly denies that it, or any of the other Monsanto Parties, has violated any duty to, breached any obligation to, committed any fraud on, or otherwise engaged in any wrongdoing with respect to, the Class Representatives and Subclass Representatives, the Settlement Class, any Settlement Class Member, any Settlement Class Member Party, or any Opt Out, and expressly denies the allegations asserted in the Petition, and denies any and all liability related thereto.  Neither the Settlement Agreement nor any actions undertaken by the Defendant or any of the Monsanto Parties in the negotiation, execution, or satisfaction of the Settlement Agreement will constitute, or be construed as, an admission of any liability or wrongdoing, or of any fact or legal position, or recognition of the validity of any Claim made by the Class Representatives and Subclass Representatives, the Settlement Class, any Settlement Class Member, any Settlement Class Member Party, or any Opt Out, in this or any other action or proceeding.

Section 23.2    In no event will the Settlement Agreement, whether or not it becomes effective, or any of its provisions, or any negotiations, statements, or court proceedings arising from, resulting from, in any way relating to or in connection with its provisions, or any actions undertaken in the Settlement Agreement, in any way be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by the Class Representatives and Subclass Representatives, the Settlement Class, any Settlement Class Member, any Settlement Class Member Party, Class Counsel, or any of the Monsanto Parties in any legal, legislative, administrative, or regulatory action, proceeding, or matter for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement. Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings arising from, resulting from, in any way relating to or in connection with its provisions, nor any actions undertaken in the Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the Monsanto Parties or the Related Parties.  This Section 23.2 shall not apply to disputes between the Defendant and their insurers, as to which the Defendant reserves all rights.

Section 23.3    Notwithstanding any provision of this Settlement Agreement to the contrary, the Settlement Agreement and related court filings may be used in connection with any Bankruptcy Event.

## ARTICLE XXIV
## Representations and Warranties

Section 24.1    Class Representatives' Representations and Warranties.    Class Representatives represent and warrant to the Defendant as follows:

    (a)    Each of the Class Representatives is a Settlement Class Member.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(b)    Each of the Class Representatives has received legal advice from Class Counsel regarding the advisability of entering into this Settlement Agreement and the legal consequences of this Settlement Agreement.

(c)    No portion of any of the Released Claims possessed by any of the Class Representatives and no portion of any relief under this Settlement Agreement to which any of the Class Representatives may be entitled has been assigned, transferred, or conveyed by or for any of the Class Representatives to any other Person, except pursuant to any contingency fee agreement with Class Counsel, or to any lawful grant from a governmental entity, loan or lien.

(d)    None of the Class Representatives is relying on any statement, representation, omission, inducement, or promise by the Defendant, its agents, or its representatives, except those expressly stated in this Settlement Agreement.

(e)    Each of the Class Representatives, through Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement Agreement.

(f)    Each of the Class Representatives has carefully read, and knows and understands, the full contents of this Settlement Agreement and is voluntarily entering into this Settlement Agreement after having consulted with Class Counsel or other attorneys.

(g)    Each of the Class Representatives has all necessary competence and authority to enter into this Settlement Agreement on their own behalf and on behalf of the Settlement Class, has authorized the execution and performance of this Settlement Agreement, has authorized Class Counsel to sign this Settlement Agreement on their behalf, and has authority to release all Released Claims on behalf of himself or herself and all other Settlement Class Member Parties by virtue of their relationship or association with it.

(h)    None of the Class Representatives will file an Opt Out, file an objection, or otherwise challenge the Settlement.  None of the Class Representatives will solicit, or assist others in soliciting, Settlement Class Members to file an Opt Out, file an objection, or otherwise challenge the Settlement.

Section 24.2    Class Counsel's Representations and Warranties.  Class Counsel represents and warrants to the Defendant as follows:

(a)    Class Counsel believes the Settlement Agreement is fair, reasonable, adequate, and beneficial to each Settlement Class Member and that participation in the Settlement would be in the best interests of each Settlement Class Member.

(b)    Class Counsel will make or has made best efforts to recommend the Settlement Agreement to his or her clients.  For the avoidance of doubt, each attorney is expected to exercise his or her independent judgment in the best interest of each client individually before determining whether to recommend joining the settlement.

(c)    Because Class Counsel believes that the Settlement is in the best interests of each Settlement Class Member, Class Counsel will not solicit, or assist others in soliciting,

86

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Settlement Class Members to Opt Out of, file an objection to, or otherwise challenge the Settlement Agreement.

(d)    Class Counsel has all necessary authority to enter into and execute this Settlement Agreement on behalf of Class Representatives.

(e)    Each of the Class Representatives has approved and agreed to be bound by this Settlement Agreement.

(f)    The representations of each Class Representative in Section 24.1 of this Settlement Agreement are true and correct to the best of Class Counsel's knowledge.

(g)    Class Counsel shall comply with, and will not act in a manner contrary to, the requirements to receive attorneys' fees and costs set forth in Sections 15.6 and 15.7.

Section 24.3    <u>Defendant's Representations and Warranties</u>.    The Defendant represents and warrants to Class Representatives as follows:

(a)    The Defendant has received legal advice from its attorneys regarding the advisability of entering into this Settlement Agreement and the legal consequences of this Settlement Agreement.

(b)    The Defendant is not relying on any statement, representation, omission, inducement, or promise by Class Representatives, Settlement Class Members, or Class Counsel, except those expressly stated in this Settlement Agreement.

(c)    The Defendant, with the assistance of its attorneys, has investigated the law and facts pertaining to the Roundup Claims and the Settlement Agreement.

(d)    The Defendant has carefully read, and knows and understands, the full contents of this Settlement Agreement and is voluntarily entering into this Settlement Agreement after having consulted with its attorneys.

(e)    The Defendant has all necessary authority to enter into this Settlement Agreement, has authorized the execution and performance of this Settlement Agreement, and has authorized the individual signing this Settlement Agreement on its behalf to do so.

(f)    The Defendant is a party to an agreement with the United States Department of Agriculture and the Committee on Foreign Investment in the United States dated March 29, 2017, which will be submitted to the Court for *in camera* review, and that agreement continues to be in effect.

### ARTICLE XXV
### Cooperation

Section 25.1    The Parties will cooperate, assist, and undertake all reasonable actions to accomplish the steps contemplated by the Settlement Agreement and to implement the Settlement Agreement on the terms and conditions provided herein.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 25.2    The Parties agree to take all actions necessary to obtain final approval of the Settlement Agreement and entry of the Final Order and Judgment, including the terms and provisions described in the Settlement Agreement, and, upon final approval and entry of such order, an order dismissing the Petition as to the Class and Subclass Representatives, the Settlement Class, and each Settlement Class Member.

Section 25.3    The Parties and their counsel agree to support the final approval and implementation of the Settlement Agreement and defend it against objections, appeal, collateral attack, or any efforts to hinder or delay its approval and implementation.  Neither the Parties nor their counsel, directly or indirectly, will encourage any Person to object to or collaterally attack the Settlement Agreement or assist them in doing so.

## ARTICLE XXVI
## Continuing Jurisdiction

Section 26.1    Pursuant to the Final Order and Judgment, the Court will retain continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members and Settlement Class Member Parties, the Administrator, the Settlement Special Master, the Allocation Special Master, the HCA, the Settlement Class Notice Agent, the Settlement Fund Escrow Agent, the Security Fund Escrow Agent, the Settlement Agreement, the Settlement Fund, and the Released Claims of Settlement Class Members, to interpret, implement, administer, and enforce the Settlement Agreement and the Final Order and Judgment.  Any disputes or controversies arising from, resulting from, in any way relating to or in connection with the interpretation, implementation, administration, and enforcement of the Settlement Agreement will be made by motion to the Court, except as otherwise provided in the Settlement Agreement.  In addition, the Parties, each Settlement Class Member, and the Settlement Class Member Parties are hereby deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement.  The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

Section 26.2    Following the Effective Date, any decision or order of the Court regarding the interpretation, implementation, administration, and enforcement of the Settlement Agreement shall be final and binding and shall not be subject to further judicial review.

Section 26.3    Notwithstanding any contrary law applicable to the underlying Released Claims, the Settlement Agreement and the Releases hereunder will be interpreted, and enforced in accordance with the laws of the State of Missouri, without regard to conflict of laws principles.

## ARTICLE XXVII
## Additional Provisions

Section 27.1    Class Certification for Settlement Purposes Only.  The Parties agree that any certification of the Settlement Class and Subclasses will be for settlement purposes only.  The Parties do not waive or concede any position or arguments they have for or against certification of

88

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

any class for any other purpose in any action or proceeding, and the Monsanto Parties retain full right and ability to contest any such class certification. Any class certification order entered in connection with the Settlement Agreement will not constitute an admission by the Defendant, or finding or evidence, that the Class and Subclass Representatives' Claims, or the Claims of any other Settlement Class Member, or the Claims of the Settlement Class, are appropriate for class treatment if the Claims were contested in this or any other federal, state, arbitral, or foreign forum. If the Court enters the proposed form of Preliminary Approval Order, the Final Order and Judgment will provide for vacation of the Preliminary Approval Order and the Final Order and Judgment in the event that the Settlement Agreement does not become effective.

Section 27.2    No Effect. A favorable Award or decision upon request for reconsideration of an Award to a Settlement Class Member shall not bind the Monsanto Parties or Related Parties regarding a Settlement Class Member's Exposure to Roundup Products and shall not be used as evidence against the Monsanto Parties or the Related Parties in any action or proceeding. The Monsanto Parties do not waive or concede any position or arguments they have for or against, and retain full right and ability to contest, a Settlement Class Member's claim of Exposure to Roundup Products or whether an individual is a Settlement Class Member in any action or proceeding, including any Roundup Lawsuit, Related-Party Lawsuit, or with respect to any and all Roundup Claims. The Monsanto Parties and the Related Parties will not be precluded in any action or proceeding from contesting a Settlement Class Member's claim of Exposure to Roundup Products or whether an individual is a Settlement Class Member, even if the Settlement Class Member receives an Award. The Monsanto Parties are not obligated to participate in any of these determinations, or any request for reconsideration, or challenge of these determinations, in order to preserve the rights set forth in this Section 27.2.

Section 27.3    Binding Effect and Subsequent Transactions.

(a)    This Agreement shall be binding upon, and inure to the benefit of, the Settlement Class Member Parties and the Monsanto Parties, and their respective successors and assigns.

(b)    The Defendant shall not, in one transaction or a series of related transactions, sell or transfer U.S. assets having a fair market value equal to 25% or more of the consolidated assets of the Defendant (other than sales or transfers of inventories, or sales or transfers to an entity owned directly or indirectly) where the sale or transfer is announced after Final Court Approval, is not for fair consideration, and would foreseeably and unreasonably jeopardize the Defendant's ability to make the payments under this Agreement following the close of a sale or transfer transaction, unless the Defendant obtains the acquiror's agreement that it will be either a guarantor of or successor to the percentage of the Defendant's remaining payment obligations under this Agreement equal to the percentage of the Defendant's consolidated assets being sold or transferred in such transaction. Percentages under this Section 27.3 shall be determined in accordance with International Financial Reporting Standards.

Section 27.4    Subsequent Challenges. If more than 1,000 Settlement Class Members are relieved from their obligations under this Settlement Agreement by way of collateral attack, challenge to full *res judicata* effect, or otherwise, the Defendant shall have the option to cease making Initial Settlement Payments and Annual Settlement Payments into the Settlement Fund as

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

described in Sections 4.1 and 4.2, or to otherwise continue to fund the Settlement (including the Security Fund described in Section 4.6), provided, however, that the Defendant may not collude with Settlement Class Members to enable or encourage successful collateral attacks or to otherwise reach this threshold, and that if the Defendant is found to have so colluded, any such attacks in which they have colluded shall not count towards this threshold.  Monies already paid by the Defendant shall continue to be distributed according to the terms of this Settlement Agreement until the Settlement Fund is exhausted.  All Forms of Release executed by individual Settlement Class Members, or their Derivative or Representative Claimants, shall remain in full force and effect.  Any Settlement Class Members who have not received an Award or Exiting Class Member Payment as of the time of exhaustion of the Settlement Fund in these circumstances shall be deemed to have no further rights or obligations under the Settlement Agreement, and the Release and Covenant Not to Sue by Defendant described in Section 3.5 shall be null and void as to such Settlement Class Members.

Section 27.5    Additional Roundup Settlements.  As part of the Court's consideration of final approval of the Settlement Agreement, the Defendant will facilitate submission to the Court for *in camera* review, the two Additional Roundup Settlements referenced in the whereas clause hereof and other supporting documentation as necessary, and ask the Court to review the two settlement agreements to confirm the settlement amounts, the number of claimants, the per-claim average, the claims administration criteria, and all other terms of those agreements.  The Parties will ask the Court to find, as part of the Final Order and Judgment, that the terms of each of the two Additional Roundup Settlements reviewed are not more favorable to claimants economically or otherwise than the terms of the Settlement Agreement.

Section 27.6    Claims against Manufacturers of Herbicides Other than Monsanto Parties. In the event that a Settlement Class Member informs the Defendant in writing at a designated email address to  be provided on the Settlement Website that he or she intends to bring a Roundup Claim alleging the independent liability of a manufacturer of herbicides (other than a Monsanto Party), the Defendant will reasonably cooperate with a good-faith pre-suit inquiry as to whether the manufacturer is a Related Party due to a contractual indemnity from a Monsanto Party.  Further, in the event that:  (i) a Settlement Class Member files a Roundup Claim alleging the independent liability of a manufacturer of herbicides (other than a Monsanto Party), (ii) that manufacturer asserts it is a Related Party due to a contractual indemnity from a Monsanto Party, and (iii) the Settlement Class Member seeks a court ruling that the contractual indemnity does not apply, the Monsanto Parties will reasonably cooperate with good-faith requests in connection therewith.

Section 27.7    No Assignment of Claims.  Neither the Settlement Class nor any Class Representative or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any Person other than the Defendant any rights or Claims arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, the subject matter of the Petition, Roundup Claims, or Released Claims.  Any such assignment, or attempt to assign, to any Person other than the Defendant any rights or Claims arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, the subject matter of the Petition, Roundup Claims, or Released Claims will be void, invalid, and of no force and effect, and the Administrator shall not recognize any such action.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Section 27.8    Individual Counsel.  A Settlement Class Member may retain counsel to assist with his or her Claim Package or Quick-Pay Claim Package.  Counsel acting on his or her client's behalf may submit all Claim Forms, Claim Packages, Quick-Pay Claim Packages, and other proof, correspondence, or other documents to the Administrator, Allocation Special Master, Settlement Special Master, or HCA, on behalf of that Settlement Class Member; provided, however, that counsel individually representing a Settlement Class Member may not sign on behalf of that Settlement Class Member:  (i) an Opt Out request; (ii) a revocation of an Opt Out; (iii) an objection, as set forth in Section 13.1; (iv) a Claim Form; (v) a request for reconsideration, as set forth in Section 7.1(a); (vi) an Award Rejection form, as set forth in Section 6.17; and (vii) an Exiting Class Member notice delivered under Section 8.1(a)(i).  Where a Settlement Class Member indicates in writing to the Administrator, the Allocation Special Master, the Settlement Special Master, or the HCA that he or she is individually represented by counsel, the Administrator, the Allocation Special Master, the Settlement Special Master, or the HCA will communicate with such counsel on behalf of the Settlement Class Member.  The Administrator, the Allocation Special Master, the Settlement Special Master, or the HCA may, however, communicate directly with such Settlement Class Member directly and copy the counsel individually representing a Settlement Class Member on any written communications with the Settlement Class Member.

Section 27.9    Integration.   The Settlement Agreement, including its Exhibits, will constitute the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, letters, conversations, agreements, term sheets, and understandings, whether written or oral, arising from, resulting from, in any way relating to or in connection with the subject matter of the Settlement Agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, agreement, arrangement, or understanding, whether written or oral, concerning any part or all of the subject matter of the Settlement Agreement has been made or relied on except as expressly set forth in the Settlement Agreement.

Section 27.10  Headings.  The headings used in the Settlement Agreement are intended for the convenience of the reader only and will not affect the meaning or interpretation of the Settlement Agreement in any manner.  Any inconsistency between the headings used in the Settlement Agreement and the text of the Articles, Sections, and Exhibits of the Settlement Agreement will be resolved in favor of the text.

Section 27.11  Incorporation of Exhibits.  All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, any inconsistency between the text of the Articles of the Settlement Agreement and any Exhibits hereto will be resolved in favor of the text of the Articles of the Settlement Agreement.

Section 27.12  Amendment.  The Settlement Agreement will not be subject to any change, modification, amendment, or addition without the express written consent of Class Counsel and the Defendant, on behalf of all Parties to the Settlement Agreement, and upon Court approval where required.

Section 27.13  Mutual Preparation.   The Parties have negotiated all of the terms and conditions of the Settlement Agreement at arm's length.  Neither the Settlement Class Members nor the Defendant, nor any one of them, nor any of their counsel will be considered to be the sole

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

drafter of the Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of the Settlement Agreement.  The Settlement Agreement will be deemed to have been mutually prepared by the Parties and will not be construed against any of them by reason of authorship.

Section 27.14  <u>Beneficiaries</u>.  The Settlement Agreement will be binding upon the Parties and will inure to the benefit of the Settlement Class Members, the Monsanto Parties, and the Related Parties.  All Monsanto Parties and Related Parties who are not the Defendant are intended third-party beneficiaries entitled to enforce the terms of the Releases and Covenant Not to Sue set forth in Article III.  No provision in the Settlement Agreement is intended to create any third-party beneficiary to the Settlement Agreement other than the Monsanto Parties and the Related Parties.  Nothing expressed or implied in the Settlement Agreement is intended to or will be construed to confer any right or remedy under or by reason of the Settlement Agreement upon any Person other than Class and Subclass Representatives; the Settlement Class Members; Class Counsel; the Defendant; the Monsanto Parties; and the Related Parties.

Section 27.15  <u>Extensions of Time</u>.  Class Counsel and the Defendant may agree in writing, subject to approval of the Court where required, to reasonable extensions of time to implement the provisions of the Settlement Agreement.

Section 27.16  <u>Execution in Counterparts</u>.  The Settlement Agreement may be executed in counterparts, and a PDF or other electronic image of an actual signature will be deemed an original signature for purposes of the Settlement Agreement.

Section 27.17  <u>Good Faith Implementation</u>.  Class Counsel and the Defendant will undertake to implement the terms of the Settlement Agreement in good faith.  Before filing any motion or petition in the Court raising a dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement, Class Counsel and the Defendant will consult with each other in good faith and certify to the Court that they have conferred in good faith.

Section 27.18  <u>Force Majeure</u>.  The Parties will be excused from any failure to perform timely any obligation hereunder to the extent that such failure is caused by war, acts of public enemies or terrorists, strikes or other labor disturbances, fires, floods, acts of God, or any causes of the like or different kind beyond the reasonable control of the Parties.

Section 27.19  <u>Waiver</u>.  The waiver by any Party of any breach of the Settlement Agreement by another Party will not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of the Settlement Agreement.

Section 27.20  <u>Tax Consequences</u>.  No opinion regarding the tax consequences of the Settlement Agreement to any individual Settlement Class Member Party is being given or will be given by the Defendant, the Monsanto Parties, the Related Parties, Counsel for the Defendant, Class and Subclass Representatives, or Class Counsel, nor is any representation or warranty in this regard made by virtue of the Settlement Agreement.  Settlement Class Member Parties must consult their own tax advisors regarding the tax consequences of the Settlement Agreement, including any payments provided hereunder and any tax reporting obligations they may have with

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

respect thereto.  Each Settlement Class Member Party's tax obligations, and the determination thereof, are his or her sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member Party.  The Monsanto Parties, the Related Parties, the Defendant, and Class Counsel will have no liability or responsibility whatsoever for any such tax consequences resulting from payments under the Settlement Agreement.  The Defendant, the Monsanto Parties, and the Related Parties will have no liability or responsibility for any reporting or withholding requirements with respect to any payments made under the Settlement Agreement.  The Administrator shall cooperate with the Settlement Fund Escrow Agent regarding any tax information reporting and withholding requirements with respect to payments made under the Settlement Agreement, as well as any associated interest and penalties, and take all actions necessary to enable the Administrator to fulfill its responsibilities under Section 16.2.  Any amounts required to be withheld shall be treated for all purposes as though such amounts had been paid to such Person in respect of which such withholding was required.

Section 27.21  <u>Issuance of Notices and Submission of Materials</u>.  In any instance in which the Settlement Agreement requires the issuance of any notice regarding a claim, unless specified otherwise in the Settlement Agreement, such notice must be issued by:  (a) online submission through any secure web-based portal established by the Administrator for this purpose to the Settlement Class Member or the Defendant, which shall be accompanied by an email certifying receipt; or (b) U.S. mail (or its foreign equivalent).  In any instance in which the Settlement Agreement requires submission of materials by or on behalf of a Settlement Class Member or the Defendant, unless specified otherwise in the Settlement Agreement, such submission must be made by:  (x) online submission through any secure web-based portal established by the Administrator for this purpose; (y) U.S. mail (or its foreign equivalent); or (z) delivery.  Written notice must be given to the following addresses, or such other Person or Persons as shall be designated by the Parties.

(a)     If to the Class Representatives, Class Counsel, or Subclass Counsel, to all of:

Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey  07660
Attention:    Christopher A. Seeger
              David R. Buchanan
              Steven J. Daroci
Email:        cseeger@seegerweiss.com
              dbuchanan@seegerweiss.com
              sdaroci@seegerweiss.com

Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina  29464
Attention:    Joseph F. Rice
              Frederick C. Baker

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Fidelma Fitzpatrick

Email:    jrice@motleyrice.com
fbaker@motleyrice.com
ffitzpatrick@motleyrice.com

Waters Kraus Paul & Siegel
3141 Hood Street, Suite 700
Dallas, Texas  75219
Attention:    Peter A. Kraus
Charles Siegel
Email:    kraus@waterskraus.com
siegel@waterskraus.com

Williams Hart & Boundas, LLP
8441 Gulf Fwy #600
Houston, Texas  77017
Attention:    John Eddie Williams Jr.
John Boundas
Email:    jwilliams@whlaw.com
jboundas@whlaw.com

The Holland Law Firm
211 North Broadway, Suite 2625
St. Louis, Missouri  63102
Attention:    Eric D. Holland
Patrick R. Dowd
Email:    eholland@hollandtriallawyers.com
pdowd@hollandtriallawyers.com

Ketchmark & McCreight, P.C.
11161 Overbrook Road  Suite 210
Leawood, Kansas  66211
Attention:    Michael S. Ketchmark
Email:    mike@ketchmclaw.com

(b)    If to the Defendant or Counsel for the Defendant, to all of:

Bayer U.S. LLC
100 Bayer Boulevard
Whippany, New Jersey  07981
Attention:    General Counsel
William B. Dodero

94

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York  10019
Attention:    Jeffrey M. Wintner
              Elaine P. Golin
              Carrie M. Reilly
Email:        JMWintner@WLRK.com
              EPGolin@WLRK.com
              CMReilly@WLRK.com

Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C.  20036
Attention:    Daniel W. Nelson
              Derek K. Kraft
Email:        dnelson@gibsondunn.com
              dkraft@gibsondunn.com

[*Remainder of page intentionally left blank*]

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Agreed to as of this 17 day of February, 2026:

**COUNSEL  FOR THE DEFENDANT:**

By: _____

Elaine P. Golin
Jeffrey M. Wintner
Carrie M. Reilly
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
United States

Daniel W. Nelson
Derek K. Kraft
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
United States

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**CLASS/SUBCLASS 1 COUNSEL:**

By: _____
Christopher A. Seeger
David R. Buchanan
Steven J. Daroci
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey  07660
United States

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**CLASS/SUBCLASS 1 COUNSEL:**

By: _____

Joseph F. Rice
Frederick C. Baker
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina  29464
United States

Fidelma Fitzpatrick
MOTLEY RICE LLC
40 Westminster St., 5th Floor
Providence, RI 02903

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**CLASS/SUBCLASS 1 COUNSEL:**

By: _____

Peter A. Kraus
Charles Siegel
WATERS KRAUS PAUL & SIEGEL
3141 Hood Street, Suite 700
Dallas, Texas  75219
United States

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**CLASS/SUBCLASS 1 COUNSEL:**

By: _____

John Eddie Williams Jr.
John Boundas
WILLIAMS HART & BOUNDAS, LLP
8441 Gulf Fwy #600
Houston, Texas  77017
United States

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**CLASS/SUBCLASS 2 COUNSEL:**

By: _____

Eric D. Holland
Patrick R. Dowd
THE HOLLAND LAW FIRM
211 North Broadway, Suite 2625
St. Louis, Missouri  63102
United States

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**CLASS/SUBCLASS 2 COUNSEL:**

By: _____
Michael S. Ketchmark
KETCHMARK & MCCREIGHT, P.C.
11161 Overbrook Road  Suite 210
Leawood, Kansas  66211
United States

**INDEX OF DEFINED TERMS**

**Page**

Active Discovery ......................................................................................................... 3
Additional Permitted Fund Uses .................................................................................. 24
Additional Roundup Settlements .................................................................................. 3
Administration Costs .................................................................................................... 3
Administrator ................................................................................................................ 3
Adverse Eligibility Determination ............................................................................... 38
Affiliate ........................................................................................................................ 3
Aggressive NHL ........................................................................................................... 3
Agreement ..................................................................................................................... 14
Allocation Special Master ............................................................................................ 3
Annual Payment Date ................................................................................................... 22
Annual Settlement Payment .......................................................................................... 22
Application .................................................................................................................... 4
Application Requirements ............................................................................................. 30
Applied ......................................................................................................................... 4
Award ............................................................................................................................ 4
Award Fund .................................................................................................................. 4
Award Payment ............................................................................................................. 4
Award Rejection ............................................................................................................ 4
Award Rejector ............................................................................................................. 4
Bankruptcy Event .......................................................................................................... 26
Claim Eligibility Date ................................................................................................... 38
Claim Form ................................................................................................................... 4
Claim Package ............................................................................................................... 5
Claim Score ................................................................................................................... 43
Claim Submission Date ................................................................................................. 38
Claim Year .................................................................................................................... 5
Claimant ........................................................................................................................ 5
Claim-Over ................................................................................................................... 20
Claims ........................................................................................................................... 5
Claims Program ............................................................................................................ 5
Class Counsel ................................................................................................................ 5
Class Representatives .................................................................................................... 6
CMS ............................................................................................................................... 6
Confidential Information ............................................................................................... 84
Counsel for the Defendant ............................................................................................ 6
Court .............................................................................................................................. 6
Covenant Not to Sue ..................................................................................................... 6
Defendant ...................................................................................................................... 1
Derivative Claimants .................................................................................................... 6
Derivative Claims ......................................................................................................... 6
ECF ............................................................................................................................... 7
ECF Award .................................................................................................................... 7

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Effective Date ......................................................................................................................... 6
Eighth Annual Payment Date ................................................................................................ 23
Eighth Annual Settlement Payment ...................................................................................... 22
Eleventh Annual Payment Date ............................................................................................ 23
Eleventh Annual Settlement Payment ................................................................................... 22
Eligibility Criteria ................................................................................................................ 30
Eligible .................................................................................................................................. 30
Eligible Claim Package .......................................................................................................... 7
Eligible Quick-Pay Claim Package ......................................................................................... 7
Eligible Subclass 1 Claim Package ......................................................................................... 7
Eligible Subclass 2 Claim Package ......................................................................................... 7
EREF ....................................................................................................................................... 7
EREF Award ........................................................................................................................... 7
Exhibits .................................................................................................................................. 3
Exigency Award ...................................................................................................................... 7
Exigency Awards ................................................................................................................... 47
Exiting Class Member ............................................................................................................. 7
Exiting Class Member Payment .............................................................................................. 7
Exposed ................................................................................................................................... 7
Exposure ................................................................................................................................. 7
Extraordinary Circumstances Fund ......................................................................................... 7
Extraordinary Circumstances Fund Award .............................................................................. 7
Extraordinary Residential Exposure Fund ............................................................................... 7
Extraordinary Residential Exposure Fund Award .................................................................... 7
Fairness Hearing ..................................................................................................................... 8
Fee Entitlement ....................................................................................................................... 8
Fifteenth Annual Payment Date ............................................................................................ 23
Fifteenth Annual Settlement Payment ................................................................................... 22
Fifth Annual Payment Date ................................................................................................... 22
Fifth Annual Settlement Payment .......................................................................................... 22
Final Approval Date ................................................................................................................ 8
Final Court Approval .............................................................................................................. 8
Final Order and Judgment ....................................................................................................... 8
First Annual Payment Date .................................................................................................... 22
First Annual Settlement Payment .......................................................................................... 22
Form of Release ...................................................................................................................... 8
Fourteenth Annual Payment Date .......................................................................................... 23
Fourteenth Annual Settlement Payment ................................................................................. 22
Fourth Annual Payment Date ................................................................................................ 22
Fourth Annual Settlement Payment ....................................................................................... 22
Governmental Authority .......................................................................................................... 8
Governmental Payor ................................................................................................................ 8
Handling .................................................................................................................................. 8
HCA ......................................................................................................................................... 8
Healthcare Compliance Administrator ..................................................................................... 8
HIPAA ..................................................................................................................................... 8

Indolent ............................................................................................................................ 9
Indolent NHL .................................................................................................................... 9
Initial Claimant ................................................................................................................ 9
Initial Settlement Payments ............................................................................................ 22
IRC .................................................................................................................................... 9
Later Claimant .................................................................................................................. 9
Later Retained Counsel .................................................................................................... 9
Lawsuit .............................................................................................................................. 9
Lien .................................................................................................................................... 9
Medicaid Program ............................................................................................................ 9
Medicare Program ............................................................................................................ 9
Monsanto Parties .............................................................................................................. 9
MSP Laws ........................................................................................................................ 10
NHL ................................................................................................................................. 10
Ninth Annual Payment Date .......................................................................................... 23
Ninth Annual Settlement Payment ................................................................................. 22
Non-Hodgkin Lymphoma ............................................................................................... 10
Occupational Claimant .................................................................................................... 10
Opt Out ........................................................................................................................... 10
Opt Out Lawsuit ............................................................................................................. 10
Opt Out Period ............................................................................................................... 10
Other Insurer ................................................................................................................... 10
Parties .............................................................................................................................. 10
Payment Credit ............................................................................................................... 10
Person .............................................................................................................................. 11
Personal Signature .......................................................................................................... 11
Petition ............................................................................................................................. 1
Preliminary Approval Date ............................................................................................. 11
Preliminary Approval Motion ........................................................................................ 11
Preliminary Approval Order ........................................................................................... 11
Preliminary Court Approval ........................................................................................... 11
Program Award ............................................................................................................... 11
Protected Health Information .......................................................................................... 11
Punitive Damages ........................................................................................................... 11
Qualified Physician ......................................................................................................... 11
Qualifying Diagnosis ...................................................................................................... 11
Quick-Pay Award ............................................................................................................ 12
Quick-Pay Claim Package .............................................................................................. 12
Related Parties ................................................................................................................. 12
Related-Party Lawsuits ................................................................................................... 12
Released Claims ............................................................................................................... 13
Releases ........................................................................................................................... 13
Remaining Occupational Claimant ................................................................................ 13
Representative Claimant .................................................................................................. 13
Residential Claimant ....................................................................................................... 13
Roundup Claims .............................................................................................................. 13

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Roundup Lawsuit ...... 13
Roundup Product ...... 13
Second Annual Payment Date ...... 22
Second Annual Settlement Payment ...... 22
Security Fund ...... 26
Security Fund Escrow Agent ...... 26
Settlement ...... 14
Settlement Agreement ...... 14
Settlement Class ...... 16
Settlement Class Member ...... 14
Settlement Class Member Parties ...... 14
Settlement Class Notice ...... 14
Settlement Class Notice Agent ...... 14
Settlement Class Notice Costs ...... 14
Settlement Class Notice Plan ...... 14
Settlement Date ...... 1
Settlement Fund ...... 14
Settlement Fund Amount ...... 22
Settlement Fund Escrow Agent ...... 14
Settlement Fund Escrow Agreement ...... 15
Settlement Special Master ...... 15
Settlement Website ...... 57
Seventh Annual Payment Date ...... 23
Seventh Annual Settlement Payment ...... 22
Sixteenth Annual Payment Date ...... 23
Sixteenth Annual Settlement Payment ...... 22
Sixth Annual Payment Date ...... 23
Sixth Annual Settlement Payment ...... 22
Subclass 1 ...... 17
Subclass 1 Claim Deadline ...... 15
Subclass 1 Claimant ...... 15
Subclass 2 ...... 17
Subclass 2 Claimant ...... 15
Subclass Counsel ...... 6
Subclass Representatives ...... 15
Subclasses ...... 15
Tax Expenses ...... 75
Tenth Annual Payment Date ...... 23
Tenth Annual Settlement Payment ...... 22
Termination Right ...... 60
Third Annual Payment Date ...... 22
Third Annual Settlement Payment ...... 22
Thirteenth Annual Payment Date ...... 23
Thirteenth Annual Settlement Payment ...... 22
Tier ...... 39
Tier Average ...... 15

Treasury Regulations .......................................................................................... 15
Treating Physician ............................................................................................... 15
Trigger Event ....................................................................................................... 26
Twelfth Annual Payment Date............................................................................. 23
Twelfth Annual Settlement Payment ................................................................... 22
U.S. Persons ......................................................................................................... 16
United States ........................................................................................................ 16
Unknown Claims ................................................................................................. 16
Valid...................................................................................................................... 16

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. A

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**Roundup Products**

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG) | | | | |
| ROUNDUP GRASS AND WEED KILLER | 524-472 | LG | MONSANTO COMPANY | |
| ROUNDUP L & G READY TO USE FAST ACTING FORMULA GRASS & WEED KILLER | 524-451 | LG | MONSANTO COMPANY | ABN: Roundup L&G Ready-To-Use Fast Acting Formula Grass & Weed Killer, Roundup Ready-To-Use Grass & Weed Killer, Roundup Fence & Yard Edger |
| ROUNDUP QUIK STIK GRASS AND WEED KILLER | 524-452 | LG | MONSANTO COMPANY | |
| SHACKLE HERBICIDE | 524-330 | LG | MONSANTO COMPANY | ABN: Roundup L&G Ready To Use Grass and Weed Killer<br><br>DSN: Contact Herbicide #3, Misty Glypho Kill Rtu, Green Death, Meijer Neat 'N Clean Ready To Use Grass & Weed Killer, Blitz, Burnout, Green Thumb Systemic Weed & Grass Killer, True Value Green Thumb Systemic Weed & Grass Killer, Weed-Out, Bareback RTU, Hoedown RTU, Quick-Claim RTU, Trail Blazer RTU, T-39, Trample, Remuda, Environ, Kem-Til RTU, Gone-2, Green Charm Eliminator Ready-To-Use Systemic Weed & Grass Killer, Green Charm Knock Out Concentrate Systemic Weed & |

---

[1] Product name in the first column is based on U.S. EPA primary registered names. Not all registered names were necessarily used for commercialized products so the commercialized product names may vary. Alternate brand names and distributor brand names may have been used for these registrations including those listed in the last column. Distributor products would have contained the same EPA Registration Number and appended a third sequence of numbers to identify the distributor (such as this format XXX-XXX-XXX).

[2] AG refers to agricultural/farming uses. ITO refers to non-agricultural uses by professional applicators and those working under their direction such as maintaining land around roadways and railways, treatment of parks and golf courses, and for professional landscaping. LG refers to consumer lawn and garden products usually used for personal use such as for individuals' yards and driveways. MFG refers to products that were sold to companies who used them as ingredients in manufacturing other glyphosate-containing products.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG) | | | | |
| | | | | Grass Killer, Green Charm Knock Out Ready-To-Use, Green Charm Knock Out Ready-To-Use Systemic Weed & Grass Killer, Pennington's Pride Eliminator Systemic Weed & Grass Killer Ready -To-Use, Pennington's Pride Knock Out Systemic Weed & Grass Killer Ready-To-Use, Pennington's Pride Systemic Weed & Grass Killer Ready-To-Use, Hns-200, Jan/San II Herbicide, Opti-Gro Trail Blazer RTU, Zap-It, Striker Rtu, Quickdraw Ready-To-Use Herbicide, Liquidator |
| GLYPHOSATE 18% CONCENTRATE | 71995-6 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Concentrate Weed & Grass Killer, Roundup Tough Weed Formula<br><br>DSN: Albertson's Weed & Grass Vegetation Killer Concentrate, Dexol Wildfire Grass & Weed Killer Concentrate, Gardener's Choice Weed & Grass Killer Concentrate, Homelife Weed & Grass Vegetation Killer Concentrate, UltraStop Weed & Grass Killer Concentrate, Basic Solutions Weed & Grass Kill Co, Enforcer Roots & All Ultimate Grass & Weed Killer Concentrate, Eliminator Weed & Grass Killer Concentrate |
| GLYPHOSATE 27% CONCENTRATE | 71995-15; 71995-24 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Weed & Grass Killer Large Area Concentrate |
| GLYPHOSATE 41% SUPER CONCENTRATE | 71995-7 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | DSN: TotalKill (Brand Weed & Grass Killer Super Concentrate Bonide Kleenup Grass & Weed Killer Super Concentrate, Kleenup Grass & Weed Killer 41% Super Concentrate, Maste Nursery Kleen Up Grass & Weed Killer Super Concentrate, Master Nursery Kleen Up Grass & Weed Killer Super Concentrate, Enforcer Roots & All Ultimate Grass & Weed |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| | | | | Killer Super Concentrate, Eliminator Weed & Grass Killer Super Concentrate, Knock Out Weed & Grass Killer Super Concentrate, Maxide Super Concentrate 41% Weed & Grass Killer, Agway Kleenup Grass & Weed Killer Concentrate, Southern States Grass & Weed Killer Concentrate, Ace Weed & Grass Killer Concentrate, Hdx Weed & Grass Killer Concentrate |
| GLYPHOSATE CONCENTRATE HERBICIDE | 71995-14 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | DSN: Meijer Kleen Up Concentrate, Earl May Kleenup Grass & Weed Killer Conc., Bonide Kleenup Grass & Weed Killer Conc., Enforcer Roots & All Ultimate Grass & Weed Killer Concentrate, Maxide Concentrate Weed & Grass Killer, Easy Gone Concentrate Weed & Grass Killer, EasyGone Concentrate Weed & Grass Killer, Kgro Grass & Weed Killer Concentrate |
| GLYPHOSATE READY-TO-USE HERBICIDE 2 | 71995-27 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | DSN: Garden Rite Grass & Weed Killer, Albertson's Weed & Grass Vegetation Killer, Dexol Wildfire Grass & Weed Killer Ready To Use, Gardener's Choice Weed & Grass Killer, Homelife Weed & Grass Vegetation Killer, UltraStop Weed & Grass Killer, Basic Solutions Weed & Grass Killer Ready-To-Use, Aco Grass & Weed Killer Ready To Use, Bonide Kleen Up Grass & Weed Killer Ready-To-Use, Kleenup Grass & Weed Killer Ready To Use, Master Nursery Kleen Up Grass & Weed Killer Ready-To-Use, Orchard Est. 1931 Grass & Weed Killer Ready To Use, Eliminator Weed & Grass Killer II Ready-To-Use, Knock Out Weed & Grass Killer Ready To Use, Maxide Ready To Use Weed & Grass Killer II, Agway Kleenup |

4

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| | | | | Grass & Weed Killer Rtu, Southern States Grass & Weed Killer Ready To Use, Ace Ready-To-Use Weed & Grass Killer4, Kgro Grass & Weed Killer 1 Ready-To-Use |
| GLYPHOSATE RESIDUAL CONCENTRATE | 71995-40 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer |
| KLEERAWAY CONCENTRATE WEED & GRASS KILLER | 71995-5 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Ortho Kleenaway Systemic Weed & Grass Killer |
| KLEERAWAY CONCENTRATE WEED & GRASS KILLER 1 | 71995-19 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| KLEERAWAY SPOT WEED & GRASS KILLER2 | 71995-4 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| KLEERAWAY SYSTEMIC WEED & GRASS KILLER2 | 71995-2 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | DSN: Contact Herbicide #2, Green Death Concentrate, Ornery Systemic Weed And Grass Killer, Proline Renegade, Zap-It Concentrate, Bullseye Systemic Weed And Grass Killer |
| LG 99 CONCENTRATE HERBICIDE | 71995-59 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| LG712 CONCENTRATE HERBICIDE | 71995-57 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| LG737 READY-TO-USE HERBICIDE | 71995-56 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| M1732 HERBICIDE | 71995-52 | LG | MONSANTO COMPANY | |

5

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| | | | LAWN & GARDEN PRODUCTS | |
| M1739 HERBICIDE | 71995-54 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| MON 78365 HERBICIDE | 71995-30 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| MON 78567 HERBICIDE | 71995-28 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| MON 78736 HERBICIDE | 71995-37 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Concentrate Poison Ivy Plus Tough Brush Killer, Roundup Concentrate Wild Blackberry Plus Vine & Brush Killer, Roundup Concentrate Poison Ivy & Tough Brush Killer Plus |
| MON 78783 HERBICIDE | 71995-36 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Ready-To-Use Poison Ivy & Tough Brush Killer Plus, Roundup Ready-To-Use Poison Ivy Plus Tough Brush Killer, Roundup Ready-To-Use Wild Blackberry Plus Vine & Brush Killer |
| MON 78868 HERBICIDE | 71995-38 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| MON 78906 HERBICIDE | 71995-35 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| MON 78998 HERBICIDE | 71995-32 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Weed & Grass Killer Ready-To-Use, Roundup Ready-To-Use Poison Ivy & Tough Brush Killer 2 |
| RD 1624 HERBICIDE | 71995-39 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| RD 1653 HERBICIDE | 71995-47 | LG | MONSANTO COMPANY | |

6

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| | | | LAWN & GARDEN PRODUCTS | |
| RD 1662 HERBICIDE | 71995-48 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| RD 1686 HERBICIDE | 71995-49 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Concentrate Max Control 365 |
| RD 1687 HERBICIDE | 71995-51 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| RD 1689 HERBICIDE | 71995-50 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| RD 1734 HERBICIDE | 71995-53 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| RD 1870 HERBICIDE | 71995-61 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| ROUNDUP CONCENTRATE POISON IVY AND TOUGH BRUSH KILLER 1 | 71995-20 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Brush Killer Concentrate, Roundup Concentrate Poison Ivy and Tough Brush Killer 1 |
| ROUNDUP DRY CONCENTRATE | 71995-22 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| ROUNDUP GARDEN FOAM WEED & GRASS KILLER | 71995-16 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Sure Shot Foam, Roundup Weed & Grass Killer Sure Shot Foam |
| ROUNDUP GRASS AND WEED KILLER | 71995-10 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | DSN: Basic Solutions Liquid Edger Ready-T, Enforcer Roots & All Ultimate Grass & Weed Killer, Eliminator Weed & Grass Killer |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| | | | | Ready-To-Use, Eliminator Liquid Edger Grass & Weed Killer Ready-To-Use, Eliminator Liquid Edger II Grass & Weed Killer Ready To Use, Maxide Ready-To-Use Weed & Grass Killer, Easy Gone Ready-To-Use Weed & Grass Killer, EasyGone Ready-To-Use Weed & Grass Killer, Kgro Grass & Weed Killer Ready-To-Use |
| ROUNDUP QUIK STIK GRASS AND WEED KILLER | 71995-9 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| ROUNDUP RAINFAST CONCENTRATE WEED & GRASS KILLER | 71995-17 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Concentrate Weed & Grass Killer 1 |
| ROUNDUP RAINFAST SUPER CONCENTRATE WEED & GRASS KILLER | 71995-18 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Super Concentrate Weed & Grass Killer 1 |
| ROUNDUP READY-TO-USE EXTENDED CONTROL WEED & GRASS KILLER 1 PLUS WEED | 71995-21 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| ROUNDUP READY-TO-USE WEED & GRASS KILLER | 71995-8 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup L&G Ready-To-Use Fast Acting Formula Grass & Weed Killer, Roundup Ready-To-Use Grass & Weed Killer, Roundup Fence & Yard Edger, Roundup Ready-To-Use Grass & Weed Killer)<br><br>DSN: Enforcer Roots & All Ultimate Ready-To-Use, Hdx Weed & Grass Killer Ready-To-Use, Kgro Fence & Walk Edger Ready-To-Use |
| ROUNDUP READY-TO- | 71995-12 | LG | MONSANTO COMPANY | |

8

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| USE WEED & GRASS KILLER 1 | | | LAWN & GARDEN PRODUCTS | |
| ROUNDUP READY-TO-USE WEED AND GRASS KILLER 2 | 71995-13 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| ROUNDUP WEED & GRASS KILLER CONCENTRATE | 71995-26 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| ROUNDUP WEED & GRASS KILLER CONCENTRATE PLUS | 71995-29 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Concentrate Plus Weed & Grass Killer |
| ROUNDUP WEED & GRASS KILLER READY-TO-USE PLUS | 71995-33 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Ready-To-Use Weed & Grass Killer III |
| ROUNDUP WEED & GRASS KILLER SUPER CONCENTRATE | 71995-25 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| ROUNDUP WEED & GRASS KILLER1 READY-TO-USE | 71995-23 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | ABN: Roundup Ready-to-Use Poison Ivy & Tough Brush Killer 3 |
| WEED & GRASS KILLER G1PA2 | 71995-60 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| KLEERAWAY READY-TO-USE SPOT WEED AND GRASS KILLER | 71995-1 | LG | MONSANTO COMPANY LAWN & GARDEN PRODUCTS | |
| GLY STAR GRASS AND WEED KILLER CONCENTRATE | 42750-67 | LG | ALBAUGH, LLC | DSN: Gly-Plus Nonselective Weed And Grass Killer Concentrate, Amdro Powerflex Weed & Grass Killer Concentrate |
| CLEAROUT JAVLIN | 42750-181 | LG | ALBAUGH, LLC | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG) | | | | |
| GLYPHOSATE + DIQUAT | 42750-269 | LG | ALBAUGH, LLC | DSN: Kleenup Fast Weed & Grass Killer Concentrate, Eliminator Weed & Grass Killer Fast Acting Concentrate, Eliminator Weed & Grass Killer Plus Concentrate, Eliminator Weed And Grass Killer Plus Concentrate, Knockout Weed & Grass Killer Fast Acting Concentrate |
| GLYPHOSATE 2 + 2 | 42750-331 | LG | ALBAUGH, LLC | |
| GLYPHOSATE 50.2% | 42750-329 | LG | ALBAUGH, LLC | DSN: Eliminator Weed & Grass Killer II Super Concentrate,  Eliminator Weed And Grass Killer II Super Concentrate |
| BONIDE KLEENUP GRASS & WEED KILLER, CONCENTRATE | 4-435 | LG | BONIDE PRODUCTS, LLC | |
| BONIDE KLEENUP GRASS & WEED KILLER, READY TO USE | 4-433 | LG | BONIDE PRODUCTS, LLC | DSN: Meijer Kleenup Grass And Weed Killer Rtu, Franks Kleen Up Grass & Weed Killer Ready To Use, Franks Kleen Up Ready To Use, Morgro Weed & Grass Killer R.T.U. |
| KLEENUP SPOT WEED & GRASS KILLER | 4-434 | LG | BONIDE PRODUCTS, LLC | |
| KLEENUP SUPER EDGER | 4-432 | LG | BONIDE PRODUCTS, LLC | |
| GLYFOS CONCENTRATE 18% WEED & GRASS KILLER | 67760-46 | LG | CHEMINOVA, INC. | DSN: No-Pest Weed & Grass Killer Concentrate |
| GLYFOS CONCENTRATE 25% WEED AND GRASS KILLER | 67760-59 | LG | CHEMINOVA, INC. | DSN: Schultz Weed & Grass Killer Concentrate, Ace Concentrate Weed And Grass Killer, Do-It-Best Concentrate Weed And Grass Killer, Green Thumb Concentrate Weed And Grass Killer, Ultra-Kill Weed & Grass Killer Concentrate 2 |
| GLYFOS | 67760-55 | LG | CHEMINOVA, INC. | DSN: Zep Non-Selective Weed Killer |

10

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| CONCENTRATE 27% WEED & GRASS KILLER | | | | Concentrate, Zep Weed Defeat II, Enforcer Roots & All Ultimate Grass & Weed Killer Concentrate With 27%, Magnum 27, EasyGone Concentrate Weed & Grass Killer II |
| GLYFOS CONCENTRATE 41% WEED & GRASS KILLER | 67760-49 | LG | CHEMINOVA, INC. | DSN: Enforcer Roots & All Ultimate Grass & Weed Killer Super Concentrate Wi, EasyGone Super Concentrate 41% Weed & Grass Killer, Osh Complete Home & Garden Super Concentrate 41% Weed & Grass Killer, Hi-Yield Killzall Concentrate Systemic Weed & Grass Killer, Hi-Yield Super Concentrate Killzall Weed & Grass Killer, Green Light Com-Pleet 41% Systemic Grass & Weed Killer, America's Groundskeeper 41% Glyphosate Concentrate Grass & Weed Killer, Hdx Weed & Grass Killer Concentrate |
| GLYFOS READY-TO-USE 0.96% WEED & GRASS KILLER | 67760-48 | LG | CHEMINOVA, INC. | DSN: Green Light Com-Pleet Systemic Grass & Weed Killer, No-Pest Weed & Grass Killer 2 |
| GLYFOS READY-TO-USE 1.92% WEED & GRASS KILLER | 67760-47 | LG | CHEMINOVA, INC. | DSN: Enforcer Roots & All Ultimate Grass & Weed Killer Ready-To-Use With 1, Real-Kill Weed & Grass Killer 2, EasyGone Ready-To-Use Weed & Grass Killer II, Green Light Com-Pleet, Green Light Com-Pleet Systemic Grass & Weed Killer Ready-To-Use, Ace Ready-To-Use Weed & Grass Killer 2, Green Thumb Ready-To-Use Weed & Grass Killer 2, Hdx Weed & Grass Killer Ready-To-Use |

11

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| GLYFOS READY-TO-USE 2% WEED AND GRASS KILLER | 67760-61 | LG | CHEMINOVA, INC. | DSN: Bayer Advanced Garden PowerForce Kills Weeds Fast Grass & Weed Killer |
| CHEMSICO CONCENTRATE HERBICIDE G 1 | 9688-177 | LG | CHEMSICO | |
| CHEMSICO CONCENTRATE HERBICIDE G II | 9688-178 | LG | CHEMSICO | |
| CHEMSICO RTU HERBICIDE G 1 | 9688-169 | LG | CHEMSICO | |
| CHEMSICO RTU HERBICIDE G II | 9688-168 | LG | CHEMSICO | |
| MARTIN'S ERASER RTU SYSTEMIC WEED & GRASS KILLER | 53883-63 | LG | CONTROL SOLUTIONS, INC. | DSN: Opti-Gro Trail Blazer Maxx RTU |
| MARTIN'S ERASER SYSTEMIC WEED & GRASS CONCENTRATE | 53883-59 | LG | CONTROL SOLUTIONS, INC. | |
| SURRENDER BRAND ERASER 18% SYSTEMIC WEED & GRASS KILLER | 53883-62 | LG | CONTROL SOLUTIONS, INC. | |
| GLYPHOSATE 0.96% RTU | 62719-362 | LG | DOW AGROSCIENCES LLC | DSN: Weed Gun Glyphosate Plus Ready To Use |
| GLYPHOSATE 18% CONCENTRATE GRASS AND WEED KILLER | 62719-361 | LG | DOW AGROSCIENCES LLC | DSN: Glyphosate Plus Lawn And Garden Concentrate |
| DREXEL DREXAR WEED-AWAY READY-TO-USE | 19713-320 | LG | DREXEL CHEMICAL COMPANY | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| GLYFOS CONCENTRATE 18% WEED & GRASS KILLER | 279-3608 | LG | FMC CORPORATION | |
| GLYFOS CONCENTRATE 25% WEED AND GRASS KILLER | 279-3611 | LG | FMC CORPORATION | |
| GLYFOS CONCENTRATE 27% WEED & GRASS KILLER | 279-3545 | LG | FMC CORPORATION | |
| GLYFOS CONCENTRATE 41% WEED & GRASS KILLER | 279-3610 | LG | FMC CORPORATION | |
| GLYFOS READY-TO-USE 0.96% WEED & GRASS KILLER | 279-3543 | LG | FMC CORPORATION | |
| GLYFOS READY-TO-USE 1.92% WEED & GRASS KILLER | 279-3609 | LG | FMC CORPORATION | |
| GREEN LIGHT COM-PLEET 1.92% SYSTEMIC GRASS & WEED KILLER | 869-240 | LG | GREEN LIGHT COMPANY | |
| GREEN LIGHT COM-PLEET 18% SYSTEMIC GRASS & WEED KILLER | 869-239 | LG | GREEN LIGHT COMPANY | |
| GREEN LIGHT COM-PLEET SYSTEMIC GRASS & WEED KILLER | 869-241 | LG | GREEN LIGHT COMPANY | |
| KLEENUP GRASS & WEED KILLER READY TO USE | 34704-774 | LG | LOVELAND PRODUCTS, INC. | DSN: Dead-N-Gone Grass & Weed Killer, Ready To Use, Grower's Choice Kleenup Grass & Weed Killer Ready To Use |
| KLEENUP SPOT WEED & GRASS KILLER | 34704-773 | LG | LOVELAND PRODUCTS, INC. | |

13

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| KLEENUP SUPER EDGER | 34704-775 | LG | LOVELAND PRODUCTS, INC. | |
| KLEENUP SYSTEMIC WEED & GRASS KILLER | 34704-772 | LG | LOVELAND PRODUCTS, INC. | DSN: Dead-N-Gone Grass & Weed Killer, Concentrate, Grower's Choice Kleenup Systemic Weed & Grass Killer |
| GRASS, WEED AND VEGETATION HERBICIDE (KILLER) | 228-367 | LG | NUFARM AMERICAS, INC. | DSN: Meijer Weed & Grass Killer Concentrate, Terminator Grass And Weed Killer, Pond Oasis Shoreline Plant Control, Gardener's Choice Weed & Grass Killer Concentrate II, Ultrastop Weed & Grass Killer Concentrate II, Grass & Weed Killer Concentrate, Orchard Est 1931 Grass & Weed Killer Concentrate, Do It Best Grass & Weed Killer Concentrate, Green Thumb Grass & Weed Killer Concentrate, Pond Oasis Shoreline Plant Control, ShoreKlear-Plus Aquatic Herbicide |
| GRASS, WEED AND VEGETATION HERBICIDE (KILLER) 5% CONCENTRATE | 228-369 | LG | NUFARM AMERICAS, INC. | |
| GRASS, WEED AND VEGETATION HERBICIDE (KILLER) READY-TO-USE | 228-368 | LG | NUFARM AMERICAS, INC. | |
| PRODEUCE RTU GRASS & WEED KILLER | 228-514 | LG | NUFARM AMERICAS, INC. | DSN: Monterey Remuda Extended Control RTU, Weed Impede 2 In RTU, Ferti-Lome Double Play Ready-To-Use |

14

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| RAZOR BURN READY-TO-USE | 228-515 | LG | NUFARM AMERICAS, INC. | DSN: Remida Plus RTU |
| RAZOR BURN RESIDENTIAL | 228-516 | LG | NUFARM AMERICAS, INC. | DSN: Remuda Plus |
| RAZOR RTU HERBICIDE | 228-533 | LG | NUFARM AMERICAS, INC. | DSN: Gardener's Choice Weed & Grass Killer II, UltraStop Weed & Grass Killer II, Do It Best Grass & Weed Killer2 Ready-To-Use, Heavy Weight Grass & Weed Killer |
| TVC - CONSUMER CONCENTRATE | 228-713 | LG | NUFARM AMERICAS, INC. | DSN: Ground Force Vegetation Killer Concentrate, Orchard Est. 1931 Vegeatation Control Concentrate, Eliminator Total Vegetation Killer Concentrate, Hy-End Tvc, Spectracide Vegetation Killer Concentrate3, Homefront Vegetation Killer Concentrate |
| TVC CONSUMER RTU | 228-714 | LG | NUFARM AMERICAS, INC. | DSN: Bonide Kleenup Weed And Grass Killer 365 Ready To Use, Kleenup Weed & Grass Killer 365 Ready To Use, Spectracide Vegetation Killer Ready To Use2 |
| DYNASTY HERBICIDE | 10182-411 | LG | SYNGENTA CROP PROTECTION | |
| GROUND CLEAR RTU | 239-2686 | LG | THE SCOTTS COMPANY | |
| GROUNDCLEAR CONCENTRATE | 239-2735 | LG | THE SCOTTS COMPANY | |
| GROUNDCLEAR S RTU | 239-2737 | LG | THE SCOTTS COMPANY | |
| GROUNDCLEAR SUPEREDGER GRASS & WED CONTROL I | 239-2658 | LG | THE SCOTTS COMPANY | |
| GROUNDCLEAR W RTU | 239-2736 | LG | THE SCOTTS COMPANY | |
| KLEENUP GRASS AND WEED KILLER | 239-2509 | LG | THE SCOTTS COMPANY | DSN: Grower's Choice Tm Kleenup R Grass And Weed Killer |
| KLEENUP SPOT WEED & GRASS KILLER | 239-2596 | LG | THE SCOTTS COMPANY | DSN: Grower's Choice Kleenup Spot Weed And Grass Killer |

15

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG) | | | | |
| KLEERAWAY CONCENTRATE WEED & GRASS KILLER | 239-2629 | LG | THE SCOTTS COMPANY | ABN: Ortho Kleenaway Systemic Weed & Grass Killer |
| KLEERAWAY CONCENTRATE WEED & GRASS KILLER1 | 239-2655 | LG | THE SCOTTS COMPANY | |
| NS 515 | 239-2723 | LG | THE SCOTTS COMPANY | |
| NS 516 | 239-2724 | LG | THE SCOTTS COMPANY | |
| NSR 001 | 239-2725 | LG | THE SCOTTS COMPANY | |
| ORTHO FENCE & GRASS EDGER FORMULA II | 239-2516 | LG | THE SCOTTS COMPANY | DSN: Grower's Choice Kleenup Super Edger |
| ORTHO GROUNDCLEAR TOTAL VEGETATION KILLER | 239-2657 | LG | THE SCOTTS COMPANY | |
| ORTHO GROUNDCLEAR VEGETATION KILLER RTU | 239-2716 | LG | THE SCOTTS COMPANY | |
| ORTHO READY-TO-USE SPOT WEED & GRASS KILLER | 239-2467 | LG | THE SCOTTS COMPANY | |
| ORTHO SEASON LONG WEED & GRASS KILLER PLUS PREVENTER READY-SPRAY II | 239-2706 | LG | THE SCOTTS COMPANY | |
| ORTHO SEASON-LONG GRASS & WEED KILLER | 239-2694 | LG | THE SCOTTS COMPANY | |
| ORTHO SYSTEMIC WEED & GRASS KILLER | 239-2469 | LG | THE SCOTTS COMPANY | DSN: Contact Herbicide #2, Green Death Concentrate, Pennington's Pride Systemic Weed & Grass Killer, Green Charm Eliminator Concentrate Systemic Weed & |

16

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| | | | | Grass Killer, Green Charm Knock Out Systemic Weed & Grass Killer, Pennington's Pride Eliminator Concentrate Systemic Weed & Grass Killer, Pennington's Pride, Knock Out Concentrate Systemic Weed & Grass Killer, Grower's Choice Kleenup Systemic Weed And Grass Killer, Zap-It Concentrate, Bullseye |
| ROUNDUP CLUB CONCENTRATE WEED & GRASS KILLER | 239-2647 | LG | THE SCOTTS COMPANY | DSN: Grower's Choice Kleenup Weed & Grass Killer, Weed & Grass Killer Kleenup (Grower's Choice) |
| ROUNDUP CLUB SUPER CONCENTRATE WEED & GRASS KILLER | 239-2648 | LG | THE SCOTTS COMPANY | |
| ROUNDUP CONCENTRAATE WEED & GRASS KILLER | 239-2636 | LG | THE SCOTTS COMPANY | ABN: Roundup Tough Weed Formula |
| ROUNDUP DRY CONCENTRATE | 239-2662 | LG | THE SCOTTS COMPANY | |
| ROUNDUP GARDEN FOAM GRASS & WEED KILLER | 239-2652 | LG | THE SCOTTS COMPANY | ABN: Roundup Sure Shot Foam, Roundup Weed & Grass Killer Sure Shot Foam |
| ROUNDUP GRASS AND WEED KILLER | 239-2641 | LG | THE SCOTTS COMPANY | DSN: Eliminator Weed & Grass Killer Ready-To-Use, Strike Weed & Grass Killer Ready-To-Use |
| ROUNDUP L & G READY-TO-USE FAST ACTING FORMULA GRASS & WEED KILLER | 239-2638 | LG | THE SCOTTS COMPANY | ABN: Roundup L&G Ready-To-Use Fast Acting Formula Grass & Weed Killer, Roundup Ready-To-Use Grass & Weed Killer, Roundup Fence & Yard Edger, Roundup Ready-To-Use Grass & Weed Killer |
| ROUNDUP LOCK'N | 239-2674 | LG | THE SCOTTS COMPANY | ABN: Roundup Weed & Grass Killer Large |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Consumer Lawn and Garden Products Usually Used for Personal Use Such as for Individuals' Yards and Driveways (LG)** | | | | |
| SPRAY | | | | Area Concentrate |
| ROUNDUP QUIK STIK GRASS AND WEED KILLER | 239-2639 | LG | THE SCOTTS COMPANY | |
| ROUNDUP RAINFAST CONCENTRATE WEED & GRSS KILLER | 239-2653 | LG | THE SCOTTS COMPANY | ABN: Roundup Concentrate Weed & Grass Killer 1 |
| ROUNDUP RAINFAST SUPER CONCENTRATE WEED & GRASS KILLER | 239-2654 | LG | THE SCOTTS COMPANY | ABN: Roundup Super Concentrate Weed & Grass Killer 1 |
| ROUNDUP RAINFAST TOUGH WEED | 239-2656 | LG | THE SCOTTS COMPANY | |
| ROUNDUP READY TO USE WEED & GRASS KILLER PLUS | 239-2670 | LG | THE SCOTTS COMPANY | ABN: Roundup Ready-to-Use Poison Ivy & Tough Brush Killer 3 |
| ROUNDUP READY-TO-USE WEED & GRASS KILLER 1 | 239-2645 | LG | THE SCOTTS COMPANY | |
| ROUNDUP READY-TO-USE WEED AND GRASS KILLER 2 | 239-2646 | LG | THE SCOTTS COMPANY | |
| ROUNDUP SUPER CONCENTRATE WEED & GRASS KILLER | 239-2637 | LG | THE SCOTTS COMPANY | |
| HI-YIELD KILLZALL CONCENTRATE SYSTEMIC WEED & GRASS KILLER | 7401-451 | LG | VOLUNTARY PURCHASING GROUPS, INC. | |

18

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Non-Agricultural Uses by Professional Applicators and Those Working Under Their Direction such as Maintaining Land Around Roadways and Railways, Treatment of Parks and Golf Courses, and for Professional Landscaping (ITO)** | | | | |
| ACCORD XL HERBICIDE | 524-517 | ITO | MONSANTO COMPANY | ABN: Ranger PRO Herbicide<br><br>DSN: TotalKill Brand Pro Weed & Grass Killer Herbicide II, TotalKill (Brand) Pro Weed & Grass Killer Herbicide, Prokoz Glyphosate Pro II |
| EZJECT SELECTIVE INJECTION HERBICIDE CAPSULES | 524-435 | ITO | MONSANTO COMPANY | |
| ROUNDUP PRO CONCENTRATE | 524-529 | ITO | MONSANTO COMPANY | |
| ROUNDUP PRODRY HERBICIDE | 524-505 | ITO | MONSANTO COMPANY | |
| ROUNDUP PROMAX | 524-579 | ITO | MONSANTO COMPANY | |
| ROUNDUP QUIKPRO HERBICIDE | 524-535 | ITO | MONSANTO COMPANY | ABN: QuikPRO Herbicide<br><br>DSN: Lesco Prosecutor Swift Action Non-Selective Herbicide |
| GLYFOS AQ AQUATIC HERBICIDE | 4787-34 | ITO | CHEMINOVA A/S | |
| GLYFOS PRO HERBICIDE | 67760-57 | ITO | CHEMINOVA, INC. | |
| ERASE BLUE | 62719-345 | ITO | DOW AGROSCIENCES LLC | |
| DREXEL GLYPHOSATE IPA 53.8% | 19713-364 | ITO | DREXEL CHEMICAL COMPANY | |
| GLYFOS PRO HERBICIDE | 279-3547 | ITO | FMC CORPORATION | |
| GREEN LIGHT COM-PLEET 41% SYSTEMIC GRASS & WEED KILLER | 869-238 | ITO | GREEN LIGHT COMPANY | |
| GREEN LIGHT COM-PLEET 41% SYSTEMIC GRASS & WEED KILLER | 85827-9 | ITO | GREEN LIGHT, A VALENT U.S.A. COMPANY | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Non-Agricultural Uses by Professional Applicators and Those Working Under Their Direction such as Maintaining Land Around Roadways and Railways, Treatment of Parks and Golf Courses, and for Professional Landscaping (ITO)** | | | | |
| HELOSATE 75 SG PRO HERBICIDE | 74530-76 | ITO | HELM AGRO US, INC. | |
| AQUANEAT AQUATIC HERBICIDE | 228-365 | ITO | NUFARM AMERICAS, INC. | DSN: Shore-Klear Aquatic Herbicide, Aquaneat Aquatic Herbicide |
| NUP-17001 | 228-745 | ITO | NUFARM AMERICAS, INC. | |
| PRODEUCE | 228-509 | ITO | NUFARM AMERICAS, INC. | DSN: Monterey Remuda Extended Control, Weed Impede 2 In Concentrate, Eliminator Extreme Weed & Grass Killer Concentrate Plus Preventer, Ferti-Lome Double Play Weeds'em Out Keep 'Em Out |
| RAZOR BURN | 228-446 | ITO | NUFARM AMERICAS, INC. | DSN: Triple Shot, Remuda Plus, Remuda Plus Concentrate |
| TVC -SUPER CONCENTRATE | 35935-94 | ITO | NUFARM LIMITED | DSN: Judgement Day Non-Selective Weed Killer Super Concentrate, Martin's Eraser Max Super Concentrate, RM43 43% Glyphosate Plus Weed Preventer |
| RANGER PRO HERBICIDE | 93236-5 | ITO | SEAMLESS CONTROL LLC | |
| ROUNDUP CUSTOM FOR AQUATIC & TERRESTRIAL USE | 93236-2 | ITO | SEAMLESS CONTROL LLC | |
| ROUNDUP PRO CONCENTRATE HERBICIDE | 93236-6 | ITO | SEAMLESS CONTROL LLC | |
| ROUNDUP PRO HERBICIDE | 93236-1 | ITO | SEAMLESS CONTROL LLC | |
| ROUNDUP PROMAX HERBICIDE | 93236-3 | ITO | SEAMLESS CONTROL LLC | |
| ROUNDUP QUIKPRO HERBICIDE | 93236-4 | ITO | SEAMLESS CONTROL LLC | |
| SC 78536 HERBICIDE | 93236-7 | ITO | SEAMLESS CONTROL LLC | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Non-Agricultural Uses by Professional Applicators and Those Working Under Their Direction such as Maintaining Land Around Roadways and Railways, Treatment of Parks and Golf Courses, and for Professional Landscaping (ITO)** | | | | |
| GREEN LIGHT COM-PLEET 41% SYSTEMIC GRASS & WEED KILLER | 73327-15 | ITO | SWISS FARMS PRODUCTS, INC. | |
| ZPP 1560 PRO HERBICIDE, 28.3% GLYPHOSATE | 10182-453 | ITO | SYNGENTA CROP PROTECTION | |

21

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Multiple Uses – ITO and Agricultural/Farming Uses (AG)** | | | | |
| RT3 HERBICIDE | 524-544 | ITO; AG | MONSANTO COMPANY | ABN: RT3 Powered by Roundup Technology Herbicide |
| RT4790 HERBICIDE | 524-608 | ITO; AG | MONSANTO COMPANY | |
| ROUNDUP HERBICIDE | 524-308 | ITO; AG | MONSANTO COMPANY | ABN: Pondmaster Herbicide, Roundup Original, Roundup Super Concentrate Grass & Weed Killer, Roundup Super Concentrate Weed & Grass Killer<br><br>DSN: Silhouette, Ruler Herbicide, Mirage, Ratter, Weed Wrangler 41, Turfgo Weed Wrangler 41, Jury |
| ROUNDUP HERBICIDE | 524-445 | ITO; AG | MONSANTO COMPANY | ABN: Pondmaster Herbicide, Roundup Original, Roundup Super Concentrate Grass & Weed Killer, Roundup Super Concentrate Weed & Grass Killer<br><br>DSN: Agrisolutions Cornerstone Herbicide, Cornerstone, Rascal, Silhouette Herbicide, Mirage, Mirage Herbicide, Supersafe, Supersate Herbicide, Gly Star Original Ca, Glyfos TM, Gly-Flo Herbicide, Buccaneer Glyphosae Herbicide, 'Buccaneer Herbicide', Kleen Up Pro, Kleenup Pro Grass And Weed Killer, Nufarm Credit Herbicide |
| LANDMASTER BW HERBICIDE | 524-351 | ITO; AG | MONSANTO COMPANY | ABN: Campaign, Landmaster Herbicide a/k/a Landmaster Reduced Tillage |
| M1693 HERBICIDE | 524-580 | ITO; AG | MONSANTO COMPANY | |
| M1724 HERBICIDE | 524-596 | ITO; AG | MONSANTO COMPANY | |
| M1727 HERBICIDE | 524-598 | ITO; AG | MONSANTO COMPANY | |
| M1728 HERBICIDE | 524-599 | ITO; AG | MONSANTO COMPANY | |
| MON 008 HERBICIDE | 524-557 | ITO; AG | MONSANTO COMPANY | |
| MON-14420 HERBICIDE | 524-424 | ITO; AG | MONSANTO COMPANY | |

22

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| Multiple Uses – ITO and Agricultural/Farming Uses (AG) | | | | |
| MON 78460A HERBICIDE | 524-548 | ITO; AG | MONSANTO COMPANY | |
| MON 78473 HERBICIDE | 524-536 | ITO; AG | MONSANTO COMPANY | DSN: Lesco Prosecutor Pro, Non-Selective Herbicide |
| R14640 HERBICIDE | 524-605 | ITO; AG | MONSANTO COMPANY | |
| R14697 HERBICIDE | 524-603 | ITO; AG | MONSANTO COMPANY | |
| R14701 HERBICIDE | 524-604 | ITO; AG | MONSANTO COMPANY | |
| RD 1626 HERBICIDE | 524-553 | ITO; AG | MONSANTO COMPANY | |
| RD 1629 HERBICIDE | 524-554 | ITO; AG | MONSANTO COMPANY | |
| RD1619 HERBICIDE | 524-550 | ITO; AG | MONSANTO COMPANY | |
| RD 1685 | 524-578 | ITO; AG | MONSANTO COMPANY | |
| ROUNDUP CUSTOM HERBICIDE | 524-343 | ITO; AG | MONSANTO COMPANY | ABN: Roundup Aquamaster Herbicide, Rodeo (Aquatic) Herbicide, Rodeo (Emerged) Aquatic Weed and Brush Herbicide, Roundup Custom for Aquatic and Terrestrial Use, Roundup XL Herbicide<br><br>DSN: Nufarm Aquaneat Aquatic Herbicide |
| ROUNDUP ORIGINAL II HERBICIDE | 524-454 | ITO; AG | MONSANTO COMPANY | ABN: Roundup RT Herbicide<br><br>DSN: Agrisolutions Cornerstone Plus Herbicide, Biologic Biomaxx Herbicide, Cornerstone Plus, Rascal Plus, Mirage Plus, Mirage Plus Herbicide, Bullzeye Herbicide, Fs Glyphosate Plus Herbicide, Buccaneer Plus Glyphosate Herbicide, Tenkoz Buccaneer Plus Herbicide, Rattler Plus Herbicide, Crop-Sure Glyphosate Plus Herbicide, Gly-4 Plus Herbicide |
| ROUNDUP POWERMAX 3 HERBICIDE | 524-659 | ITO; AG | MONSANTO COMPANY | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Multiple Uses – ITO and Agricultural/Farming Uses (AG)** | | | | |
| ROUNDUP POWERMAX HERBICIDE | 524-549 | ITO; AG | MONSANTO COMPANY | DSN: Dupont Abundit Edge Herbicide |
| ROUNDUP POWERMAX II HERBICIDE | 524-537 | ITO; AG | MONSANTO COMPANY | ABN: Roundup WeatherMAX Herbicide |
| ROUNDUP ULTRA DRY | 524-504 | ITO; AG | MONSANTO COMPANY | |
| ROUNDUP ULTRA HERBICIDE | 524-475 | ITO; AG | MONSANTO COMPANY | ABN: Roundup Pro Herbicide, Roundup Ultra RT Herbicide<br><br>DSN: Roundup Ultra |
| ROUNDUP WSD WATER SOLUBLE DRY HERBICIDE DEPLOY DRY HERBICIDE | 524-502 | ITO; AG | MONSANTO COMPANY | ABN: Roundup SoluGran Herbicide |
| GLYPHOSATE 41% PLUS | 42750-61 | ITO; AG | ALBAUGH, LLC | DSN: Agrisolutions Cornerstone Plus, Rascal Plus, Big N'tuf Weed & Grass Killer, Gordon's Big N'tuf Weed & Grass Killer, Pronto Big N' Tuf, Pronto Big N' Tuf 41% Glyphosate Weeds & Grass Killer, Tiger Brand Grass And Weed Killer Pro, Bullzeye Herbicide, Hm-0705, Hoss Ultra, Crop$mart Glyphosate 41 Plus, Cropsmart Glyphosate 41 Plus, Crop-Sure Glyphosate Plus, Gly-4 Plus Herbicide, Hi-Yield Super Concentrate Kill-Zall II, Tko |
| ALBAUGH LAND STAR | 42750-62 | ITO; AG | ALBAUGH, LLC | |
| CLEAROUT PROMPT | 42750-180 | ITO; AG | ALBAUGH, LLC | |
| CLEAROUT SPARTAN HERBICIDE | 42750-182 | ITO; AG | ALBAUGH, LLC | |
| CLEAROUT TEC | 42750-179 | ITO; AG | ALBAUGH, LLC | |
| GLYPHOSATE 41% | 42750-60 | ITO; AG | ALBAUGH, LLC | DSN: Cornerstone, Rascal, Remuda III, Crop-Sure Glyphosate Herbicide, Gly-4 Herbicide, T.A.H. Concentrated Grass And Weed Killer |

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Multiple Uses – ITO and Agricultural/Farming Uses (AG)** | | | | |
| GLYPHOSATE 48% K-SALT | 42750-122 | ITO; AG | ALBAUGH, LLC | DSN: Buccaneer Hl, Buccaneer HI Glyphosate Herbicide |
| GLYPHOSATE 53.8% | 42750-59 | ITO; AG | ALBAUGH, LLC | DSN: Aqua Vet Shoreline Weeds, Cornerstone 5, Eraser – Aq, Surrender Brand Eraser-Aq Aquatic Herbicide, Trailblazer Max, Cattplex Cattail Control, Shoreline Defense, Pond 2.0 Shoreline Weeds, Pond20 Shoreline Weeds, Ato Glycide |
| THUNDERMASTER | 42750-76 | ITO; AG | ALBAUGH, LLC | |
| FOZZATE | 56077-55 | ITO; AG | CEDAR CHEMICAL CORPORATION | DSN: Glifonox 800 |
| CLEAROUT 41 | 70829-2 | ITO; AG | CHEMICAL PRODUCTS TECHNOLOGIES, L.L.C. | DSN: Gly Star Plus |
| CLEAROUT 41 PLUS | 70829-3 | ITO; AG | CHEMICAL PRODUCTS TECHNOLOGIES, L.L.C. | DSN: Drexel Glyphosate Plus, Sharpshooter Herbicide, Agrisel Clearout 41 Pro-Plus, Hi-Yield Super Concentrate Killzall |
| GLYFOS X-TRA | 4787-23 | ITO; AG | CHEMINOVA A/S | |
| GLYFOS CUSTOM HERBICIDE | 67760-58 | ITO; AG | CHEMINOVA, INC. | |
| GLYMIX MT | 62719-366 | ITO; AG | DOW AGROSCIENCES LLC | |
| GLYPRO | 62719-324 | ITO; AG | DOW AGROSCIENCES LLC | DSN: Aquapro Or Sepro Total Pond - Emerge |
| NAF-545 | 62719-322 | ITO; AG | DOW AGROSCIENCES LLC | DSN: Prokoz Glyphosate Pro |
| DREXEL IMITATOR PLUS | 19713-526 | ITO; AG | DREXEL CHEMICAL COMPANY | DSN: Ida Glyphosate 480 Herbicide, Remuda II, Remuda Weed & Grass Killer, Agsco Mad Dog Extra 1, Hi-Yield Super Concentrate Kill-Zall II |
| DUPONT ABUNDIT EDGE HERBICIDE | 352-922 | ITO; AG | E. I. DU PONT DE NEMOURS AND COMPANY | |
| DUPONT DPX-B2856 3.0 HERBICIDE | 352-832 | ITO; AG | E. I. DU PONT DE NEMOURS AND | |

25

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Multiple Uses – ITO and Agricultural/Farming Uses (AG)** | | | | |
| | | | COMPANY | |
| DUPONT DPX-B2856 4.5 HERBICIDE | 352-831 | ITO; AG | E. I. DU PONT DE NEMOURS AND COMPANY | |
| ETK-2301 HERBICIDE | 68891-8 | ITO; AG | ENTEK CORP | |
| GLYFOS CUSTOM HERBICIDE | 279-3548 | ITO; AG | FMC CORPORATION | |
| GLYFOS MUC 62% | 279-3544 | ITO; AG | FMC CORPORATION | |
| EAGRE EMERGED AQUATIC WEED AND BRUSH HERBICIDE | 1812-442 | ITO; AG | GRIFFIN L.L.C. | |
| GLYPHOSATE 41% | 5905-635 | ITO; AG | HELENA AGRI-ENTERPRISES, LLC | |
| GLYPHOSATE 53.8% | 5905-636 | ITO; AG | HELENA AGRI-ENTERPRISES, LLC | |
| HM-0548 HERBICIDE | 5905-572 | ITO; AG | HELENA AGRI-ENTERPRISES, LLC | |
| HM-0705-A HERBICIDE | 5905-596 | ITO; AG | HELENA AGRI-ENTERPRISES, LLC | |
| HM-2028 HERBICIDE | 5905-560 | ITO; AG | HELENA AGRI-ENTERPRISES, LLC | |
| GLYPHOSATE 97% TGAI | 74530-11 | ITO; AG | HELM AGRO US, INC. | |
| HELOSATE 5 HERBICIDE | 74530-56 | ITO; AG | HELM AGRO US, INC. | |
| HELOSATE 62% MUP | 74530-14 | ITO; AG | HELM AGRO US, INC. | |
| HELOSATE 75SG HERBICIDE | 74530-52 | ITO; AG | HELM AGRO US, INC. | DSN: Glyphosel Pro Dry 75 Sg Total Vegetation Killer |
| HELOSATE PLUS ADVANCED | 74530-43 | ITO; AG | HELM AGRO US, INC. | DSN: Cornerstone Plus, Drexel Imitator X, Gly Supreme Plus, Wise Up Plus |
| HELOSATE PRO | 74530-4 | ITO; AG | HELM AGRO US, INC. | DSN: Cornerstone, Cornerstone Plus, Genesis, Genesis Extra, Cropsmart |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Multiple Uses – ITO and Agricultural/Farming Uses (AG)** | | | | |
| | | | | Glyphosate 41 Plus, Crop-Sure Glyphosate Plus Herbicide, Gly-4 Plus Herbicide |
| GLYGRAN WDG | 33660-38 | ITO; AG | INDUSTRIA PRODOTTI CHIMICI S.P.A. | DSN: Glygran WDG |
| AFG ORIGINAL | 34704-889 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| AFG PLUS | 34704-890 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| GLYPHO 648 | 34704-929 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| GLYPHO K6 | 34704-1111 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| GLYPHOSATE | 34704-866 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| GLYPHOSATE ISOPROPYLAMINE SALT TECHNICAL 62% SOLUTION | 34704-782 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| MIRAGE PLUS | 34704-883 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| PREP IT HERBICIDE | 34704-989 | ITO; AG | LOVELAND PRODUCTS, INC. | |
| FOZZATE | 66222-72 | ITO; AG | MAKHTESHIM AGAN OF NORTH AMERICA, INC. | |
| MARMAN ATILA, GLYPHOSATE | 48273-7 | ITO; AG | MARMAN USA INC | |
| MARMAN ATILA, GLYPHOSATE MP | 48273-8 | ITO; AG | MARMAN USA INC | |
| FORESTERS' NON-SELECTIVE HERBICIDE | 228-381 | ITO; AG | NUFARM AMERICAS, INC. | |
| RAZOR HERBICIDE | 228-366 | ITO; AG | NUFARM AMERICAS, INC. | DSN: Lesco Prosecutor, Lesco Prosecutor Plus Tracker, Quick Kill, Remuda Full |

27

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Multiple Uses – ITO and Agricultural/Farming Uses (AG)** | | | | |
| | | | | Strength, Square Don, Square Down, United Horticultural Supply Kleen U, Verdicon Kleenup Pro Herbcide, Compare-N-Save Grass & Weed Killer 41% Glyphosate |
| CREDIT X 4 HERBICIDE | 71368-123 | ITO; AG | NUFARM, INC. | |
| CREDIT XTREME HERBICIDE | 71368-81 | ITO; AG | NUFARM, INC. | DSN: Dupont Abundit X-Hd Herbicide, Barbarian Max |
| GLYPHOSATE IPA MANUFACTURING CONCENTRATE | 71368-24 | ITO; AG | NUFARM, INC. | |
| KREDIT HERBICIDE | 71368-122 | ITO; AG | NUFARM, INC. | |
| NUFARM AQUANEAT HERBICIDE | 71368-21 | ITO; AG | NUFARM, INC. | |
| NUFARM CREDIT 5.4 HERBICIDE | 71368-126 | ITO; AG | NUFARM, INC. | |
| NUFARM CREDIT DUO HERBICIDE | 71368-25 | ITO; AG | NUFARM, INC. | DSN: MH-0732, Showdown, Showdown Herbicide, IAP Glyphosate 4ds Dual Salt Herbicide |
| NUFARM CREDIT DUO XL HERBICIDE | 71368-36 | ITO; AG | NUFARM, INC. | |
| NUFARM CREDIT HERBICIDE | 71368-20 | ITO; AG | NUFARM, INC. | DSN: Agrisolutions Cornerstone, Dupont Abundit XS Herbicide, AGS Glyphosate (Original) |
| NUFARM CREDIT SYSTEMIC EXTRA HERBICIDE | 71368-37 | ITO; AG | NUFARM, INC. | |
| NUFARM EXTRA CREDIT 5 | 71368-85 | ITO; AG | NUFARM, INC. | |
| NUFARM EXTRA CREDIT 5 HERBICIDE | 71368-43 | ITO; AG | NUFARM, INC. | DSN: Agsco Mad Dog Max, Buccaneer 5 Glyphosate Herbicide |
| RECOIL BROAD SPECTRUM HERBICIDE | 71368-35 | ITO; AG | NUFARM, INC. | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Multiple Uses – ITO and Agricultural/Farming Uses (AG)** | | | | |
| TOUCHDOWN PRO HERBICIDE | 100-1121 | ITO; AG | SYNGENTA CROP PROTECTION, LLC | |
| BUCCANEER PLUS GLYPHOSATE HERBICIDE | 55467-9 | ITO; AG | TENKOZ INC | |
| BUCCANEER GLYPHOSATE HERBICIDE | 55467-10 | ITO; AG | TENKOZ INC | |
| CORNERSTONE | 1381-191 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| CORNERSTONE HERBICIDE | 1381-201 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| CORNERSTONE PLUS | 1381-192 | ITO; AG | WINFIELD SOLUTIONS, LLC | DSN: GLY-4 Plus Herbicide |
| CORNERSTONE PLUS 5 | 1381-241 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| CORNERSTONE PLUS GLYPHOSATE 41% | 1381-200 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| GLYPHOSATE 41% | 83222-21 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| JURY HERBICIDE | 9779-354 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| KORNERSTONE K | 1381-263 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| TOMAHAWK | 72877-2 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| TOMAHAWK 4 | 33270-18 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| TOMAHAWK 5 | 33270-15 | ITO; AG | WINFIELD SOLUTIONS, LLC | |
| TOMAHAWK 5 | 72877-1 | ITO; AG | WINFIELD SOLUTIONS, LLC | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Agricultural/Farming Uses (AG)** | | | | |
| ACCORD HERBICIDE | 524-326 | AG | MONSANTO COMPANY | ABN: Honcho Herbicide, Jury Herbicide, Mirage Herbicide, Protocol Herbicide, Rascal Herbicide, Rattler Herbicide, Ruler Herbicide, Show-Off Herbicide, Silhouette Herbicide<br><br>DSN: Turfgo Weed Wrangler |
| FALLOW MASTER BROADSPECTRUM HERBICIDE | 524-507 | AG | MONSANTO COMPANY | |
| MON 78088 HERBICIDE | 524-509 | AG | MONSANTO COMPANY | ABN: Ready Master ATZ Herbicide |
| MON 78481 HERBICIDE | 524-543 | AG | MONSANTO COMPANY | |
| LANDMASTER II HERBICIDE | 524-376 | AG | MONSANTO COMPANY | |
| MON 58442 HERBICIDE | 524-497 | AG | MONSANTO COMPANY | ABN: FieldMaster Herbicide |
| POLADO L PLANT GROWTH REGULATOR | 524-350 | AG | MONSANTO COMPANY | |
| ROUNDUP D-PAK HERBICIDE | 524-494 | AG | MONSANTO COMPANY | |
| RT MASTER | 524-531 | AG | MONSANTO COMPANY | |
| ROUNDUP ORIGINAL MAX HERBICIDE | 524-539 | AG | MONSANTO COMPANY | ABN: Honcho K6<br><br>DSN: BULLZEYE HL-K |
| ROUNDUP ULTRAMAX | 524-512 | AG | MONSANTO COMPANY | ABN: Roundup UltraMAX RT Herbicide<br><br>DSN: Roundup Ultra Max Herbicide |
| CLEAROUT 41 | 42750-175 | AG | ALBAUGH, LLC | |
| CLEAROUT 41 PLUS | 42750-176 | AG | ALBAUGH, LLC | |
| FALLOW STAR | 42750-63 | AG | ALBAUGH, LLC | |
| GLYPHOSATE AM + FOMESAFEN NA | 42750-307 | AG | ALBAUGH, LLC | |
| GLYPHOSATE IPA + FOMESAFEN NA | 42750-263 | AG | ALBAUGH, LLC | |

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Agricultural/Farming Uses (AG)** | | | | |
| IMAZETHAPYR 1.8% + GLYPHOSATE 22% | 42750-147 | AG | ALBAUGH, LLC | |
| BACKDRAFT HERBICIDE | 5481-606 | AG | AMVAC CHEMICAL CORPORATION | |
| BACKDRAFT SL HERBICIDE | 5481-608 | AG | AMVAC CHEMICAL CORPORATION | |
| GLYFOS HERBICIDE | 4787-31 | AG | CHEMINOVA A/S | |
| GLYFOS HERBICIDE | 67760-45 | AG | CHEMINOVA, INC. | |
| GLYPHOMAX | 62719-323 | AG | DOW AGROSCIENCES LLC | |
| GLYPHOSATE 62% TECHNICAL SOLUTION | 62719-320 | AG | DOW AGROSCIENCES LLC | |
| GLYFOS HERBICIDE | 279-3542 | AG | FMC CORPORATION | |
| EXTREME HERBICIDE | 74530-92 | AG | HELM AGRO US, INC. | |
| EXTREME PACKAGED BY HELM | 74530-86 | AG | HELM AGRO US, INC. | |
| DOG FIGHT | 34704-1093 | AG | LOVELAND PRODUCTS, INC. | |
| LPI 6310-20 HERBICIDE | 34704-1053 | AG | LOVELAND PRODUCTS, INC. | |
| MAKAZE YIELD-PRO | 34704-1033 | AG | LOVELAND PRODUCTS, INC. | |
| CREDIT MASTER HERBICIDE | 71368-31 | AG | NUFARM, INC. | |
| GLYKAMBA BROADSPECTRUM HERBICIDE | 71368-30 | AG | NUFARM, INC. | |
| NUFARM CREDIT | 71368-65 | AG | NUFARM, INC. | DSN: Rascal Plus Herbicide Ex |
| TOUCHDOWN HERBICIDE | 100-1117 | AG | SYNGENTA CROP PROTECTION, LLC | |
| BUCCANEER 5 EXTRA HERBICIDE | 55467-15 | AG | TENKOZ INC | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Agricultural/Farming Uses (AG)** | | | | |
| AGENT GT | 33270-30 | AG | WINFIELD SOLUTIONS, LLC | |

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Products that Were Sold to Companies who Used Them as Ingredients in Manufacturing Other Glyphosate-Containing Products – LG, ITO, and/or AG** | | | | |
| GLYFOS MUC 62% | 67760-50 | LG-MFG; ITO-MFG; AG-MFG | CHEMINOVA, INC. | |
| GLYPHOSATE TECHNICAL | 33660-37 | ITO-MFG | INDUSTRIA PRODOTTI CHIMICI S.P.A. | DSN: Glyphosate Technical |
| 54% GLYPHOSATE IPA SALT PREMIX | 524-530 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| GLY 135EA TECHNICAL SOLUTION | 524-611 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| GLY 200EA TECHNICAL SOLUTION | 524-615 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| GLYPHOSATE | 524-420 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| GLYPHOSATE TECHNICAL | 524-421 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| GLYPHOSATE TECHNICAL (WETCAKE) | 524-558 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| IP410FC HERBICIDE | 524-602 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| IPA GLYPHOSATE 62% G2 | 524-559 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| K487 HERBICIDE | 524-600 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Products that Were Sold to Companies who Used Them as Ingredients in Manufacturing Other Glyphosate-Containing Products – LG, ITO, and/or AG** | | | | |
| MON 14420-G HERBICIDE | 524-442 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| MON 8750 HERBICIDE | 524-427 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| MON 0139 62% TECHNICAL SOLUTION | 524-333 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| MON 76369 63.9% TECHNICAL SOLUTION | 524-506 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| MON 78623 58% TECHNICAL SOLUTION | 524-532 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| IP410 HERBICIDE | 524-601 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| POTASSIUM GLYPHOSATE 58% G2 | 524-561 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| SHACKLE C / EXCHANGE HERBICIDE | 524-339 | ITO-MFG; AG-MFG | MONSANTO COMPANY | |
| ALBAUGH TECHNICAL GLYPHOSATE ACID | 42750-56 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| GLYPHOSATE ACID TGAI | 42750-64 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| CLEAROUT 62 FORMULATION CONCENTRATE | 42750-177 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| GLYPHOSATE 58% K-SALT MUP | 42750-330 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| GLYPHOSATE 62% | 42750-58 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| GLYPHOSATE ACID TGAI | 42750-170 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| GLYPHOSATE IPA MUP | 42750-105 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| GLYPHOSATE | 42750-178 | ITO-MFG; | ALBAUGH, LLC | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Products that Were Sold to Companies who Used Them as Ingredients in Manufacturing Other Glyphosate-Containing Products – LG, ITO, and/or AG** | | | | |
| TECHNICAL | | AG-MFG | | |
| GLYPHOSATE WETCAKE | 42750-302 | ITO-MFG; AG-MFG | ALBAUGH, LLC | |
| GLYPHOSATE ACID TGAI | 46146-6 | ITO-MFG; AG-MFG | ATANOR S.A. | |
| GLYPHOSATE CONCENTRATE MANUFACTURING USE PRODUCT | 4787-35 | ITO-MFG; AG-MFG | CHEMINOVA A/S | |
| GLYPHOSPHATE TECHNICAL | 4787-26 | ITO-MFG; AG-MFG | CHEMINOVA A/S | |
| GLYPHOSATE 545 MUP | 62719-358 | ITO-MFG; AG-MFG | DOW AGROSCIENCES LLC | |
| GLYPHOSATE TECHNICAL HERBICIDE | 62719-319 | ITO-MFG; AG-MFG | DOW AGROSCIENCES LLC | |
| GLYPHOSATE 62% MUP | 5905-630 | ITO-MFG; AG-MFG | HELENA AGRI-ENTERPRISES, LLC | |
| GLYPHOSATE TECHNICAL | 5905-629 | ITO-MFG; AG-MFG | HELENA AGRI-ENTERPRISES, LLC | |
| GLYPHOSATE ACID TECHNICAL | 35935-36 | ITO-MFG; AG-MFG | NUFARM LIMITED | |
| GLYPHOSATE TECHNICAL | 35935-46 | ITO-MFG; AG-MFG | NUFARM LIMITED | |
| GLYPHOSATE TECHNICAL NUP 07169 | 35935-47 | ITO-MFG; AG-MFG | NUFARM LIMITED | |
| GLYPHOSATE TECHNICAL NUP-07167 | 35935-82 | ITO-MFG; AG-MFG | NUFARM LIMITED | |
| GLYPHOSATE TECHNICAL | 10182-437 | ITO-MFG; AG-MFG | SYNGENTA CROP PROTECTION | |
| ZPP 1560 LIQUID CONCENTRATE 28.3% GLYPHOSATE | 10182-454 | ITO-MFG; AG-MFG | SYNGENTA CROP PROTECTION | |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| PRIMARY REGISTERED NAME | U.S. EPA REGISTRATION NUMBER[1] | PRIMARY USE(S)[2] | COMPANY NAME | ALTERNATE BRAND NAME(S) (ABN) & DISTRIBUTOR SUPPLEMENTAL NAME(S) (DSN) |
|---|---|---|---|---|
| **Products that Were Sold to Companies who Used Them as Ingredients in Manufacturing Other Glyphosate-Containing Products – LG, ITO, and/or AG** | | | | |
| GLYPHOSATE ACID TECHNICAL | 100-1113 | ITO-MFG; AG-MFG | SYNGENTA CROP PROTECTION, LLC | |
| TOUCHDOWN LIQUID CONCENTRATE | 100-1122 | ITO-MFG; AG-MFG | SYNGENTA CROP PROTECTION, LLC | |
| 62% GLYPHOSATE IPA | 1381-245 | ITO-MFG; AG-MFG | WINFIELD SOLUTIONS, LLC | |
| GLYPHOSATE IPA MUP CONCENTRATE | 1381-251 | ITO-MFG; AG-MFG | WINFIELD SOLUTIONS, LLC | |
| TOMAHAWK K | 33270-19 | ITO-MFG; AG-MFG | WINFIELD SOLUTIONS, LLC | |
| TOMAHAWK K | 83222-41 | ITO-MFG; AG-MFG | WINFIELD SOLUTIONS, LLC | |

35

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. B

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**NHL Subtypes[1]**

| Aggressive |
|---|
| Adult T-cell leukemia/lymphoma, *high grade or other features present* |
| Aggressive NK-cell leukemia (a/k/a Aggressive NK-cell leukaemia/lymphoma) |
| ALK-positive large B-cell lymphoma (a/k/a Large B-cell lymphoma expressing the ALK kinase and lacking the t(2;5) translocation; ALK-positive plasmablastic B-cell lymphoma) |
| Anaplastic large cell lymphoma, ALK-negative (a/k/a Anaplastic large cell lymphoma) |
| Anaplastic large cell lymphoma, ALK-positive (a/k/a Anaplastic large cell lymphoma; Ki-1 lymphoma) |
| B-cell prolymphocytic leukemia (ICC); Splenic B cell lymphoma/leukemia with prominent nucleoli (WHO) (a/k/a Prolymphocytic leukaemia, B-cell type) |
| B-lymphoblastic leukemia/lymphoma with recurrent genetic abnormalities |
| B-lymphoblastic leukemia/lymphoma, not otherwise specified (a/k/a B-cell acute lymphoblastic leukaemia; common lymphoblastic leukaemia; Common precursor B-lymphoblastic leukaemia; Pre-B lymphoblastic leukaemia; Pre-pre B lymphoblastic leukaemia; Precursor B-lymphoblastic leukaemia/lymphoma; Precursor B-cell lymphoblastic lymphoma; Precursor B-cell lymphoblastic leukaemia, NOS; Pro-B lymphoblastic leukaemia) |
| Breast implant—associated anaplastic large cell lymphoma, *high grade or other features present* (a/k/a Seroma-associated anaplastic large cell lymphoma) |
| Burkitt lymphoma (a/k/a Burkitt tumour; Malignant lymphoma, undifferentiated, Burkitt type; Malignant lymphoma, small noncleaved Burkitt type; Burkitt cell leukaemia) |
| Diffuse large B-cell lymphoma (DLBCL), NOS; Immunoblastic lymphoma (IBL) |
| Diffuse large B-cell lymphoma associated with chronic inflammation (a/k/a Pyothorax-associated lymphoma) |
| EBV-positive diffuse large B-cell lymphoma, NOS (a/k/a EBV positive DLBCL of the elderly; EBV associated B-cell lymphoproliferative disorder of the elderly; Senile EBV-associated B-cell lymphoproliferative disorder; Age-related EBV-positive lymphoproliferative disorder) |
| EBV-positive polymorphic B-cell lymphoproliferative disorder, not otherwise specified, *high grade or other features present* |

---

[1] If a Settlement Class Member submits a Claim Package or Quick-Pay Claim Package asserting a subtype of NHL that was first identified following the Settlement Date, the Allocation Special Master shall, in consultation with appropriate medical experts and Class Counsel, assign such subtype either Aggressive or Indolent status in accordance with reliable scientific evidence, and shall supplement this Exhibit accordingly.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| Aggressive |
|---|
| EBV-positive T-cell and NK-cell lymphoproliferative diseases of childhood (a/k/a Epstein-Barr virus (EBV) T-cell lymphoproliferative disease of childhood; Fulminant EBV-positive T-cell lymphoproliferative disorder of childhood; Sporadic fatal infectious mononucleosis) |
| Extranodal NK/T-cell lymphoma, nasal type (a/k/a Angiocentric T-cell lymphoma; Malignant reticulosis, NOS; Malignant midline reticulosis; Polymorphic reticulosis; Lethal midline granuloma; T/NK cell lymphoma; Angiocentric immunoproliferative lesion) |
| Follicular helper T-cell lymphoma, including angioimmunoblastic T-cell lymphoma |
| Hepatosplenic T-cell lymphoma (a/k/a hepatosplenic gamma/delta T-cell lymphoma) |
| HHV-8 and EBV-negative primary effusion-based lymphoma |
| HHV8-associated lymphoproliferative disorders including primary effusion lymphoma (a/k/a Large B-cell lymphoma arising in HHV8-associated multicentric Castleman disease; HHV8 positive plasmablastic lymphoma; Kaposi sarcoma herpes virus positive plasmablastic lymphoma) |
| High-grade B-cell lymphoma with MYC and BCL2 rearrangements (a/k/a Double-hit lymphoma) |
| High-grade B-cell lymphoma with MYC and BCL6 rearrangements (ICC Classification) (a/k/a Double-hit lymphoma) |
| High-grade B-cell lymphoma, not otherwise specified (a/k/a B-cell lymphoma, unclassifiable, with features intermediate between DLBCL and Burkitt lymphoma) |
| Immunodeficiency-associated lymphoproliferative disorders; lymphoproliferative disorders and lymphomas associated with primary immune disorders or HIV infection following transplantation and/or iatrogenic disorders |
| Intravascular large B-cell lymphoma (a/k/a Angioendotheliotropic lymphoma; Angiotropic large cell lymphoma; Malignant angioendotheliomatosis; Angioendotheliomatosis proliferans syndrome; Intravascular lymphomatosis) |
| Large B-cell lymphoma with 11q aberration |
| Large B-cell lymphoma with IRF4 rearrangement |
| Mantle cell lymphoma: conventional and leukemic nonnodal subtypes (a/k/a Mantle zone lymphoma; Malignant lymphoma, lymphocytic, intermediate differentiation, diffuse; Malignant lymphoma, centrocytic; Malignant lymphomatous polyposis) |
| Mediastinal gray zone lymphoma (a/k/a B-cell lymphoma, unclassifiable, with features intermediate between DLBCL and classical Hodgkin lymphoma; Grey zone lymphoma; large B-cell lymphoma with Hodgkin's features; Mediastinal grey-zone lymphoma; Hodgkin-like anaplastic large cell lymphoma) |
| Monomorphic epitheliotropic intestinal T-cell lymphoma (a/k/a Intestinal T-cell lymphoma) |
| Mycosis fungoides, *high grade or other features present* |
| NK-lymphoblastic leukemia/lymphoma |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| Aggressive |
|---|
| Peripheral T-cell lymphoma, NOS (a/k/a Peripheral T-cell lymphoma, unspecified; T-cell lymphoma, NOS; peripheral T-cell lymphoma, pleomorphic small cell; Peripheral T-cell lymphoma, pleomorphic medium and large cell; Peripheral T-cell lymphoma, large cell; Lymphoepithelioid lymphoma; Lennert lymphoma) |
| Plasmablastic lymphoma |
| Primary cutaneous CD8-positive aggressive epidermotropic cytotoxic T-cell lymphoma |
| Primary cutaneous diffuse large B-cell lymphoma, leg type |
| Primary cutaneous gamma-delta T-cell lymphoma |
| Primary diffuse large B-cell lymphoma of the CNS (a/k/a Primary CNS lymphoma; Primary intraocular lymphoma; Lymphomatosis cerebri) |
| Primary diffuse large B-cell lymphoma of the testis |
| Primary mediastinal large B-cell lymphoma (a/k/a Mediastinal (thymic) large B-cell lymphoma; Mediastinal large B-cell lymphoma; Primary mediastinal clear cell lymphoma of B-cell type; Mediastinal diffuse large cell lymphoma with sclerosis) |
| Primary nodal EBV-positive T-cell/NK-cell lymphoma |
| Sézary syndrome |
| T-cell prolymphocytic leukemia (a/k/a Prolymphocytic leukaemia, T-cell type; T-cell chronic lymphocytic leukemia) |
| T-cell/histiocyte-rich large B-cell lymphoma (a/k/a Histiocyte-rich/T-cell-rich large B-cell lymphoma; histiocyte-rich/T-cell-rich large B-cell lymphoma; T-cell-rich lymphoma; (Large) B-cell lymphoma rich in T-cells and simulating Hodgkin disease; T-cell-rich large B-cell lymphoma; T-cell-rich/histiocyte-rich large B-cell lymphoma) |
| T-lymphoblastic leukemia/lymphoma (a/k/a Precursor T-lymphoblastic leukaemia/lymphoma; T acute lymphoblastic leukaemia) |
| Type II refractory celiac disease and enteropathy-associated T-cell lymphoma (a/k/a Intestinal T-cell lymphoma; Enteropathy associated T-cell lymphoma; Enteropathy-type intestinal T-cell lymphoma; Enteropathy-type T-cell lymphoma; Classic enteropathy-associated T-cell lymphoma; Malignant histiocytosis of the intestine) |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| **Indolent** |
| --- |
| Adult T-cell leukemia/lymphoma, *localized* |
| BCL2-rearrangement negative, CD23-positive follicular lymphoma (ICC) |
| Breast implant—associated anaplastic large cell lymphoma, *localized* (a/k/a Seroma-associated anaplastic large cell lymphoma) |
| Chronic Lymphocytic Leukaemia/Small Lymphocytic Lymphoma (a/k/a Chronic lymphocytic leukaemia, B-cell type; Chronic lymphoid leukaemia; Chronic lymphatic leukaemia) |
| Chronic lymphoproliferative disorder of NK cells (a/k/a Chronic NK-cell lymphocytosis; Chronic NK large granular lymphocyte lymphoproliferative disorder; NK-cell lineage granular lymphocyte proliferative disorder;  NK-cell LGL lymphocytosis;    NK-cell large granular lymphocyte lymphocytosis; Indolent large granular NK-cell lymphoproliferative disorder; Indolent leukaemia of NK cells) |
| Duodenal-type follicular lymphoma (WHO) |
| Extranodal marginal zone lymphoma of mucosa-associated lymphoid tissue (MALT lymphoma) (a/k/a Extranodal marginal zone B-cell lymphoma; Extranodal marginal zone B-cell lymphoma of mucosa-associated tissue); Gastric MALT |
| Follicular lymphoma |
| Hairy cell leukemia (a/k/a Leukaemic reticuloendotheliosis) |
| Lymphoplasmacytic lymphoma/Waldenstrom macroglobulinemia (a/k/a Malignant lymphoma; Lymphoplasmactyoid) |
| Mycosis fungoides, *localized* |
| Nodal marginal zone lymphoma (a/k/a Monocytoid B-cell lymphoma; Parafollicular B-cell lymphoma; Nodal marginal zone B-cell lymphoma) |
| Nodular lymphocyte predominant B-cell lymphoma (ICC Classification) (a/k/a Nodular lymphocyte predominant Hodgin lymphoma; L&H Hodgkin lymphoma) |
| Pediatric nodal marginal zone lymphoma (WHO) |
| Pediatric-type follicular lymphoma |
| Primary cutaneous acral CD8-positive T-cell lymphoproliferative disorder |
| Primary cutaneous CD30-positive T-cell lymphoproliferative disorders; Primary cutaneous anaplastic large-cell lymphoma |
| Primary cutaneous CD4-positive small/medium T-cell lymphoproliferative disorder |
| Primary cutaneous follicle center lymphoma (a/k/a Primary cutaneous follicle centre lymphoma; Reticulohistiocytoma of the dorsum (Crosti's disease; Crosti lymphoma)) |
| Primary cutaneous marginal zone lymphoma |
| Splenic B-cell lymphoma/leukaemia, unclassifiable (a/k/a Lymphocytic lymphoma simulating hairy cell; Prolymphocytic variant of hairy cell leukemia; Splenic marginal zone lymphoma, |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| **Indolent** |
| --- |
| diffuse variant; Splenic red pulp lymphoma with numerous basophilic villous lymphocytes; Splenic [B-cell] lymphoma with villous lymphocytes) |
| Splenic marginal zone lymphoma (a/k/a Splenic B-cell marginal zone lymphoma; Splenic lymphoma with villous lymphocytes; Splenic lymphoma with circulating villous lymphocytes) |
| Subcutaneous panniculitis-like T-cell lymphoma |
| T-cell large granular lymphocytic leukemia (a/k/a T-cell large granular lymphocytosis; CD8+T-cell chronic lymphocytic leukaemia; T-cell lymphoproliferative disease of granular lymphocytes; T-gamma lymphoproliferative disease) |
| Testicular follicular lymphoma |

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. C

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**Manufacturers**

The following is a good-faith effort by Defendant to list all manufacturers of any Roundup Product to which a Monsanto Party has provided a contractual indemnity.

- Albaugh, LLC
- Cheminova, Inc.
- Dow AgroSciences, LLC
- Drexel Chemical Company
- DuPont de Nemours Inc. / E.I. du Pont de Nemours and Company
- Nufarm Suisse Sàrl / Nufarm Americas, Inc.
- Ragan & Massey, LLC
- Syngenta Crop Protection AG
- Winfield Solutions, LLC

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. D

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## FORM OF RELEASE
### Release of Claims

| Name: | |
|---|---|
| Date of Birth: | |
| Social Security No.: | |
| Address: | |
| Phone: | |
| Email: | |

I, the individual identified above ("Releasing Party"), in order to obtain and in consideration for the benefits provided to me pursuant to the Class Action Settlement Agreement dated [DATE] (the "Settlement Agreement"), agree and represent as follows:

1. I am aware of and have reviewed the Settlement Agreement, and understand that all defined terms in this Release of Claims have the meanings defined therein.

2. I hereby represent that any and all actions or proceedings involving Roundup Claims, including Roundup Lawsuits and/or Related Party Lawsuits, that I had pending in any court, tribunal or other forum against the Monsanto Parties or the Related Parties have been dismissed as of the date of the execution of this Release of Claims.

3. I understand that I am bound by the Releases and Covenant Not to Sue set forth in Section 3.1 of the Settlement Agreement, as of the date of the execution of this Release of Claims or as of Effective Date, whichever is earlier.  I understand that I am bound by the Settlement Agreement as a whole and the Final Order and Judgment.  I agree not to collaterally attack the Settlement Agreement or assist others in doing so.

4. In connection with the Releases provided for in the Settlement Agreement, I expressly waive, release, and forever discharge any and all provisions, rights, and benefits conferred upon me by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

I may hereafter discover facts other than or different from those which I know, believe, or assume to be true with respect to the Released Claims, but I hereby expressly waive and fully, finally, and forever settle, release and discharge, upon the date of the execution of this Release of Claims or as of Effective Date, whichever is earlier, any and all Released Claims that may exist as of such date but which I do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect my decision to participate in the Settlement Agreement.

5.  Nothing herein is intended to modify in any way the terms of the Settlement Agreement, to which I hereby agree.  To the extent this Release of Claims is interpreted differently from the Settlement Agreement in any respect, the Settlement Agreement controls.

6.  I submit to the jurisdiction of the 22nd Judicial Circuit Court, City of St. Louis, Missouri for the purposes of resolving any and all disputes related to the Settlement Agreement, this Release of Claims, and/or any Roundup Claims, and agree that I am bound by, to the extent provided, the dispute resolution procedures described in the Settlement Agreement.  I further understand and agree that the Monsanto Parties and Related Parties have the right to enforce the Settlement Agreement as provided therein.

7.  In consideration of the Award made to me under the Settlement Agreement, I understand and agree that I am bound by the Releases provided in Section 3.1 of the Settlement Agreement, even if the Settlement Agreement itself is later terminated, fails to receive final court approval, or fails to become effective for any reason.

8.  If any term, provision, promise, or condition of this Release of Claims is determined to be illegal, invalid, void, or unenforceable, in whole or in part, under any present or future law, the remainder of this Release of Claims shall remain in full force and effect and shall in no way be affected, impaired, or invalidated to the maximum extent permitted by law.

9.  This Release of Claims is given on behalf of myself and, if applicable, any Derivative Claimants affiliated with me.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**IN WITNESS WHEREOF**, I have executed this Release of Claims effective as of the date set forth under my name below:

| SIGNATURE BY RELEASING PARTY‡ | |
|---|---|
| **Signature of Releasing Party:** | |
| **Printed Name:** | |
| **Date of Signature:** | _____/_____/_____<br>(month)  (day)    (year) |

---

‡   INSTRUCTION:  The Release of Claims must be executed with the Personal Signature of the Releasing Party.  If executed on behalf of a Releasing Party by a legal representative (*e.g.*, legal guardian), evidence of such authority must be attached and submitted with the Release of Claims executed with the Personal Signature of the legal representative.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

-5-

| NOTARIZATION | | |
|---|---|---|
| BEFORE ME, the undersigned authority, the Person known to be the Releasing Party named above personally appeared on the Signature Date shown and acknowledged under oath to my satisfaction that he/she has signed, sealed and delivered this document as his or her act and deed for the purposes therein expressed and in the capacity therein expressed. | | |
| **Signature of Notary:** | | |
| **Notary Public in and for the State or Jurisdiction of:** | | |
| **Date Notary Commission Expires:** | _____/_____/_____ <br> (month)  (day)    (year) | _____ Notary:  Check here if your Notary Commission has no expiration date under the law of your jurisdiction. |
| **Place Notary Seal or Stamp in this Space, or Notary Number:** | | |
| | _____ Notary:  Check here if your jurisdiction does not require a seal or stamp. | |

To be notarized in accordance with the applicable laws or rules governing notarization in the state in which the Releasing Party executes this Release of Claims.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| SIGNATURE BY DERIVATIVE CLAIMANT (if applicable)[§] | |
|---|---|
| **Signature of Derivative Claimant:** | |
| **Printed Name:** | |
| **Social Security No.:** | |
| **Date of Birth:** | |
| **Relationship to Claimant:** | |
| **Date of Signature:** | _____/_____/_____ <br> (month) (day)    (year) |

---

[§]    INSTRUCTION:  The Release of Claims must be executed with the Personal Signature of the Releasing Party.  If executed on behalf of a Releasing Party by a legal representative (*e.g.*, legal guardian), evidence of such authority must be attached and submitted with the Release of Claims executed with the Personal Signature of the legal representative.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| NOTARIZATION | | |
|---|---|---|
| BEFORE ME, the undersigned authority, the Person known to be the Derivative Claimant named above personally appeared on the Signature Date shown and acknowledged under oath to my satisfaction that he/she has signed, sealed and delivered this document as his or her act and deed for the purposes therein expressed and in the capacity therein expressed. | | |
| **Signature of Notary:** | | |
| **Notary Public in and for the State or Jurisdiction of:** | | |
| **Date Notary Commission Expires:** | _____ / _____ / _____ <br> (month) (day) (year) | _____ Notary:  Check here if your Notary Commission has no expiration date under the law of your jurisdiction. |
| **Place Notary Seal or Stamp in this Space, or Notary Number:** | | |
| | _____ Notary:  Check here if your jurisdiction does not require a seal or stamp. | |

To be notarized in accordance with the applicable laws or rules governing notarization in the state in which the Derivative Claimant executes this Release of Claims.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## CERTIFICATION OF COUNSEL

## (COUNSEL FOR RELEASING PARTIES)

I, _____, hereby represent and declare that _____ ("Releasing Party") is currently represented by the undersigned counsel, because I have been privately retained by the Releasing Party.  I have provided Releasing Party with a copy of the Release of Claims to which this Certification of Counsel is attached and have made available to Releasing Party a copy of the Settlement Agreement referred to in the Release of Claims (which copies include all attachments).  I, or an employee of the firm working under my direction and authority, informed Releasing Party of the terms and legal effect of all of the foregoing documents and Releasing Party's decision to participate in the Settlement Program, and I, or an employee of the firm working under my direction and authority, answered any and all questions Releasing Party may have had.  I hereby certify that Releasing Party, having had a full opportunity to read, understand, and inquire of counsel about the terms and conditions of the foregoing documents, does not have, and I do not have, any objection to the terms of this Release of Claims or any of the other foregoing documents.  I further agree to be bound by my obligations in all of the terms of the Settlement Agreement applicable to counsel for Claimants.

COUNSEL FOR RELEASING PARTY:

By: _____

Name: _____

Title: _____

Dated: _____

-8-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. E

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# Attention: Farmers, Landscapers, Groundskeepers, Gardeners, and Others Exposed to Weed Killers

## People Diagnosed with Non-Hodgkin Lymphoma (NHL) Now or in the Future Could Receive $6,000 to $165,000 or More

*This settlement will affect you even without a cancer diagnosis — unless you exclude yourself.*

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- The Monsanto Company ("Monsanto") makes an ingredient called glyphosate that is in Roundup and other weed killers (together, "Roundup Products"), and people sued Monsanto, claiming this ingredient causes non-Hodgkin lymphoma ("NHL").  The company agreed to pay up to $7.25 billion to settle these claims.  Monsanto says it did nothing wrong. The settlement will continue to pay claims for 17 to 21 years.

- People who may be part of this settlement include workers in farming, landscaping, and groundskeeping jobs, as well as people who used Roundup Products at home or lived in a home where they were used.

- You may be part of this settlement—even if you haven't been diagnosed with NHL—if you used a Roundup Product (see Question 13) in the U.S. or were close by when someone else used it. Close family members, like spouses, parents, and children, may also be able to submit claims based on their loved one's exposure.

- The settlement gives these cash benefits: (a) Program Awards pay an average of $10,000 to $165,000 for eligible class members with NHL (even those diagnosed later), (b) Quick-Pay Awards pay $6,000 to $14,500 for some class members, and (c) additional awards pay extra money for special situations or heavy use at home.

- **If you stay in the settlement:** You agree not to sue Monsanto for any claims related to Roundup Product exposure. You give up the right to ask a court for money for your injuries (compensatory damages), for medical tests (medical monitoring), or for extra penalties against Monsanto (punitive damages).

- **If you don't get paid or are diagnosed later:** If you submit a valid claim but do not receive payment (for example, if you have waited more than 5 years from your Claim Eligibility Date, or if the funding runs out), you have the right to "exit" the settlement. Additionally, if you are diagnosed with NHL after the Court approves the settlement, but before it ends, you can reject your award and leave the settlement. If you exit the settlement, you get back the right to sue Monsanto for your injuries and losses, but you still cannot sue for punitive damages.

- **If you are diagnosed with NHL in the future:** If you stay in the settlement and are diagnosed with NHL in the future, you must submit a claim through this settlement first; you cannot sue in court unless you complete the claims process and choose to "exit" the program later.

- **If you never get sick:** If the settlement ends (after the 16th Annual Payment Date) and you have not been diagnosed with NHL, you get back the right to sue Monsanto for all damages if you get sick in the future.

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **REGISTER FOR BENEFITS** | **If you were diagnosed with NHL on or before Month XX, 2026:** You must register within 180 days of the Final Approval Date (the day the Judge signs the order approving the Settlement). **If you are diagnosed with NHL in the future:** You do not need to register. |
| **SUBMIT A CLAIM** | **If you were diagnosed with NHL on or before Month XX, 2026:** You must submit a Claim Form no later than 180 days after the date the settlement is final after any appeals. **If you are diagnosed with NHL in the future:** You must submit a claim within six years of your diagnosis (and before the 16th Annual Payment Date). |
| **EXCLUDE YOURSELF** | If you exclude yourself, you will not receive any settlement benefits.  You will be able to file a lawsuit against Monsanto for all timely claims related to your exposure to Roundup Products. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **ATTEND HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | If you do nothing, you remain part of the Settlement Class and you give up your right to sue Monsanto. You will get $0 unless you submit a claim. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.  If you have any questions about this settlement, you may visit www.WeedKillerClass.com or call 1-8XX-XXX-XXXX for free help.

- The Court in charge of this case has yet to decide whether to approve the settlement.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**……………………………………………………………………………**4**
1.      What is this notice about?
2.      What is the lawsuit about?
3.      What is non-Hodgkin lymphoma?
4.      Why does this settlement include people who are not sick?
5.      What are compensatory and punitive damages?
6.      Why is this a class action?
7.      Why is there a settlement?

**WHO IS PART OF THE SETTLEMENT?**……………………………………………..…………**6**
8.      How do I know if I am included in the settlement?
9.      When does the settlement become final?
10.     Was there a previous Roundup settlement about NHL?
11.     What type of claimant am I?
12.     Does my immigration status in the U.S. affect my ability to be in the Settlement Class?
13.     What does "exposure" mean?
14.     What should I do if I am not sure whether I am included in the settlement?

**SETTLEMENT BENEFITS**…………………………………………………………...………**8**
15.     What does the settlement provide?
16.     Who can apply for a compensation award?
17.     If I was diagnosed with NHL before 2020, can I apply for a compensation award?
18.     How will the amount of my Program Award be determined?
19.     What types of compensation awards are available?
20.     Are there additional funds for special circumstances?
21.     What factors could increase or decrease my Claim Score?
22.     What happens if there are healthcare reimbursement claims?
23.     Can family members or representative claimants receive a compensation award?
24.     How long will the settlement last, and why does the 16th Annual Payment Date matter?
25.     What happens to money left over at the end of the settlement?

**HOW TO GET BENEFITS**………………………………………………………..………..**14**
26.     How do I apply for a compensation award?
27.     Can I appeal a decision to deny or limit the amount of my compensation award?
28.     Can I reject my Program Award?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**...……………………………..……....**15**
29.     How do I get out of the Settlement Class?
30.     Does the total amount Monsanto pays change if people opt out or reject their awards?
31.     If I do not exclude myself, can I sue Monsanto for the same thing later?
32.     If I exclude myself, can I still get benefits?
33.     How do I cancel my exclusion request?

**WHAT CLASS MEMBERS GIVE UP**...……………………………………………………....**18**
34.     What claims do I give up in the settlement?
35.     What if I have a pending lawsuit against Monsanto?

**THE LAWYERS REPRESENTING YOU** …………………………………………………**19**
36.     Do I have a lawyer in this case?
37.     What if I have already hired an attorney or filed a lawsuit against Monsanto about exposure to Roundup Products?
38.     How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** …………………………………………………………………**21**
    39.    How can I tell the Court if I do not like the settlement?
    40.    Can I both object to and exclude myself from the settlement?

**THE FAIRNESS HEARING**……………………………………………………………...…..…..…..**22**
    41.    When and where will the Court decide whether to approve the settlement?
    42.    Do I have to attend the hearing?
    43.    May I speak at the hearing?

**GETTING MORE INFORMATION**……………………………………………….………**22**
    44.    Where can I get more information?

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## BASIC INFORMATION

### 1.  What is this notice about?

The Court overseeing this proposed class action settlement authorized this notice to inform you how you may be affected by the settlement.  This notice describes the lawsuit, the general terms of the proposed settlement, and what it may mean to you.  It also explains how to participate in, or exclude yourself from, the settlement.

Judge Timothy J. Boyer of the 22nd Judicial Circuit Court, City of St. Louis, Missouri, is in charge of this case.  The case name is *Randall King, et al.* v. *Monsanto Company*, No. XXXXXX.  The people who sued are called the "Plaintiffs."  Monsanto is the "Defendant."

### 2.  What is the lawsuit about?

Roundup weed killer is one of the leading and most widely used herbicide products in the U.S.  Roundup weed killer contains glyphosate, which is also an ingredient in other similar products that may not have "Roundup" in their name but are included in the settlement as "Roundup Products" (see Question 11).  The lawsuit claims that exposure to Roundup Products can cause a type of blood cancer called non-Hodgkin lymphoma.  Monsanto denies this claim and denies any wrongdoing.

Glyphosate is an herbicide used to kill certain plants and grasses and is an active ingredient in Roundup Products.

### 3.  What is non-Hodgkin lymphoma?

Non-Hodgkin lymphoma, also known as NHL, is a type of cancer that starts in white blood cells called lymphocytes. Lymphocytes are part of the body's immune system that help it fight infections and other diseases.

**What is covered by the settlement:**

- NHL, including but not limited to Diffuse Large B-Cell Lymphoma, Follicular Lymphoma, Hairy Cell Leukemia, Aggressive NK-Cell Leukemia, and Chronic Lymphocytic Leukemia/Small Lymphocytic Lymphoma.
- Any leukemia that contains the words "lymphoma," "lymphocytic," or "prolymphocytic" in its name under the World Health Organization Classification of Tumours – Haematolymphoid, Volume 11 (revised 5th Edition (2024)).

**What is NOT covered by the settlement:**

- Hodgkin's lymphoma.
- Multiple myeloma.
- Leukemias that do not have "lymphoma," "lymphocytic," or "prolymphocytic" in their names.

**A complete list of covered conditions is available on the website or by calling the toll-free number.**

**VISIT WWW.WEEDKILLERCLASS.COM**
**OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP**
**PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB**

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

### 4.  Why does this settlement include people who are not sick?

Scientific research shows that non-Hodgkin lymphoma can take 10 to 15 years—or longer—to develop after exposure to certain chemicals. This means you could have been exposed to Roundup Products years ago and not know yet whether you will ever develop NHL.

This settlement is designed to provide compensation for people who develop NHL in the future, not just those who are already sick. That is why the settlement will pay claims for 17 to 21 years.

If you were exposed to Roundup Products, this settlement affects your legal rights now—even if you feel perfectly healthy. If you stay in the settlement and are later diagnosed with NHL, you must file a claim through this program; you cannot sue Monsanto in court unless you are eligible to exit the settlement (see Question 31). If you want to keep all your legal options open, you must exclude yourself before the deadline (see Question 29).

If you stay in the settlement but are not diagnosed with NHL before the 16th Annual Payment Date of the settlement, you get back all your legal rights at the end of the settlement (see Question 31).

### 5.  What are compensatory and punitive damages?

**Compensatory damages** are money awarded to pay you back for your actual losses. This includes money for medical bills, lost wages, pain and suffering, and emotional harm.

**Punitive damages** are extra money a court orders a defendant to pay specifically to punish them for their bad conduct, not to pay you for your injury.

### 6.  Why is this a class action?

In a class action, the plaintiffs who file the lawsuit act as "class representatives" and sue on behalf of themselves and others with similar claims.  This group of people is called the "class," and its members are called "class members."  One court resolves the issues presented for all class members, except for people who exclude themselves from the class.

### 7.  Why is there a settlement?

Plaintiffs and Monsanto agreed to a settlement to avoid the significant risks and delays of continuing litigation. Specifically, Class Counsel and the Class Representatives recommend this settlement because of several major risks that could result in you getting zero money if the lawsuits continue:

- **The "Preemption" Risk:** The U.S. Supreme Court is considering a case that could decide that federal law prevents (preempts) most of these lawsuits entirely because the EPA has approved Roundup's labels. If this happens, most claims would be dismissed.

- **The Bankruptcy Risk:** Monsanto faces financial difficulties that could lead to bankruptcy. If the company goes bankrupt, you could face years of delays and receive little or no money.

- **The Delay Risk:** The sheer volume of pending Roundup cases in Missouri and nationwide has created a significant backlog, with only a small number proceeding to trial each year.

- **The Litigation Risks:** Without a settlement, you face the risk of dismissal of your case before trial and the risk of loss at trial or on appeal, which would result in zero recovery.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

6

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## WHO IS PART OF THE SETTLEMENT?

**8.  How do I know if I am included in the settlement?**

You are included in the settlement if you meet **all** the following criteria:

- You are a U.S. citizen **or** a non-U.S. citizen who was living in the U.S. on Month XX, 2026.

- You had contact with, inhaled, ingested, or absorbed Roundup Products in the U.S. before February 17, 2026; **AND**

- Your exposure happened because you:

    o   Applied the products yourself.

    o   Purchased or paid for the products or their application.

    o   Participated in, directed, or saw the application of the products; or

    o   Otherwise had reason to know you were exposed.

Note: The U.S. includes all 50 states, the District of Columbia, Puerto Rico, Guam, American Samoa, the U.S. Virgin Islands, the Northern Mariana Islands, any other U.S. territory, and U.S. military or diplomatic establishments worldwide.

**You are also included in the settlement if you are a:**

- **Derivative Claimant:** You are a spouse, parent, or dependent child of a class member, or you have a legal relationship with a class member that allows you to sue Monsanto because of their exposure to Roundup.

- **Representative Claimant:** You are an authorized representative or executor for a class member who is deceased, a minor, or legally incapacitated.

**You are NOT included in the settlement if:**

- You or your immediate family member is a judge or court staff assigned to this case.

- You are a current or former officer, director, or employee of Monsanto or any of its subsidiaries (as of February 17, 2026).

- You only watched someone else apply Roundup Products, and you had no reason to know the products were weed killers.

- You have already settled your claim with Monsanto and signed a release.

- Your claim was previously dismissed by a court with prejudice (i.e., permanently); or

- You have a claim pending in the federal MDL in California (*In re Roundup Products Liability Litigation*, MDL No. 2741) as of February 17, 2026. However, if you dismiss your MDL claim, you may join this settlement upon request.

**9.  When does the settlement become final?**

The settlement does not become final right away. After the Court approves the settlement, there is a period during which appeals may be filed. The settlement becomes final when all appeals are resolved or the time to appeal has passed. In this notice, deadlines tied to this date are stated as "after the settlement becomes final." The Settlement Agreement refers to this as the "Effective Date."

**VISIT WWW.WEEDKILLERCLASS.COM**
**OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP**
**PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB**

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**10. Was there a previous Roundup settlement about NHL?**

Yes. In 2021, Monsanto proposed a different class action settlement to resolve Roundup-related NHL claims. The proposed settlement was ultimately withdrawn following the Court's denial of preliminary approval. This settlement is a new and separate agreement with different terms, different class definitions, and a different compensation structure. If you have a pending claim in the federal MDL (*In re Roundup Products Liability Litigation*, MDL No. 2741), see Question 37 for how this settlement may affect you.

**11. What type of claimant am I?**

If you are included in the settlement, you will be categorized as follows:

- **Subclass 1:** You were diagnosed with NHL as of Month XX, 2026 [Preliminary Approval Date] and meet the exposure requirements.

- **Subclass 2:** You meet the exposure requirements but have NOT been diagnosed with NHL as of Month XX, 2026 [Preliminary Approval Date]. You are part of the settlement now, but you can only submit a claim for compensation if you are diagnosed with NHL in the future.

You will also be categorized as either an Occupational or a Residential Claimant.

- **You qualify as an Occupational Claimant if:**

  o You were exposed to Roundup Products for more than 80 hours while working in an agricultural, industrial, turf, or ornamental job; and

  o You earned more than 50% of your total income or more than $15,000 from this job in at least one year.

  o *Proof Requirement:* You must provide documentary evidence of your occupational status, such as employment records, payroll records, business licenses, or tax records.

| OCCUPATIONAL EXAMPLES |
|---|
| Farmers; farm laborers or helpers; gardeners; maintenance workers; landscapers; pesticide sprayers, handlers, or applicators; groundskeepers; lawn service workers; tree trimmers or pruners; hedge trimmers; highway maintenance workers; rail maintenance workers; or facilities managers. |
| WAYS YOU COULD HAVE BEEN EXPOSED |
| Mixing or applying pesticides or herbicides; planting, cultivating or harvesting crops; landscaping or groundskeeping to improve the appearance of lawns, gardens, parks, or other outdoor spaces; maintenance of athletic fields or golf courses; planting, watering, or fertilizing gardens; and pruning or maintaining trees or shrubs. |

- **You qualify as a Residential Claimant if:**

  o You were exposed to Roundup Products in a residential capacity, or you do not meet the specific hours or income requirements for an Occupational Claimant (for example, if you used the product at home for gardening or landscaping).

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

8

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

## 12.  Does my immigration status in the U.S. affect my ability to be in the Settlement Class?

Your immigration status does not affect your inclusion in the Settlement Class. You do not need to be a U.S. citizen or have legal immigration status to participate in the settlement if you qualify as a class member (see Question 8).

## 13.  What does "exposure" mean?

Exposure means you had direct physical contact with Roundup Products during their handling or application (you inhaled, absorbed, or swallowed them). This includes contact that occurred while you were using the Roundup Products yourself, or while you were close by when someone else was mixing, applying, handling, or transporting them.

Roundup Products include:

- •    Any product listed on Exhibit A to the Settlement Agreement, and

- •    Any glyphosate-containing product with "Roundup" in its name.

A list of Roundup Products is available at the website or by calling the toll-free number.

## 14.  What should I do if I am not sure whether I am included in the settlement?

If you are not sure whether you are included in the settlement or have any other questions, call the toll-free number at 1-8XX-XXX-XXXX. You may also send questions to the claims administrator at info@WeedKillerClass.com or Roundup Settlement, P.O. Box 0000, City, ST 00000-0000.

## SETTLEMENT BENEFITS

## 15.  What does the settlement provide?

Monsanto has agreed to pay up to $7.25 billion into a settlement fund over 17 to 21 years.  This fund is subject to specific adjustments and credits. The chart below explains the funding commitments, timing, and distribution rules.

| FUNDING COMPONENT | AMOUNT | TIMING / TRIGGER | PURPOSE / ALLOCATION |
|---|---|---|---|
| Initial Settlement Payments | $1 Billion | $500 million has already been paid. Another $500 million will be paid by August 31, 2026. | (1) pay notice and administration costs; (2) pay taxes and fees after final approval; (3) up to $80 million for Quick-Pay Awards and $20 million for Exigency Awards annually after final approval (for up to three years if the settlement is delayed by appeals); and (4) any remaining funds will be rolled into the Award Fund on the First Annual Payment Date to pay first year claims. |
| Annual Settlement Payments | $250M – $550M per year | Paid annually for 16 years on the anniversary of the | Used to pay Program Awards, extra awards for special circumstances or heavy residential exposure (see Question 20), attorneys' fees, ongoing notice and administration costs, and tax expenses. |

**VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB**

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| | | date the settlement becomes final. | |
|---|---|---|---|
| **Security Fund** | $1 Billion | Established within 30 days of the date the settlement becomes final. | A separate escrow account acting as a safety net. If Monsanto defaults in bankruptcy and does not make required settlement payments, these funds will be available for the benefit of class members. |
| **Extended Funding** | Up to $250M annually | If necessary, it starts one year after the date of the 16th Annual Settlement Payment Date (maximum of 4 additional years). | Only happens if the 16th Annual Payment is not enough to pay remaining Occupational Claimants (see Question 24). |

### 16. Who can apply for a compensation award?

If you were diagnosed with NHL as of Month XX, 2026, you can begin your application for a compensation award upon Final Court Approval if you meet all the following criteria:

- **Exposure:** You were exposed to Roundup Products in the U.S. before February 17, 2026.

- **Citizenship/Residency:** You are a U.S. citizen or were living in the U.S. on Month XX, 2026.

- **Diagnosis:** You have a qualifying diagnosis of non-Hodgkin lymphoma (NHL).

- **Register/Submit Claim Package:** You register within 180 days of the Final Approval Date and submit your Claim Package within 180 days of the date the settlement becomes final.

If you are diagnosed with NHL after Month XX, 2026, you can apply for a compensation award in the future if you meet the following criteria:

- **Exposure:** You were exposed to Roundup Products in the U.S. before February 17, 2026.

- **Citizenship/Residency:** You are a U.S. citizen or were living in the U.S. on Month XX, 2026.

- **Diagnosis:** You are diagnosed before the 16th Annual Payment Date (see Question 24).

- **Submit Claim Package:** You submit your Claim Package within six years of your diagnosis but before the 16th Annual Payment Date.

### 17. If I was diagnosed with NHL before 2020, can I apply for a compensation award?

It depends on whether you already took legal action before February 13, 2026.

- **If you filed a lawsuit or signed a tolling agreement before February 13, 2026:** Yes, you can apply for compensation.

- **If you did NOT file a lawsuit or sign a tolling agreement before February 13, 2026:** Generally, no, but there is one exception. You can still apply and receive a full award if you can prove your state's deadline to sue has not passed yet. This is usually based on where you were exposed to Roundup Products or where you lived when you were diagnosed with NHL. If you cannot prove you still have time to sue, you will remain part of the Settlement Class, but you will not receive any money.

Visit www.WeedKillerClass.com
or Call Toll-Free, 1-8XX-XXX-XXXX For Free Help
Para recibir una notificación en español, llama al o visita nuestro sitio web

10

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

| **WHAT IS A TOLLING AGREEMENT?** |
|---|
| A tolling agreement is a contract between you or your attorneys and Monsanto that pauses the clock on your deadline to sue. |
| **WHY DO THE DEADLINES MATTER?** |
| Every state has laws that limit how long you have to file a lawsuit. These include: |

- **Statutes of limitations:** Set a deadline based on when you were injured or when you discovered your injury.

- **Statutes of repose:** Set a firm cutoff date, regardless of when you discovered your injury.

**18.  How will the amount of my Program Award be determined?**

Your award amount is determined in two steps: Tier Assignment and Claim Scoring.

**Tier Assignment:** First, you will be assigned to one of nine tiers based on three main factors:

- **Type of Exposure:** Whether you are an Occupational Claimant or a Residential Claimant (see Question 11).

- **Age at Diagnosis:** Your age at the time of your NHL diagnosis.

- **NHL Subtype:** Whether your cancer is classified as fast-growing ("aggressive") or slow-growing ("indolent").

Each tier has an average award value. For example, Tier 1 (younger, occupational, aggressive NHL) has a higher average payment than Tier 9 (claimants over age 78). All claimants diagnosed with NHL at age 78 or older will be assigned to Tier 9, regardless of their exposure or NHL subtype.

**Claim Scoring:** Once you have been assigned to a tier, your specific award is calculated based on a score that compares you to others within your tier.  Scoring is based on:

- **Treatment:** The intensity and invasiveness of your treatment (such as chemotherapy or radiation).

- **Proof:** The strength of the evidence you provide to prove your exposure (for example, photos or receipts count for more than just a personal statement).

- **Extent of Exposure:** How long and how often you were exposed to Roundup Products.

- **Medical History:** Your score may be adjusted downward if you have certain other medical conditions.

- **Prior Lawsuit Status:** Whether you had a written agreement with Monsanto giving you specific rights beyond tolling, or had your deposition taken before February 13, 2026.

**Limited Proof Award:** You will receive a $150 award if you cannot prove that you met the minimum exposure time (at least 16 hours or 10 lifetime days total), but you can still prove you were exposed to Roundup Products.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

11

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

See Question 21 for additional factors that may increase or decrease your score.

| 19. | What types of compensation awards are available? |
|---|---|

There are two primary types of compensation awards:

**Program Awards** are the standard awards for most class members. Your award is based on your tier (determined by exposure type, age at diagnosis, and NHL type). Your actual award may range from 80% to 120% of the tier average, depending on your individual Claim Score (see Question 21). Claims are processed annually.

**Quick-Pay Awards** are expedited, fixed payments available only to Claimants in Tiers 5–9 (Residential Claimants or Claimants over age 78 at time of diagnosis) who filed a lawsuit or signed a tolling agreement before February 13, 2026 (see Question 17). Quick-Pay awards are processed on a first-in, first-out basis and will begin before the settlement is fully approved. If you accept a Quick-Pay Award, you cannot receive any other award from this settlement.

| Tier | Exposure Type | Age at Diagnosis | NHL Type* | Average Program Award** | Quick-Pay Award*** |
|---|---|---|---|---|---|
| 1 | Occupational | Under 60 | Aggressive | $165,000 | — |
| 2 | Occupational | 60–77 | Aggressive | $105,000 | — |
| 3 | Occupational | Under 60 | Indolent | $85,000 | — |
| 4 | Occupational | 60–77 | Indolent | $60,000 | — |
| 5 | Residential | Under 60 | Aggressive | $40,000 | $14,500 |
| 6 | Residential | 60–77 | Aggressive | $30,000 | $11,000 |
| 7 | Residential | Under 60 | Indolent | $25,000 | $10,500 |
| 8 | Residential | 60–77 | Indolent | $20,000 | $7,700 |
| 9 | Any | 78 or older | Any | $10,000 | $6,000 |

*Aggressive = fast-growing NHL; Indolent = slow-growing NHL. A list of NHL subtypes is available on the website.*
*\*\*Program Awards shown are tier averages. Actual awards range from 80% to 120% of the average based on Claim Score (not including any additional compensation for special circumstances of significant residential exposure).*
*\*\*\*Quick-Pay Awards are fixed amounts, not subject to scoring. Available only to qualifying Residential Claimants or Claimants over age 78 at the time of diagnosis.*

**Inflation Adjustment:** Starting with the fifth year of payments, award amounts may increase annually by up to 2.5% per year to account for inflation.

| 20. | Are there additional funds for special circumstances? |
|---|---|

If you apply for a Program Award, you may also be eligible for additional compensation if you meet specific criteria.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

12

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

- **Extraordinary Circumstances Fund ("ECF"):** For severe situations, such as death before age 78, organ transplant, or specific intensive treatments (like CAR-T therapy or Intrathecal Chemotherapy).

- **Extraordinary Residential Exposure Fund ("EREF"):** For Residential Claimants who had significant exposure (more than 80 hours) on large properties (totaling more than 6 acres).

**Exigency Awards:** If you face an immediate crisis, specifically, imminent loss of housing or a terminal illness where you may not survive to receive a standard Program Award, you may apply for this award. If you accept an Exigency Award, you cannot receive any other award from this settlement. These can be paid before the settlement is fully final. The value of your Exigency Award would be the same as the standard Program Award you would be eligible to receive.

| 21.  What factors could increase or decrease my Claims Score? |
|---|

**Factors That May Increase Your Score:**

- You were diagnosed with NHL at a younger age.

- You provide stronger proof of Roundup Product exposure (such as photos, receipts, or employment records).

- You had longer or more frequent exposure to Roundup Products.

- You underwent more intense or invasive treatment (such as chemotherapy, radiation, or transplants).

- You have Lugano or Ann Arbor Stage IV cancer.

- Your diagnosis was made more than 5 years after your first exposure and less than 15 years after your last exposure.

- You had a written agreement with Monsanto that gave you specific rights beyond tolling.

- Your deposition was taken in a Roundup lawsuit before February 13, 2026.

**Factors That May Decrease Your Score:**

- You were diagnosed with NHL at an older age.

- You provide weaker proof of Roundup Product exposure (no photos, receipts, or employment records).

- You had shorter or less frequent exposure to Roundup Products.

- You had an AIDS diagnosis, or a solid organ, stem cell, or bone marrow transplant before your NHL diagnosis.

- You have a prior diagnosis of any blood cancer or malignant blood disorder.

- For certain NHL subtypes: use of immunosuppressants, prior Hepatitis C or Epstein-Barr Virus infection.

- Your NHL diagnosis can reasonably be attributed to a cause other than Roundup Product exposure.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

13

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

### 22.  What happens if there are healthcare reimbursement claims?

If Medicare, Medicaid, TRICARE, or another insurer paid for your NHL treatment, it may ask to be repaid from your award. You must identify all government programs and insurers that paid for your NHL treatment. The Healthcare Compliance Administrator will work with these payors to determine the amounts owed. These amounts may be deducted from your award before you receive payment. Your payment may be delayed until these repayments are resolved.

| WHAT DOES THE HEALTHCARE COMPLIANCE ADMINISTRATOR DO? |
| --- |
| The Healthcare Compliance Administrator negotiates directly with government health programs to limit how much money they can take for repayment of back medical expenses. Their goal is to secure a "cap," a specific maximum dollar amount or percentage, that is less than your total award. |

### 23.  Can family members or representative claimants receive a compensation award?

Yes, but the rules are different for each group:

**Derivative Claimants (Family Members):** Certain family members (such as a spouse, parent, or child) who have a legal right to sue based on their relationship with the primary class member (the person with NHL).

- **Eligibility:** You are eligible for an award only if the primary class member receives an award and indicates on their claim form that they are submitting on your behalf.

- **Award Amount:** The award for a family member is 1% of the primary class member's award. This 1% is deducted from the primary award; it is not an additional payment. For example, if the primary claimant's award is $100,000, the family member receives $1,000, and the primary claimant receives $99,000.  The 1% payment will be split among all Derivative Claimants for a primary class member.

**Representative Claimants (Estates or Guardians):** If a class member is deceased, a minor, or legally incapacitated, a representative claimant (such as an estate executor, next of kin, or legal guardian) may act on their behalf.

- **Role:** The Representative Claimant stands in the shoes of the class member to submit the claim and receive the payment for the benefit of the class member or their estate.

- **Requirements:** You must confirm that you have the authority to act and sign an agreement promising to reimburse the fund if it is later determined that you did not have the authority to receive the payment.

### 24.  How long will the settlement last, and why does the 16th Annual Payment Date matter?

The settlement will run for 17 to 21 years. After two initial payments, Monsanto will make 16 yearly payments starting one year after the settlement becomes final. If money is still needed after year 16 for Occupational Claimants, Monsanto will be required to make up to four additional annual payments.

The 16th Annual Payment Date is a critical milestone because it generally marks the end of Monsanto's financial obligations, except for any additional payments (if necessary). At that point:

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

14

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

- If you are a class member who has not been diagnosed with NHL by the date of this payment, you get back the right to sue Monsanto for all damages if you are later diagnosed with NHL (see Question 5).

- Any remaining claims and exit awards are processed and paid.

- If you are a Residential Claimant or you were diagnosed with NHL at age 78 or older, and you have not been paid after the 16th Annual Settlement Payment has been used up, you can sue for your injuries and losses, but you still cannot sue for punitive damages.

- If money is left over and no extended payments are needed, the remaining funds are donated to a nonprofit that studies NHL prevention or treatment (see Question 25).

**25**.  **What happens to money left over at the end of the settlement?**

If any money remains in the settlement fund after the 16th Annual Payment Date and all claims have been paid, it will be donated to a nonprofit organization that studies the prevention or treatment of NHL. The Court will choose the organization after hearing from Monsanto and Class Counsel.

## HOW TO GET BENEFITS

**26.  How do I apply for a compensation award?**

You can register and submit claims online at www.WeedKillerClass.com or by calling 1-8XX-XXX-XXXX.

**If you were diagnosed with NHL before Month XX, 2026:**

- You must submit a registration form to the claims administrator within 180 days after the Court grants final approval of the settlement (earliest deadline is **Month XX, 2026**).

- You must *also* submit a Claim Package (including medical proof) no later than 180 days after the date the settlement becomes final.

**If you are diagnosed with NHL after Month XX, 2026:**

- You do not need to register.
- You must submit a Claim Package within six years of your diagnosis (and before the 16th Annual Payment Date). You may have more than six years to file a claim if you can prove your state's deadline to sue provides more time.  This is usually based on where you were exposed to Roundup Products or where you lived when you were diagnosed with NHL.  See Question 17 for details.

Registration for Subclass 1 will not begin until after the settlement is approved by the Court. Further notice will be provided on how to register for benefits.  In the meantime, please go to www.WeedKillerClass.com or call 1-800-000-0000 to sign up for notice of registration. Subclass 1 members must complete the registration within the time permitted (180 days from the date settlement is approved by the Court) if they wish to receive any of the benefits provided through this settlement.

*Note:* If an attorney represents you, they may submit these documents on your behalf, but you must sign the claim form and required authorizations or affidavits.

The exact calendar dates for these deadlines will be posted on the settlement website once the Court approves the settlement.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

### 27.  Can I appeal a decision to deny or limit the amount of my compensation award?

You can request reconsideration of a Program Award or an Adverse Eligibility Determination (denial of your claim). All other award types, including Quick-Pay, Exigency, ECF, and EREF Awards, are final.

If you believe that an error was made regarding your eligibility or the factual data used to calculate your tier or Claim Score, you must submit a reconsideration request within 45 days of receiving your award notice. After the request is reviewed, the decision is final.  If you remain in the settlement, you give up the right to appeal to any court.

If your claim was denied, you may still submit a new Claim Package in the future if your circumstances materially change (for example, if you obtain new medical records proving a diagnosis that was previously unsupported).

### 28.  Can I reject my Program Award?

Only Subclass 2 Claimants (NHL diagnosis after Month XX, 2026) can reject a Program Award.

If you are a Subclass 2 Claimant and are not satisfied with your Program Award, you must follow this process to reject it:

- **Request Reconsideration:** You cannot reject the award immediately. You must first request reconsideration of the award amount.

- **ECF Requirement:** To be eligible to reject the award, you must have submitted a claim for an Extraordinary Circumstances Fund (ECF) Award (either with your initial application or with your request for reconsideration).

- **Rejecting the Award:** If you are still dissatisfied with the result of your reconsideration request, you may elect to reject the Program Award (and ECF/EREF Awards, if applicable) by submitting an Award Rejection form.

- **Consequences:** If you reject the award, you become an Exiting Class Member (see Question 31).

    o   You will <u>not</u> receive compensation from the settlement.

    o   You get back the right to sue Monsanto in court for your injuries, but you <u>cannot</u> sue for punitive damages (see Question 5).

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 29.  How do I get out of the Settlement Class?

If you don't want benefits from this settlement, but you want to keep the right to sue Monsanto on your own about the legal issues in this case, you must take steps to exclude yourself from (or "Opt Out" of) the Settlement Class.

To exclude yourself, you must submit a written request by **Month XX, 2026**. You may mail it, email it, or submit it online through the settlement website.  Allow extra mailing time; USPS may not postmark on the date mailed.

**Your request MUST include all the following:**

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

16

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

- **Statement:** The following statement: *"I wish to exclude myself from the Settlement Class in the 22nd Judicial Circuit Court, City of St. Louis, Missouri"*.

- **Personal Info:** Your printed name, address, telephone number, email address (if any), and date of birth.

- **ID:** A copy of your government-issued identification (e.g., driver's license) or other proof of identity.

- **Tolling:** A statement indicating, to the best of your knowledge, whether you have entered into an agreement to toll (pause) the statute of limitations for your claims.

- **Lawsuits:** A statement indicating, to the best of your knowledge, whether you have filed a lawsuit against Monsanto.

- **Attorney:** The attorney's name and law firm representing you (if any).

- **Exposure Declaration:** A statement signed by you that you were exposed to Roundup Products. If you have been diagnosed with NHL, you must also state your diagnosis and the date of diagnosis; and

- **Signature:** Your Personal Signature with an actual, wet-ink signature and the date.

**Important:** You must sign the request yourself. Your attorney cannot sign for you, and an unsigned request is not valid.

**How to Submit:** Your exclusion request must be postmarked or electronically submitted no later than **Month XX, 2026**:

- **Online:** Upload a scan or photo of your signed request at www.WeedKillerClass.com.

- **Email:** Email a scan or photo of your signed request to info@WeedKillerClass.com.

- **Mail:** Mail your request to:

     Roundup Settlement
     P.O. Box XXXX
     City, ST XXXXX-XXXX

---

**30. Does the total amount Monsanto pays change if people opt out or reject their awards?**

Potentially. While the settlement is designed to pay up to $7.25 billion, Monsanto may reduce its yearly payments (receive payment credits) if a significant number of people exclude themselves from the settlement or reject their awards to pursue lawsuits.

**Reductions for Opt Outs:** If there are more than 650 qualifying Opt Outs, Monsanto receives a credit for every Opt Out who files a lawsuit.

- **Base Credit:** For each qualifying Opt Out lawsuit filed, the compensation fund is reduced by the average award amount for that person's tier in the Claims Program (see Question 19).

- **Litigation Multipliers:** If a qualifying Opt Out lawsuit progresses to active discovery, the payment credit increases by an additional two times the base credit. If it progresses to within 90 days of trial, the payment credit increases by an additional six times.

- **The Cap:** The *additional* credits granted for litigation multipliers (i.e., lawsuits that reach active discovery or near trial) are capped at $400 million in total.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

17

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**Reductions for Award Rejections:** If more than 500 Subclass 2 Claimants reject their awards (see Question 28), Monsanto receives credits if those individuals file lawsuits.

- **Amount:** The credit is 1.25 times the rejected award amount.

- **Trial Multiplier:** If the lawsuit progresses to within 90 days of trial, the credit increases to 3.75 times the rejected award amount.

### 31.  If I do not exclude myself, can I sue Monsanto for the same thing later?

If you stay in the Settlement Class, you give up your right to sue Monsanto for any claims related to Roundup Products and NHL. This includes claims for compensatory and punitive damages, as well as medical monitoring.

**However, you may be able to sue in two specific situations:**

- **If you become an Exiting Class Member:** You may receive $500 and get back the right to sue for your injuries and losses, but you still cannot sue for punitive damages. You can only exit the settlement if you meet one of the following:

    o  You submit a valid claim but do not receive an Award Payment within five years of your Claim Eligibility Date, and you request to exit.

    o  You are a Residential Claimant or were over age 78 at the time of your diagnosis, and you received a Claim Eligibility Date, but you have not received a payment before the funds run out.

    o  You are an Occupational Claimant who has not received a payment before the funds run out.

    o  You are a Subclass 2 Claimant who rejects your award after following the required procedures.

- **If you are never diagnosed with NHL during the settlement:** If you are not diagnosed with NHL by the end of the settlement, you get back your full legal rights to sue for all damages.

### 32. If I exclude myself, can I still get benefits?

No.  If you exclude yourself, you will not get any benefits from the settlement.

### 33. How do I cancel my exclusion request?

If you exclude yourself from the Settlement Class, you may ask to cancel (revoke) your exclusion request before the Court grants final approval. To do so, submit a written request online at www.WeedKillerClass.com, email it to info@WeedKillerClass.com, or mail it to:

Roundup Settlement
P.O. Box XXXX
City, ST XXXXX-XXXX

**VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB**

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**Your written request must include:**

- The following statement: "*I wish to revoke my request to be excluded from the Settlement Class in the 22nd Judicial Circuit Court, City of St. Louis, Missouri*".

- Your printed name, address, telephone number, and date of birth; and

- Your Personal Signature.

**Important:** Your request to cancel your exclusion will be effective only if Monsanto provides written consent (which it may grant or deny) or if the Court orders it.

## WHAT CLASS MEMBERS GIVE UP

### 34.  What claims do I give up in the settlement?

**If the Court approves this settlement and you do not opt out**, you will give up important legal rights to sue Monsanto Parties and Related Parties.

| WHO ARE THE MONSANTO PARTIES? |
|---|
| This includes Monsanto and Bayer AG, along with:<br><br>• **All related companies:** parent companies, subsidiaries, affiliates, and divisions—past, present, or future.<br><br>• **All people who work for or represent these companies:** such as officers, directors, employees, attorneys, and agents, but only when acting in their role for the company. |
| **WHO ARE THE RELATED PARTIES?** |
| This includes any company or person involved in manufacturing, distributing, selling, or marketing Roundup Products, as well as their suppliers, contractors, consultants, and business partners. You can still sue a manufacturer of Roundup Products if: (a) The manufacturer is independently responsible for your harm, AND (b) Monsanto has not agreed to cover that manufacturer's legal liability. |

**If you do not opt out:** You permanently give up the right to sue Monsanto or any Related Parties for anything connected to Roundup Products and your NHL. This includes:

- Compensatory damages (money for your injuries, medical bills, lost wages, pain and suffering)

- Punitive damages (money to punish Monsanto)

- Medical monitoring claims (medical screenings)

**If you do nothing:** If you are diagnosed with NHL but never submit a claim (or your claim is denied, and you don't qualify as an Exiting Class Member), you give up all your rights.  You will receive no payment.

**If you were diagnosed with NHL before 2020 but did NOT file a lawsuit or sign a tolling agreement before February 13, 2026:** You are part of the settlement and give up all rights to sue Monsanto or any related party for anything connected to Roundup Products and your NHL. You are not eligible for a

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

19

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

settlement payment unless you can prove that, under the applicable state's laws, you still have time to file a lawsuit (see Question 17).

**If you exit the program:** In some situations, you may participate in the Claims Program but later exit (see Question 31). If you exit:

- You keep the right to sue for compensatory damages, but
- You permanently give up the right to sue for punitive damages.

**If you are never diagnosed with NHL:** If you are not diagnosed with NHL by the 16th Annual Payment Date, you are automatically released from the settlement. You keep all your rights, including the right to sue for both compensatory and punitive damages if you are diagnosed in the future.

To learn more specific details about this Settlement and the claims you will release, please read the Settlement Agreement, available at www.WeedKillerClass.com.

| **35.  What if I have a pending lawsuit against Monsanto?** |
| --- |

You must pause your lawsuit within 30 days of the settlement becoming final. Before you can receive any payment, you must permanently drop your lawsuit. You cannot file any new lawsuits after the settlement becomes final.

## THE LAWYERS REPRESENTING YOU

| **36.  Do I have a lawyer in this case?** |
| --- |

Yes.  The Court has appointed lawyers to represent the Settlement Class and Subclasses as Class Counsel and Subclass Counsel.  You do not have to pay these attorneys.

| SUBCLASS 1 | |
| --- | --- |
| Christopher A. Seeger<br>Seeger Weiss LLP<br>55 Challenger Road, 6th Floor<br>Ridgefield Park, NJ 07660 | Joseph F. Rice<br>Motley Rice LLC<br>28 Bridgeside Boulevard<br>Mount Pleasant, SC 29465 |
| Peter A. Kraus<br>Waters Kraus Paul & Siegel<br>3141 Hood Street, Suite 700<br>Dallas, TX 75219 | John Eddie Williams Jr.<br>Williams Hart & Boundas LLP<br>8441 Gulf Freeway, Suite 600<br>Houston, TX 77017 |

| SUBCLASS 2 | |
| --- | --- |
| Eric D. Holland<br>Holland Law Firm<br>211 North Broadway, Suite 2625<br>St. Louis, MO 63102 | Michael S. Ketchmark Ketchmark & McCreight P.C.<br>11161 Overbrook Road, Suite 210<br>Leawood, KS 66211 |

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

20

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**37.  What if I have already hired an attorney or filed a lawsuit against Monsanto about exposure to Roundup Products?**

If you filed a lawsuit or entered into a tolling agreement regarding Roundup Products and NHL before February 13, 2026, you are an Initial Claimant.

**What this means for you:**

- **You are Included:** Specifically, as a Subclass 1 Claimant.
- **You Must Act:** To receive money, you must:
  o  Register within 180 days of when the Court grants final approval of the settlement. You can sign up at www.WeedKillerClass.com or by calling 1-800-000-0000 to receive additional notice about registration when it becomes available.
  o  Apply for a Program Award, or if you are in tiers 5–9 (you are a Residential Claimant or were 78 years or older when diagnosed) (see Question 19), you may apply for a Quick-Pay Award instead.  You must apply for a Program Award or Quick-Pay Award within 180 days of the date the settlement becomes final, and
  o  If you filed a lawsuit, you must agree to stay (pause) your lawsuit and eventually dismiss it.
- **If You Want to Keep Suing:** If you want to continue your individual lawsuit and *not* participate in the settlement, you **must** exclude yourself (Opt Out) by Month XX, 2026 (see Question 29). If you do not Opt Out, you will be bound by the settlement.

**Exception for MDL Plaintiffs:** If your pending claim is part of the federal Multi-District Litigation (*In re Roundup Products Liability Litigation*, MDL No. 2741) as of February 17, 2026, you are excluded from the class unless you request to be included and dismiss your pending claim.

**38.  How will the lawyers be paid?**

You do not need to pay Class Counsel directly. However, Class Counsel will be paid out of the settlement fund.

- **Source of Payment:** Class Counsel may apply to the Court for an award of attorneys' fees and costs and for service awards to the Class Representatives. These amounts will be paid from the settlement fund.  Class members can object to the request for attorneys' fees and service awards (see Question 39).
- **Approval Process:** The Court will decide the amounts of fees, costs, and service awards.  Class Counsel must file their application for fees by Month XX, 2026 [20 business days before objection deadline]. The motion for attorneys' fees will be posted at www.WeedKillerClass.com.

If you hire your own lawyer to represent you individually (outside of Class Counsel):

- **You Pay Them:** You are responsible for paying your own lawyer's fees.
- **Payment Method:** If you are represented by counsel, your Award Payment will be transferred electronically to your attorney's trust account.
- **Fee Cap:** If you are a "Later Claimant" (you are in Subclass 1 but you did not file a lawsuit or enter into a tolling agreement before February 13, 2026, or you are in Subclass 2), the Settlement

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

21

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Agreement specifies that any private counsel you hire may collect no more than 22% of your Award Payment in fees.

## OBJECTING TO THE SETTLEMENT

**39. How can I tell the Court if I do not like the settlement?**

As a class member, you have a right to object to or comment on any part of the proposed settlement.  The Court will consider your views when deciding to approve the settlement.  You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement.  If the Court does not approve the settlement, no settlement benefits will be paid, and the lawsuits may continue.  If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing.  To object, you must file your objection with the Court.  To be valid, your objection must include:

- **Detailed Reasons:** A detailed statement of your objections and the specific reasons for them, including any evidence or legal authority you want the Court to consider.

- **Personal Information:** Your printed name, address, and telephone number.

- **Proof of Class Membership:** Written evidence that you are a class member. This must include:

   o Proof of your exposure to Roundup Products (specifying if it was occupational or residential); and

   o If you are in Subclass 1, proof of your qualifying diagnosis and the date it was made.

- **Certification:** A statement certifying that you have read the objection and agree with it.

- **History of Objections:** A list of all prior class action objections you (or your lawyer) have made in any court. You must include the case name, case number, court, and date for each prior objection.

- **Supporting Documents:** Any other papers or briefs you want the Court to read.

- **Your Personal Signature:** The objection must contain your dated Personal Signature.

**Warning Regarding Signatures:** Your attorney cannot sign the objection on your behalf. Even if you have hired a lawyer to help you, the Settlement Agreement explicitly states that counsel "may not sign on behalf of that class member." It must be your own "wet ink" (not electronic) signature.

You must file your objection to the Court at the address below:

| COURT |
|---|
| [ADDRESS] |

Objections must be filed or postmarked on or before **Month XX, 2026**.

If you hired a lawyer to represent you and file your objection, your attorney must:

- Follow the steps to object to the settlement as listed above.

- File a notice of appearance with the Court by **Month XX, 2026**; and

- File a declaration stating every class member whom he/she is representing and filing an objection for or provide a copy of the contract between the attorney and each class member.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

22

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**40.  Can I both object to and exclude myself from the settlement?**

No.  If you exclude yourself, you will no longer be part of the settlement.  In order to object to the settlement, you must be a member of the Settlement Class.

## THE FAIRNESS HEARING

**41.  When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at **X x.m.** on **Month XX, 2026**, at the [ADDRESS OF COURT].

The hearing may be moved to a different date or time without additional notice, so check www.WeedKillerClass.com for updates.  At the Fairness Hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  The Court will also consider the request for attorneys' fees and reasonable costs by Class Counsel (see Question 38), either at this hearing or at a separate time. If there are objections or comments, the Court will consider them.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

**42.  Do I have to attend the hearing?**

No.  Class Counsel and Subclass Counsel will attend the hearing and answer the Court's questions.  If you sent or filed a timely objection, the Court will consider it even if you do not attend.  You may, however, attend the Fairness Hearing at your own expense or pay your own lawyer to attend.

**43.  May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must file a written notice of your intention to appear and mail it to the address listed in Question 39.  You cannot speak at the hearing if you exclude yourself from the class.

## GETTING MORE INFORMATION

**44.  Where can I get more information?**

This notice summarizes the proposed settlement.  More details are available in the Settlement Agreement on the website or by calling 1-8XX-XXX-XXXX.

You can get more information, including answers to questions about the settlement and important documents about the case, including a full copy of the Settlement Agreement, any motions for approval and attorneys' fees, and the Court's order approving the settlement, by visiting www.WeedKillerClass.com, emailing info@WeedKillerClass.com, calling 1-8XX-XXX-XXXX, or writing to Roundup Settlement, P.O. Box 0000, City, ST 00000-0000.

VISIT WWW.WEEDKILLERCLASS.COM
OR CALL TOLL-FREE, 1-8XX-XXX-XXXX FOR FREE HELP
PARA RECIBIR UNA NOTIFICACIÓN EN ESPAÑOL, LLAMA AL O VISITA NUESTRO SITIO WEB

23

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. F

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**<u>Settlement Class Short-Form Annual Notice</u>**

On an annual basis, following the entry of the Preliminary Approval Order and until the Sixteenth Annual Payment Date, the Settlement Class Notice Agent shall disseminate through media and other communication channels deemed appropriate and effective by the Settlement Class Notice Agent to reach Settlement Class Members, a short-form notice pertaining to the Settlement Agreement.

Such notice shall include, at minimum:
- the Eligibility Criteria for filing a Claim Package and receiving an Award;
- the potential Award amounts based on Exposure type;
- the deadline to file a Claim Package;
- the right available to members of Subclass 2 to become an Award Rejector and thereby exit the Settlement;
- the rights released by participation in the Settlement; and
- how to file a Claim Package or obtain additional information.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. G

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

|  |  |  |
|---|---|---|
| RANDALL KING, SCOTT BUTTERFIELD, ROBERT KOEHLER, MICHAEL MERX AND BRUCE WALDMAN, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. [●] |
| v. | ) ) ) | Div. [●] |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

Before the Court is a motion by Plaintiffs for an order preliminarily approving the Settlement Agreement.

WHEREAS, a proposed Settlement Agreement has been reached by and among defendant Monsanto Company ("Defendant"), by and through its attorneys, and the Class Representatives and Subclass Representatives, by and through Class Counsel and Subclass Counsel, individually and on behalf of a defined proposed Settlement Class and Subclasses;

WHEREAS, the Court, for the purposes of this Preliminary Approval Order, adopts all defined terms as set forth in the Settlement Agreement, which is attached as Exhibit 1 to the Preliminary Approval Motion, filed on February 17, 2026;

WHEREAS, this matter has come before the Court pursuant to the Preliminary Approval Motion;

-2-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

WHEREAS, the Defendant does not oppose the Court's entry of this Preliminary Approval Order;

WHEREAS, the Court has considered all of the presentations and submissions related to the Preliminary Approval Motion and, having presided over and managed the proceedings in hundreds of lawsuits alleging injuries caused by exposure to Defendant's glyphosate over the past decade, is familiar with the facts, contentions, claims, and defenses as they have developed in these proceedings, and is otherwise fully advised of all relevant facts in connection therewith;

**IT IS HEREBY ORDERED AS FOLLOWS:**

**I.    PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

1.    The Court finds that it has jurisdiction over the action and each of the Parties for purposes of settlement.

2.    The Court finds that the requirements of Missouri Rules 52.08(a), 52.08(b)(3), and 52.08(e) have been satisfied for purposes of preliminary approval of the Settlement Agreement, such that notice of the Settlement Agreement should be directed to Settlement Class Members and a Fairness Hearing should be set.

3.    The Settlement Agreement, including all Exhibits attached thereto, are preliminarily approved by the Court.

**II.    FINDINGS REGARDING THE SETTLEMENT CLASS AND SUBCLASSES**

**A.    *Preliminary Class Certification***

4.    Under Rule 52.08(e), in order to direct notice, the Court must find that it is likely to be able to certify the class for purposes of judgment on the proposed Settlement Agreement. To do so, the Court must find it likely that the Settlement Class and Subclasses meet the numerosity,

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

commonality, typicality, and adequacy requirements of Rule 52.08(a), the predominance and superiority requirements of Rule 52.08(b)(3), and are ascertainable.

5.    The Settlement Class consists of, only for purposes of the Settlement:  those U.S. Persons who, prior to the Settlement Date, have been Exposed to one or more Roundup Products and who:  (i) Applied any Roundup Products; (ii) purchased or paid for any Roundup Products or for the Application of any Roundup Products; (iii) participated in, directed, or saw the Application of any Roundup Products; or (iv) otherwise had reason to know of their Exposure.  The Settlement Class also includes Derivative Claimants of the foregoing individuals.  "Exposed" and "Exposure" mean contact with, inhalation of, ingestion of, or absorption of any Roundup Products in connection with the Application of any Roundup Product.  For the avoidance of doubt, Exposure to Roundup Products requires exposure to the product itself and not only to the outside of its packaging.  "Application" and "Applied" mean application, preparation, mixing, Handling or use, or any other steps associated with application, whether or not the Settlement Class Member performed the application, preparation, Handling, mixing, use, or other steps associated with application himself or herself.

6.    The following Persons are excluded from the Settlement Class:

    a.    judicial officers and associated court staff assigned to this Lawsuit, and their immediate family members;

    b.    past and present (as of the Settlement Date) officers, directors, and employees of the Defendant or any of its direct or indirect subsidiaries;

    c.    any Person who, prior to the Settlement Date, received consideration in exchange for a release of any Roundup Claims, or received a judgment on

-4-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

a Claim relating to a Roundup Product or a Roundup Claim, even if the judgment is on appeal;

d.　　any Person who, as of the Settlement Date, has a claim pending in *In re Roundup Products Liability Litigation*, MDL No. 2741 (N.D. Cal.), provided, however, that any Person within this Paragraph 6(d) who would otherwise be a Settlement Class Member will be included in the Settlement Class upon (1) request and (2) dismissal of their pending claim in such MDL;

e.　　any Person whose Roundup Claims have been dismissed with prejudice as of the Settlement Date, unless such dismissal is subject to appeal, in which case such Person shall be included in the Settlement Class;

f.　　any Person who would be a Settlement Class Member solely because they saw the Application of a Roundup Product but, by the Settlement Date, neither they nor any of their Representative Claimants had reason to suspect that the Roundup Product in question was an herbicide; and

g.　　all those Persons otherwise in the Settlement Class who timely and properly exclude themselves from the Settlement Class in the manner approved by the Court and set forth in the Settlement Class Notice.

7.　　The Settlement Class consists of two Subclasses.

a.　　"Subclass 1" means Settlement Class Members who have been diagnosed with NHL as of the Preliminary Approval Date, and their Derivative Claimants.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

b.    "Subclass 2" means Settlement Class Members who have not been diagnosed with NHL as of the Preliminary Approval Date, and their Derivative Claimants.

8.    The Parties have provided sufficient information—including in the Preliminary Approval Motion, and related submissions and presentations—to preliminarily evaluate the prerequisites of Rule 52.08(a) and Rule 52.08(b)(3).  The Court will likely be able to find that, for settlement purposes:  (a) the Settlement Class Members are so numerous that their joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class and Subclasses; (c) the claims of the Class Representatives and Subclass Representatives are typical of the Settlement Class Members and the respective members of the Subclasses; (d) the Class Representatives and Subclass Representatives and Class Counsel and Subclass Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members; (e) the questions of law or fact common to the Settlement Class and Subclasses predominate over any questions affecting only individual Settlement Class Members, and a class action is superior to other available methods for the fair and efficient resolution of the controversy; and (f) the Settlement Class and Subclasses are ascertainable.

9.    Based on the foregoing, the Court preliminarily certifies the Settlement Class and Subclasses for purposes of judgment on the proposed Settlement Agreement.  The Court finds that it will likely be able to certify the Settlement Class and Subclasses, under Rules 52.08(a) and 52.08(b)(3), for purposes of judgment on the proposed Settlement Agreement.

**B.**    ***Representatives and Counsel***

10.    The following Class Representatives are preliminarily appointed:  Randall King, Scott Butterfield, Robert Koehler, Michael Merx and Bruce Waldman.

11.     The following Subclass Representatives are preliminarily appointed for each of the Settlement Subclasses:

      a.     Subclass 1:  Randall King, Scott Butterfield and Bruce Waldman; and

      b.     Subclass 2:  Robert Koehler and Michael Merx.

12.     Christopher A. Seeger of Seeger Weiss LLP, Joseph F. Rice of Motley Rice LLC, Peter A. Kraus of Waters Kraus Paul & Siegel, John Eddie Williams Jr. of Williams Hart & Boundas, LLP, Eric D. Holland of the Holland Law Firm, and Michael S. Ketchmark of Ketchmark & McCreight, P.C. are preliminarily appointed as Class Counsel under Rule 52.08(g)(3).

13.     Christopher A. Seeger of Seeger Weiss LLP, Joseph F. Rice of Motley Rice LLC, Peter A. Kraus of Waters Kraus Paul & Siegel, and John Eddie Williams Jr. of Williams Hart & Boundas, LLP are preliminarily appointed as Subclass Counsel for Subclass 1, and Eric D. Holland of the Holland Law Firm and Michael S. Ketchmark of Ketchmark & McCreight, P.C. are preliminarily appointed as Subclass Counsel for Subclass 2 under Rule 52.08(g)(3).

## III.     FINDINGS REGARDING THE SETTLEMENT AGREEMENT

14.     Under Rule 52.08(e), in order to direct notice, the Court must find that it is likely to be able to approve the proposed Settlement Agreement as fair, reasonable, and adequate.  Rule 52.08(e)(2) sets forth factors that the Court must consider in reaching the determination that a settlement is fair, reasonable, and adequate including whether:  "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney fees, including timing of payment; and (iv) any agreement required to be

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

identified under Rule 52.08(e)(3); and (D) the proposal treats class members equitably relative to each other."

15. Missouri public policy strongly favors settlement, *see State ex rel. Byrd* v. *Chadwick*, 956 S.W.2d 369, 377 (Mo. App. W.D. 1997) (the "use of temporary settlement classes is beneficial and has salutary effects on the resolution of class action litigation"), *Woodson* v. *Bank of Am., N.A.*, 602 S.W.3d 316, 323 (Mo. App. E.D. 2020) ("Missouri public policy favors settlement."), especially "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation," *Cohn* v. *Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citation omitted).

16. The Court's review is focused on ensuring "that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall* v. *Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)). In considering a motion for preliminary approval, the Court puts emphasis on whether "the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Skinner* v. *Hunt Mil. Cmtys. Mgmt. LLC*, No. SA-22-CV-00799-JKP, 2023 WL 6532670, at *2 (W.D. Tex. Jan. 23, 2023) (citation omitted); *see also In re CenturyLink Sales Pracs. & Sec. Litig.*, No. CV 18-296 (MJD/KMM), 2021 WL 3080960, at *5 (D. Minn. July 21, 2021).

17. The Parties have provided sufficient information—including in the Preliminary Approval Motion, and related submissions and presentations—to allow the Court to preliminarily evaluate the Rule 52.08(e) factors here. Based on this showing, the Court finds that it will likely be able to conclude that the proposed Settlement Agreement is the product of intensive, thorough, serious, informed, and non-collusive negotiations overseen by experienced mediator Fouad Kurdi;

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

has no obvious deficiencies; does not improperly grant preferential treatment to the Class Representatives, Subclass Representatives, or segments of the Settlement Class; and is fair, reasonable, and adequate. Accordingly, the Court has taken the Rule 52.08(e)(2) factors and applicable precedent into account in finding that it will likely be able to approve the proposed Settlement Agreement as fair, reasonable, and adequate.

18. The Court finds that it will likely be able to approve, under Rule 52.08(e)(2), the proposed Settlement Agreement.

## IV.    NOTICE TO SETTLEMENT CLASS MEMBERS

19. Adequate notice requires the "best practicable" notice be provided, which must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petrol. Co.* v. *Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15 (1950)). The notice must also "describe the action and the plaintiffs' rights in it." *Id*.

20. The Settlement Class Notice set forth in Exhibit E to the Settlement Agreement plainly communicates the rights of Settlement Class Members under the proposed Settlement in language designed to be "understood by the average absentee class member." *State ex rel. Byrd*, 956 S.W.2d at 385 (citation omitted). The Settlement Class Notice Plan set forth in the Preliminary Approval Motion and the Declaration of Dr. Shannon Wheatman ("Wheatman Decl."), attached as Exhibit 5 to the Preliminary Approval Motion, was based on extensive demographic research and is tailored to Settlement Class Members. Wheatman Decl. ¶¶ 18–23, 30, 45–47. It includes direct individual notice to Settlement Class Members with tolled or filed Roundup Claims, customers of the Company, and members and employees of more than 240,000 organizations who may be potential Settlement Class Members. *Id.* ¶¶ 52–54. In addition, the Settlement Class Notice Plan

-9-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

includes an expansive multi-lingual publication campaign, *id.* ¶¶ 47, 59–114, and extensive third-party and on-the-ground outreach, *id.* ¶¶ 55–57, 116–25.

21.     Accordingly, under Rule 52.08(c)(2), the Court finds that the Settlement Class Notice and the Settlement Class Notice Plan:  (a) is the best notice that is practicable under the circumstances; (b) is reasonably calculated under the circumstances to apprise Settlement Class Members of (i) the nature of the action, (ii) the Settlement Class definition, (iii) the class claims, issues, and defenses, (iv) their right to enter an appearance through an attorney at the Fairness Hearing, (v) their right to Opt Out or object to any aspect of the Settlement Agreement, (vi) the time and manner for requesting an Opt Out, (vii) their right to revoke an Opt Out prior to entry of the Final Order and Judgment, (viii) the binding effect of the Settlement Agreement (including the Releases provided for therein) on Settlement Class Members, and (ix) the intention of Class Counsel to seek attorneys' fees and costs, and Class Representative and Subclass Representative service awards, as well as the opportunity to object to such fees, costs and awards; (c) constitutes due, adequate, and sufficient notice to all persons entitled to receive notice of the Settlement Agreement; and (d) satisfies the requirements of Rule 52.08, the Missouri Constitution, the United States Constitution (including the Due Process Clause), and other applicable laws and rules.

22.     Under Rule 52.08(e)(1), the Court shall direct notice if the Court finds it will likely be able to approve the proposed Settlement Agreement and certify the class for the purposes of judgment on the Settlement Agreement.  Accordingly, the Court approves the Settlement Class Notice and the Settlement Class Notice Plan, and hereby directs that the Settlement Class Notice be disseminated pursuant to the Settlement Class Notice Plan to the Settlement Class.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

23. The Settlement Class Notice shall be posted on the Settlement Website, within 10 days after entry of this Preliminary Approval Order, as set forth in Section 11.2 of the Settlement Agreement.

## V. OPT OUT PROCEDURES

24. The Opt Out procedure set forth in Section 12.2 of the Settlement Agreement and the instructions in the Settlement Class Notice regarding the procedures that must be followed to Opt Out of the Settlement Class are approved.

25. To Opt Out validly from the Settlement Class, a Settlement Class Member must submit an individual written request to Opt Out stating, "I wish to exclude myself from the Settlement Class in the 22nd Judicial Circuit Court, City of St. Louis, Missouri" (or substantially similar clear and unambiguous language), and containing the information and materials set forth in Section 12.2(b) of the Settlement Agreement to the Administrator, on or before the date 90 days following the commencement of the Settlement Class Notice Plan pursuant to Section 12.2(a) of the Settlement Agreement.

26. To be effective, the written request to Opt Out must contain:

    a. the Settlement Class Member's printed name;

    b. the Settlement Class Member's address;

    c. the Settlement Class Member's telephone number;

    d. the Settlement Class Member's email address, if any;

    e. the Settlement Class Member's date of birth;

    f. a copy of his or her identification issued by any Governmental Authority or other bona fide identification;

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

g.      the dated Personal Signature of the Settlement Class Member seeking to exclude himself or herself from the Settlement Class;

h.      a disclosure certifying to the best of their knowledge whether the Settlement Class Member has or has not entered into an agreement tolling the applicable statute of limitations to bring Roundup Lawsuits or Roundup Claims;

i.      a disclosure certifying to the best of their knowledge whether the Settlement Class Member has or has not filed a Roundup Lawsuit or Related-Party Lawsuit against any Monsanto Parties or Related Parties as of the date of the written Opt Out request;

j.      a disclosure certifying to the best of their knowledge whether the Settlement Class Member has or has not retained counsel in connection with a present or future Roundup Lawsuit or Roundup Claim and, if so, disclosing the name of the retained attorney and law firm; and

k.      a declaration with the Personal Signature of the Settlement Class Member attesting to Exposure to Roundup Products, and if the Settlement Class Member is a member of Subclass 1, attesting to a Qualifying Diagnosis and the date such diagnosis was made.

27.     The Settlement Class Member must:  (a) mail the signed written request to Opt Out to a physical address to be identified in the Settlement Class Notice; (b) email a complete and legible scanned copy or photograph of the signed written request to Opt Out to an email address to be identified in the Settlement Class Notice; or (c) submit a complete and legible scanned copy or photograph of the signed written request to Opt Out through the Settlement Website.  Opt Outs

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

submitted by any Settlement Class Member to incorrect locations shall not be Valid. Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of an individual Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member.

28.    No "mass," "class," "group," or otherwise combined Opt Out shall be valid, and no Settlement Class Member may submit an Opt Out on behalf of any other Settlement Class Member. Any Opt Out request simultaneously submitted on behalf of 2 or more Settlement Class Members shall be deemed invalid as to all such individuals. However, where there is both a Settlement Class Member or a Representative Claimant, and one or more Derivative Claimants, the Settlement Class Member's or the Representative Claimant's exercise or failure to exercise his or her Opt Out right shall be binding on the associated Derivative Claimant(s).

29.    A Valid Opt Out from the Settlement Class will become effective as of the later of 21 days of receipt by the Administrator or the resolution of any challenge to the validity of the request brought by Class Counsel or the Defendant, pursuant to Section 12.2(f) of the Settlement Agreement. In addition, pursuant to Section 12.2(f) of the Settlement Agreement, any such challenge must be made no later than 7 days following the close of the Opt Out Period, and must be resolved by the Administrator within 7 days of the receipt of the challenge.

30.    Any Settlement Class Member who does not submit a timely, written Valid Opt Out shall be bound by all proceedings, orders, and judgments in this action, even if such Settlement Class Member has previously initiated or subsequently initiates litigation against the Defendant.

31.    Within 7 days after the close of the Opt Out Period, pursuant to Section 12.2(g) of the Settlement Agreement, the Administrator shall provide Class Counsel and the Defendant with a complete list of all Opt Outs that the Administrator believes to be timely and Valid.

-13-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

32.     The Defendant shall have the right, in its individual discretion, to terminate and render null and void the Settlement Agreement, pursuant to the terms of Section 12.5 of the Settlement Agreement and confidential Exhibit I of the Settlement Agreement.  The Court finds that it is appropriate to keep Exhibit I confidential and under seal.  The Court finds that there is a compelling justification to maintain Exhibit I under seal because disclosure of the Exhibit would be prejudicial to Settlement Class Members.  *See* Mo. S. Ct. R. 55.0275 (effective July 1, 2026); *see also Burch* v. *Qwest Corp.*, No. 06-CV-3523-MJD/AJB, 2012 WL 12978329, at *1 (D. Minn. Jun. 6, 2012) ("[T]here is a compelling basis for sealing the termination provision of the Settlement Agreement, which 'has no legitimate bearing on a class member's decision to opt-out of the settlement, object, or file a claims form.' . . . Sealing this provision will encourage settlement.") (citation omitted); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger a blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 365–66, *aff'd sub nom. In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996).  To exercise its Termination Right, the Defendant must provide notice of its written election to terminate the Settlement Agreement to Class Counsel and the Court prior to the Fairness Hearing which shall take place on the date set forth in Paragraph 64 of this Preliminary Approval Order.

## VI.    OBJECTION PROCEDURES

33.     The procedure for objecting to the Settlement Agreement, as set forth in Section 13.1 of the Settlement Agreement, is approved.

34.     A Settlement Class Member who wishes to object to any aspect of the Settlement Agreement must file with the Court a written statement of the objections on or before the date 90

-14-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

days following the commencement of the Settlement Class Notice Plan as set forth in Section 13.1 of the Settlement Agreement.  The written statement of objections must include:

a.     a detailed statement of the Settlement Class Member's objections, as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Settlement Class Member wishes to bring to the Court's attention;

b.     the Settlement Class Member's printed name, address, telephone number, written evidence establishing that the objector is a Settlement Class Member, including proof setting forth the circumstances of the Settlement Class Member's Exposure to Roundup Products as set forth in Section 6.3(a)(vii) of the Settlement Agreement (including whether such Exposure was in an occupational or residential context) and, if the objector is a member of Subclass 1, proof of a Qualifying Diagnosis and the date such diagnosis was made, as set forth in Section 6.3(a)(vi) of the Settlement Agreement;

c.     any other supporting papers, materials, or briefs the Settlement Class Member wishes the Court to consider when reviewing the objection;

d.     a certification that the objector has read the objection and agrees with it;

e.     the Settlement Class Member and their counsel's full history of prior objections to class action certification and approval, including the case name, case number, identity of the court, and date of each such filing; and

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

f.      the dated Personal Signature of the Settlement Class Member making the objection, in addition to any filing requirements of the Court regarding signatures.

35.    All objections shall be filed on or before the date set forth in Paragraph 59 of this Preliminary Approval Order, or they will be deemed waived.  Objections submitted by any Settlement Class Member to incorrect locations shall not be valid.

36.    A Settlement Class Member may object on his or her own behalf or through an attorney hired at that Settlement Class Member's own expense, provided that the Settlement Class Member has not submitted a written request to Opt Out.  Attorneys asserting objections on behalf of Settlement Class Members must:  (a) file a notice of appearance with the Court by the date set forth in Paragraph 59 of this Preliminary Approval Order; (b) file a sworn declaration attesting to his or her representation of each Settlement Class Member on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such Settlement Class Member; and (c) comply with the procedures described in Section 13.1 of the Settlement Agreement.

37.    A Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court, by the date set forth in Paragraph 59 of this Preliminary Approval Order, a written notice of his or her intention to appear at the Fairness Hearing stating the matters the Settlement Class Member intends to present to the Court.  Filing a written statement of objections is a prerequisite to appearing at the Fairness Hearing, but this requirement may be excused for good cause shown.

38.    Class Counsel and/or the Defendant may seek reasonable discovery from any objectors.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

39.      On or before the date 30 days after the deadline to file an objection and the close of the Opt Out Period, Class Counsel and Counsel for the Defendant shall file any response to the objections, or any papers in support of final approval of the Settlement Agreement.

40.      Any Settlement Class Member who fails to comply with the provisions of Section 13.1 of the Settlement Agreement will waive and forfeit any and all rights he or she may have to object to the Settlement Agreement.  The assertion of an objection under Section 13.1 of the Settlement Agreement does not operate to Opt Out the Person asserting it, or otherwise exclude that Person, from the Settlement Class.  A Person within the Settlement Class can Opt Out of the Settlement Class and Settlement only by complying with the provisions of Article XII of the Settlement Agreement and Paragraphs 24–30 of this Preliminary Approval Order.

## VII.    FAIRNESS HEARING

41.      A Fairness Hearing shall take place on a date no sooner than 30 days following the deadline to file an objection and the close of the Opt Out Period, at which the Court will consider submissions regarding the proposed Settlement Agreement, including any objections and responses thereto, and whether:  (a) to approve thereafter the Settlement as fair, reasonable, and adequate, pursuant to Rule 52.08 of the Missouri Rules, (b) to certify the Settlement Class and Subclasses for settlement purposes only, and (c) to enter the Final Order and Judgment.  The Fairness Hearing shall be subject to adjournment by the Court without further notice, other than that which may be posted by the Court on the Court's website.

## VIII.   STAY ORDER

42.      All Roundup Lawsuits and Related-Party Lawsuits brought by Settlement Class Member Parties in any court of the State of Missouri are stayed, and all Settlement Class Member Parties are enjoined from prosecuting any such claims in the courts of the State of Missouri,

-17-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

pending the Court's consideration of and entry of a Final Order and Judgment in this matter.  The stay and prohibition set forth in this Paragraph 42 shall remain in effect until entry of the Final Order and Judgment.

43.     This stay order is entered pursuant to the Court's authority under Section 476.070 of the Revised Statutes of Missouri and under Rule 52.08(d) and the Court's Rule 52.08(e) findings set forth above, in aid of its jurisdiction over the Settlement and the settlement approval process under Rule 52.08(e).  *See also In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 752–53 (8th Cir. 2003); *Ressler* v. *Clay County,* 375 S.W.3d 132, 136–37 (Mo. App. W.D. 2012); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 203–04 (E.D. Pa. 2014); *Love* v. *First Crown Financial Corp.*, 662 S.W.2d 283, 286–87 (Mo. App. W.D. 1983).  The Court finds that it would be prejudicial to Settlement Class Members and to the settlement approval process for trials to take place, or for other significant litigation activity to take place, while the Court is considering this matter.  The Court further finds that the stay order would conserve judicial resources.  The Court also notes that the pendency of *Monsanto Co.* v. *Durnell*, 607 U.S. __ (2026) (No. 24-1068, 2025 Term) also counsels in favor of a stay of Roundup Claims in the State of Missouri, as numerous courts in other jurisdictions have concluded.  Paragraph 42 of this Preliminary Approval Order shall not apply to any Opt Outs beginning as of the date their Opt Out becomes effective which, pursuant to Paragraph 29, is the later of 21 days of receipt by the Administrator or the resolution of any challenge to the validity of the request brought by Class Counsel or the Defendant.

## IX.     OTHER PROVISIONS

44.     Judge Glenn A. Norton is preliminarily appointed to serve as the Settlement Special Master.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

45.     BrownGreer PLC is preliminarily appointed to serve as the Administrator.

46.     Matthew Garretson of Garretson, LLC is preliminarily appointed to serve as the Allocation Special Master.

47.     Wolf Global Compliance, LLC is preliminarily appointed to serve as the Healthcare Compliance Administrator.

48.     Signal Interactive Media, LLC is appointed to serve as the Settlement Class Notice Agent.

49.     No later than 10 business days after entry of this Preliminary Approval Order, the Defendant shall make the payment into the Settlement Fund of $500 million as set forth in Section 4.1(b) of the Settlement Agreement, of which $22 million may be used before the entry of the Final Order and Judgment for Administration Costs, including to effectuate the Settlement Class Notice Plan.

50.     No later than 20 business days before the deadline to file an objection, Class Counsel shall file a motion for attorneys' fees and costs, and Class Representative and Subclass Representative service awards, as set forth in Section 14.3 of the Settlement Agreement. Following Final Court Approval, the Court shall establish a process for counsel other than Class Counsel to submit applications, within 90 days, for a portion of the award of attorneys' fees, as set forth in Section 15.2 of the Settlement Agreement.

51.     The Defendant has the right to communicate orally and in writing with, and to respond to inquiries from, Settlement Class Member Parties on matters unrelated to the Settlement Agreement in connection with the Defendant's normal business.

52.     If the Settlement Agreement is terminated or is not consummated for any reason, the Court's findings with respect to preliminary certification of the Settlement Class and

-19-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Subclasses shall be void, and the Plaintiffs and the Defendant shall be deemed to have reserved all of their rights with respect to any and all class certification issues.

53.     Class Counsel, Counsel for the Defendant, the Settlement Special Master, the Administrator, the Allocation Special Master, the Healthcare Compliance Administrator, and the Settlement Class Notice Agent are authorized to take, without further Court approval, all actions under the Settlement Agreement that are permitted or required to be taken following entry of this Preliminary Approval Order and prior to entry of the Final Order and Judgment, including effectuation of the Settlement Class Notice Plan.

54.     Class Counsel and Counsel for the Defendant are authorized to use all reasonable procedures in connection with administration and obtaining approval of the Settlement Agreement that are not materially inconsistent with this Preliminary Approval Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of the Settlement Class Notice, or otherwise to the extent the Parties jointly agree such minor changes are reasonable and necessary.

55.     The Court shall maintain continuing jurisdiction over these proceedings for the benefit of the Settlement Class as defined in this Preliminary Approval Order.

## X.     SCHEDULE OF DATES

56.     On or before _____ (10 days after entry of this Preliminary Approval Order), the Settlement Class Notice shall be posted on the Settlement Website, so as to commence the Settlement Class Notice Plan.

57.     On or before _____ (10 business days after entry of this Preliminary Approval Order), the Defendant shall make the payment into the Settlement Fund set forth in Section 4.1(b) of the Settlement Agreement.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

58.     On or before _____ (20 business days before the date set forth in Paragraph 59 of this Preliminary Approval Order), Class Counsel shall file a motion for attorneys' fees and costs, and Class Representative and Subclass Representative service awards.

59.     On or before _____ (100 days after entry of this Preliminary Approval Order), objections to the Settlement Agreement and Notices of Intention to Appear at the Fairness Hearing shall be filed with the Court in this action.

60.     On or before _____ (100 days after entry of this Preliminary Approval Order), requests to Opt Out must be postmarked, emailed, or submitted through the Settlement Website.  This date is the close of the Opt Out Period.  All requests received after this date shall be deemed untimely and invalid.

61.     On or before _____ (107 days after entry of this Preliminary Approval Order), the Administrator shall provide Class Counsel and the Defendant with a complete list of all Opt Outs that the Administrator believes to be timely and Valid.

62.     On or before _____ (130 days after entry of this Preliminary Approval Order), Class Counsel and Counsel for the Defendant shall file any response to the objections, or any papers in support of final approval of the Settlement Agreement.

63.     Before _____ (the date set in Paragraph 64 of this Preliminary Approval Order), if choosing to exercise its Termination Right, the Defendant shall provide notice of its written election to terminate the Settlement Agreement to Class Counsel.

64.     The  Fairness  Hearing  shall  take  place  on  the  _____  **day  of** _____ **at ____ o'clock in the a.m./p.m** (no sooner than 130 days after entry of this Preliminary Approval Order).

-21-

65.    The deadlines set forth in Paragraphs 56–63 of this Preliminary Approval Order may be extended, and the Fairness Hearing may be adjourned, by Order of the Court, for good cause shown, without further notice to the Settlement Class Members, except that notice of any such extensions or adjournments shall be included on the Settlement Website.  Settlement Class Members should check the Settlement Website regularly for updates and further details regarding extensions of these deadlines.

**SO ORDERED** this _____ day of _____, _____.


_____

Circuit Judge

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# EXHIBIT 1. H

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | |
|---|---|
| RANDALL KING, SCOTT BUTTERFIELD, ROBERT KOEHLER, MICHAEL MERX AND BRUCE WALDMAN, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) No. [●] ) Div. [●] |
| v. | ) ) |
| MONSANTO COMPANY, | ) ) |
| Defendant. | ) ) ) |

## [PROPOSED] FINAL ORDER AND JUDGMENT

Before the Court is a motion by Plaintiffs for an order granting final approval of the Settlement Agreement and certification of the Settlement Class and Subclasses, pursuant to Missouri Rules 52.08(a), 52.08(b), and 52.08(e).

WHEREAS, on February 17, 2026, the original complaint in *Randall King, et al.* v. *Monsanto Company* was filed in the Court. On February 17, 2026, a Settlement Agreement was entered into by and among defendant Monsanto Company ("Defendant"), by and through its attorneys, and the Class Representatives and Subclass Representatives, individually and on behalf of the Settlement Class and Subclasses, by and through Class Counsel;

WHEREAS, the Court, for the purposes of this Final Order and Judgment, adopts all defined terms as set forth in the Settlement Agreement, which is attached as Exhibit 1 to the Preliminary Approval Motion, filed on February 17, 2026;

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

WHEREAS, on _____, the Court entered a Preliminary Approval Order that, among other things:  (i) preliminarily approved the Settlement Agreement; (ii) preliminarily certified the Settlement Class for settlement purposes; (iii) preliminarily appointed Class Counsel and Subclass Counsel; (iv) approved the Settlement Class Notice and Settlement Class Notice Plan and directed that the Settlement Class Notice be disseminated to Settlement Class Members according to the Settlement Class Notice Plan; (v) scheduled a Fairness Hearing for final approval of the Settlement Agreement; and (vi) stayed the filing and prosecution of all Roundup-related actions by Settlement Class Members in any court of the State of Missouri;

WHEREAS, on _____, the Court approved the Settlement Fund Escrow Agreement, appointed the Settlement Fund Escrow Agent and the administrator of the Settlement Fund, and established the Settlement Fund as a qualified settlement fund;

WHEREAS, in the Settlement Agreement, the Settlement Class is defined as follows:  those U.S. Persons who, prior to the Settlement Date, have been Exposed to one or more Roundup Products and who:  (i) Applied any Roundup Products; (ii) purchased or paid for any Roundup Products or for the Application of any Roundup Products; (iii) participated in, directed, or saw the Application of any Roundup Products; or (iv) otherwise had reason to know of their Exposure.  The Settlement Class also includes Derivative Claimants of the foregoing individuals. "Exposed" and "Exposure" mean contact with, inhalation of, ingestion of, or absorption of any Roundup Products in connection with the Application of any Roundup Product.  For the avoidance of doubt, Exposure to Roundup Products requires exposure to the product itself and not only to the outside of its packaging.  "Application" and "Applied" mean application, preparation, mixing, Handling or use, or any other steps associated with application, whether or not the Settlement Class

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Member performed the application, preparation, Handling, mixing, use, or other steps associated with application himself or herself;

WHEREAS, Section 2.1(b) of the Settlement Agreement identifies certain Persons that are excluded from the Settlement Class;

WHEREAS, in the Settlement Agreement, the Subclasses are defined as follows: (i) "Subclass 1" means Settlement Class Members who have been diagnosed with NHL as of the Preliminary Approval Date, and their Derivative Claimants; and (ii) "Subclass 2" means Settlement Class Members who have not been diagnosed with NHL as of the Preliminary Approval Date, and their Derivative Claimants;

WHEREAS, [●] Settlement Class Members have chosen to be excluded from the Settlement Class by timely filing written requests for exclusion.  The Opt Outs are listed at the end of this Final Order and Judgment in Exhibit [●];

WHEREAS, [●] Settlement Class Members filed objections to the Settlement Agreement under the process set by the Preliminary Approval Order, and those objections were responded to by Class Counsel;

WHEREAS, on _____, the Court held the Fairness Hearing to consider the objections raised and whether the Settlement Agreement was fair, reasonable, adequate, and in the best interests of the Settlement Class and Subclasses; and

WHEREAS, the Court, having heard arguments of counsel for the Parties and of the persons who appeared at the Fairness Hearing, having reviewed all materials submitted, having considered all of the files, records, and proceedings in the Lawsuit, and being otherwise fully advised;

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

**IT IS HEREBY ORDERED AS FOLLOWS:**

I.      **TERMS OF THE SETTLEMENT AGREEMENT**

1.      The Settlement Agreement requires Defendant to pay up to $7.25 billion into the Settlement Fund, to be paid across a term of between 17–21 (or more) years.  The Defendant has already paid $1 billion into the Settlement Fund and is required to pay an additional $5.25 billion into the Settlement Fund across 16 Annual Settlement Payments, subject to and in accordance with the terms of the Settlement Agreement.  Following the Sixteenth Annual Settlement Payment, under certain circumstances set forth in Section 4.2 of the Settlement Agreement, the Defendant is required to pay up to an additional $1 billion into the Settlement Fund over 4 years.  Further, the Defendant is required to fund the Security Fund with $1 billion in liquid assets.  If a Bankruptcy Event occurs and other requirements set forth in Section 4.6 of the Settlement Agreement are met, the Court will liquidate the Security Fund and distribute the resulting funds in a manner consistent with the purposes of the Settlement Agreement.

2.      Settlement Class Members who meet the Application Requirements and Eligibility Criteria specified under the terms of the Settlement Agreement, which include having been diagnosed with NHL, may submit a Claim Package and receive an Award.  Following review of the submitted Claim Package, each Eligible Claimant shall be assigned to one of 9 compensation Tiers based on:  (a) the nature of the Claimant's Exposure; (b) the Claimant's age at the time of their NHL diagnosis; and (c) whether the Claimant was diagnosed with an aggressive or indolent subtype of NHL.  The value of the Claimant's Award and the priority with which the Claimant is paid are determined by the Claimant's Tier, as well as other factors.  Claimants with extraordinary claims who submit specified documentation may also apply for additional compensation from the Extraordinary Circumstances Fund and the Extraordinary Residential Exposure Fund.

3.      Certain Claimants meeting the requirements specified in the Settlement Agreement may elect to submit a Quick-Pay Claim Package instead of a standard Claim Package.  While Quick-Pay Awards may be paid sooner than standard Awards, the value of the Quick-Pay Award for each eligible Tier is lower than the value of the standard Award for that same Tier.  A Claimant

-4-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

may not seek both a Quick-Pay Award and any other type of Award.  A Claimant is not required to seek a Quick-Pay Award, and any participation therein is entirely voluntary.

4.      All Settlement Class Members have been provided the ability to Opt Out of the Settlement Class.  Further, the Settlement Agreement provides Subclass 2 Settlement Class Members, the so-called "futures," with the ability to exercise a "back-end" exit right after being diagnosed with NHL.  Subclass 2 Settlement Class Members may apply for an Award, and then, if they so choose, reject the Award, exit the Settlement Class, and pursue compensatory damage claims in the tort system.  The Settlement Agreement also provides that any Settlement Class Member who has not received an Award Payment:  (i) within 5 years of their Claim Eligibility Date, (ii) for Residential Claimants and Claimants in Tier 9, following the exhaustion of the Sixteenth Annual Settlement Payment, or (iii) for Occupational Claimants, following the exhaustion of any additional funds paid under Section 4.2 of the Settlement Agreement, may exit the Settlement Class and pursue claims for compensatory damages in the tort system.

## II.     FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

5.      The Court finds that the requirements of Rules 52.08(a), 52.08(b)(3), and 52.08(e) have been satisfied for purposes of final approval of the Settlement Agreement.

6.      The Settlement Agreement, including all Exhibits attached thereto, are approved by the Court.

## III.    FINDINGS REGARDING THE SETTLEMENT CLASS AND SUBCLASSES

### A.     *Notice and Personal Jurisdiction*

7.      Notice in the form of the Settlement Class Notice was provided to Settlement Class Members pursuant to the Settlement Class Notice Plan approved in the Preliminary Approval Order.  Class Counsel worked together with the Settlement Class Notice Agent to fashion a Settlement Class Notice Plan that was tailored to the Settlement Class Members and included mailed written notice to Settlement Class Members with filed and tolled Roundup Claims, customers of the Company, and to members and employees of more than 240,000 organizations

-5-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

who may be potential Settlement Class Members. Declaration of Dr. Shannon Wheatman ("Wheatman Decl."), filed as Exhibit 5 to the Preliminary Approval Motion, ¶¶ 52, 54. It also included an extensive multi-lingual media campaign, including notice in English, Spanish, and Indigenous languages, which was tailor-made based on thorough demographic research. Wheatman Decl. ¶¶ 18–23, 30, 45–47. Further, the Settlement Class Notice Plan included extensive third-party and on-the-ground outreach. *Id.* ¶¶ 55–57, 116–125. Class Counsel have demonstrated that the Settlement Class Notice Plan was implemented as directed by the Preliminary Approval Order. In addition, Class Counsel caused to be established and maintained a public website that provided information about the proposed Settlement Agreement, including the Settlement Agreement, frequently asked questions, the Preliminary Approval Order, and relevant dates for objecting to the Settlement Agreement and submitting requests to Opt Out of the Settlement Class, and the date and place of the Fairness Hearing.

8.      Adequate notice requires the "best practicable" notice be provided, which must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petrol. Co.* v. *Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15 (1950)). The notice must also "describe the action and the plaintiffs' rights in it." *Id*. The Court finds that the Settlement Class Notice disseminated pursuant to the Settlement Class Notice Plan: (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated under the circumstances to apprise Settlement Class Members of (i) the nature of the action, (ii) the Settlement Class definition, (iii) the class claims, issues and defenses, (iv) their right to enter an appearance through an attorney at the Fairness Hearing, (v) their right to Opt Out or object to any aspect of the Settlement Agreement, (vi) the time and manner for requesting an Opt Out, (vii) their right to revoke an Opt Out prior to entry of this Final Order and Judgment, (viii) the binding effect of the Settlement Agreement (including the Releases provided

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

for therein) on Settlement Class Members, and (ix) the intention of Class Counsel to seek attorneys' fees and costs, and Class Representative and Subclass Representative service awards, as well as the opportunity to object to such fees, costs and awards; (d) constituted due, adequate, and sufficient notice to all persons entitled to receive notice of the Settlement Agreement; and (e) satisfied the requirements of Rule 52.08, the Missouri Constitution, the United States Constitution (including the Due Process Clause), and other applicable laws and rules.

9.      The Settlement Class consists only of Persons who had reason to be aware of their Exposure to Roundup Products and the Derivative Claimants of such Persons. Unlike the class at issue in *Amchem Products, Inc.* v. *Windsor*, for example, the Settlement Class is defined to exclude those who "may not even know of their exposure." 521 U.S. 591, 628 (1997). For instance, the Settlement Class includes individuals who personally purchased or applied a Roundup Product, but expressly excludes individuals who saw a Roundup Product being applied but had no reason to suspect that such product was an herbicide.

10.      In addition, the Settlement provides for supplemental notice on an annual basis. This annual notice will include a continuation of the paid and earned media as well on-ground outreach campaigns. Wheatman Decl. ¶¶ 126–40. Notably, it will also include significant outreach through medical providers. *Id.* ¶ 132. This annual notice further ensures that Settlement Class Members who are diagnosed with NHL after the Settlement Date have adequate and sufficient notice of their rights under the Settlement.

11.      This Court can bind adequately represented class members if notice and an opportunity to object or opt out have been given. This Court can exercise jurisdiction over absent class members if the class members: (a) had adequate notice, (b) had "an opportunity to be heard," (c) had an opportunity to opt out of the class, and (d) were adequately represented by named plaintiffs. *See Phillips Petrol. Co.*, 472 U.S. 811–14. *See also State ex rel. Byrd* v. *Chadwick*, 956 S.W.2d 369 (Mo. App. W.D. 1997) (assessing adequacy of notice under Missouri state law). The Court finds that the Settlement Class Notice given to the Settlement Class was adequate, as

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

discussed *supra* in Paragraphs 8–10, and complied with the requirements of *Phillips Petroleum Company* v. *Shutts* and of the courts of this State; that Settlement Class Members had an adequate opportunity to be heard; that Settlement Class Members had an adequate opportunity to opt out; and that absent Settlement Class Members were adequately represented as discussed *infra* in Paragraphs 17–18.

12.	Based on the foregoing, the Court has jurisdiction over this case, over all claims raised therein and all parties thereto, and over all Settlement Class Members, consistent with the Missouri Long-Arm Act, § 506.500, RSMo 2016, the Missouri Constitution, and the United States Constitution.	All Settlement Class Members who did not Opt Out of the Settlement Class prior to the _____ deadline are subject to this Court's personal jurisdiction.

**B.**	*Class Certification for Settlement Purposes*

13.	To certify a class for settlement purposes, Rules 52.08(a) and 52.08(b)(3) require that:	(a) the Settlement Class Members are so numerous that their joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class and Subclasses; (c) the claims of the Class Representatives and Subclass Representatives are typical of the Settlement Class Members and the respective members of the Subclasses; (d) the Class Representatives and Subclass Representatives and Class Counsel and Subclass Counsel have fairly and adequately represented and protected the interests of all Settlement Class Members; (e) the questions of law or fact common to the Settlement Class and Subclasses predominate over any questions affecting only individual Settlement Class Members, and the class action is superior to other available methods for the fair and efficient resolution of the controversy; and (f) the Settlement Class and Subclasses are ascertainable.

14.	**Numerosity**.	Numerosity "does not require that joinder of all the members of a class be impossible, only that it be impracticable." *Dale* v. *DaimlerChrysler Corp.*, 204 S.W.3d 151, 167 (Mo. App. W.D. 2006).	The Settlement Class consists of many tens of thousands of individuals.	"[C]ommon sense," *id.* (citation omitted), dictates that numerosity is satisfied.	*See*

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

*also, e.g.*, *Doyle* v. *Fluor Corp.*, 199 S.W.3d 784, 792 (Mo. App. E.D. 2006) (400 class members or even fewer satisfies numerosity).

15.    **Commonality**.  A common question means that "the same evidence will suffice for each [class] member to make a prima facie showing as to a given question." *Karen S. Little, L.L.C.* v. *Drury Inns, Inc.*, 306 S.W.3d 577, 581 (Mo. App. E.D. 2010) (citation omitted).  "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." *Meyer ex rel. Coplin* v. *Fluor Corp.*, 220 S.W.3d 712, 716 (Mo. 2007) (citation omitted).  Here, Plaintiffs allege a common fact of exposure to a single chemical, glyphosate, manufactured by a single company, Monsanto, and such exposure and whether it caused NHL are the common and overriding issues within the class.  Commonality is satisfied.

16.    **Typicality**.  "Typicality means that the class members share the same interest and suffer the same injury" as the class representatives.  *Hale* v. *Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 223 (Mo. App. W.D. 2007).  Typicality is satisfied where all claims "arise[] from the same event or course of conduct of the defendant," even if there are "individual variances in the underlying" claims.  *Elsea* v. *U.S. Eng'g Co.*, 463 S.W.3d 409, 420 (Mo. App. W.D. 2015) (quoting *Dale*, 204 S.W.3d at 169).  This requirement "tends to merge with the commonality requirements." *Id.*  Here, Plaintiffs' claims arise from the same course of conduct by the same defendant:  Defendant's manufacture and sale of glyphosate to which Plaintiffs were Exposed. The Settlement Class also concerns a single type of disease, Non-Hodgkin Lymphoma.  The claims of the Class Representatives and Subclass Representatives are typical of the Settlement Class Members they represent.

17.    **Adequacy**.  "Due process requires that absent class members be fairly and adequately represented" by class representatives and class counsel. *Id.* (quoting *Dale*, 204 S.W.3d at 172).  Moreover, where a class settlement includes "anticipated future claimants," who have been Exposed but not yet diagnosed, adequate representation requires the further "structural

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

assurance" of "discrete subclasses." *Amchem*, 521 U.S. at 601, 626–27. *See also* Mo. S. Ct. R. 52.08(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this Rule 52.08."). Here, the parties have employed subclasses for "current" and "future" Claimants from the outset of the settlement process, with separate class representatives for each subclass. The Subclass Representatives' interests adequately reflect the interests of absent subclass members. Each of Class Counsel is highly competent, with significant experience in litigating and resolving mass-tort class actions, Roundup Claims, or both. Negotiations have been extensive and at arm's length, with the negotiation of the Settlement Agreement taking more than 18 months and being overseen by a nationally recognized mediator, Fouad Kurdi, Declaration of Fouad Kurdi, filed as Exhibit 4 to the Preliminary Approval Motion, ("Kurdi Decl.") ¶¶ 3, 7–8, with the involvement of Judge Norton, a former Chief Judge of the Missouri Court of Appeals, Declaration of Eric Holland, filed as Exhibit 2 to the Preliminary Approval Motion, ("Holland Decl.") ¶¶ 30, 75. The subclass structure and appointment of counsel for each of the Subclasses ensures adequate representation of both Settlement Class Members who currently have an NHL diagnosis and those who may receive an NHL diagnosis in the future. *See Amchem*, 521 at 625–27 (1997).

18.     In addition, even if there were a concern that future Claimants "may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out," *id.* at 628, the Settlement Agreement provides further protections for future Claimants by providing them a right to choose to become an Exiting Class Member, in other words, to "opt out at the back end," *id.* at 627, after they are diagnosed with NHL and after they know what their Award under the Settlement would be. Such Exiting Class Members will retain their right to bring claims for compensatory damages. Based on the foregoing, the Court finds that Class Representatives and Class Counsel have fairly and adequately represented absent Settlement Class Members.

19.     **Predominance**. Predominance requires that individual issues are outweighed in the balance by the common ones. *State ex rel. McKeage* v. *Cordonnier*, 357 S.W.3d 597, 600

-10-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

(Mo. 2012). This ensures a class is "sufficiently cohesive" to permit settlement on a class basis. *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 207 (E.D. Pa. 2014) ("*NFL*") (quoting *Amchem*, 521 U.S. at 623). Rule 52.08(b)(3) instructs in connection with the predominance inquiry the Court to consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." As the United States Supreme Court explained, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620 (citation omitted). In other words, the considerations of Rule 52.08(b)(3)(D) do not apply here. In addition, in the settlement context, variations in state tort law applicable to the claims of Settlement Class Members do not undermine cohesion. *See, e.g.*, *In re Diet Drugs*, 2000 WL 1222042, *43 (E.D. Pa. Aug. 28, 2000).

20.    Similarly, "individual issues relating to causation, injury and damage also disappear" where the class settlement provides for an "objective scheme of compensation" based on "objective criteria" and gives each class member a choice whether to take the compensation with sufficient notice of what that compensation is. *Id.* Here, the Settlement sets specific, quantified ranges of recovery based on objective factors: whether the Settlement Class Member's Exposure was occupational or residential, the Settlement Class Member's age at diagnosis, and the subtype of NHL with which they were diagnosed. The Settlement Class Notice informed Settlement Class Members of the minimum and maximum compensation available to each Tier. For members of Subclass 1, the Settlement Class Notice explained that the Settlement gave them the right to Opt Out or to remain in the Settlement Class to apply for an Award. For members of Subclass 2, the Settlement Class Notice explained that the Settlement gave them the right to Opt Out or to remain in the Settlement Class during the initial Opt Out period, and that the Settlement gives them the right, if and when they are diagnosed with NHL, to apply for and receive an Award,

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

if eligible, or to reject that Award, exit the Settlement, and pursue compensatory damage claims in the tort system. Accordingly, the Court finds that common issues outweigh individual issues, and predominance is satisfied.

21. **Superiority**. Superiority requires that a class action is "superior to other available methods for the fair and efficient adjudication of the particular controversy in question." *Dale*, 204 S.W.3d at 181. Rule 52.08(b)(3) instructs in connection with this inquiry the Court to consider the same factors as those considered in an analysis of predominance. Here, there are over 30,000 cases filed in the Missouri courts alone, and tens of thousands of individuals with Roundup Claims pending in courts around the country or subject to tolling agreements. Holland Decl. ¶ 44. Given this enormous volume of claims, it is simply impossible for the vast majority of claimants to obtain a trial date in the foreseeable future. The Court finds that it is in the interests of Settlement Class Members, and in the interest of judicial economy, to resolve these claims and afford Settlement Class Members the opportunity for compensation. The Court further finds that a class action settlement is superior to other methods of fair and efficient adjudication.

22. **Ascertainability**. Ascertainability is an implied requirement of class certification. *Craft* v. *Philip Morris Cos*, 190 S.W.3d 368, 387 (Mo. App. E.D. 2005). The class must be "capable of legal definition," *id.*, and it must be "administratively feasible to determine whether a given individual is a member of the class," *id.* (quoting *In re Tetracycline Cases*, 107 F.R.D. 719, 728 (W.D. Mo. 1985)). Here, class and subclass membership is defined based on objective criteria, principally, whether an individual has been Exposed to Roundup Products and whether they have been diagnosed with NHL. Thus, it is "administratively feasible" to determine if an individual is a class member and the Settlement Class and Subclasses are ascertainable.

23. Based on the foregoing, the Court finds that the requirements of Rules 52.08(a) and 52.08(b)(3) are met. This Final Order and Judgment certifies the Settlement Class and Subclasses under Rule 52.08 for settlement purposes only.

C.    *Representatives and Counsel*

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

24.    The Court confirms the appointment of Randall King, Scott Butterfield, Robert Koehler, Michael Merx and Bruce Waldman as Class Representatives, as well as Randall King, Scott Butterfield and Bruce Waldman as Subclass 1 Representatives, and Robert Koehler and Michael Merx as Subclass 2 Representatives, all of whom were preliminarily appointed in the Preliminary Approval Order.

25.    Pursuant to Rule 52.08(g), the Court confirms the appointments of Christopher A. Seeger of Seeger Weiss LLP, Joseph F. Rice of Motley Rice LLC, Peter A. Kraus of Waters Kraus Paul & Siegel, and John Eddie Williams Jr. of Williams Hart & Boundas, LLP as Subclass Counsel for Subclass 1, and Eric D. Holland of the Holland Law Firm, and Michael S. Ketchmark of Ketchmark & McCreight, P.C. as Subclass Counsel for Subclass 2, all of whom were preliminarily appointed in the Preliminary Approval Order.

## IV.    FINDINGS REGARDING THE SETTLEMENT AGREEMENT

26.    If a proposed settlement class satisfies Rules 52.08(a) and (b), the Court must determine whether the settlement itself is fair, reasonable, and adequate. *See* Rule 52.08(e)(2). Rule 52.08(e)(2) sets forth factors that the Court must consider in reaching a determination that a settlement is "fair, reasonable, and adequate," including whether:  "(A) the class representatives and class counsel have adequately represented the class;  (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney fees, including timing of payment; and (iv) any agreement required to be identified under Rule 52.08(e)(3); and (D) the proposal treats class members equitably relative to each other."  All factors are satisfied here.

27.    **Adequacy of representation**.  As discussed *supra* in Paragraphs 17–18, Class Counsel and Class Representatives have adequately represented the Settlement Class, and Subclass Counsel and Subclass Representatives have adequately represented their respective Subclasses.

-13-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

28.    **Negotiation**.  The Settlement Agreement was negotiated at arm's length under the supervision of an experienced mediator, Fouad Kurdi, with the involvement of Judge Norton. Kurdi Decl. ¶ 3, 7–8; Holland Decl. ¶ 30.  The Settlement was reached after the parties engaged in serious, non-collusive negotiations over a period of more than 18 months, with multiple in-person negotiating sessions.  Kurdi Decl. ¶ 8.

29.    **Adequacy of relief**.  The relief provided to the Settlement Class is adequate.  The Settlement provides for up to $7.25 billion in compensation to Settlement Class Members, distributed over a period of 17–21 (or more) years.  Defendant has already paid $1 billion into the Settlement Fund, a portion of which is available immediately upon entry of this Final Order and Judgement to pay Quick-Pay Awards and Exigency Awards.  The Settlement provides for an additional $5.25 billion in funding over the course of 16 years, which ensures, in particular, that money will remain available to pay Awards for Settlement Class Members who are diagnosed with NHL during this extended period.  In addition, the Settlement provides up to an additional $1 billion in funding over 4 years for Awards to Remaining Occupational Claimants following the Sixteenth Annual Payment Date, and establishes a $1 billion Security Fund.  By contrast, in the absence of a settlement, the Settlement Class Members would face a near certainty of substantial delay before they could obtain any compensation, if ever.  In the last 10 years, only 31 plaintiffs asserting Roundup Claims have tried a case to verdict against Defendant, and only a handful more have otherwise reached trial.  Holland Decl. ¶ 56.  By contrast, in Missouri alone, there are over 30,000 cases pending that assert Roundup Claims against the Defendant.  *Id.* ¶ 56.  Absent settlement, only a small fraction of plaintiffs would ever receive a trial date, and should litigation continue, the Defendant may enter into a bankruptcy proceeding, delaying claims with no payment for an indeterminate number of years, if ever.

30.    Furthermore, the United States Supreme Court has granted Monsanto's petition for certiorari in *Durnell* v. *Monsanto Company*. 707 S.W.3d 828 (Mo. App. E.D. 2025), *cert. granted sub nom.*, *Monsanto Co.* v. *Durnell*, 607 U.S. (2026) (No. 24-1068, 2025 Term).  If the U.S.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

Supreme Court rules as the Solicitor General advises, it would bar plaintiffs' principal legal theory, state law failure-to-warn claims. *See* Brief of United States as Amicus Curiae, *Monsanto Co.* v. *Durnell*, No. 24-1068. While plaintiffs may or may not find other viable legal theories, such a substantial legal risk makes the relief provided by the Settlement all the more adequate.

31.     Moreover, the Court has reviewed *in camera* the terms of two settlements to resolve certain large inventories of Roundup Claims, which were entered into by the Defendant with the knowledge of Class Counsel while the Settlement Agreement was being negotiated. Both of these settlements support the adequacy of the relief provided to the Settlement Class. One such settlement was dated June 13, 2025, and the other was dated February 17, 2026 (none of the plaintiff firms involved being Class Counsel). The Court has reviewed the settlement amounts, the number of claimants, the per-claim average, the claims administration criteria, and all other terms of those agreements. Based on this review, the Court finds that the terms of each of the two settlements are not more favorable to claimants economically or otherwise than the terms of the Settlement Agreement approved herein, and that the two settlements redounded to the benefit of the Settlement Class.

32.     Further, the proposed method for distributing relief to the Settlement Class is effective, and comparable to other large mass tort settlements. The Settlement provides for orderly claims processing; prompt notice following the determination of an Award informing Settlement Class Members of the amount of their Award and their right to request reconsideration; and prompt payment in satisfaction of an Award.

33.     In addition, Section 15.8 of the Settlement Agreement provides that any order or proceeding solely relating to attorneys' fees shall not terminate or otherwise affect or delay the finality of this Final Order and Judgment. This term counsels in favor of the Settlement.

34.     **Equitable treatment**. The Settlement Agreement treats Settlement Class Members equitably relative to each other. Settlement Class Members are compensated according to an objective tiering system, with any compensation from the Extraordinary Circumstances Fund or

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

the Extraordinary Residential Exposure Fund awarded according to standard and objective criteria. The Settlement Agreement ensures members of Subclass 2 are treated equitably to members of Subclass 1 through a long-term funding provision, requiring the Defendant to make payments for 17–21 years, which benefits future Claimants by preserving funds for future Claimants during the long funding period. *See In re Diet Drugs*, 2000 WL 1222042, at \*49 (describing settlement mechanism that "protects against fund depletion" as protection for future claimants). In addition, an inflation adjustment to claim values ensures compensation is equitable for future Claimants. Further, the minor timing preferences provided for Claimants who have already filed or tolled Roundup Claims as of February 13, 2026 are equitable considering that such Claimants have already been waiting for compensation, in some cases for many years, and unduly delaying payment to such Claimants would be inequitable.

35.  Based on the foregoing, pursuant to, and in accordance with, Rule 52.08 of the Missouri Rules, the Court hereby fully and finally approves the Settlement Agreement in its entirety and finds that the Settlement Agreement is fair, reasonable, and adequate, including with respect to each subclass. The Court also finds that the Settlement Agreement is in the best interests of the Class Representatives and Subclass Representatives and all Settlement Class Members, including the members of the Subclasses, and is consistent and in compliance with all applicable laws and rules.

## V.    OBJECTIONS

36.  All objections to the Settlement Agreement raised have been fully considered by this Court, and are fully and finally decided to be without merit and are overruled.

37.  The Parties are ordered to implement, perform, and consummate each of the obligations set forth in the Settlement Agreement in accordance with its terms.

## VI.    STAY ORDER AND RELEASES

38.  Until the Effective Date, all Roundup Lawsuits and Related-Party Lawsuits brought by Settlement Class Member Parties in any court of the State of Missouri are and shall remain

-16-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

stayed, and all Settlement Class Member Parties are enjoined from prosecuting any such Roundup Claims in the courts of the State of Missouri.  In addition, as set forth in Section 3.1(c) of the Settlement Agreement, all Settlement Class Member Parties shall stay (or continue to stay) all Roundup Lawsuits and Related-Party Lawsuits in any forum or jurisdiction within 30 days of entry of this Final Order and Judgment.  No Settlement Class Member Party may file or prosecute any Roundup Claims, including but not limited to Roundup Lawsuits and Related-Party Lawsuits, against any of the Monsanto Parties or the Related Parties.  The stay and prohibition set forth in this Paragraph 38 supercede the stay and prohibition set forth in the Preliminary Approval Order, and shall remain in effect until the Effective Date, upon which date the Releases of the Settlement Agreement shall go into effect.  This Final Order and Judgement is entered pursuant to the Court's authority under Section 476.070 of the Revised Statutes of Missouri and under Rule 52.08(d) and the Court's Rule 52.08(e) findings set forth above, in aid of its jurisdiction over the members of the Settlement Class and the settlement approval process under Rule 52.08(e).  *See also In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 752–53 (8th Cir. 2003); *Ressler* v. *Clay County,* 375 S.W.3d 132, 136–37 (Mo. App. W.D. 2012); *In re NFL*, 301 F.R.D. at 203–04; *Love* v. *First Crown Financial Corp.*, 662 S.W.2d 283, 286–87 (Mo. App. W.D. 1983).

39.     As set forth in Article III of the Settlement Agreement, upon the Effective Date, the Settlement Class Member Parties waive and release, forever discharge, and hold harmless the Monsanto Parties and the Related Parties of and from any and all Released Claims.  In accordance with Section 3.1(c) of the Settlement Agreement, all Settlement Class Member Parties shall stay (or continue to stay) all Roundup Lawsuits and Related-Party Lawsuits, until such time as Settlement Class Member Parties receiving an Award are required under the Settlement Agreement to dismiss such Claims with prejudice.  The entry of this Final Order and Judgment and approval of the Settlement Agreement is deemed to be *res judicata* as to the Settlement Class Member Parties, who are hereby permanently barred and enjoined from commencing, filing, initiating, instituting, prosecuting, and/or maintaining any judicial, arbitral, or regulatory action with respect

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

to any and all Released Claims or any Claims challenging the validity of the Releases in any forum or jurisdiction in the State of Missouri, as well as in any other forum or jurisdiction to the fullest extent permissible under applicable law.

40.     The Settlement is a good-faith settlement that bars any Claim by any Related Parties against any Monsanto Party for contribution, indemnification, or otherwise seeking to recover all or a portion of any amounts paid by or awarded against Related Parties to any Settlement Class Members by way of settlement, judgment, or otherwise (a Claim-Over) on any Roundup Claim, to the extent that a good-faith settlement (or release thereunder) has such an effect under, without limitation, Section 537.060, RSMo, and similar laws in other states or jurisdictions.

41.     Exiting Class Members shall be bound by the Releases and Covenant Not to Sue set forth in Article III of the Settlement Agreement only with respect to any and all Roundup Claims for Punitive Damages.  The Settlement Agreement shall remain a complete bar to any claim for Punitive Damages related to any Roundup Claim asserted at any time by an Exiting Class Member.

42.     Any time already elapsed as to any Settlement Class Member Parties on any applicable statutes of limitations will not be reset, and no expired Claims will be revived, by virtue of the Settlement Agreement or this Final Order and Judgment.

## VII.    OTHER PROVISIONS

43.     The Complaint is hereby dismissed with prejudice, without further costs, including Claims for interest, penalties, costs, and attorneys' fees.

44.     The Court further finds that the Parties have evidenced full compliance with the Preliminary Approval Order.  To the extent consistent with this Final Order and Judgment, the Preliminary Approval Order remains in effect.

45.     _____ is appointed as the Security Fund Escrow Agent.  The Court has reviewed and approves the escrow agreement to establish the Security Fund.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

46.     The Court confirms the appointment of BrownGreer PLC as the Administrator and administrator of the Settlement Fund escrow account, Matthew Garretson of Garretson, LLC as the Allocation Special Master, Judge Glenn A. Norton as the Settlement Special Master, Wolf Global Compliance, LLC as Healthcare Compliance Administrator, Signal Interactive Media, LLC as the Settlement Class Notice Agent, and JPMorgan Chase Bank, N.A. as the Settlement Fund Escrow Agent, and confirms that the Court retains continuing jurisdiction over those appointed.

47.     The Court retains continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members and Settlement Class Member Parties, the Administrator, the Allocation Special Master, the Settlement Special Master, the Healthcare Compliance Administrator, the Settlement Class Notice Agent, the Settlement Fund Escrow Agent, the Security Fund Escrow Agent, and the Settlement Agreement, to interpret, implement, administer, and enforce the Settlement Agreement and this Final Order and Judgment.  In addition, the Parties and the Settlement Class Member Parties are hereby deemed to have submitted to the exclusive jurisdiction of the Court for any suit, action, proceeding, or dispute arising from, resulting from, in any way relating to or in connection with the Settlement Agreement.  The Court also retains continuing jurisdiction over the "qualified settlement fund," as defined under Section 1.468B-1 of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, created under the Settlement Agreement.  The Court retains continuing jurisdiction over any requests for attorneys' fees and reimbursement of costs.

48.     The Court will establish a process for counsel other than Class Counsel to submit applications within 90 days for a portion of the award of attorneys' fees, as set forth in Section 15.2 of the Settlement Agreement.

49.     This Final Order and Judgment incorporates and makes a part hereof the Settlement Agreement (which includes the Exhibits) filed with the Court on February 17, 2026, including definitions of the terms used therein and subsequent amendments and any exhibits to such amendments filed with the Court.  This Final Order and Judgment shall serve as an enforceable

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

50.     Notwithstanding anything to the contrary in this Final Order and Judgment, this Final Order and Judgment and the Settlement Agreement shall not effect a release of any rights or obligations that any insurer has under or in relation to any contract or policy of insurance to any named insured, insured, additional insured, or other insured Person thereunder.

51.     This Final Order and Judgment, the Settlement Agreement, and the documents relating thereto, and any actions taken by the Defendant in the negotiation, execution, or satisfaction of the Settlement Agreement:  (a) do not and shall not, in any event, constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the validity of any claim made by any Settlement Class Member Party in this or any other action or proceeding; (b) shall not, in any way, be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, of any kind, or used in any other fashion, by any Settlement Class Member Party, Class Counsel, or any of the Monsanto Parties or Related Parties in any litigation, action, hearing, or any judicial, arbitral, administrative, regulatory or other proceeding for any purpose, except a proceeding to resolve a dispute arising under, or to enforce, the Settlement Agreement; and (c) do not and shall not constitute or be construed as evidence or admission of the propriety of certifying a litigation class with respect to Roundup Claims.  Without limiting the foregoing, neither the Settlement Agreement nor any of its provisions, negotiations, statements, or court proceedings relating to its provisions, nor any actions undertaken in the Settlement Agreement, will be construed as, offered as, received as, used as, or deemed to be evidence, admissible or otherwise, or an admission or concession of any liability or wrongdoing whatsoever on the part of any Person, including, but not limited to, the Monsanto Parties or the Related Parties.  This Paragraph 51 shall not apply to disputes between the Defendant and its insurers, as to which the Defendant reserves all rights, nor does it apply to the use of the Settlement Agreement and related Court filings as set forth in Section 23.3 of the Settlement Agreement.

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

52.     Notwithstanding the foregoing nothing in this Final Order and Judgment shall be interpreted to prohibit the use of this Final Order and Judgment in a proceeding to consummate or enforce the Settlement or this Final Order and Judgment, or to defend against the assertion of Released Claims in any other proceeding, or as otherwise required by law.

53.     Without further approval from the Court, and without the express written consent of Class Counsel and Counsel for the Defendant, on behalf of all Parties, the Settlement Agreement is not subject to any change, modification, amendment, or addition.

54.     The Settlement Agreement and this Final Order and Judgment are binding according to their terms on the Parties, Settlement Class Members, and Settlement Class Member Parties, as well as their respective heirs, executors, administrators, predecessors, successors, affiliates, and assigns.  The Opt Outs listed in Exhibit A hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Settlement Agreement or this Final Order and Judgment, except as expressly set forth herein.

55.     In the event that the Effective Date does not occur and the Settlement Agreement does not become effective pursuant to its terms, the Court shall vacate the Preliminary Approval Order and this Final Order and Judgment.

**SO ORDERED** this _____ day of _____, _____.


_____
Circuit Judge

-21-

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# CONFIDENTIAL

# EXHIBIT 1. I

# [Placeholder]

Electronically Filed - City of St. Louis - February 17, 2026 - 10:44 AM

# Exhibit Pending Motion to File Under Seal