# EXHIBIT H

Electronically Filed - CITY OF ST. LOUIS - May 21, 2026 - 04:32 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

RANDALL KING, SCOTT BUTTERFIELD, ROBERT KOEHLER, MICHAEL MERX, and BRUCE WALDMAN, *on behalf of themselves and others similarly situated,*

    Plaintiffs,

  v.

MONSANTO COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2622-CC00325

Div. No. 8

**SETTLEMENT CLASS MEMBER MATTHEW HUSTON'S OBJECTIONS TO CLASS ACTION SETTLEMENT AGREEMENT AND PRELIMINARY APPROVAL ORDER**

COMES NOW Matthew Huston, a Settlement Class Member as that term is defined in the Court's Preliminary Approval Order dated March 4, 2026, and objects to the proposed Class Action Settlement Agreement dated February 17, 2026 and the aforesaid Preliminary Approval Order pursuant to the procedures outlined in Article XIII of the proposed Class Action Settlement Agreement and ¶¶ 33 – 34 of the Preliminary Approval Order.  In support thereof, Mr. Huston states as follows:

1.  I hereby certify that I have read the objections set forth below and agree with them.

2.  Below is additional information that I am providing pursuant to § 13 of the proposed Class Action Settlement Agreement dated February 17, 2026:

  a.  Printed name:  Matthew Huston

1

Electronically Filed - CITY OF ST. LOUIS - May 21, 2026 - 04:32 PM

b.    Address:  17955 County Road MN, Waueon, Ohio  43567

c.    Phone:  616-894-7070

d.    Pursuant to ¶ 6.3(a)(vi) of the proposed Class Action Settlement Agreement, I hereby declare and attest that I received a Qualifying Diagnosis in April 2022.

e.    Pursuant to ¶ 6.3(a)(vii) of the proposed Class Action Settlement Agreement, I hereby declare and attest that I incurred Exposure to Roundup Products, as that term is defined in ¶ 1.1(50) of the Class Action Settlement, for at least 16 hours or 10 lifetime days.  My exposure was of a residential rather than occupational nature.

f.    I further attest that the circumstances, length and extent of my Exposure were as follows:  I used Roundup weekly between the months of May and September at at least four different residences over a period of 27 years, from 1995 until 2022.  The first residence was in Oregon, where I lived from approximately 1995 until 2001.  I used Roundup for approximately 15 minutes, once per week at the Oregon residence.  The second residence was in Michigan, where I resided from approximately 2001 to 2007.  I used Roundup for approximately 45 minutes, once per week, at my first Michigan residence.  I lived at a different Michigan residence from approximately 2007 to 2020, and used Roundup for approximately an hour and fifteen minutes to an hour and a half at that residence, as there was extensive vegetation on the premises.  The fourth and final residence I recall using Roundup at was my current residence in Ohio, where I used

2

Electronically Filed - CITY OF ST. LOUIS - May 21, 2026 - 04:32 PM

Roundup for approximately two hours weekly from approximately 2020 to 2022.  I do not recall ever wearing any kind of protective equipment such as goggles, gloves or a mask while using Roundup.  I typically wore a tee shirt, shorts and tennis shoes while using Roundup.

g.    To the best of my knowledge, recollection, information and belief, neither I nor my counsel R. Prescott Sifton, Jr. have any history of objecting to class action certification or approval.  Mr. Sifton authored a petition for a writ of certiorari filed with the United States Supreme Court in connection with approval of a class action settlement following a fairness hearing in 2001.  The case in question was *Ring v. Metropolitan St. Louis Sewer District*, No. 22954-02764-01 (City of St. Louis 2001).

3.    In the words of United States District Judge Vince Chhabria, this proposed class action "was filthy" from the moment the Petition was filed.  MDL Tr. at 32, attached hereto as Exhibit "A".  The named Plaintiffs and the putative Defendant walked into court hand in hand seeking the exact same relief: a rushed, inadequate settlement to extinguish Objectors' rights, all while making it comically difficult for injured parties to exercise their constitutionally guaranteed option to opt out of these proceedings.

4.    On information and belief, the putative Defendant extensively reviewed, drafted, and blessed the class action Petition.  The putative Defendant was as much a master of the complaint as the named Plaintiffs.  That is so because the named Plaintiffs and the putative Defendant share a unity of interests and litigation objectives.

5.    Class counsel has all but admitted in open court that this Court was aware of the complaint, the proposed settlement, and counsels' plans to ram it through well before the class

3

complaint was filed. MDL Tr. at 31. The named Plaintiffs, class counsel, and putative Defendant prearranged a meeting with this Court to seek the exact same judicial relief, which this Court summarily granted without notice to any opposing parties, such as the Objectors.

6. None of the allegations in the Petition have ever been actively litigated or contested as between the named Plaintiffs and the putative Defendant. None of the settlement terms and conditions have been actively litigated between the named Plaintiffs and the putative Defendant. The only parties opposing the judicial relief that the named Plaintiffs and putative Defendant seek are Objectors.

7. The named Plaintiffs do not adequately represent the class as defined in the Petition. Two class representative Plaintiffs – King and Waldman – are alleged to have follicular lymphoma diagnosed at the advanced ages of 72 and 78 as well as types of NHL that are not typical of the class they purport to represent. Follicular lymphoma is associated with cigarette smoking, a risk factor that Monsanto emphasizes heavily in a follicular lymphoma plaintiff with a smoking history. The class representative Plaintiff Butterfield is alleged to have one of the rarest subtypes of NHL, Hairy Cell Leukemia, of which the scientific literature is virtually nil associating it with glyphosate exposure. Finally, the Plaintiffs Koehler and Merx do not even have a cancer diagnosis, only the alleged fear of getting cancer some day in the future. Of all the Roundup cases litigated in the MDL and in state courts, such a claim is unprecedented. Also, there is no claim for relief or count in the Petition seeking relief for whatever Koehler and Merx believe they are pursuing by entering their names in the Petition.

8. No doubt because the putative Defendant helped draft it, the Petition is not comprehensive in terms of the causes of action available to any plaintiff in a Roundup case. The Petition lacks counts or claims for negligence, focuses its warning claim on the label

4

Electronically Filed - CITY OF ST. LOUIS - May 21, 2026 - 04:32 PM

(presumably in an effort to assist Monsanto should its gambit in the U.S. Supreme Court in the *Durnell* case pay off). There are no product contaminant or adulteration allegations in the Petition, even though it is now widely known that Roundup contains eight (8) additional carcinogens not listed in any of its marketing, advertisements, social media, instructions for use, product information, etc. Consequently, there are no counts or claims in the Petition relating to the carcinogenic swirl that is formulated Roundup, a product defectively designed, tested, and manufactured, regardless of the contents of its EPA label.

9. The Petition's settlement agreement includes a host of unnamed defendants, starting with Monsanto's parent, Bayer AG. In cases that involve an actual, adversarial relationship between named plaintiffs and defendants, Monsanto vigorously fights the inclusion of Bayer AG as a defendant. Yet here, the named Plaintiffs and the putative Defendant both stand behind a Petition not to sue Bayer AG while also providing this unnamed entity with full settlement relief and expurgation of any liabilities. The same goes for the other "released" non-parties.

10. The class seeks to bind a group of millions upon millions of people, many who have not been conceived and millions who are children, to the terms of the settlement via a so-called "futures" subclass reaching anyone who "saw" anyone using Roundup. Such a class is unconstitutional and unprecedented in the annals of U.S. jurisprudence.

11. It is impossible for anyone who might be in the futures class to make any sort of determination as to whether he or she is included in such class. The notice is highly defective because it is impossible to give notice to people when even the named Plaintiffs and the putative Defendant cannot identify those parties with any particularity (and have not done so to date).

12.    The Petition and its attendant settlement provide for draconian opt-out procedures that run roughshod over basic due process rights.  Absent collusion and a unity of interests between the named Plaintiffs and the putative Defendant, there is no reason class representatives would ever agree to support requiring: (1) a medical record; (2) a copy of a government issued photo ID; (3) a wet ink, personal signature; (4) myriad other reasons as stated by MDL Co-Lead Counsel in Exhibit "B" attached hereto, in order to effectuate a valid opt out.

13.    The proposed settlement's compensation scheme is grossly inadequate and unfair. It creates a conflict among class members by favoring "professional" users of Roundup – farmers and licensed applicators – over "lawn and garden" users of Roundup. There is no reasonable basis for this distinction.  To the contrary, consumers get far fewer warnings than a farmer or licensed applicator. Farmers are told to wear head to toe PPE, to wear gloves, to throw in the trash any clothing that gets Roundup on it, to not smoke, eat, or drink while using Roundup, etc. Consumers are told to wear shorts, short sleeves, and spray to their hearts' content – there are no warnings to consumers like the ones given to farmers and licensed applicators. In other words, the most sophisticated users of Roundup get the best warnings, while consumers buying at Home Depot get no such warnings.  Yet the settlement compensates farmers with cancer more generously than sick consumers.  The named Plaintiffs and putative Defendant both seek this unjust compensation scheme precisely because they have a unity of interests, alongside class and defense counsel, who are all advocating for the exact same relief.  It of course makes sense why Monsanto favors this unbalanced scheme that the named Plaintiffs are also supporting: many farmers are in league with Monsanto, and Monsanto seeks to reward its most important customers.

6

Electronically Filed - CITY OF ST. LOUIS - May 21, 2026 - 04:32 PM

14.    Roundup is in the urine of approximately 90% of the U.S. population.  Roundup and its ingredients, including glyphosate, get into the public water supply, surface water, groundwater, and soils.  Roundup finds its way into our food, even organic foods, because of the blatant, ubiquitous, and indiscriminate use of Roundup not only in the planting and growing of Roundup resistant crops (most not even used in the food supply), but also due to its off-label use as a desiccant, something that Monsanto promotes, knows about, and profits from immensely. Roundup has never been approved by the EPA for any use other than as a registered pesticide, with the original registration based on science stopped in 1974.  Farmers, however, even with crops that are not "Roundup resistant" use it as a desiccant on a wide variety of harvested or pre-harvested crops in order to dry it out faster, make it lighter, and other reasons.  This helps explain why glyphosate is found in the urine of almost every American – it ends up in our water, food, in animal feed (and passed down via dairy and animal meat), and even in packaged cereal on the family kitchen table.  The putative settlement arguably covers injuries from consuming glyphosate-contaminated food, as Monsanto could argue that persons who consumed it were bystanders or should have "seen" it was being applied to their food sources.

15.    Monsanto's behavior should not be rewarded by a sweetheart deal.  Monsanto has taken positions in courts of law that are totally contrary to their statements in the settlement agreement.  Essentially what Bayer is attempting to do is to "buy" all present and future cancers of any kind (regardless of where the science leads us all in the coming years) to a number that is fixed in time and which leaves victims with hardly any compensation for a cancer known to be caused by its products.  It would reward Bayer and Monsanto for its past deeds and give them the green light to have Roundup sprayed everywhere on everything and everybody, with "compensation" for unknown future persons as determined by a faceless administrator paid for

7

Electronically Filed - CITY OF ST. LOUIS - May 21, 2026 - 04:32 PM

by Bayer and Monsanto. Yet, the payments are not immediate, they run for decades. Approval of the settlement would be to free one of the Nation's most notorious, long-term polluters from jury trials and real liability for their misdeeds.

16. The entire settlement scheme is violative of the U.S. Constitution and the rights of non-residents of Missouri to a jury trial in their home venues in the other 49 states as well as U.S. territories. A Missouri state circuit court simply is without the power or authority to implement the terms of this constitutionally flawed settlement.

17. This Court lacks the legal authority to enjoin plaintiffs in currently pending Roundup lawsuits, whether pending in the State of Missouri or elsewhere, including but not limited to lack of personal jurisdiction and/or subject matter jurisdiction. MO. STAT. ANN. § 476.070 does not empower this Court to enjoin non-Missouri plaintiffs in lawsuits pending outside the State of Missouri, nor does it empower the Court to enjoin plaintiffs in proceedings pending in other courts within the State of Missouri other than that of the Twenty-Second Judicial Circuit. Nor did *Matsushita Elec. Industries v. Epstein*, 516 U.S. 367 (1996), did not consider the validity of an injunction against class members continuing to participate in previously-filed lawsuits. All actions at issue in *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191 (E.D. Pa. 2015), had already been consolidated in a single multi-district litigation proceeding whereas that is not the case here. This Court's attempt to enjoin and/or bind plaintiffs with previously-filed lawsuits pending in other jurisdictions and/or venues runs afoul of both substantive and procedural due process under the United States Constitution and the Constitution of the State of Missouri.

18. The notice provisions set forth in the proposed Class Action Settlement Agreement and the Preliminary Approval Order do not require notice to counsel for Roundup

8

Electronically Filed - CITY OF ST. LOUIS - May 21, 2026 - 04:32 PM

plaintiffs who are known to be represented by counsel, improperly and unethically effectuating an end-run around the attorney-client relationship.

19.     The settlement payments provided for in the proposed Class Action Settlement Agreement and/or the Preliminary Approval Order are inadequate and fundamentally unfair.

20.     The claims of Class Representatives and Subclass Representatives are atypical of those of members of the settlement classes and subclasses.

21.     The Class Representatives and Subclass Representatives inadequately represent the respective class members and subclass members.

22.     The $675 million in attorneys' fees requested by Class Counsel is excessive, unreasonable and not commensurate with the hours worked and prevailing rates. The "percentage of the benefit" method is inappropriate for this case. The lodestar method should be used instead.

Dated May _____21_____, 2026

_____
Matthew Huston

9

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed and served using the Court's electronic filing system this 22nd day of May, 2026.

/s/ R. Prescott Sifton, Jr.

Attorney

10