**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| RANDALL KING, SCOTT BUTTERFIELD ROBERT KOEHLER, MICHAEL MERX, AND BRUCE WALDMAN, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> MONSANTO COMPANY, <br><br> Defendant. | Case No. 4:26-CV-813-HEA |

**OBJECTOR DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY ALL
PROCEEDINGS PENDING RULING ON TRANSFER TO MULTIDISTRICT
LITIGATION**

Monsanto and the Named Plaintiffs—yet again, appearing hand-in-hand arguing *jointly* to advance their *identical* interest in a collusive deal[1]—insist in their opposition that there was no reason to stay this case while the JPML considered transfer. But the JPML has now considered transfer and made a provisional decision: this case belongs in the MDL Court. The JPML's Conditional Transfer Order makes clear that this case will almost certainly be "transferred . . . to the Northern District of California," where Judge Chhabria has been ably presiding over more than 4,000 Roundup cases since "October 3, 2016," *i.e.*, nearly an entire *decade*. **Ex. 1**, *In re Roundup Prods. Liab. Litig.*, MDL No. 2741, Dkt. No. 4170 (Conditional Transfer Order No. 578) (J.P.M.L. May 28, 2026) ("CTO").

---

[1] Monsanto nominally filed its own opposition but merely incorporates by reference the arguments the Named Plaintiffs advanced in their opposition. *See* Dkt. Nos. 29 (Monsanto's Stay Opposition), 26 (Named Plaintiffs' Stay Opposition).

That development confirms exactly what Objector Defendants have said from the start: This case is destined for the MDL, so any work done—by the parties and more importantly by the Court—will be for naught. Judicial economy supports a stay. This Court need not "waste time supervising pretrial proceedings and ruling on motions in a case that will soon be transferred to the MDL court." *Stalnaker v. Johnson & Johnson*, No. 4:20-CV-00356, 2020 WL 1821006, at *2 (E.D. Mo. Apr. 10, 2020).

That sensible position should have a familiar ring to Monsanto. "Based on prior transfers in this MDL, a new case likely will be opened in the MDL Court in the ordinary course within two to three weeks." Dkt. No. 3-2 at 3 (Ex. 1 to Objector Defendants' Motion to Stay) (Monsanto's Motion to Stay in *Fazio v. Island Garden Ctr. of Marco Island, Inc.*, No. 2:19-cv-00826 (M.D. Fla. Jan. 21, 2019)) ("*Fazio* Motion"). "[S]tays pending JPML transfer rulings are common in these circumstances." *Id.* at 4. "[C]ourts regularly stay proceedings and defer consideration of remand motions where, as here, a case will likely be transferred to the MDL court." *Id.* at 4–5. Federal courts "routinely stay cases pending the JPML's decision regarding transfer, even when a motion to remand has been filed." *Id.* at 5 (collecting cases). "Absent a stay, the Court runs the risk of expending valuable judicial resources familiarizing itself with the intricacies of a case" that will ultimately end up in the MDL. *Id.* at 10. And the MDL Court, which "has gained extensive knowledge of the issues involved in the Roundup® litigation," including complicated issues surrounding putative class-actions to resolve personal-injury claims, *id.* at 2, "is better positioned to evaluate issues arising from the removal and [the] Remand Motion," *id.* at 10. Those are Monsanto's prior arguments *verbatim*, and there are many more just like them in sum and substance. *See* Dkt. No. 3-3 at 2 (Ex. 2 to Objector Defendants' Motion to Stay) (Monsanto's Motion to Stay in *Dressel v. Monsanto Co.*, No. 0:25-cv-61689 (S.D. Fla. Sept. 3, 2025)); Dkt. No.

2

3-2 (*Fazio* Motion) at 5, 7. On these points, at least, Objector Defendants could not have said it any better than Monsanto itself. The force of Monsanto's cogent arguments for a stay is undiminished now that the shoe is on the other foot. The stay factors do not change merely because a defendant, having repeatedly and successfully invoked them, now finds itself in the position of a disgruntled plaintiff in all but name. The stay should issue so that the MDL Court—which the JPML has now made clear is the proper forum—can adjudicate the numerous, complicated issues associated with this case.

**ARGUMENT**

**I.      Judicial Economy Requires a Stay.**

The Named Plaintiffs and Monsanto do not even attempt to grapple with the Objector Defendants' primary argument for a stay: that this case will almost certainly be transferred to the MDL Court.  *See* Dkt. No. 3 (Objector Defendants' Motion to Stay) at 1–2, 4–7.  Nor do they dispute that in such situations—when "an MDL decision is pending"—"courts frequently grant stays" just like the one Objector Defendants have asked for.  *Pagliara v. Fed. Home Loan Mortg. Corp.*, No. 1:16-cv-337, 2016 WL 2343921, at *2 (E.D. Va. May 4, 2016) (collecting cases).

Instead, they insist that there is no reason to "wait[] for a decision by the JPML before ruling on [the] motion[s] to remand." Dkt. No. 26 (Named Plaintiffs' Stay Opp.) at 6 (cleaned up). But the wait is over.  On May 28, the JPML issued a Conditional Transfer Order that will eventually move this case to the MDL Court.  **Ex. 1** (CTO).  Monsanto and the Named Plaintiffs could allow that to happen immediately by simply acceding to the JPML's determination.  Objector Defendants anticipate, however, that Monsanto and the Named Plaintiffs will file objections to forestall the inevitable.  That is their prerogative, but the JPML's CTO removes almost all doubt that this case is "destined for tag and transfer to [the] MDL." Dkt. No. 3 (Objector Defendants' Motion to Stay)

3

at 1. Any resources expended in this Court will be duplicative of the resources that will now almost certainly be expended in the MDL. Judicial economy commands a stay.

Monsanto points out that there is a motion to remand on file. Dkt. No. 29 (Monsanto's Opposition) at 1. But those kinds of motions do not warrant a dispensation from the standard practice of staying proceedings that are destined for an MDL court. As the JPML has frequently observed, MDL courts are ideally positioned to adjudicate remand motions, even those turning on jurisdictional issues. Again, take it from Monsanto: "MDL courts can and consistently do rule on jurisdictional issues, including motions to remand." Dkt. No. 3-2 (*Fazio* Motion) at 6; *see Simmons v. GlaxoSmithKline, LLC*, No. 4:15-cv-1397, 2015 WL 6063926, at \*2 (E.D. Cal. Oct. 14, 2015) ("The pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in [MDL] proceedings." (quoting *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005))). The plaintiff "can present his motion for remand to the transferee court." Dkt. No. 3-2 (*Fazio* Motion) at 6 (cleaned up); *see Gadolinium Contrast Dyes Prods. Liab. Litig.*, MDL No. 1909, 2012 WL 7807340, at \*1 (J.P.M.L. Apr. 16, 2012). The issue of remand does "*not* serve as a valid basis to deny transfer." Dkt. No. 3-2 (*Fazio* Motion) at 6–7; *see Gadolinium Contrast Dyes Prods. Liab. Litig.*, 2012 WL 7807340, at \*1 (holding that "jurisdictional objections are not an impediment to transfer"). "[T]he MDL Court is better positioned to evaluate issues arising from the removal and Plaintiff's Remand Motion." Dkt. No. 3-2 (*Fazio* Motion) at 10.

Back then, Monsanto was right. *See, e.g.*, *Bule v. Blue Cross & Clue Shield of Kansas City, Inc.*, No. 05-cv-0534, 2005 WL 2218461, at \*1 (W.D. Mo. Sept. 13, 2005) ("Plaintiffs' pending remand motion can be presented to and decided by the transferee judge."); *Stalnaker*, 2020 WL 1821006, at \*2 ("Plaintiff will have a full and fair opportunity to present her arguments for remand to the MDL Court."). That is why courts have routinely accepted Monsanto's arguments and

4

granted a stay pending transfer to the MDL—even when a remand motion is pending.  *See, e.g.*, Dkt. No. 3-4 (Ex. 3 to Objector Defendants' Motion for Stay) (Order Staying Case in *Dressel v. Monsanto* (S.D. Fla. Oct. 9, 2025)).  The pendency of a remand motion is simply not a reason for this Court to embark upon piecemeal resolution of a complex case that will very soon be entirely in the bailiwick of another tribunal.  *See Stalnaker*, 2020 WL 1821006, at *2 (cataloguing numerous cases, from which the court found "no reason to depart," where the "district judges stayed the proceedings pending transfer to the MDL" even though there were "remand issues" present on the docket).  The MDL Court is fully capable of resolving those issues.

And indeed, the issues that arise here, even when limited to the question of remand—to say nothing of many other issues—are complex and would benefit from a developed understanding of the Roundup litigation more generally.  In their papers, Monsanto and the Named Plaintiffs dispute whether they are in fact aligned in their interests, requiring a fact intensive inquiry that might well require discovery into the precise relationship between Monsanto and the Named Plaintiffs both before and after the filing of the class petition.  *See* Dkt. No. 25 (Named Plaintiffs' Remand Motion) at 12–13; Dkt. No. 17 (Monsanto's Remand Motion) at 4–5.  There are currently motions for intervention pending—and there might well be more—requiring the Court to consider both those motions on their own terms as well as their effect on whether the federal courts should continue to exercise jurisdiction over this case.  *See, e.g.*, Dkt. No. 11 (Motion to Intervene).  And both of the lead arguments raised by Monsanto and the Named Plaintiffs—namely that Objector Defendants are not actually "defendants" and that Objector Defendants are not parties to this case—will require a searching application of Roundup-specific facts to areas of law that are complicated by difficult precedents, *Devlin v. Scardelletti*, 536 U.S. 1 (2002); *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435 (2019); *Smith v. Bayer Corp.*, 564 U.S. 299 (2011), and which as to

5

realignment might well entail a circuit split as to the relevant standard.  *See generally* 13 *Wright & Miller, Federal Practice & Procedure* § 3607 (3d ed., Apr. 2026 Update) (describing differing tests that various circuits have employed when evaluating realignment—including the "actual and substantial conflict" test, the "primary purpose" test, the "collision of interests" test, and the "antagonism test").  The MDL Court has demonstrated that it is ready and willing to adjudicate these issues—that is why the JPML's Order notes that there is "consent" from that court.  **Ex. 1** (CTO) at 1.  It would waste valuable judicial resources for this Court to wade into those thorny issues and attempt to resolve them on an accelerated timeline in order to beat the transfer clock that is now ticking.

## II.     There Are No Jurisdictional or "Clean Legal Questions" That Require This Court to Weigh In Pre-Transfer.

Fighting their own prior words on the competence of MDL courts to resolve jurisdictional disputes, Monsanto claims that this Court must decide questions of subject-matter jurisdiction for itself.  Dkt. No. 26 (Named Plaintiffs' Stay Opp.) at 3–4.  Even if that were true (contrary to Monsanto's own words and a wall of JPML precedent) the remand motions here do not turn on jurisdictional questions at all.  *See* Dkt. No. 3 (Objector Defendants' Motion to Stay) at 8–9.  This Court (and the MDL Court) unquestionably have subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d).  The remand motions turn on whether the Objector Defendants have a right to remove under 28 U.S.C. §§ 1446 and 1453, which are *procedural claims processing* rules, not jurisdictional rules.  *See Arnold v. Augustine*, No. 4:21-cv-973, 2021 WL 3602142, at *2 (E.D. Mo. Aug. 13, 2021) (Edward Autrey, J.) (the rule that "removal is available only to a defendant" is a "matter of procedure," not a matter of jurisdiction).  That distinction matters.  Claims processing rules can be waived, are subject to party-presentation principles, and do not impose a duty on the federal tribunal to determine *sua sponte* whether it has power to act.  Jurisdictional rules are far

6

less pliant.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996); *Koehnen v. Herald Fire Ins.*, 89 F.3d 525, 528 (8th Cir. 1996) ("A procedural defect in removal, such as untimeliness, does not affect the federal court's subject matter jurisdiction and therefore may be waived.").  Even if a transferee court had an obligation to confirm whether it has subject matter jurisdiction in the face of a pending MDL transfer, *see Spears v. Fresenius Med. Care N. Am., Inc.*, No. 4:13-cv-855, 2013 WL 2643302, at *1 (E.D. Mo. June 12, 2013), that concern is not implicated here.

Perhaps recognizing that the relevant rule—requiring the "defendant" to execute the removal—is not a jurisdictional one, the Named Plaintiffs use carefully parsed language, claiming that a remand motion based on Sections 1446 and 1453 is "[l]ike" a "challenge to subject matter jurisdiction" because "the absence of statutory authority to remove is 'a threshold issue' for the Court to resolve at the outset."  Dkt. No. 26 (Named Plaintiffs' Stay Opposition) at 4.  But being "like" a jurisdictional issue is not the same thing as being a jurisdictional issue.  The *single* case (which did not involve a motion to stay) they cite for this proposition *turned exclusively on subject matter jurisdiction.  See Stewart v. Pershing Health Sys.*, 182 F. Supp. 2d 856, 858-63 (E.D. Mo. 2001) (granting remand because state-law claims were not preempted and therefore did not "arise under" federal law).  There is *no* authority stating that this Court is duty-bound to consider claims-processing rules rather than allowing the MDL Court to do so in short order.

It is unsurprising that the Named Plaintiffs and Monsanto offer zero legal support for their argument that courts entertaining a stay request should treat the "absence of statutory authority to remove" like a lack of subject matter jurisdiction.  If that were true, transferee courts would *never* stay proceedings pending transfer if there were pending remand motions.  *Every* motion to remand alleges an "absence of statutory authority to remove."  But courts regularly stay proceedings pending MDL transfers.  *See* Dkt. No. 3 (Objector Defendants' Motion to Stay) at 5–6 (collecting

7

cases). And they do so even if they determine federal jurisdiction is merely "possible." *Lafoy v. Volkswagen Group of Am., Inc.*, No. 4:16-cv-00466, 2016 WL 2733161, at \*5 (E.D. Mo. May 11, 2016)[2] ("The Defendant does not clearly lack federal question jurisdiction, and the interests of judicial economy require the stay of the motion to remand pending a transfer to MDL or the grant of a motion to consolidate."). Here, there *is unquestionably* federal jurisdiction.

The Named Plaintiffs and Monsanto also contend that *Home Depot*, 587 U.S. 435, somehow militates against a stay. *See* Dkt. No. 26 (Named Plaintiffs' Stay Opp.) at 4–5. They seem to suggest that *Home Depot* shows a "clear" "absence of jurisdiction" in this case. *Id.* (quoting Manual for Complex Litigation (Fourth) § 22.35). That is wrong. The Court in *Home Depot* specifically noted that "provisions that permit parties to remove cases" are "[*i*]*n addition to* [the rules] granting federal courts jurisdiction over certain types of cases." *Id.* at 438 (emphasis added). *Home Depot* did not eliminate "the distinction between limits on the classes of cases a court may entertain (subject-matter jurisdiction) and nonjurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Wilkins v. United States,* 598 U.S. 152, 157 (2023) (cleaned up).

At any rate, Named Plaintiffs' and Monsanto's argument that *Home Depot* forecloses the Objector Defendants' ability to remove is simply wrong. As the Objector Defendants' forthcoming remand opposition will show in more detail, *Home Depot* merely held that a counterclaim

---

[2] The Named Plaintiffs cite *Lafoy* as somehow supporting their arguments against a stay. Dkt. No. 26 (Named Plaintiffs' Stay Opp.) at 5. But there, the court merely noted it should "decide if federal jurisdiction is clearly absent" before balancing the parties' interests. *Id.* at \*2. That's because a lack of jurisdiction "significantly weighs in balance of denying a stay." *Id.* (citing *Manual for Complex Litigation (Fourth)* § 22.35). And because the court assured itself that there was merely a "possib[ility]" of federal jurisdiction, it *granted a stay* pending MDL transfer. *Id.* at \*5.

defendant cannot remove because they are not "the defendant to" the "action as defined by the plaintiff's complaint." 587 U.S. at 441–42. That's because the removal statutes do "not permit removal based on counterclaims at all, as a counterclaim is irrelevant to whether the district court had 'original jurisdiction' over the civil action." *Id.* at 442. Objector Defendants here do not premise their removal on a counterclaim (which can never form the basis for removal), but on their *actual* alignment as defendants to the *original* "action as defined by the [Named Plaintiffs'] complaint" (which *does* form the basis for removal if there is original jurisdiction over that action). Federal courts have a "duty" to make that realignment based on the "principal purpose of the suit" and the "primary and controlling matter in dispute," not by applying "mechanical rules." *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941). There is simply no sensible reading of *Home Depot* that overturned *City of Indianapolis sub silentio*.

Merits aside for a moment, there is no question that these thorny questions about the proper interpretation of *Home Depot* are best litigated elsewhere—in the MDL Court. The litigation of the issues in the "pending remand motion[s] can be presented to and decided by the transferee judge." *Simmons*, 2015 WL 6063926, at *2 (cleaned up) (granting motion to stay pending possible MDL transfer even where remand motions turned on questions of federal jurisdiction). That is especially true considering the fact-bound inquiries the realignment analysis will require. *See* Dkt. No. 3 (Objector Defendants' Motion to Stay) at 9.

### III.   Named Plaintiffs and Monsanto Concede the Balance of Hardships Requires a Stay.

Named Plaintiffs and Monsanto bizarrely argue that the Court should decline to issue a stay because of what they describe as "immediate and irreparable prejudice" to class members. Dkt. No. 26 (Named Plaintiffs' Stay Opp.) at 5. They evidently misunderstand the nature of a stay. As Objector Defendants noted (Dkt. No. 3 at 7–8), a stay of all proceedings is designed to *prevent* the "immediate and irreparable prejudice" that Named Plaintiffs and Monsanto fear. How could a stay

9

of the "key deadlines and dates" "risk[] the expiration of" *those same deadlines*? Dkt. No. 26 (Named Plaintiffs' Stay Opp.) at 5.  The only way to protect the rights of Objector Defendants, other objectors, opt-out class members, and—as Named Plaintiffs and Monsanto now admit— "hundreds of thousands of absent class members," (*id.*), is to grant Objector Defendants' request to stay all proceedings pending transfer to the MDL.

**CONCLUSION**

The Court should grant the motion to stay and allow this case to be transferred to the MDL Court, consistent with the JMPL's Conditional Transfer Order, in the ordinary course.

Dated: May 29, 2026                    Respectfully submitted.

  /s/ Ashley Keller

Ashley Keller (*pro hac vice*)
KELLER POSTMAN LLC
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Ph: 312-741-5220
ack@kellerpostman.com

R. Prescott Sifton, Jr.
**Frazer PLC**
30 Burton Hills Blvd., Ste. 450
Nashville, TN  37215
Office:  (615) 647-0989
Facsimile:  (615) 307-4902
scott@frazer.law

*Counsel for Objector Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused the foregoing to be filed with the Clerk of this Court via the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

Dated: May 29, 2026                    /s/ Ashley Keller
                                           Ashley Keller